Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiffs and the Proposed Class*

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVIVA KELLMAN, JASON FRY, and NICHOLAS NEWELL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SPOKEO, INC.,<br><br>Defendant. | Case No. 3:21-cv-08976-WHO<br><br>**PLAINTIFFS' OPPOSITION TO SPOKEO, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Judge William H. Orrick III<br><br>Complaint Filed: November 19, 2021 |

i

1

# <u>TABLE OF CONTENTS</u>

2

PRELIMINARY STATEMENT ............................................................................................ 1

3

LEGAL STANDARD.......................................................................................................... 2

4

ARGUMENT ...................................................................................................................... 2

5

I.      PLAINTIFFS HAVE ARTICLE III STANDING TO BRING THEIR CLAIMS. ............ 2

6

    A.    Numerous district courts in this Circuit and elsewhere have held in nearly identical

7

           cases that plaintiffs have Article III standing. ................................................ 2

8

    B.    Plaintiffs allege four harms that traditionally give rise to a common law claim for

9

           misappropriation of likeness.......................................................................... 3

10

        1.    Plaintiffs allege injury from the misappropriation of their intellectual property.... 4

11

        2.    Plaintiffs allege injury from Spokeo's unjust profits. ............................................ 6

12

        3.    Plaintiffs allege injury from the denial of their right to control the commercial use

13

            of their names and identities. ......................................................................... 7

14

        4.    Plaintiffs allege mental injury........................................................................ 8

15

II.    PLAINTIFFS' CLAIMS ARE PROPERLY PLED. .......................................................... 9

16

    A.    Spokeo's use of Plaintiff Newell's identity to advertise subscriptions violates Ohio

17

           law. ............................................................................................................... 9

18

        1.    Plaintiff Newell's name, persona, and likeness have commercial value. ............... 9

19

        2.    Ohio law does not require implied endorsement. ................................................ 10

20

        3.    The newsworthiness exception does not apply.................................................... 11

21

        4.    Spokeo's use of Mr. Newell's name or likeness in teaser profiles promoting

22

            subscriptions is a "commercial purpose.".............................................. 12

23

    B.    Spokeo's use of Plaintiff Fry's identity to advertise subscriptions violates Indiana

24

           law. ............................................................................................................... 13

25

        1.    Plaintiff Fry has plead a claim under Indiana's Right of Publicity Act............... 13

26

        2.    Indiana recognizes a claim for common-law misappropriation of name or

27

            likeness....................................................................................................... 15

28

    C.    Plaintiffs' California claims are properly plead. ...................................................... 15

        1.    Non-California Plaintiffs may bring California claims here................................ 15

i

2.    Spokeo's use of Plaintiffs' identity to advertise its products violates California law.................................................................................................. 16

3.    Spokeo's use of Plaintiffs' identity to advertise its products violates the UCL. .. 19

III.    SPOKEO'S COMMERCIAL ADVERTISEMENTS ARE NOT PROTECTED BY THE FIRST AMENDMENT.................................................................................. 21

IV.    THE APPLICATION OF STATE LAWS TO SPOKEO'S CONDUCT DOES NOT VIOLATE THE DORMANT COMMERCE CLAUSE............................................. 22

V.    THE COMMUNICATIONS DECENCY ACT ("CDA") DOES NOT APPLY.............. 24

CONCLUSION.......................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*Alaska Airlines, Inc. v. City of Long Beach*,
  951 F.2d 977 (9th Cir. 1991) ................................................................. 23

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
  729 F.3d 937 (9th Cir. 2013) ................................................................. 24

*Bolger v. Youngs Drug Prods. Corp.*,
  463 U.S. 60 (1983) ................................................................................. 21

*Bonilla v. Ancestry.com*,
  No. 1:20-cv-07390, 2021 WL 5795306  (N.D. Ill. Dec. 7, 2021) ................................. passim

*Brooks v. Thomson Reuters Corp.*,
  No. 21-CV-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ........................ 17, 20

*Bruno v. Eckhart Corp.*,
  280 F.R.D. 540 (C.D. Cal. 2012) ............................................................. 15

*Callahan v. Ancestry.com Inc.*,
  Case No. 20-cv-08437-LB, 2021 WL 2433893 (N.D. Cal. June 15, 2021) ............................. 3

*Callahan v. PeopleConnect*,
  No. 20-cv-09203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ................................. passim

*Colgate v. JUUL Labs, Inc.*,
  345 F. Supp. 3d 1178 (N.D. Cal. 2018) ....................................................... 16

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
  25 Cal.4th 387 (Cal. 2001) ....................................................................... 4

*Cox Broad. Corp. v. Cohn*,
  420 U.S. 469 (1975) ................................................................................. 22

*Daniels v. FanDuel, Inc.*,
  109 N.E.3d 390, 397 n.3 (Ind. 2018) ..................................................... 13, 14

*Davis v. Facebook, Inc.*,
  956 F.3d 589 (9th Cir. 2020) ..................................................................... 6

*Dex Media W., Inc. v. City of Seattle*,
  696 F.3d 952 (9th Cir. 2012) ..................................................................... 22

*Dobrowolski v. Intelius, Inc.*,
  No. 17 CV 1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018) ........................... 12

iii

*Downing v. Abercrombie & Fitch,*
   265 F.3d 994 (9th Cir. 2001) ........................................................................... 3, 8, 18

*Dyroff v. Ultimate Software Grp., Inc.,*
   934 F.3d 1093 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020) ..................... 24

*Eastwood v. Superior Court,*
   149 Cal.App.3d 409 (Cal. Ct. App. 1983) .................................................... 6, 7, 16

*ETW Corp. v. Jireh Publishing, Inc.,*
   332 F.3d 915, 928 (6th Cir. 2003) ..................................................................... 4

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,*
   521 F.3d 1157 (9th Cir. 2008) ........................................................................... 24

*Feller v. Transamerica Life Ins. Co.,*
   No. 216CV01378CASAJW, 2017 WL 6496803 (C.D. Cal. Dec. 11, 2017).......................... 15

*Felsher v. University of Evansville,*
   755 N.E.2d 589 (Ind. 2001) ........................................................................... 5, 13

*Fraley v. Facebook, Inc.,*
   830 F. Supp. 2d 785 (N.D. Cal. 2011) ...................................................... passim

*Gionfriddo v. Major League Baseball,*
   94 Cal. App. 4th 400, 114 Cal. Rptr. 2d 307 (2001)................................................ 18

*Harvey v. Sys. Effect, LLC,*
   2020-Ohio-1642, 154 N.E.3d 293 ..................................................................... 5

*Healy v. Beer Instit.,*
   491 U.S. 324 (1989)........................................................................... 23, 24

*IMDb.com Inc. v. Becerra,*
   962 F.3d 1111 (9th Cir. 2020) ........................................................................... 22

*In re Facebook, Inc., Consumer Privacy User Profile Litig.,*
   402 F. Supp. 3d 767, 786 (N.D. Cal. 2019) ........................................................ 6

*In re Google,*
   No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013)........................................ 6

In re Google,
   402 F. Supp. 3d at 786 ........................................................................... 6

*In re Yahoo Mail Litig.,*
   308 F.R.D. 577 (N.D. Cal. 2015)................................................................ 15, 16

iv

*IntegrityMessageBoards.com v. Facebook, Inc.*,
   No. 18-cv-05286-PJH, 2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ...................................... 20

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) ................................................................................................. 24

*Knapke v. PeopleConnect Inc.*,
   No. 21-cv-262, 2021 WL 3510350 (W.D. Wash. Aug. 10, 2021)................................... passim

*Kolebuck-Utz v. Whitepages Inc.*,
   No. 21-cv-53, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021) ................................... 3, 10, 22

*Krause v. RocketReach, LLC*,
   No. 21-cv-1938, 2021 WL 4282700 (N.D. Ill. Sept. 21, 2021).......................................... 3, 25

*Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).......................................................... 2

*Lukis v. Whitepages Inc.*,
   No. 19-cv-4871, 454 F. Supp. 3d 746, 2021 WL 3022319 (N.D. Ill. July 16, 2021)........ passim

*Manzarek v. Marine*,
   519 F.3d 1025 (9th Cir. 2008) ................................................................................................... 2

*Midler v. Ford Motor Co.*,
   849 F.2d 460, 463 (9th Cir. 1988) ............................................................................................. 4

*Miller v. Collectors Univ.*,
   159 Cal. App. 4th 988, 1006 n. 12 (Cal. Ct. App. 2008) ........................................................... 8

*Miller v. Glenn Miller Productions, Inc.*,
   454 F.3d 975, 988 n.6 (9th Cir. 2006) ....................................................................................... 7

*Moore v. Regents of University of California*,
   51 Cal.3d 120, 138 (Cal. 1990)................................................................................................. 5

*Motschenbacher v. R. J. Reynolds Tobacco Co.*,
   498 F.2d 821 (9th Cir. 1974) ................................................................................................. 5, 8

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
   682 F.3d 1144 (9th Cir. 2012) ................................................................................................. 23

*Nayab v. Capital One Bank*,
   942 F.3d 480, 485 (9th Cir. 2019) ............................................................................................. 2

*Patel v. Facebook, Inc.*,
   932 F.3d 1264, 1272 & n. 6 (9th Cir. 2019) .............................................................................. 7

*Perkins v. Linkedin Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014)........................................................................... 5, 17, 21

*Rezvanpour v. SGS Auto. Servs., Inc.*,
   No. 8:14-CV-00113-ODW, 2014 WL 3436811 (C.D. Cal. July 11, 2014)............................ 24

*Rubio v. Capital One Bank*,
   613 F.3d 1195, 1203-04 (9th Cir. 2010) ...................................................................... 2

*Sessa v. Ancestry.com*,
   No. 2:20-cv-02292, 2021 WL 424535 (D. Nev. Sept. 16, 2021) .................................... passim

*Siegel v. ZoomInfo Technologies, Inc.*,
   2021 WL 4306148 (N.D. Ill. Sep. 22, 2021) ............................................................ 3, 14

*Sihler v. Fulfillment Lab, Inc.*
    No. 3:20-cv-01528-H-MSB, 2020 WL 7226436 (S.D. Cal. Dec. 8, 2020) ........................... 16

*Spokeo v. Robins*,
   578 U.S. 330 (2016)........................................................................................... 3

*Timed Out, LLC v. Youabian, Inc.*,
   229 Cal.App.4th 1001 (Cal. Ct. App. 2014) ............................................................... 8

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021)............................................................................... 3, 4, 6, 7

*Westminster Presbyterian Church of Muncie v. Yonghong Cheng*,
   992 N.E.2d 859 (Ind. Ct. App. 2013) ...................................................................... 8

*Zacchini v. Scripps-Howard Broadcasting Co.*,
   433 U.S. 562 (1977)........................................................................................... 8

**Statutes**

765 ILCS 1075/30........................................................................................... 7

Cal. Civ. Code § 3344.............................................................................. 1, 7, 16

Cal. Civ. Code § 3344(a).................................................................................. 6

Cal. Civ. Code § 3344(d)........................................................................... 11, 19

Ind. Code Ann. § 32-36-1-10.............................................................................. 6

Ind. Code Ann. § 32-36-1-8........................................................................... 7, 14

Ind. Code. Ann. § 32-36-1-1(a)......................................................................... 13

Ind. Code. Ann. § 32-36-1-1(c)(1)(B)................................................................... 14

Ohio Rev. Code § 2741.09............................................................................... 11

Ohio Rev. Code Ann. § 2741.01, *et seq.*...........................................................................9

Ohio Rev. Code Ann. § 2741.02................................................................................. passim

Ohio Rev. Code Ann. § 2741.07...........................................................................................6

**<u>Rules</u>**

Fed. R. Civ. P. Rule 12(b)(6) ...................................................................................... 2, 24

1

**PRELIMINARY STATEMENT**

2       Spokeo, Inc. is in the business of selling personal information without permission. Spokeo

3   uses Plaintiffs' names, personal information, and personas in advertisements promoting monthly

4   subscriptions to Spokeo.com. California, Ohio, and Indiana law recognize the rights of individuals

5   to control the commercial use of their names and personas. Spokeo's non-consensual use of

6   Plaintiffs' personas violates these important and long-standing legal rights.

7       Spokeo obtained names, ages, current and past cities of residence, addresses, emails, phone

8   numbers, and additional personal information about millions of individuals without their consent.

9   Dkt. No. 1, ¶¶3-4, 6 ("Compl."). Spokeo incorporated this information in "teaser profiles," which

10  it displayed publicly on the Internet. *See, e.g. id.*, ¶¶30-38. Spokeo's teaser profiles advertised that,

11  if the user purchases a subscription, Spokeo would provide additional information, including

12  "Criminal Records"; "Sex Offenses"; "DUIs"; "details about birth, marriage, and divorce";

13  "Relationship Status"; "Location History"; "Estimated Salary"; "Family Members"; and

14  unredacted "Full Address[es]"; "Email Address[es]," and "Phone Number[s]." *Id.*, ¶¶4-5. Spokeo

15  made these representations even for individuals who have no criminal record, have committed no

16  "sex offenses," and have never received a DUI. Users who purchased a subscription received far

17  more than access to the personal information of the individual whose persona Spokeo used to

18  advertise the membership. Rather, subscribers received access to full profiles of hundreds of

19  millions of individuals, incorporating "over 12 billion records from thousands of data sources."

20  *Id.*, ¶8.

21      Spokeo's advertisements violate California, Indiana, and Ohio statutory and common law

22  prohibiting the use of a person's name, personality, and likeness for a commercial purpose without

23  that person's consent. By using Plaintiffs' and Class members' personas without their consent to

24  advertise Spokeo subscriptions, Spokeo harmed Plaintiffs and the Class by taking their intellectual

25  property; violating their privacy rights; unjustly profiting from their personas; and disturbing their

26  peace of mind. This lawsuit is not about the distribution of Plaintiffs' and Class members'

27  information. Plaintiffs and Class members, as is their right, may have selectively consented to

28

PLAINTIFFS' OPPOSITION TO SPOKEO, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:21-cv-08976-WHO

share certain of the information in Spokeo's teaser profiles with social networking sites, the government, or other entities. This lawsuit is about Spokeo's illegal use of Plaintiffs' and Class members' personas without their consent to promote a product they do not endorse and have no desire to promote.

## LEGAL STANDARD

On a Rule 12(b)(6) motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. Marine*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). A claim survives if it is "plausible on its face." *Nayab v. Capital One Bank*, 942 F.3d 480, 485 (9th Cir. 2019) (quotation omitted). The Court's review on a motion to dismiss is "limited to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).

## ARGUMENT

## I.   PLAINTIFFS HAVE ARTICLE III STANDING TO BRING THEIR CLAIMS.

Spokeo's motion to dismiss for lack of Article III standing should be denied. Plaintiffs have alleged injury-in-fact and have standing to pursue their claims.

### A.   Numerous district courts in this Circuit and elsewhere have held in nearly identical cases that plaintiffs have Article III standing.

Nearly all district courts that have considered the issue have ruled that plaintiffs have Article III standing to assert right of publicity claims against websites that use personal information gathered from publicly available sources to advertise subscriptions. *See Callahan v. PeopleConnect*, No. 20-cv-09203, 2021 WL 5050079, at *14-18 (N.D. Cal. Nov. 1, 2021) (plaintiffs had statutory standing under Cal. Bus. & Prof. Code § 17204 and alleged "injury" sufficient to state a claim under Cal. Civ. Code § 3344);[1] *Sessa v. Ancestry.com*, No. 2:20-cv-02292, 2021 WL 4245359, at *4-6 (D. Nev. Sept. 16, 2021) (plaintiffs had standing to pursue Nevada claims against website that used yearbook photos to advertise subscriptions); *Lukis v. Whitepages Inc.*, No. 19-cv-4871, 454 F. Supp. 3d 746, 2021 WL 3022319, at *3-4 (N.D. Ill. July

---

[1] Plaintiffs who have statutory standing under § 17204 necessarily satisfy the requirements for standing under Article III. *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010).

2

16, 2021) (plaintiffs had standing to pursue Illinois claims against a website that, like Spokeo, uses "preview" or "teaser" profiles of personal information to advertise subscriptions); *Bonilla v. Ancestry.com*, No. 1:20-cv-07390, 2021 WL 5795306, at *3-4 (N.D. Ill. Dec. 7, 2021) (standing to pursue Illinois claims). In addition, courts in this Circuit and elsewhere have denied motions to dismiss in substantially similar cases without explicitly addressing injury-in-fact or Article III standing. *See, e.g.*, *Siegel v. ZoomInfo Technologies, Inc.*, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021) (Illinois right of publicity claims); *Knapke v. PeopleConnect Inc.*, No. 21-cv-262, 2021 WL 3510350 (W.D. Wash. Aug. 10, 2021) (Ohio claims); *Krause v. RocketReach, LLC*, No. 21-cv-1938, 2021 WL 4282700 (N.D. Ill. Sept. 21, 2021) (Illinois claims); *Kolebuck-Utz v. Whitepages Inc.*, No. 21-cv-53, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021) (Ohio claims).

Spokeo leans heavily on *Callahan v. Ancestry.com Inc.*, Case No. 20-cv-08437-LB, 2021 WL 2433893, at *5 (N.D. Cal. June 15, 2021), in which one magistrate judge found the plaintiffs lacked standing. Dkt. No. 23, *14. As detailed below, the district judges in *Sessa*, *Callahan v. PeopleConnect*, and *Bonilla* explicitly considered and rejected the reasoning of *Ancestry* as inconsistent with Circuit Court and Supreme Court precedent, including *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2209 (2021). An appeal of the decision in *Callahan v. Ancestry* is pending. *See* No. 21-16161 (9th Cir., docketed July 12, 2021).

### B. Plaintiffs allege four harms that traditionally give rise to a common law claim for misappropriation of likeness.

Plaintiffs have standing to pursue both their statutory and common law claims because they allege harms that traditionally give rise to a common law claim for misappropriation of a name or likeness. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). Courts evaluating whether a statutory violation supports Article III standing must "ask[] whether plaintiffs have identified a . . . common-law analogue for their asserted injury." *TransUnion*, 141 S. Ct. at 2204. If so, and if the harm "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit" at common-law, then Article III standing exists. *Id*. at 2209 (quoting *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)) (plaintiffs whose credit reports were

disseminated without permission had standing because the injury bore a "close relationship to the harm associated with the tort of defamation").

Here, Plaintiffs allege claims under California's, Indiana's, and Ohio's right of publicity statutes, and under the analogous common law tort for misappropriation of a name or likeness, which is recognized in all three states. Because Plaintiffs have alleged harms that traditionally give rise to a common law claim, Plaintiffs have Article III standing to pursue both their statutory and common law claims. *See Sessa*, 2021 WL 4245359, at *4 ("Plaintiffs have alleged concrete injury . . . because they seek relief for claims analogous to those available at common law"); *Bonilla*, 2021 WL 5795306, at *4 (accord).

### 1. Plaintiffs allege injury from the misappropriation of their intellectual property.

First, Plaintiffs allege injury from Spokeo's misappropriation of their intellectual property rights in their names, likenesses, or personas. Traditionally, the tort of misappropriation of a name or likeness recognized an intellectual property right in an individual's name or likeness. The misappropriation of this intellectual property was itself injury, just as the unauthorized use of patented, copyrighted, or trademarked material is an injury. *Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988) ("[C]ommon law rights are also property rights. Appropriation of such common law rights is a tort in California.")*; see also Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387, 399 (Cal. 2001) ("The right of publicity . . . protects a form of intellectual property"); *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915, 928 (6th Cir. 2003) ("The right of publicity is an intellectual property right . . . which has been defined as the inherent right of every human being to control the commercial use of his or her identity").

Because a violation of this intellectual property right was harm giving rise to a common law misappropriation claim, district courts applying the analysis required by *TransUnion* and *Spokeo* have ruled that individuals whose personal information is used to advertise website subscriptions have Article III standing. *See Callahan v. PeopleConnect*, 2021 WL 5050079, at *19 (individuals' "names and likenesses are intellectual property," and a website's use without compensation satisfies the requirement for alleging "lost money or property" under Cal. Bus. &

Prof. Code § 17200); *Sessa*, 2021 WL 4245359, at *6 ("the right of publicity refers to a property right in a person's identity") (quotation omitted)*; see also Knapke*, 2021 WL 3510350, at *8 ("Individuals have a property right in their own identity") (quotation omitted).

Spokeo argues that misappropriation of Plaintiffs' names or likeness does not constitute an injury because Plaintiffs do not "allege facts demonstrating that their identities had commercial value" prior to Spokeo's misuse. Dkt. No. 23, *15. This argument fails. Neither the common law misappropriation torts, nor the statutory rights of publicity, require that a plaintiff demonstrate a pre-existing commercial interest in her name or likeness. *See, e.g.*, *Moore v. Regents of University of California*, 51 Cal.3d 120, 138 (Cal. 1990) (reviewing case law and concluding "every person has a proprietary interest in his own likeness and [the] unauthorized, business use of a likeness is redressable as a tort"); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 806-07 (N.D. Cal. 2011) ("The statutory text makes no mention of preexisting value . . . Nor does the Court find any reason to impose a higher pleading standard on non-celebrities than on celebrities").[2] The Ninth Circuit has recognized that "the appropriation of the identity of a relatively unknown person . . . may itself create economic value in what was previously valueless." *Motschenbacher v. R. J. Reynolds Tobacco Co*., 498 F.2d 821, 825 n. 11 (9th Cir. 1974); *see also Perkins v. Linkedin Corp*., 53 F. Supp. 3d 1190, 1210 (N.D. Cal. 2014) ("LinkedIn is alleged to have misappropriated Plaintiffs' names to promote LinkedIn . . . which is indisputably economically valuable to LinkedIn."). Were the Plaintiffs' personas not commercially valuable intellectual property, Spokeo would not have stolen them.

Only one case supports Spokeo's argument: *Callahan v. Ancestry.* Three courts have rejected that decision, including Judge Chen in this same District, because in *Callahan v. Ancestry* the magistrate judge failed to evaluate whether the harms alleged were recognized at common law

---

[2] The same is true for Indiana and Ohio law. *Daniels v. FanDuel, Inc.*, 109 N.E.3d 390, 397 n.3 (Ind. 2018) (Indiana legislature passed statute "after concerns that profiteers were selling baseball style cards of an AIDS victim"); *Felsher v. University of Evansville*, 755 N.E.2d 589, 599-600 (Ind. 2001) (affirming injunction prohibiting misappropriation of non-celebrity University official's names and likenesses); *Harvey v. Sys. Effect, LLC*, 2020-Ohio-1642, ¶56, 154 N.E.3d 293, 304 (plaintiff is "not required to have 'celebrity status' to recover" under Ohio's right of publicity statute).

5

as required by *TransUnion* and *Spokeo*. *Sessa*, 2021 WL 4245359, at \*6; *Bonilla*, 2021 WL 5795306, at \*3-4*; see also Callahan v. PeopleConnect*, 2021 WL 5050079, at \*15 (declining to follow *Ancestry* in light of "more persuasive" authority). Explicitly disagreeing with *Callahan v. Ancestry*, all three courts recognized that infringement of plaintiffs' intellectual property was harm giving rise to a common law claim, and therefore supports Article III standing. *Id.*

### 2.   Plaintiffs allege injury from Spokeo's unjust profits.

Second, Plaintiffs allege injury in the form of Spokeo's failure to compensate Plaintiffs for its unauthorized use, which "denied Plaintiff[] the economic value of their likenesses." *See PeopleConnect*, 2021 WL 5050079, at \*15. Because "[e]conomic value may reasonably be inferred from use . . . to advertise," Spokeo's use satisfies the statutory requirement that the plaintiff be a "person or persons injured." *Id.*, at \*14-15 The statutes and common law at issue provide for recovery of "profits from the unauthorized use." Cal. Civ. Code § 3344(a); *see also* Ind. Code Ann. § 32-36-1-10 (same); Ohio Rev. Code Ann. § 2741.07 (same). Traditionally, alleging the defendant used and profited from a name or likeness gave rise to a claim for misappropriation of name or likeness. *See, e.g., Eastwood v. Superior Court*, 149 Cal.App.3d 409, 416 (Cal. Ct. App. 1983) (recognizing common law claim for "appropriation, for the defendant's advantage, of the plaintiff's name or likeness"). The Ninth Circuit has recognized that an individual suffers injury when a website is "unjustly enriched through the use of their data." *Davis v. Facebook, Inc.*, 956 F.3d 589, 599 (9th Cir. 2020). Spokeo's failure to compensate supports Article III standing.

Both decisions Spokeo cites on this topic are unpersuasive. As explained above, multiple courts have rejected the reasoning in *Callahan v. Ancestry*. Similarly, the district court in *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 786 (N.D. Cal. 2019), cast doubt on the *In re Google* court's reasoning, finding that the judge in *In re Google* "seems to assume that economic harm is required rather than examining whether it's required." 402 F. Supp. 3d at 786 (citing *In re Google*, No. C-12-01382-PSG, 2013 WL 6248499, at \*5 (N.D. Cal. Dec. 3, 2013)) ("[w]hether or not [the *In re Google* court] was right about precedent at the time," more recent case law "provide[s] ample support for the conclusion that this type of privacy invasion alone creates standing.").

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     **3.     Plaintiffs allege injury from the denial of their right to control the commercial use of their names and identities.**

Third, Plaintiffs allege injury from Spokeo's denial of their right to control the commercial use of their names and identities. Traditionally, the right of publicity protects "the inherent right of every human being to control the commercial use of his or her identity." *Miller v. Glenn Miller Prods., Inc*., 454 F.3d 975, 988 n.6 (9th Cir. 2006) (quotation omitted). For example, in *Fraley*, the court found the plaintiffs had Article III standing to pursue a § 3344 claim because the statute arose from California common law protecting "the right to prevent others from appropriating elements of one's identity for commercial gain." 930 F.Supp. at 806. Therefore, "alleg[ing] a violation of their individual statutory rights" was sufficient to allege "an invasion of a legally protected interest for Article III purposes." *Id*. at 797. Similarly, *Lukis* ruled that a violation of Illinois' right of publicity statute "inflicts a concrete injury-in-fact under Article III." 2021 WL 3022319, at *4 (citing *Spokeo* and *TransUnion*). The court reasoned that the Illinois statute "codified [the] common law tort," which protected a substantive "right to control and to choose whether and how to use an individual's identity for commercial purposes." *Id*. This reasoning applies equally to the California, Indiana, and Ohio right of publicity statutes, which protect the same historically recognized rights. *Compare* 765 ILCS 1075/30 *with* Cal. Civ. Code § 3344, Ind. Code Ann. § 32-36-1-8, Ohio Rev. Code Ann. § 2741.02.

Spokeo argues that, because of the "public nature of the information at issue," there is no injury. Dkt. No. 23, *15. This misunderstands the right of publicity. While some privacy rights are about preventing dissemination, others like the right of publicity are about controlling *how* personal information is used. The appropriation of name or likeness tort protects an individual's right to control *how* personal information is used, not to entirely prevent its dissemination. *See Patel v. Facebook, Inc*., 932 F.3d 1264, 1272 & n. 6 (9th Cir. 2019) (quotation omitted). An appropriation of name or likeness did not require pleading that information was secret or non-public prior to the defendant's misuse. *See Eastwood*, 149 Cal.App.3d at 417 (superseded by statute on other grounds as noted in *Solano v. Playgirl, Inc*., 292 F.3d at 1089 n. 7 (9th Cir. 2002)) (elements of "appropriation" tort). As the Supreme Court recognized in *Zacchini v. Scripps-*

7

*Howard Broadcasting Co.*, which involved Ohio law, "in right of publicity cases the only question is who gets to do the publishing." 433 U.S. 562, 573 (1977)*; see also Sessa*, 2021 WL 4245359, at *6 n. 3 ("right of publicity claims do not depend on publication of private photos, but rather the use of one's likeness for commercial purposes."); *Westminster Presbyterian Church of Muncie v. Yonghong Cheng*, 992 N.E.2d 859, 869 (Ind. Ct. App. 2013) (right of publicity is "invaded" not "because [a] name or [] appearance is brought before the public" but rather because they are "appropriat[ed] to the defendant's benefit") (quotation omitted).

The right of publicity gives individuals comfort they may safely and selectively place their names and likenesses in the public eye by, for example, sharing personal information on certain social media, without fear someone will steal and exploit their names and identities for commercial gain. *See Timed Out, LLC v. Youabian, Inc*., 229 Cal.App.4th 1001, 1006 (Cal. Ct. App. 2014). Accordingly, almost all right of publicity cases involve material the plaintiff intentionally distributed, which the defendant then copied from a public source. *See, e.g., Fraley*, 930 F. Supp. at 799 (Facebook misused information and photographs its users uploaded to the site); *Downing*, 265 F.3d 994 (defendant copied plaintiff's image from a published book). Spokeo's misreading of the right of publicity – which contends that a plaintiff's rights are violated only if a defendant disseminates information that was previously secret – would write the right of publicity and common law tort for misappropriation of name or likeness out of existence.

### 4.  Plaintiffs allege mental injury.

Fourth, Plaintiffs allege Spokeo's illegal conduct caused them mental injury and disturbed their peace of mind. Traditionally, at common law, mental injury "suffered from an appropriation of the attributes of one's identity" was injury giving rise to a cause of action. *See Motschenbacher*, 498 F.2d at 824-25. Knowledge of possible economic loss resulting from a defendant's misappropriation, and knowledge of potential harm to reputation, are sources of mental anguish giving rise to a claim. *See Miller v. Collectors Univ.*, 159 Cal. App. 4th 988, 1006 n. 12 (Cal. Ct. App. 2008) ("A plaintiff's knowledge of possible commercial loss and/or defamation may be a component of mental harm, disturbing one's peace of mind."). Plaintiffs alleged both. *See* Compl., ¶¶2, 53, 69, 85. Plaintiffs are uncomfortable with Spokeo using their name and persona in

8

advertisements without their consent and are concerned about their ability to control how their name and persona are used. *Id.* Additionally, Spokeo's advertisements impugn Plaintiffs' reputations by falsely suggesting they have criminal records and are known sex offenders. *Id.*

## II.   PLAINTIFFS' CLAIMS ARE PROPERLY PLED.

### A.   Spokeo's use of Plaintiff Newell's identity to advertise subscriptions violates Ohio law.

Ohio Rev. Code Ann. § 2741.01, *et seq.* ("ORPS") provides that "a person shall not use any aspect of an individual's persona for a commercial purpose" without consent. R.C. § 2741.02(A). It grants a private right of action to "individual[s] whose right of publicity is at issue." R.C. § 2741.06(A). Spokeo violated this statute by using Plaintiff Newell's name and personal information in teaser profiles intended to sell subscriptions to its website.

#### 1.   Plaintiff Newell's name, persona, and likeness have commercial value.

Spokeo argues that Mr. Newell's ORPS and Ohio common law claims must be dismissed because he has not alleged his name, persona, or likeness have "commercial value." Dkt. No. 23, *7-9. Spokeo claims the Complaint does not allege "commercial value" because Mr. Newell fails to allege "the distinctiveness of his identity," the "degree of recognition among those who would view his Spokeo profile," and "how Spokeo's use of his name and other data in a 'teaser profile' takes advantage" of his persona. Dkt. No. 23, *8; *see also Harvey v. Systems Effect, LLC*, 154 N.E.3d 293, 306 (Ohio. Ct. App. 2020) (plaintiff may allege "commercial value" by alleging "(1) the distinctiveness of the identity and by (2) the degree of recognition of the person among those receiving the publicity."). Contrary to Spokeo's argument, the Complaint alleges precisely those things. Spokeo's teaser profile "uniquely identifies Mr. Newell" by displaying his name, age, current and past addresses, phone number, and email address. Compl., ¶72. Spokeo specifically directs this advertisement to people who would recognize Mr. Newell by encouraging visitors on its landing page to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *Id.*, ¶¶38, 74. And Spokeo's advertisements take advantage of Mr. Newell's persona by seeking to extract a monthly subscription payment of $24.95 from those who view Mr. Newell's profile. *Id.*, ¶77. In short, Spokeo's argument fails because the Complaint alleges exactly

1   the things that Spokeo admits will establish "commercial value" under Ohio law.   If the

2   information had no value, Spokeo would not have misappropriated it.

3          Spokeo's implication that Mr. Newell must establish *pre-existing* commercial value

4   independent of the defendant's use by demonstrating he is a "recognized public figure," contradicts

5   the case law and statutory text. *See* Dkt. No. 23, *8. In *Landham v. Lewis Galoob Toys, Inc.*, 227

6   F.3d 619, 624 (6th Cir. 2000), which Spokeo cites, the Sixth Circuit recognized that a plaintiff

7   "need not be a national celebrity to prevail" on right of publicity claims, and that a "defendant's

8   act of misappropriating the plaintiff's identity . . . may be sufficient evidence of commercial

9   value." *Landham* affirmed dismissal because the defendant's use invoked a fictional character the

10  plaintiff portrayed, rather than the plaintiff himself. *Id.* Here, Spokeo advertised website

11  subscriptions by invoking Mr. Newell's persona, not that of a fictional character. Furthermore, the

12  ORPS specifically recognizes that individuals may bring OPRS claims on behalf of deceased

13  "member[s] of the Ohio national guard or the armed forces of the United States." Ohio Rev. Code

14  § 2741.02(A)(3). This provision would be meaningless if, as Spokeo wrongly implies, only

15  "recognized public figures" could bring right of publicity claims.

16         Consistent with this authority, courts evaluating ORPS claims like Mr. Newell's have held

17  that plaintiffs allege "commercial value" so long as they allege "value in associating an item of

18  commerce with [their] identity" and that the use is not "incidental" but rather "used to make the

19  advertisement." *Knapke*, 2021 WL 3510350, at *6 (quoting *Roe v. Amazon.com*, 714 F. App'x

20  565, 568 (6th Cir. 2017) (unpublished)). Here, as in *Knapke*, Plaintiff Newell's name and persona

21  is not "incidental" to Spokeo's advertisements. Rather, his teaser profile and the teaser profiles of

22  absent Class members are the primary tools Spokeo uses to sell subscriptions. Compl., ¶72 (teaser

23  profile identifying Mr. Newell and enticing the viewer to click "UNLOCK PROFILE" which leads

24  to a page soliciting a monthly subscription)*; see also Kolebuck-Utz*, 2021 WL 1575219, at *2

25  ("Plaintiff alleges that Defendant used her name to entice users to purchase Defendant's product.

26  This is sufficient to establish commercial value as a matter of law.").

27         **2.      Ohio law does not require implied endorsement.**

28

1   Spokeo argues Mr. Newell's claims must be dismissed because he does not allege Spokeo's

2   use of his name or likeness "conveys or reasonably suggests his endorsement of Spokeo or any of

3   its products." Dkt. No. 23, *10. Contrary to Spokeo's argument, neither the OPRS nor Ohio

4   common law tort for misappropriation of a name or likeness require implied or apparent

5   endorsement as an element of a claim. *See Landham*, 227 F.3d at 624 n. 1 ("the right of publicity

6   isn't aimed at or limited to false endorsements") (quotation omitted); *Parks v. Laface Records*, 329

7   F.3d 437, 460 (6th Cir. 2003) ("publicity rights offer substantially broader protection than laws

8   preventing false endorsement") (quotation omitted). And, even if they did, Plaintiffs have made

9   such allegations. *See, e.g.* Compl., ¶¶72-76.

10   Spokeo itself cites statutory language proving that the OPRS *cannot* be limited to cases of

11   implied endorsement. The OPRS exempts from liability uses that are "protected by the First

12   Amendment," *unless* the use "convey[s] or reasonably suggest[s] endorsement." Ohio Rev. Code

13   § 2741.09 (A)(6). This carve-out would make no sense if, as Spokeo wrongly claims, *all* OPRS

14   claims involve uses that imply endorsement.

### 3.   The newsworthiness exception does not apply.

16   Spokeo argues that Plaintiff Newell's Ohio claims are barred because they fall within the

17   newsworthy exception. Dkt. No. 23, *20 (citing Ohio Rev. Code §§ 2741.09 (A)(1)(b), (A)(1)(d),

18   (A)(3)). On the contrary, the facts alleged in the Complaint show the newsworthiness exception

19   does not apply. Spokeo uses a teaser profile containing Plaintiff Newell's name, age, current and

20   past cities of residence, and partially redacted phone number and email, to advertise subscriptions

21   to Spokeo's services. Compl., ¶72. Plaintiff Newell is not a public figure and the information in

22   his teaser profile is not related to "any news, public affairs, sports broadcast, or account." *Id.*, ¶¶72-

23   79; Ohio Rev. Code § 2741.02(D)(1). Even if it were, Plaintiff Newell's claims are directed at the

24   use of his name and persona as an advertisement for Spokeo subscriptions, not the distribution of

25   his information "for the purpose of communicating information or expressing ideas." *See* Compl.,

26   ¶72-79; *cf. Harvey*, 154 N.E.3d at 308. Where, as here, the use of a name or likeness serves the

27   "commercial purpose" of advertising a product, the use is not exempt. *Knapke*, 2021 WL 3510350,

28   at *7 (newsworthiness exemption did not apply because "the use of [plaintiff's] persona to sell

11

1    [defendant's] subscription service is for a commercial purpose and not to communicate news");

2    *see also Callahan v. PeopleConnect*, 2021 WL 5050079, at *18 ("[Classmates'] subscription

3    membership clearly does not . . . have a public affairs connection"); *Sessa*, 2021 WL 4245359, at

4    *13 (accord); *Bonilla*, 2021 WL 5795306, at *7 (accord).

5              **4.      Spokeo's use of Mr. Newell's name or likeness in teaser profiles
                        promoting subscriptions is a "commercial purpose."**

6          Spokeo also argues that Mr. Newell has not alleged use for a "commercial purpose." Dkt.

7    No. 23, *20-21. The ORPS defines "commercial purpose" as "the use of or reference to an aspect

8    of an individual's persona" for "advertising or soliciting the purchase of products . . . services, or

9    other commercial activities." O.R.C. § 2741.02(B). Spokeo's teaser profiles, which use Plaintiff

10   Newell's name and personal information to sell subscriptions, fall squarely within this definition.

11   Indeed, Spokeo fails to identify any purpose for its use other than the commercial purpose of

12   selling subscriptions.

13         Spokeo's relies entirely on *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2018 WL

14   11185289 (N.D. Ill. May 21, 2018). However, many courts have held that the reasoning in

15   *Dobrowolski* does not apply where, as here, a profile of personal information is used not simply to

16   promote the purchase of the profile itself, but rather to promote a subscription product offering

17   access to far more than the specific profile the defendant used to promote the subscription. *See,*

18   *e.g.*, *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 760-61 (N.D. Ill. 2020) ("Whitepages used

19   Lukis's identity to advertise not a background report regarding Lukis, but a monthly subscription

20   service giving the purchaser access to backgrounds reports on anybody in Whitepages's database);

21   *see also Bonilla*, 2021 WL 5795306, at *7 ("Plaintiff alleges that Ancestry uses yearbook records

22   like his to sell a separate subscription service"). Here, Spokeo uses Plaintiff Newell's name and

23   persona to promote a monthly subscription product that delivers far more than access to

24   Mr. Newell's profile. At a cost of $24.95 per month, a Spokeo subscription delivers "access to the

25   full profiles of hundreds of millions of individuals, incorporating over 12 billion records from

26   thousands of data sources." Compl., ¶8. Accordingly, Spokeo's use is for a "commercial purpose"

27   under Ohio law.

28

**B.** **Spokeo's use of Plaintiff Fry's identity to advertise subscriptions violates Indiana law.**

**1.** **Plaintiff Fry has plead a claim under Indiana's Right of Publicity Act ("IRPA").**

Arguing that Mr. Fry's claims under Indiana law must be dismissed, Spokeo recycles many of the same failing arguments it asserts with respect to Ohio law. Because Indiana's right of publicity laws follow the same principles as Ohio's, Spokeo's motion to dismiss Mr. Fry's IRPA claims should be denied.

*First*, Spokeo asserts Mr. Fry fails to allege his personality "has commercial value." Dkt No. 23, *11. Like Mr. Newell, Mr. Fry alleges that his teaser profile uniquely identifies him; that Spokeo specifically directs his teaser profile to people who recognize him; and that Spokeo exploits his persona by soliciting paid subscriptions from those who view his profile. Compl., ¶56. As in Ohio, these allegations establish "commercial value." *See Felsher v. University of Evansville*, 755 N.E.2d 589, 599-600 (Ind. 2001) (affirming injunction prohibiting misappropriation of non-celebrity University official's names and likenesses); *Daniels v. FanDuel, Inc*., 109 N.E.3d 390, 397 n.3 (Ind. 2018) (discussing application of IRPA to non-celebrity AIDS victim whose name or likeness was exploited in a "baseball card").

*Second*, Spokeo asserts Mr. Fry fails to allege "an act or event that occurs within Indiana," Ind. Code. § 32-36-1-1(a), as required under IRPA. On the contrary, Plaintiff Fry alleges four acts and events occurring within Indiana giving rise to his IRPA claim: 1) Spokeo misappropriated Plaintiff Fry's personal information "from sources in Indiana"; 2) Spokeo failed to obtain consent from Plaintiff Fry in Indiana for its use of his personal information in its advertisements; 3) Spokeo displayed Plaintiff Fry's name and persona in advertisements displayed on its website to users in Indiana, and which Spokeo expressly directed to friends, families, and acquaintances of Mr. Fry; and 4) Plaintiff Fry suffered injury to his intellectual property and privacy rights in Indiana. Compl., ¶114. Spokeo cites no law in support of its contention that these allegations are insufficient.

1       Spokeo argues Mr. Fry "does not sufficiently allege" that "Spokeo displayed a [teaser

2   profile] of Fry to anyone in Indiana." Dkt. No. 23, *12. However, nothing in the IRPA requires

3   that a person in Indiana (or anywhere else) viewed Spokeo's teaser profile advertisements. This

4   supposed "actual viewing" requirement has been rejected by multiple courts evaluating similar

5   right of publicity claims.  In *Knapke*, the court reasoned that while common law false light claims

6   require "some allegation that members of the public saw the offending image," there is "no valid

7   basis" to import this requirement into the right of publicity. 2021 WL 3510350, at *5. It is enough

8   that Spokeo is "using [Plaintiff's] image to market its product and services on the internet, which

9   is available to the public at large." *Id.* An Illinois district court reached the same conclusion in

10  *Siegel v. ZoomInfo Techs*, rejecting the defendant's argument that "actual[] view[ing]" must be

11  alleged under Illinois' right of publicity statute. 2021 WL 4306148, at *3. Like the Ohio and

12  Illinois statutes, the IRPA does not require that the public view Plaintiff's persona. *See* Ind. Code.

13  § 32-36-1-8 (forbidding "use . . . for a commercial purpose" with no mention of public viewing).

14  Because liability under the IRPA hinges on Spokeo's *use and public display* of Plaintiff's name

15  and personal information – not whether and by whom they were viewed – it cannot be, as Spokeo

16  claims, that Plaintiff must allege viewing in Indiana to satisfy the territoriality provision. In any

17  event, Plaintiff does allege actual viewing in Indiana. Compl., ¶114. That Spokeo publicly displays

18  Plaintiff Fry's name and personal information in an advertisement expressly directed to Indiana

19  residents supports a plausible allegation at the pleading stage that someone in Indiana viewed the

20  advertisement. *See Sessa*, 2021 WL 4245359, at *9. Spokeo does not suggest, nor could it, that its

21  Internet postings are somehow not displayed or not available in Indiana.

22      ***Third***, Spokeo argues that Plaintiff Fry's IRPA claims should be dismissed because

23  Spokeo's commercial advertisements fall within the statutory exception for "[m]aterial that

24  has . . . newsworthy value," Ind. Code. § 32-36-1-1(c)(1)(B); these arguments should be rejected.

25  For the reasons in Section II.A.3 above, the newsworthy exception does not apply and Spokeo's

26  motion should be denied. In support of this argument, Spokeo relies entirely on *Daniels v.*

27  *FanDuel, Inc.*, but that case is easily distinguished. In *Daniels*, the court found that a fantasy

28

football website's use of statistics about famous college athletes fell within the "newsworthy" exception to the IRPA. 109 N.E.3d 309, 394 (Ind. 2018). The sports statistics were newsworthy because of "[t]he public fascination with these facts and figures by which past, present, and future players are judged." *Id.* at 397. The court noted that "both parties . . . agree that the statistics of college athletes are newsworthy" and that "sports like baseball occupy a large portion of public discourse." *Id.* (citation omitted). Here, by contrast, there is no widespread public interest in Plaintiff Fry's teaser profile. Mr. Fry's name, address, phone number, and other personal information do not "occupy a large portion of public discourse." *Id.* Accordingly, the newsworthy exception does not apply.

### 2. Indiana recognizes a claim for common-law misappropriation of name or likeness.

Arguing that Mr. Fry's claim under Indiana common law must be dismissed, Spokeo repeats the same "commercial value" argument it asserts with respect to the IRPA. For the reasons in Section II.B.1 above, this argument fails because the complaint alleges commercial value under the standards required by Indiana law.

### C. Plaintiffs' California claims are properly plead.

### 1. Non-California Plaintiffs may bring California claims here.

Spokeo argues that Plaintiffs cannot bring California claims on behalf of non-California residents. Dkt. No. 23, *23-24. On the contrary, courts have allowed a nationwide class to pursue claims based on California state law where, as here, the defendant resides in California and made the operational decisions in California. *See, e.g.*, *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 602 (N.D. Cal. 2015) (certifying nationwide class when the defendant had its "corporate headquarters" in California, had "vast majority of [its] executive decision makers" located in California, and the "processes" at issue in the litigation were located in California); *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 550 (C.D. Cal. 2012) (denying motion to decertify nationwide class); *Feller v. Transamerica Life Ins. Co.*, No. 216CV01378CASAJW, 2017 WL 6496803, at *11 (C.D. Cal. Dec. 11, 2017) (certifying nationwide class under California contract law)*; cf Allen v. Conagra Foods, Inc.*, 331 F.R.D. 641, 657 (N.D. Cal. 2019) (denying certification of a nationwide class

because the defendant was not headquartered or incorporated in California and the challenged conduct did not originate in California).

Whether Plaintiffs' California claims can be applied to a nationwide class is not a question on a motion to dismiss. *See Sihler v. Fulfillment Lab, Inc.,* No. 3:20-cv-01528-H-MSB, 2020 WL 7226436, at *9 (S.D. Cal. Dec. 8, 2020) (striking nationwide class is premature unless "the court is convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed"); *see also Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178, 1196 (N.D. Cal. 2018) (denying motion to strike class allegations at the pleading stage). The relevant choice of law analysis is legally complex and implicates questions of fact. *See In re Yahoo Mail Litig.*, 308 F.R.D. at 601-606 (describing multi-step choice-of law inquiry). Spokeo's underdeveloped motion does not come close to the depth of analysis required. The cases Spokeo cites were all decided at the class certification stage (after fulsome discovery) or after full briefing on the choice of law issue. Whether California law may be applied to Plaintiffs' nationwide claims is a question for another day.

### 2. Spokeo's use of Plaintiffs' identity to advertise its products violates California law.

California's right of publicity statute prohibits the knowing use of a person's "name, . . . photograph, or likeness, in any manner, on or in products . . . or for purposes of advertising or selling . . . products . . . or services, without such person's prior consent." Cal. Civ. Code § 3344. The California tort of misappropriation of name or likeness forbids the "appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Eastwood*, 149 Cal.App.3d at 416. California law protects the right of individuals to refuse consent to the commercial use of their personas. Plaintiffs have properly pleaded these claims.

#### a. Spokeo misappropriated Plaintiffs' names and likenesses.

Spokeo argues that it did not violate California right of publicity law because the information in its teaser profiles "is part of the product offered for sale" rather than a separate product or service. Dkt. No. 23, *23. As discussed above, multiple courts have rejected this argument where, as here, a profile of personal information is used to advertise not the profile itself,

but rather a website subscription offering access to many profiles. Courts evaluating claims brought under California law agree. *See Callahan v. PeopleConnect*, 2021 WL 5050079, at *11 (denying motion to dismiss § 3344 claims based on the use of "names and likeness to advertise [a] subscription membership"). As alleged in the Complaint, Spokeo uses teaser profiles to sell two products: a full version of the specific profile for $0.95; and a subscription to Spokeo.com for $24.95 per month. Compl., ¶7. Plaintiffs do not allege that Spokeo's sale of their specific profiles violates California law. Rather, Plaintiffs allege Spokeo's use of their teaser profiles to advertise website subscriptions violates California law.

The decision in *Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021), does not apply to these facts. The defendant in *Brooks* did not display profiles of personal information for free to the public to solicit subscriptions. Rather, the defendant displayed profiles "only to . . . subscribers who deliberately paid [the defendant] to receive the information." *Id.*, at *4. Spokeo suggests that under Judge Chen's reasoning in *Brooks*, Spokeo's website subscription does not qualify as a "separate product" because access to the individual's full profile (along with access to millions of other profiles) is part of the service a Spokeo subscriber receives. But this argument is belied by the opinion in *Brooks*. Judge Chen expressly distinguished *Perkins*, 53 F. Supp. 3d at 1216, reasoning that by using a member's "name[] and photograph[]" to "encourag[] other users to join the LinkedIn platform," LinkedIn was promoting a "separate product" even though the services LinkedIn provided included access to that member's profile on LinkedIn. *Brooks*, 2021 WL 3621837, at *4. Following a similar analysis, Judge Chen denied a motion to dismiss right of publicity claims in *Callahan* because the defendant used yearbook photographs to advertise "website subscriptions" rather than "rights to [that] image alone." 2021 WL 5050079, at *11. Here, as in *Callahan* and *LinkedIn*, and unlike *Brooks*, Spokeo publicly displays Plaintiffs' names and likenesses to non-subscribers in advertisements designed to solicit website subscriptions.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**b.     Spokeo's remaining arguments regarding Plaintiffs' California right of publicity claims should be rejected.**

***First***, Spokeo contends that Plaintiffs were not injured by Spokeo's conduct. As detailed above in Section I, Plaintiffs have properly alleged four types of harm, all of which numerous courts have found sufficient for California right of publicity claims.

***Second***, Spokeo argues its use of Plaintiffs' names and personas is "incidental" and Plaintiffs' § 3344 claims are therefore barred. Dkt. No. 23, *15-16. Even if "incidental use" is a defense to § 3344 claims, which is far from certain, *see Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1180 & n. 5 (9th Cir. 2015), the Complaint demonstrates that Spokeo's use of Plaintiffs' names and personas is not "incidental," but rather lies at the core of Spokeo's efforts to promote website subscriptions. *See Yeager v. Cingular Wireless LLC*, 627 F. Supp. 2d 1170, 1177 (E.D. Cal. 2008) (use was not "incidental" when "the reference to plaintiff was made for defendant's 'pecuniary gain and profit'" and was "'directly related to the goods and services' defendant provides").

***Third***, Spokeo is again wrong that the exemption for the use of a person's "name, voice, signature, photograph, or likeness in connection with . . . public affairs" applies here. *See* Cal. Civ. Code § 3344(d). It does not. The newsworthy or "public affairs" exception "rests on the right of the public to know and the freedom of the press to tell it." *Montana v. San Jose Mercury News, Inc.*, 34 Cal.App.4th 790, 793 (1995), *as modified* (May 30, 1995). A Court analyzing the exception should "consider the nature of the precise information conveyed and the context of the communication to determine the public interest in the expression." *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 410, 114 Cal. Rptr. 2d 307, 314 (2001). The exception covers "almost all reporting of recent events," about people who "create a legitimate and widespread attention to their activities." *Fraley*, 830 F. Supp. 2d at 804 (citations omitted). Although not strictly confined to news articles, the content must "significantly contribute to a matter of public interest." *Downing*, 265 F.3d at 1001.

Here, Spokeo's teaser profiles containing Plaintiffs' personal information does not fall under the public affairs exception because they do not "significantly contribute" to a "matter of public interest." *Id*. Plaintiffs' personal information is not "in connection with any news, public

18

affairs, or sports broadcast or account, or any political campaign," Cal. Civ. Code § 3344(d), nor does it concern "recent events." *See Fraley*, 830 F. Supp. 2d at 804. Plaintiffs are not someone who creates "a legitimate and widespread attention to their activities." *Id.* This argument fails.

### 3. Spokeo's use of Plaintiffs' identity to advertise its products violates the UCL.

California's Unfair Competition Law ("UCL") proscribes "any unfair competition, which means any unlawful, unfair or fraudulent business act or practice." *Fraley*, 830 F. Supp. 2d at 810 (quoting *In re Pomona Valley Med. Group, Inc.,* 476 F.3d 665, 674 (9th Cir. 2007)). The UCL is "intentionally broad" and covers the unlawful and unfair conduct by Spokeo alleged here. *Id.* (citation omitted). Spokeo's arguments for dismissal of this claim are unpersuasive and this claim should proceed.

### a. Plaintiffs have statutory standing under the UCL.

To demonstrate standing to bring a UCL claim, Plaintiffs must show that they have "both suffered injury in fact and lost money or property as a result of the alleged unfair competition." *Fraley*, 830 F. Supp. 2d at 810. Plaintiffs here have satisfied both prongs. First, as discussed in Section I above, Plaintiffs have alleged injury in fact. Second, Plaintiffs have alleged they lost money and property because Spokeo used their intellectual property without compensation. Compl., ¶¶52, 68, 84. As the court found in *Callahan v. PeopleConnect*:

> [A]s Plaintiffs point out, their names and likenesses are intellectual property, and the underlying point of § 17204 is to make sure that a plaintiff has suffered an economic injury for purposes of standing. Here, Plaintiffs have alleged an economic injury; they were not paid – implicitly, by [the defendant] – for the use of their names and likenesses. . . . [A] reasonable inference may be made that Plaintiffs' names and likeness had value in advertising the subscription services.

2021 WL 5050079, at *19; *see also Fraley*, 830 F. Supp. 2d at 811-812 (plaintiffs had UCL standing because "they have a right to be paid for their endorsements").

### b. Plaintiffs alleged that Spokeo's conduct was unlawful.

Plaintiffs have alleged that Spokeo's conduct is unlawful under the UCL because it violates California statutory and common law. The unlawful prong of California's UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

### c.    Spokeo is not protected by the CCPA

Spokeo argues that the California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100-1798.199.100 ("CCPA"), exempts businesses from UCL liability for any use of data that is publicly available. Dkt. No. 23, *28. Spokeo presents this argument with no analysis or supporting law and ignores that "several provisions of the CCPA clearly state that the law is not meant to curtail other privacy statutes." *Brooks*, 2021 WL 3621837, at *6. In any event, Plaintiffs' claims are not based on the distribution of their information as part of Spokeo's subscription service, but rather on Spokeo's use of their personas to sell subscriptions. The CCPA is not relevant to these claims.

### d.    Plaintiffs can seek equitable relief in the alternative.

Lastly, Spokeo argues that Plaintiffs cannot bring a UCL claim where they have an adequate remedy at law. This argument relies on an overly restrictive reading of *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), and therefore fails. Plaintiffs here seek injunctive relief (in addition to restitution) under their UCL claim, which the *Sonner* court did not consider. *Id.* at 844. A court in this district recently recognized this distinction, finding that where the plaintiff sought prospective injunctive relief and the "remedy at law, damages, is retrospective," a UCL claim for an injunction is not barred by *Sonner. Nacarino v. Chobani, LLC*, No. 20-CV-07437-EMC, 2021 WL 3487117, at *12 (N.D. Cal. Aug. 9, 2021); *see also Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) (even if *Sonner* applies to injunctive relief, "monetary damages for past harm are an inadequate remedy for the future harm that an injunction under California consumer protection law is aimed at."); *IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-cv-05286-PJH, 2020 WL 6544411, at *7-8 (N.D. Cal. Nov. 6, 2020) (denying motion to dismiss restitution claims when recovery for future harm was available in restitution but not at law).

Here, Plaintiffs ask for "preliminary and permanent injunctive relief enjoining and preventing Spokeo from continuing to operate its spokeo.com website without appropriate safeguards to ensure people's personal information is not used illegally without their consent." Compl., ¶140(d). This prospective remedy could not be resolved through restitution or damages

20

under Plaintiffs' other claims. Additionally, at this early stage, we do not know yet whether Plaintiffs will have an adequate remedy at law. This argument should be rejected and Spokeo's motion to dismiss the UCL claim should be denied.

## III.    SPOKEO'S COMMERCIAL ADVERTISEMENTS ARE NOT PROTECTED BY THE FIRST AMENDMENT.

Spokeo argues that Plaintiffs' claims must be dismissed because Spokeo's use of teaser profiles to promote subscriptions is "fully protected, non-commercial speech." Dkt. No. 23, *19. This argument fails because it mischaracterizes Plaintiffs' claims. Plaintiffs do not seek to prevent Spokeo from distributing its directory of personal information. Rather, they seek to prevent Spokeo from using their personal information to advertise subscriptions. Spokeo's advertisements, not the underlying directory, are the speech at issue, and they are clearly commercial.

Commercial speech does not lose its commercial character merely because it "may implicate the public interest" to some degree. *Perkins*, 53 F. Supp. 3d at 1250. Speech that includes informational elements "should be characterized as commercial speech" when "the speech is an advertisement, the speech refers to a particular product, and the speaker has an economic motivation." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983). Applying the three *Bolger* factors, Spokeo's teaser profiles are clearly commercial speech. Spokeo displays Plaintiffs' names and personal information along with a prompt to purchase a "full name report" and a website subscription for $24.95 per month. Compl., ¶¶45-46. This is an advertisement promoting a specific product for economic reasons.

Because Spokeo's speech is commercial, to receive any constitutional protection it must "not be misleading." *Bolger*, 463 U.S. at 68. Here, it is "questionable" whether Spokeo's teaser profiles are entitled to any protection because they "misappropriate [Plaintiffs'] persona[s] and potentially mislead[] the public" by insinuating that Plaintiffs have criminal records. *See Knapke*, 2021 WL 3510350, at *8. Even were Spokeo's commercial speech entitled to some degree of protection, state right of publicity laws "directly advance" a "substantial interest in enabling [their] citizens to protect the nonconsensual commercial exploitation of their likeness without overbroadly prohibiting commercial speech." *See id.* (analyzing Ohio law). Because the Ohio,

21

California, and Indiana right of publicity laws at issue directly advance a substantial governmental interest, their application to Spokeo's commercial speech does not violate the First Amendment.

In line with this reasoning, multiple courts have rejected the argument that the First Amendment protects websites that use individuals' names and identities to promote subscriptions. *See, e.g.*, *Callahan v. PeopleConnect*, 2021 WL 5050079, at *21 (use of names and yearbook photographs to promote website subscriptions is not protected speech); *Knapke*, 2021 WL 3510350, at *7-8 (same); *Kolebuck-Utz,* 2021 WL 1575219, at *2-3 (use of names and personal information to promote subscriptions to an online directory of personal information is not protected speech); *Lukis*, 2020 WL 6287369, at *9 (same). There is no reason for a different result here.

Relying on *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952 (9th Cir. 2012), Spokeo argues that its teaser profiles are "directory-type information" and are therefore non-commercial speech qualifying for First Amendment protection. Dkt. No. 23, *30. *Dex* is easily distinguished. In *Dex*, the Seattle city government sought to forbid the publication of the directory itself (a phonebook). 696 F.3d at 959. The presence of advertisements for unrelated local businesses did not render the phonebooks "commercial speech" because there was "no clear link" between the noncommercial phone listings in the directory and the businesses being advertised. *Id*. Here, Plaintiffs do not seek to prevent publication of Spokeo's directory; they seek to prevent Spokeo from using their identities to advertise subscriptions. Furthermore, there is a "clear link" between each profile and the subscription Spokeo is selling. Spokeo's teaser profiles expressly tie the purchase of a subscription to the revelation of more personal information about the Plaintiff.[3]

## IV.     THE APPLICATION OF STATE LAWS TO SPOKEO'S CONDUCT DOES NOT VIOLATE THE DORMANT COMMERCE CLAUSE.

Spokeo argues that "Plaintiffs' proposed applications of California, Indiana, and Ohio state law would run afoul of the dormant Commerce Clause." Dkt. No. 23, *32. Not so. Where, as here, the state laws do not "discriminate against interstate commerce" by applying "differential treatment of in-state and out-of-state economic interests," the laws do not violate the dormant

---

[3] Spokeo also cites *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1122 (9th Cir. 2020) and *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 496 (1975). Because neither case involved advertisements for a paid product or service, neither is relevant to these facts.

Commerce Clause unless "the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1149 (9th Cir. 2012). The state laws at issue here do not treat in-state companies more favorably than companies from other states. California, Indiana, and Ohio forbid <u>all</u> companies from using names and likenesses for a commercial purpose without consent, regardless of where the company resides. Because the laws are "facially neutral," the proper standard of review is rational basis, and the statute does not violate the Constitution unless it is "unreasonable or irrational." *Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 983 (9th Cir. 1991).

The state laws at issue here are neither unreasonable nor irrational. California, Ohio, and Indiana have an interest in protecting the privacy and intellectual property of their citizens, and California has an interest in regulating the conduct of businesses that operate from California. On the other side of the ledger, Spokeo has not shown any burden on interstate commerce, let alone a burden that would outweigh the state laws' benefits. *See Knapke*, 2021 WL 3510350, at *10 (rejecting challenge to ORPS claims when the defendant "fail[ed] to offer any convincing rationale why the burden imposed on its interstate business is clearly excessive in light of Ohio's desire to prevent non-consensual commercial use of Ohioans' personas.").

Spokeo does not argue that the state laws "discriminate against interstate commerce," nor that they fail "rational basis" review. *See* Dkt. No. 23, *22-23. Instead, Spokeo relies entirely on dicta from the Supreme Court's decision in *Healy*, which Spokeo claims creates a categorical rule that "the Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the State's borders." *See id.* (quoting *Healy v. Beer Instit.*, 491 U.S. 324, 336 (1989)). This argument fails.

<u>First</u>, in *Nat'l Pork Producers v. Ross*, the Ninth Circuit expressly rejected the categorical interpretation of *Healy* upon which Spokeo relies. 6 F.4th 1021, 1028 (9th Cir. 2021). The Ninth Circuit ruled that the *Healy* dicta "is not applicable to a statute that does not dictate the price of a product." *Id.* (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d

937, 951 (9th Cir. 2013)) (cleaned up). None of the state laws at issue here regulate prices, so the *Healy* dicta does not apply.

<u>Second</u>, even if Plaintiff's claims arose from price regulations, on its own terms the *Healy* dicta applies only to conduct that "takes place wholly outside" of the state. Here, each of Plaintiffs' state law claims arises from conduct that occurred at least partly in that state. Spokeo expressly directed its advertisements to people who knew the Plaintiffs and were therefore likely to reside in Plaintiffs' home states; collected Plaintiffs' personal information from sources in their home states; failed to obtain the required consent from Plaintiffs in their home states; and infringed Plaintiffs' intellectual property, the locus of which is their home states. Compl., ¶¶22, 91, 114. With respect to the California law claims, the Complaint further alleges that Spokeo created and disseminated the illegal teaser profiles from its headquarters in California. *Id.*, ¶¶21, 107.[4]

## V.    THE COMMUNICATIONS DECENCY ACT ("CDA") DOES NOT APPLY.

Spokeo argues that it is entitled to CDA immunity. This defense fails because Spokeo actively created the teaser profiles and advertising webpages giving rise to this suit. Spokeo does not passively host content created by others. "The prototypical service qualifying for CDA immunity is an online messaging board . . . on which Internet subscribers post comments." *Knapke*, 2021 WL 3510350, at *4 (quoting *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016)). The CDA "protects websites from liability . . . for material posted on their websites by someone else." *Id.* (quoting *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020)). But when the website is "responsible, in whole or in part, for the creation or development of the offending comment," then the website is "also a content provider" under the CDA, and it is not entitled to protection. *Id.* (citing *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008)).

---

[4] Even if Spokeo's Commerce Clause argument did not fail as a matter of law, Spokeo's request for dismissal of Plaintiff's claims must be denied at this early stage because weighing the burden on interstate commerce against the putative benefits of a state's law is a factual inquiry improper for determination on a Rule 12(b)(6) motion. *See Rezvanpour v. SGS Auto. Servs., Inc.*, No. 8:14-CV-00113-ODW, 2014 WL 3436811, at *5 (C.D. Cal. July 11, 2014).

Here, Spokeo's teaser profiles are not merely "passive display[s] of content created by another entity." *Knapke*, 2021 WL 3510350, at *4. Rather, Spokeo actively collected personal information about the Plaintiffs from various (yet unknown) sources; created the teaser profiles incorporating Plaintiffs' personal information; and incorporated those teaser profiles in an advertising flow that begins by encouraging visitors to search for people they know and ends by signing visitors up for a monthly website subscription. *See, e.g.* Compl., ¶¶40-45. Many district courts have held that websites with precisely this business model are "information content provider[s]" with respect to the teaser profiles they create and are therefore not entitled to CDA immunity. *See, e.g.*, *Knapke*, 2021 WL 3510350, at *4; *Bonilla*, 2021 WL 5795306, at *4 (rejecting CDA defense when complaint alleged defendant was not "a passive conduit" but instead "collected and organized records and subsequently used . . . names, likenesses, and identities in these records they curated for commercial gain"); *Sessa*, 2021 WL 4245359, at *11; *Krause*, 2021 WL 4282700, at *4; *Lukis*, 454 F.Supp.3d at 763. In short, because Spokeo does not passively host content created by others, but instead actively designed and created the teaser profiles, CDA immunity does not apply.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Spokeo, Inc.'s motion to dismiss in its entirety.

DATED this 25th day of February, 2022.

TURKE & STRAUSS LLP

By:  /s/ Raina C. Borrelli, *Admitted Pro Hac Vice*
    Samuel J. Strauss, *Admitted Pro Hac Vice*
    Email: sam@turkestrauss.com
    Raina C. Borrelli, *Admitted Pro Hac Vice*
    Email: raina@turkestrauss.com
    613 Williamson St., Suite 201
    Madison, WI 53703
    Telephone (608) 237-1775
    Facsimile: (608) 509-4423

Michael F. Ram, SBN 104805
Email: mram@forthepeople.com
Marie N. Appel, SBN 187483
Email: mappel@forthepeople.com
MORGAN & MORGAN
  COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

Benjamin R. Osborn (to be admitted
*Pro Hac Vice*)
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464
Email: ben@benosbornlaw.com


*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 25th day of February, 2022.

TURKE & STRAUSS LLP

By:   _/s/ Raina C. Borrelli_
Raina C. Borrelli *Admitted Pro Hac Vice*
Email: raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423

PLAINTIFFS' OPPOSITION TO SPOKEO, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 3:21-cv-08976-WHO