MAYER BROWN LLP
JOHN NADOLENCO (SBN 181128)
*jnadolenco@mayerbrown.com*
DANIEL D. QUEEN (SBN 292275)
*dqueen@mayerbrown.com*
JENNIFER M. CHANG (SBN 315711)
*jchang@mayerbrown.com*
350 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CA 90071-1503
TELEPHONE:  (213) 229-9500
FACSIMILE:  (213) 625-0248

MAYER BROWN LLP
NICOLE A. SAHARSKY (*pro hac vice* to be submitted)
*nsaharsky@mayerbrown.com*
ANDREW J. PINCUS (*pro hac vice* to be submitted)
*apincus@mayerbrown.com*
1999 K STREET, NW
WASHINGTON, DC 20006
TELEPHONE:  (202) 263-3000
FACSIMILE:  (202) 263-5220

Attorneys for Defendant
SPOKEO, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVIVA KELLMAN, JASON FRY, and NICHOLAS NEWELL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SPOKEO, INC.,<br><br>Defendant. | Case No. 3:21-cv-08976<br><br>Honorable Judge William H. Orrick III<br><br>**DEFENDANT SPOKEO, INC.'S NOTICE OF MOTION AND MOTION TO CERTIFY INTERLOCUTORY APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Proposed Order filed concurrently herewith*]<br><br>Date:   July 13, 2022<br>Time:   2:00 p.m.<br>Ctrm:   2<br><br>Complaint Filed: November 19, 2021 |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................................... 1
STATEMENT OF ISSUES TO BE DECIDED ..................................................................... 1
MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1
I.    INTRODUCTION ....................................................................................................... 1
II.    BACKGROUND ......................................................................................................... 2
    A.    Plaintiffs' Allegations and Claims ................................................................... 2
    B.    Spokeo's Motion to Dismiss and This Court's Dismissal Order ..................... 3
III.    LEGAL STANDARD ................................................................................................. 4
IV.    ARGUMENT .............................................................................................................. 5
    A.    The Court Should Certify The Standing Issue For Interlocutory Review .............. 5
    B.    The Court Should Certify The Section 230 Immunity Issue For Interlocutory Review .................................................................................. 9
V.    CONCLUSION ......................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ambrosio v. Cogent Commc'ns, Inc.*,
  2016 WL 777775 (N.D. Cal. Feb. 29, 2016) ............................................................................. 5

*Backowski v. PeopleConnect, Inc.*,
  No. 2:21-cv-00115 (W.D. Wash. filed Jan. 29, 2021) ...................................................... 10, 13

*Batis v. Dun & Bradstreet Holdings, Inc.*,
  3:22-cv-01924 (N.D. Cal. Mar. 25, 2022) .............................................................................. 13

*Batzel v. Smith*,
  333 F.3d 1018 (9th Cir. 2003) ................................................................................................ 12

*Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*,
  206 F.3d 980 (10th Cir. 2000) ................................................................................................ 11

*Boshears v. PeopleConnect Inc.*,
  No. 2:21-cv-01222 (W.D. Wash. filed Sept. 7, 2021) ...................................................... 10, 13

*Callahan v. Ancestry.com, Inc.*,
  2021 WL 783524 (N.D. Cal. Mar. 1, 2021); ................................................................... *passim*

*Callahan v. Ancestry.com, Inc.*,
  2021 WL 2433893 (N.D. Cal. June 15, 2021) ......................................................................... 7

*Callahan v. Ancestry.com Operations Inc.*,
  No, 3:20-cv-08437 (N.D. Cal. filed Nov. 30, 2020) ............................................... 6, 7, 10, 11

*Callahan v. PeopleConnect, Inc.*,
  No. 3:20-cv-09203 (N.D. Cal. filed Dec. 18, 2020) ........................................................ 10, 13

*Camacho v. Control Group Media Co., LLC*,
  No. 3:21-cv-01954 (S.D. Cal. filed Nov. 16, 2021) ........................................................ 10, 13

*Camacho v. Control Group Media Co., LLC*,
  No. 3:21-cv-01957 (S.D. Cal. filed Nov. 16, 2021) ........................................................ 10, 13

*Camacho v. PeopleConnect, Inc.*,
  No. 3:22-cv-00209 (S.D. Cal. filed Feb. 16, 2022), ........................................................ 10, 13

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ................................................................................................ 12

*In re Cement Antitrust Litig.*,
    673 F.2d 1020 (9th Cir. 1981) .......................................................................................... 4, 9

*Dennis v. MyLife.com, Inc.*,
    2021 WL 6049830 (D.N.J. Dec. 20, 2021) ...................................................................... 11, 12

*Dennis v. MyLife.com, Inc.*,
    No. 22-1110 (3rd Cir., appeal docketed, January 20, 2022) ................................................ 12

*Edwards v. First Am. Corp.*,
    610 F.3d 514 (9th Cir. 2010) .................................................................................................. 5

*In re Facebook, Inc. Internet Tracking Litigation*,
    956 F.3d 589 (9th Cir. 2020) .................................................................................................. 8

*Fair Hous. Council of San Fernando Valley v. Roomates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) .............................................................................................. 12

*Finder v. Leprino Foods Co.*,
    2016 WL 4095833 (E.D. Cal. Aug. 1, 2016) .......................................................................... 6

*Four Navy Seals v. Associated Press*,
    413 F. Supp. 2d 1136 (S.D. Cal. 2005) .................................................................................. 8

*Gbeintor v. Demandbase, Inc. et al*,
    No. 4:21-cv-09470 (N.D. Cal. filed Dec. 8, 2021) ............................................................... 13

*Gonzalez v. Google LLC*,
    2 F.4th 871 (9th Cir. 2021) ................................................................................................... 12

*Henderson v. Source for Public Data*,
    540 F.Supp.3d 539 (E.D. Va. 2021) ............................................................................... 11, 12

*Henderson v. Source for Public Data*,
    No. 21-1678 (4th Cir., oral argument heard, May 3, 2022) ................................................. 12

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
    22 F.4th 1125 (9th Cir. 2022) ................................................................................................. 4

*Izzo v. PeopleConnect Inc.*,
    No. 2:22-cv-00016 (W.D. Wash. filed Jan. 6, 2022) ........................................................... 13

*J.B. v. G6 Hospitality, LLC*,
    2021 WL 6621068 (N.D. Cal., Dec. 16, 2021) ....................................................................... 9

*Jackson v. Check Them, Inc.*,
    No. 2:21-cv-02201 (D. Nev. filed Dec. 15, 2021) ............................................................ 6, 10

*In re Cement Antitrust Litig.*,
    673 F.2d 1020 (9th Cir. 1981) .......................................................................................... 4, 9

*Dennis v. MyLife.com, Inc.*,
    2021 WL 6049830 (D.N.J. Dec. 20, 2021) ...................................................................... 11, 12

*Dennis v. MyLife.com, Inc.*,
    No. 22-1110 (3rd Cir., appeal docketed, January 20, 2022) ................................................ 12

*Edwards v. First Am. Corp.*,
    610 F.3d 514 (9th Cir. 2010) .................................................................................................. 5

*In re Facebook, Inc. Internet Tracking Litigation*,
    956 F.3d 589 (9th Cir. 2020) .................................................................................................. 8

*Fair Hous. Council of San Fernando Valley v. Roomates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) .............................................................................................. 12

*Finder v. Leprino Foods Co.*,
    2016 WL 4095833 (E.D. Cal. Aug. 1, 2016) .......................................................................... 6

*Four Navy Seals v. Associated Press*,
    413 F. Supp. 2d 1136 (S.D. Cal. 2005) .................................................................................. 8

*Gbeintor v. Demandbase, Inc. et al*,
    No. 4:21-cv-09470 (N.D. Cal. filed Dec. 8, 2021) ............................................................... 13

*Gonzalez v. Google LLC*,
    2 F.4th 871 (9th Cir. 2021) ................................................................................................... 12

*Henderson v. Source for Public Data*,
    540 F.Supp.3d 539 (E.D. Va. 2021) ............................................................................... 11, 12

*Henderson v. Source for Public Data*,
    No. 21-1678 (4th Cir., oral argument heard, May 3, 2022) ................................................. 12

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
    22 F.4th 1125 (9th Cir. 2022) ................................................................................................. 4

*Izzo v. PeopleConnect Inc.*,
    No. 2:22-cv-00016 (W.D. Wash. filed Jan. 6, 2022) ........................................................... 13

*J.B. v. G6 Hospitality, LLC*,
    2021 WL 6621068 (N.D. Cal., Dec. 16, 2021) ....................................................................... 9

*Jackson v. Check Them, Inc.*,
    No. 2:21-cv-02201 (D. Nev. filed Dec. 15, 2021) ............................................................ 6, 10

*Joffe v. Google, Inc.*,
    746 F.3d 920 (9th Cir. 2013) ........................................................................................... 6

*United States ex rel. Kelly v. Boeing Co.*,
    9 F.3d 743 (9th Cir. 1993) .............................................................................................. 5

*Knapke v. PeopleConnect Inc.*,
    553 F.Supp.3d 865 (W.D. Wash. 2021) ....................................................................... 10

*Knapke v. PeopleConnect, Inc.*,
    No. 2:21-cv-00262 (W.D. Wash. filed Mar. 2, 2021) .............................................. 10, 13

*Koby v. ARS Nat'l Servs., Inc.*,
    2010 WL 5249834 (S.D. Cal. Dec. 23, 2010) .............................................................. 13

*Kolebuck-Utz v. Whitepages Inc.*,
    No. 2:21-cv-00053 (W.D. Wash. filed Jan. 15, 2021) ............................................. 10, 13

*Langere v. Verizon Wireless Servs.*,
    LLC, 983 F.3d 1115 (9th Cir. 2020) ............................................................................... 4

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ......................................................................................... 7

*Martinez v. ZoomInfo Technologies Inc.*,
    No. 3:21-cv-05725 (W.D. Wash. filed Sept. 30, 2021) ................................................. 13

*Merritt v. Lexis Nexis*,
    2012 WL 6725882 (E.D. Mich. Oct. 23, 2012) ............................................................. 11

*Miller v. Glenn Miller Prods, Inc.*,
    454 F.3d 975 (9th Cir. 2006) ........................................................................................... 8

*Motschenbacher v. R.J. Reynolds Tobacco Co.*,
    498 F.2d 821 (9th Cir. 1974) ........................................................................................... 8

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) ................................................................................... 4, 6, 9

*Robins v. Spokeo, Inc.*,
    867 F.3d 1108 (9th Cir. 2017) ......................................................................................... 6

*Sessa v. Ancestry.com*,
    561 F.Supp.3d 1008 (D. Nev. 2021) ............................................................................. 10

*Sessa v. Ancestry.com Operation Inc.*,
    No. 2:20-cv-02292 (D. Nev. filed Dec. 17, 2020) ............................................... 6, 10, 13

*Silbersher v. Allergan Inc.*,
    2021 WL 292244 (N.D. Cal. Jan. 28, 2021) ...................................................................5, 11

*Somers v. Digital Realty Trust, Inc.*,
    2015 WL 4481987 (N.D. Cal. July 22, 2015) ......................................................................13

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ..............................................................................................................6

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ..........................................................................................................7

*Uharriet v. MyLife.com, Inc.*,
    No. 3:21-cv-08229 (N.D. Cal. filed Oct. 21, 2021) ............................................................13

*Wendt v. Host International, Inc.*,
    125 F.3d 806 (9th Cir. 1997) .................................................................................................8

*Zhang v. Ancestry.com Operations Inc.*,
    No. 4:21-cv-07652 (N.D. Cal. filed Aug. 10, 2021) ......................................................6, 10

**Statutes**

28 U.S.C. § 1292(b) .................................................................................................................2, 4, 5

47 U.S.C. § 230 (Communications Decency Act) ................................................................ *passim*

Cal. Civ. Code § 3344 ...................................................................................................................10

California's Unfair Competition Law .............................................................................................3

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that, on July 13, 2022 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of the federal courthouse located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable William H. Orrick III, Defendant Spokeo, Inc. ("Spokeo") will and hereby does move the Court to certify for interlocutory review two issues from its Order on Spokeo's motion to dismiss: (1) whether Plaintiffs have Article III standing; and (2) whether Spokeo is immune from liability under Section 230 of the Communications Decency Act.

## STATEMENT OF ISSUES TO BE DECIDED

1.   Whether the Court should certify for interlocutory review the issue of whether Plaintiffs have Article III standing to bring their claims.

2.   Whether the Court should certify for interlocutory review the issue of whether Spokeo is immune from liability under Section 230 of the Communications Decency Act.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Court's order on Spokeo's motion to dismiss recognized that "[d]istrict courts have come out on both sides of many of the issues" that Spokeo raised. ECF No. 41 (Order) at 1. That is little surprise, as Plaintiffs and other individuals have brought dozens of similar suits against people-search websites since 2020—yet no appellate court has weighed in on the important legal issues consistently raised in motions to dismiss these actions. The Ninth Circuit was poised to do so in another case, but the plaintiffs in that case (represented by the same plaintiffs' counsel in this matter) withdrew their appeal before the Court could issue its opinion. The parties here and elsewhere urgently need circuit court guidance.

Spokeo files this motion to obtain that guidance. Spokeo respectfully asks this Court to certify two issues for interlocutory review: (1) whether Plaintiffs have Article III standing; and (2) whether Spokeo is immune from liability under Section 230 of the Communications Decency Act (CDA).

Both issues meet the criteria for interlocutory review. Both are "controlling question[s] of law," 28 U.S.C. § 1292(b), because they are purely legal issues that are very significant to this case. Both Article III standing and immunity from CDA liability are case-dispositive issues. Further, on both issues, the disagreement among district courts (including courts within this district) demonstrates that "there is substantial ground for difference of opinion" on the two issues. *Id.* And resolution of the two issues would "materially advance the ultimate termination of the litigation," *id.*, because if the Ninth Circuit ruled for Spokeo on either issue, it would end the litigation or at the very least better define the potential scope of liability.

Finally, interlocutory review will provide needed clarity to other litigants and courts addressing the exact same issues. No appellate court has considered whether an individual's information appearing on a people-search website causes an injury sufficient for Article III standing. Similarly, no appellate court has ruled on whether the CDA grants immunity to people-search websites for the content they provide on their sites.

For all of these reasons, the Court should certify its order on Spokeo's motion to dismiss for interlocutory appeal under 28 U.S.C. § 1292(b).

## II.   BACKGROUND

### A.   Plaintiffs' Allegations and Claims

Spokeo owns and operates spokeo.com, an online search engine that allows users to search for and purchase "profile reports" containing information about individuals, such as their addresses, phone numbers, and court records. Complaint, ECF No. 1 (Compl.) ¶¶ 4, 10. Spokeo.com and other websites with these functions are commonly referred to as "people-search websites," which allow users to search for individuals by, for example, name, address, and/or phone number, and to then view and purchase information on individuals that the website aggregates and compiles from third-party sources. With these core functions, spokeo.com is a typical people-search website.

Plaintiffs allege that upon searching for an individual by name, phone number, address, or email on the spokeo.com landing page, users "receive [a] teaser profile . . . [showing, where available, the] name, age, city of residence, and partially redacted contact information" of that individual, to the extent that Spokeo has access to this information. *Id.* ¶¶ 43, 59, 75. Plaintiffs

allege that Spokeo's teaser profiles generated after a search of their names "uniquely identif[ied]" them. *Id.*

Plaintiffs allege that "Spokeo states that it collects [the information displayed on its website] 'from a large variety of public online and offline sources,' including 'Property Records,' 'Consumer Records,' 'Historical Records,' 'Court Records,' 'Business Records,' and 'Social Networks.[']" *Id.* ¶ 11. Plaintiffs allege that "do not know how Spokeo obtained their personal information," *id.*—but at the same time, they concede that they "may have shared their names, photographs, addresses, and other personal information"—the same information that appears on Spokeo's websites—"with certain companies or the government in a variety of contexts." *Id.* ¶¶ 14-15.

Plaintiffs' core theory is that Spokeo has violated their right to publicity by using their information in the teaser profiles to advertise its subscription memberships. *Id.* ¶¶ 6, 47, 63, 79. On that basis, Plaintiffs bring claims under the Indiana, Ohio, and California right of publicity statutes; those States' common law claims for appropriation of name or likeness; and California's Unfair Competition Law. *Id.* ¶¶ 47, 53, 63, 69, 79, 85, 104, 109, 117, 121, 129, 133, 139.

### B. Spokeo's Motion to Dismiss and This Court's Dismissal Order

Spokeo moved to dismiss Plaintiffs' complaint, arguing that Plaintiffs lacked Article III standing; failed to adequately plead their California, Ohio, and Indiana claims; and improperly asserted California claims on behalf of non-Californian putative class members. Spokeo also argued that Plaintiffs' claims are barred by the CDA, 47 U.S.C. § 230; the First Amendment; and the dormant Commerce Clause. ECF No. 23. The Court denied Spokeo's motion to dismiss in its entirety. Order at 1. The Court expressly reserved for later determination whether non-Californian named Plaintiffs and members of the putative class can assert California claims. *Id.* at 16.

As relevant here, the Court held that Plaintiffs have Article III standing based on four types of injuries: misappropriation of intellectual property, unjust enrichment, denial of the right to control commercial use of identities, and mental or emotional injury. *Id.* at 7-9. Citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), the Court found that each of these four alleged harms was "'traditionally' recognized as providing a basis for a lawsuit in American courts," and that Plaintiffs

1 therefore had sufficiently alleged injury to establish Article III standing. *Id.* at 7, 9 (quoting *TransUnion*, 141 S. Ct. at 2204). At the same time, the Court noted that "other courts in this district and elsewhere have . . . rejected these theories, or some of them." *Id.* at 10.

The Court also held that Plaintiffs' claims are not barred by Section 230 of the CDA. The Court noted that "CDA immunity 'applies only if the interactive computer service provider is not also an information content provider.'" *Id.* at 22 (quoting *Fair Hous. Council of San Fernando Valley v. Roomates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc)). The Court concluded that Spokeo itself is an "information content provider"—*i.e.*, it is "responsible, in whole or in part, for the creation and development of" the offending content"—and not a passive conduit or platform for user-generated content. *Id.* at 21-22 (quoting *Roomates.com, LLC*, 521 F.3d at 1162).

## III.  LEGAL STANDARD

28 U.S.C. § 1292(b) "allows interlocutory appeals when the district judge certifies that an appeal involves a 'controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Langere v. Verizon Wireless Servs.,* LLC, 983 F.3d 1115, 1118 (9th Cir. 2020) (quoting 28 U.S.C. § 1292(b)). "A controlling question of law must be one of law—not fact—and its resolution must 'materially affect the outcome of litigation in the district court.'" *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (citing *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981)). A "substantial ground for difference of opinion" exists if "reasonable jurists might disagree on an issue's resolution," such as where courts have reached different conclusions or "novel legal issues are presented." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). And an immediate appeal "materially advance[s]" the litigation if it "may appreciably shorten the time, effort, or expense of conducting" the district court proceedings. *In re Cement*, 673 F.2d at 1027.

## IV. ARGUMENT

### A. The Court Should Certify The Standing Issue For Interlocutory Review

The Court's conclusion that Plaintiffs' alleged injuries are sufficient to confer Article III standing is a critically important, threshold legal question that warrants certification under Section 1292(b).

First, the standing issue the Court resolved is "a controlling question of law" that, if decided in Spokeo's favor, "could cause the needless expense and delay of litigating an entire case in a forum that has no power to decide the matter." *Silbersher v. Allergan Inc.*, 2021 WL 292244, *2 (N.D. Cal. Jan. 28, 2021) (quoting *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996)). Many courts have recognized that "challenges to subject-matter jurisdiction [and] justiciability"—including challenges to standing—are well-suited for appeal under Section 1292(b). Wright & Miller, Application to Specific Orders, 16 Fed. Prac & Proc. § 3931 (3d ed. 2022) (citing cases). Deciding those issues on interlocutory appeal furthers the purpose of Section 1292(b), which is to "expedit[e] litigation by permitting appellate consideration during the early stages of litigation of legal questions which, if decided in favor of the appellant, would end the lawsuit." *Ambrosio v. Cogent Commc'ns, Inc.*, 2016 WL 777775, at *2 (N.D. Cal. Feb. 29, 2016) (quoting *United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959)). Not surprisingly, then, the Ninth Circuit repeatedly has considered interlocutory appeals of district courts' denials of motions to dismiss for lack of standing. *See, e.g.*, *Edwards v. First Am. Corp.*, 610 F.3d 514, 515 (9th Cir. 2010); *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 745 (9th Cir. 1993).

For the same reasons, an interlocutory appeal would "materially advance" this litigation. "Courts within the Ninth Circuit have held that resolution of a question materially advances the termination of litigation if it facilitates disposition of the action by getting a final decision on a controlling legal issue sooner[] rather than later in order to save the courts and the litigants unnecessary trouble and expense." *Silbersher*, 2021 WL 292244, at *3 (citations and internal alterations omitted). Here, "appellate briefing on a relatively narrow legal issue" of standing would save the parties and this Court significant resources by potentially eliminating some or all of Plaintiffs' claims and by permitting the parties to "more accurately predict their odds of success,

scope of potential liability, and a fair estimate of the case's value." *Finder v. Leprino Foods Co.*, 2016 WL 4095833, at *5 (E.D. Cal. Aug. 1, 2016) (citations omitted). It is much better to find out now that Plaintiffs lack standing than after the case is litigated to final judgment. Further, the Article III standing issue is "implicated in a large number of other cases" involving people-search websites, yet has thus far "evaded Ninth Circuit review"—in part because of the decision by Plaintiffs' counsel to dismiss the prior appeal that raised these same issues. *Id.* (citations omitted).[1] Thus, certification of this question would materially advance both this litigation and many other cases.

Further, an interlocutory appeal is warranted because the standing question here is a "novel legal issue[]" that the Ninth Circuit should consider. *Reese*, 643 F.3d at 688; *see Joffe v. Google, Inc.*, 746 F.3d 920, 923-24 (9th Cir. 2013) (considering interlocutory appeal of denial of motion to dismiss that implicated a "novel question" of law). To date, no appellate court has considered whether an individual whose identity allegedly has been presented on a people-search website has suffered an injury sufficient to confer Article III standing. Although the Ninth Circuit and Supreme Court previously considered whether allegedly false statements presented on Spokeo's website could create sufficient injury to justify standing, those courts only found that an injury might arise from disclosure of *inaccurate* information,[2] and neither court ever considered whether the mere presentation of *accurate* identifying information could constitute a cognizable injury.

Finally, and perhaps most importantly, there is a "substantial ground for difference of opinion" on this issue. Although this Court concluded that the types of injuries asserted by Plaintiffs were sufficient to confer Article III standing, the Order acknowledged that "courts in this district and elsewhere have also rejected [Plaintiffs'] theories, or some of them." Order at 10; *see id.*

---

[1] *See, e.g.*, *Jackson v. Check Them, Inc.*, No. 2:21-cv-02201 (D. Nev. filed Dec. 15, 2021), ECF No. 22; *Zhang v. Ancestry.com Operations Inc.*, No. 4:21-cv-07652 (N.D. Cal. filed Aug. 10, 2021), ECF No. 14; *Sessa v. Ancestry.com Operation Inc.*, No. 2:20-cv-02292 (D. Nev. filed Dec. 17, 2020), ECF No. 19; *Callahan v. Ancestry.com Operations Inc.*, No, 3:20-cv-08437 (N.D. Cal. filed Nov. 30, 2020), ECF No. 13.

[2] *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016); *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1114-15 (9th Cir. 2017).

1  (acknowledging that "some courts have agreed with Spokeo's position" that failure to show
2  commercial value deprives Plaintiffs of standing).

3  In particular, in a similar case in this district, *Callahan v. Ancestry.com, Inc.*, the court held
4  that the very same injuries asserted here—*i.e.*, theft of intellectual property, the defendant's "profit"
5  from the alleged exploitation of the plaintiffs' likenesses, appropriation of the commercial value of
6  their identities, and emotional distress—do *not* establish Article III standing. *See* 2021 WL 783524,
7  at *4-5 (N.D. Cal. Mar. 1, 2021); *Callahan v. Ancestry.com, Inc.*, 2021 WL 2433893, at *4-5 (N.D.
8  Cal. June 15, 2021). The plaintiffs in *Callahan* appealed to the Ninth Circuit, but then withdrew
9  that appeal, and so the court of appeals ultimately did not decide the standing issue. *See* ECF No.
10 75 at 1. This intra-district and intra-circuit conflict establishes a "difference of opinion" that
11 warrants interlocutory review. *See, e.g.*, *Leite v. Crane Co.*, 749 F.3d 1117, 1120, n.1 (9th Cir.
12 2014) (interlocutory appeal warranted where "other district courts confronted with similar facts
13 have reached the opposite conclusion").

14 Especially after the Supreme Court's recent decision in *TransUnion*, 141 S. Ct. at 2190,
15 there is a substantial basis to question standing here. *TransUnion* reaffirmed that standing does not
16 exist unless a plaintiff's "injury bears a 'close relationship' to [the] harm traditionally recognized
17 as providing a basis for a lawsuit in American courts." *Id.* at 2208. Applying that rule, the Court
18 held that the harm suffered from a credit reporting agency's publication of misleading information
19 bore a "close relationship" with "the reputational harm associated with the tort of defamation." *Id.*
20 at 2208-09. In contrast, possessing misleading information without disseminating it did not
21 establish Article III injury, because "there is 'no historical or common-law analog where the mere
22 existence of inaccurate information, absent dissemination, amounts to concrete injury.'" *Id.* at 2209
23 (quoting *Owner-Operator Indep. Drivers Ass'n, Inc. v. U. S. Dep't of Transp.*, 879 F.3d 339, 344-
24 45 (D.C. Cir. 2018)). There is a substantial ground for difference of opinion about whether
25 Plaintiffs' injuries satisfy the Supreme Court's test. The Court's conclusion here that Plaintiffs
26 showed a cognizable injury relied heavily on pre-*TransUnion* Ninth Circuit decisions that did not
27 identify historical analogues that made similar harms actionable, but instead focused on whether
28

the defendant infringed the interests created by state law. *See* Order at 9.[3] As Spokeo explained, it is very difficult (if not impossible) to find a historical or common-law analogue that makes actionable the injuries alleged where, as here, Plaintiffs' identities did not have any commercial or endorsement value that they could exploit to begin with. *See* ECF No. 23 at 4-5 n.3; ECF No. 32 at 2-3. Although the Court determined that Plaintiffs' right-of-publicity claims stem from the "right of privacy," and that injuries traditionally accompanying violation of that right include "reputation harms, disclosure of private information, and intrusion upon seclusion," Order at 7-8, Plaintiffs have not alleged any such harms here, where the relevant information is not private. *See, e.g.*, Compl. ¶ 14 ("Plaintiffs and Class Members may have shared their names, photographs, addresses, and other personal information with certain companies . . . in a variety of contexts."); *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1144 (S.D. Cal. 2005) ("Numerous cases hold that there is no privacy for a matter already in the public domain.") (collecting cases).

In short, the Article III standing question in this case presents an important and novel question on which courts have disagreed. Immediate appellate consideration of this issue would shortcut this litigation and potentially save the parties and court significant time and expense. It also would provide helpful guidance for many other cases pending in the federal courts. The Court therefore should certify the standing issue for interlocutory appeal.

---

[3] For instance, in *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 600 (9th Cir. 2020), the Ninth Circuit held that "state law can create interests that support standing in federal courts" without considering whether unjust enrichment for appropriation of personal information was an injury traditionally recognized as a basis for bringing a lawsuit in American courts. Likewise, in *Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821, 824 (9th Cir. 1974), the court did not consider standing, but merely held that mental injury may result from appropriation of an identity—relying exclusively on cases where the defendant had falsely coopted the plaintiff's endorsement. Similarly, in *Miller v. Glenn Miller Prods, Inc.*, 454 F.3d 975, 988 (9th Cir. 2006), the court of appeals did not consider standing, but instead merely noted that California law has a statutory and common law right of publicity. And the case that *Miller* relies upon to describe California's common law right of publicity—*Wendt v. Host International, Inc.*—does not come close to supporting the broad right Plaintiffs assert. Instead, *Wendt* recognizes only a much narrower right, one that protects the "commercially exploitable opportunities" that arise when there is a "reaction of the public to name and likeness." 125 F.3d 806, 811 (9th Cir. 1997) (quoting *Lugosi v. Universal Pictures*, 25 Cal.3d 813 (1979)). That is inapplicable here, where Plaintiffs do not allege that their names or identities prompt some public recognition that give rise to commercially exploitable opportunities.

**B.     The Court Should Certify The Section 230 Immunity Issue For Interlocutory Review**

Like the Article III standing issue, the Section 230 question is a "controlling question of law," and appellate resolution of this issue "could materially affect the outcome of litigation in the district court." *In re Cement*, 673 F.2d at 1026. First, the Section 230 issue is purely a legal one—whether, taking the allegations in the complaint as true, Spokeo has immunity under the CDA. Plaintiffs allege that "Spokeo states that it collects [their information] 'from a large variety of public online and offline sources,' including 'Property Records,' 'Consumer Records,' 'Historical Records,' 'Court Records,' 'Business Records,' and 'Social Networks,[']'" and that the "names, photographs, addresses, and other personal information" that they "may have shared . . . with certain companies or the government" ultimately appears on Spokeo's website. Compl. ¶¶ 11, 14-15. As the Court noted, Spokeo "is alleged to actively take content from other sources, curate it, and uphold it to its site." Order at 22. In other words, Plaintiffs allege that spokeo.com operates like most people-search websites—collecting and aggregating information on specific individuals from third-party sources and then displaying that information on its website in response to a user's search. Compl. ¶¶ 40, 56, 72.

Second, Section 230 immunity would materially affect the outcome of the litigation because it is a complete defense to Plaintiffs' right-of-publicity claims. *See, e.g.*, *Callahan*, 2021 WL 783524 at *6 (dismissing similar claims on CDA grounds). Further, if the Ninth Circuit concluded that Section 230 also applied to Spokeo's aggregation and display of third-party data, that would completely resolve this litigation.

Similarly, an interlocutory appeal on the CDA question would "materially advance" this litigation. There is no requirement that an interlocutory appeal have a "final, dispositive effect on the litigation." *Reese*, 643 F.3d at 688. Instead, courts "consider the effect of a reversal by the Ninth Circuit on the management of the case." *J.B. v. G6 Hospitality, LLC*, 2021 WL 6621068, at *3-4 (N.D. Cal., Dec. 16, 2021) (certifying a CDA immunity question for interlocutory appeal after granting a motion to dismiss with leave to amend on CDA grounds). Here, a reversal by the Ninth Circuit on the CDA issue *would* have a final, dispositive effect on the litigation. But even absent a

reversal, guidance from the Ninth Circuit on the application of CDA immunity to people-search websites would allow the parties to narrow the scope of relevant issues in this case for purposes of discovery, dispositive motions, and potentially trial—saving the Court and the parties significant time and resources.

And again, as with the Article III standing issue, there is a substantial ground for difference of opinion on the CDA immunity issue raised in Spokeo's motion to dismiss. Other people-search website defendants in recent, nearly identical right-of-publicity cases in Ninth Circuit district courts have asserted their immunity under Section 230 of the CDA at the pleading stage.[4] District courts—including courts within this district—have reached opposite conclusions as to whether people-search websites such as Spokeo's are immune under the CDA from right-of-publicity claims. *Compare, e.g.*, *Callahan*, 2021 WL 783524, at *5-6 (N.D. Cal. Mar. 1, 2021) (holding that the CDA bars California right-of-publicity claims under Cal. Civ. Code § 3344 against people-search website), *with Knapke v. PeopleConnect Inc.*, 553 F.Supp.3d 865, 874-75 (W.D. Wash. 2021) (rejecting CDA defense on motion to dismiss); *Sessa v. Ancestry.com*, 561 F.Supp.3d 1008 (D. Nev. 2021) (same). Indeed, the *Callahan* and *Sessa* courts reached opposite conclusions with respect to the *same* defendant website.

Moreover, these inconsistent rulings turn entirely on disagreement on a legal question, not based on differences in the facts. The legal question is whether websites that, in response to a user's search query, automatedly aggregate, curate, and display in a novel interface information that is exclusively sourced from third parties are immune from liability under Section 230 because they

---

[4] *See, e.g.*, *Camacho v. PeopleConnect, Inc.*, No. 3:22-cv-00209 (S.D. Cal. filed Feb. 16, 2022), ECF No. 16; *Jackson v. Check Them, Inc.*, No. 2:21-cv-02201 (D. Nev. Dec. 15, 2021), ECF No. 22; *Camacho v. Control Group Media Co., LLC*, No. 3:21-cv-01957 (S.D. Cal. filed Nov. 16, 2021), ECF No. 19; *Camacho v. Control Group Media Co., LLC*, No. 3:21-cv-01954 (S.D. Cal. filed Nov. 16, 2021), ECF No. 20; *Boshears v. PeopleConnect Inc.*, No. 2:21-cv-01222 (W.D. Wash. filed Sept. 7, 2021), ECF No. 25; *Zhang v. Ancestry.com Operations Inc.*, No. 4:21-cv-07652 (N.D. Cal. Filed Aug. 10, 2021), ECF No. 14; *Knapke v. PeopleConnect, Inc.*, No. 2:21-cv-00262 (W.D. Wash. filed Mar. 2, 2021), ECF No. 13; *Backowski v. PeopleConnect, Inc.*, No. 2:21-cv-00115 (W.D. Wash. filed Jan. 29, 2021), ECF No. 10; *Kolebuck-Utz v. Whitepages Inc.*, No. 2:21-cv-00053 (W.D. Wash. filed Jan. 15, 2021), ECF No. 12; *Callahan v. PeopleConnect, Inc.*, No. 3:20-cv-09203 (N.D. Cal. filed Dec. 18, 2020), ECF No. 26; *Sessa v. Ancestry.com Operation Inc.*, No. 2:20-cv-02292 (D. Nev. filed Dec. 17, 2020), ECF No. 19; *Callahan v. Ancestry.com Operations Inc.*, No, 3:20-cv-08437 (N.D. Cal. filed Nov. 30, 2020), ECF No. 13.

are not information content providers. For example, in dismissing the *Callahan* plaintiffs' complaint on CDA grounds, the court found that Ancestry.com "tak[es] information and photos from . . . yearbooks and republish[es] them on its website in an altered format," and thus merely engaged in "a publisher's traditional editorial functions that do not transform an individual into a content provider within the meaning of § 230." *Callahan*, 2021 WL 783524 at *6. In contrast, this Court found that Spokeo was *not* entitled to CDA immunity based on nearly identical facts: "Spokeo . . . is alleged to actively take content from other sources, curate it, and upload it to its site in a novel configuration for repurposed uses." Order at 22. On these facts, the Court concluded that Spokeo is "responsible, in whole or in part, for the creation or development of the offending content." *Id.* at 21 (quoting *Roomates.com*, 521 F.3d at 1162). Thus, two courts in this district have analyzed similar facts and have reached opposite conclusions about Section 230 immunity. There plainly is a substantial ground for difference of opinion among courts on this issue. *See Silbersher*, 2021 WL 292244, at *2 (certifying an interlocutory appeal and finding a substantial ground for difference of opinion based on intra-district split).

Several courts outside this Circuit also have held that websites that collect, purchase, or commission data from non-user third-party sources and republish it in an altered format on their websites are not content providers themselves, and are thus immune under Section 230. *See, e.g.*, *Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 983, 985-86 (10th Cir. 2000) (AOL immune under CDA for republishing and displaying information it commissioned from third-party source); *Dennis v. MyLife.com, Inc.*, 2021 WL 6049830, at *6 (D.N.J. Dec. 20, 2021) (right-of-publicity claims barred under CDA where defendant website "gathers the information from other sources' and 'prepar[es] . . . background report[s]' from this information"); *Henderson v. Source for Public Data*, 540 F.Supp.3d 539, 548-49 (E.D. Va. 2021) (alleged violations of consumer reporting agency statutes barred under CDA where third-party entities "create the records Defendants upload to their website and collect into a report"); *Merritt v. Lexis Nexis*, 2012 WL 6725882, at *2-3 (E.D. Mich. Oct. 23, 2012) (website published information from third parties in own report). Those courts explained that the websites perform traditional editorial, distribution, and publishing functions rather than acting as content providers themselves. *See Dennis*, 2021 WL

6049830 at *6 ("[Plaintiffs] claims fall within Section 230's purview" where defendant performed "traditional editorial functions"); *Henderson*, 540 F.Supp.3d at 548 ("Defendants' status as an interactive computer service is not lost merely because they have purchased the data or edit it like a publisher or distributor in its traditional capacity"); *Callahan*, 2021 WL 783524 at *6 (people-search website performed "a publisher's traditional editorial functions"). The same reasoning should apply to Spokeo here.

These cases illustrate yet another ground for disagreement between courts on the CDA issue. This Court concluded that because Spokeo "is not alleged to merely host *user-generated* content," it is not eligible for Section 230 immunity. Order at 22. But the CDA does not require that an interactive computer service host *only* user-generated content to be immune under Section 230—instead, the interactive computer service must host content "provided by another information content provider." 47 U.S.C. §§ 230(c)(1), 230(f)(3) (definition of "information content provider" not limited to users). As the above-cited cases demonstrate, courts have routinely applied Section 230 immunity to websites featuring content generated by non-user third parties—and thus have not imposed the user-generated-content requirement that the Court relied on in its Order.

It is important for the Ninth Circuit to provide needed guidance on this issue. The *Dennis* and *Henderson* CDA rulings are currently on appeal before the Third Circuit and Fourth Circuit, respectively—illustrating the nationwide importance of this issue. *See Dennis v. MyLife.com, Inc.*, No. 22-1110 (3rd Cir., appeal docketed, January 20, 2022); *Henderson v. Source for Public Data*, No. 21-1678 (4th Cir., oral argument heard, May 3, 2022). But the Ninth Circuit has yet to address whether CDA immunity applies to websites collecting, curating, and republishing in a unique format information gathered from non-user third parties. None of the leading Ninth Circuit CDA decisions even provides helpful guidance, because none involves a website performing similar functions. *See, e.g.*, *Gonzalez v. Google LLC*, 2 F.4th 871, 880 (9th Cir. 2021) (social media platform); *Roommates.com*, 521 F.3d at 1161-62 (housing search website); *Batzel v. Smith*, 333 F.3d 1018, 1033 (9th Cir. 2003) (online newsletter republishing a single email); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1120-21 (9th Cir. 2003) (dating site).

"[T]he lack of controlling precedent" on this issue "and the various district court decisions demonstrate substantial grounds for a difference of opinion exists." *Koby v. ARS Nat'l Servs., Inc.*, 2010 WL 5249834, at * 4 (S.D. Cal. Dec. 23, 2010) (certifying interlocutory appeal); *see also Somers v. Digital Realty Trust, Inc.*, 2015 WL 4481987, at *2 (N.D. Cal. July 22, 2015) (certifying appeal where "a significant number of courts (including at least one from this District) have reached the opposite conclusion"). And the significant number of these websites makes it all the more important for the Ninth Circuit to provide guidance soon. More than a dozen other right-of-publicity cases against companies that operate people-search websites are currently pending in district courts in the Ninth Circuit.[5] Indeed, an appellate decision on this issue would provide definitive guidance for this case and all of those other cases.

## V.  CONCLUSION

For the reasons above, Spokeo respectfully requests that the Court certify for interlocutory appeal its rulings on the standing and CDA immunity issues.

Dated: May 19, 2022                             MAYER BROWN LLP

By: */s/ John Nadolenco*
    John Nadolenco

Attorneys for Defendant
SPOKEO, INC

---

[5]  *See Batis v. Dun & Bradstreet Holdings, Inc.*, 3:22-cv-01924 (N.D. Cal. Mar. 25, 2022) (plaintiffs represented by Plaintiffs' counsel); *Izzo v. PeopleConnect Inc.*, No. 2:22-cv-00016 (W.D. Wash. filed Jan. 6, 2022) (same); *Uharriet v. MyLife.com, Inc.*, No. 3:21-cv-08229 (N.D. Cal. filed Oct. 21, 2021) (same); *Martinez v. ZoomInfo Technologies Inc.*, No. 3:21-cv-05725 (W.D. Wash. filed Sept. 30, 2021) (same); *Boshears v. PeopleConnect Inc.*, No. 2:21-cv-01222 (W.D. Wash. filed Sept. 7, 2021) (same); *Gbeintor v. Demandbase, Inc. et al*, No. 4:21-cv-09470 (N.D. Cal. filed Dec. 8, 2021) (same); *Knapke v. PeopleConnect, Inc.*, No. 2:21-cv-00262 (W.D. Wash. filed Mar. 2, 2021) (same); *Callahan v. PeopleConnect, Inc.*, No. 3:20-cv-09203 (N.D. Cal. filed Dec. 18, 2020) (same); *Sessa v. Ancestry.com Operation Inc.*, No. 2:20-cv-02292 (D. Nev. filed Dec. 17, 2020) (same); *Camacho v. PeopleConnect, Inc.*, No. 3:22-cv-00209 (S.D. Cal. filed Feb. 16, 2022); *Camacho v. Control Group Media Co., LLC*, No. 3:21-cv-01954 (S.D. Cal. filed Nov. 16, 2021); *Camacho v. Control Group Media Co., LLC*, No. 3:21-cv-01957 (S.D. Cal. filed Nov. 16, 2021); *Backowski v. PeopleConnect, Inc.*, No. 2:21-cv-00115 (W.D. Wash. filed Jan. 29, 2021); *Kolebuck-Utz v. Whitepages Inc.*, No. 2:21-cv-00053 (W.D. Wash. filed Jan. 15, 2021).