1  Michael F. Ram (SBN 104805)
   mram@forthepeople.com
2  Marie N. Appel (SBN 187483)
   mappel@forthepeople.com
3  MORGAN & MORGAN
   COMPLEX LITIGATION GROUP
4  711 Van Ness Avenue, Suite 500
   San Francisco, CA 94102
5  Telephone: (415) 358-6913
   Telephone: (415) 358-6293
6

7
   *Attorneys for Plaintiffs and the Proposed Class*
8  *Additional Counsel Listed in Signature*

9
                THE UNITED STATES DISTRICT COURT
10
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
                    SAN FRANCISCO DIVISION
12

13  AVIVA KELLMAN, JASON FRY, and          Case No.: 3:21-cv-08976-WHO
    NICHOLAS NEWELL individually and on
14  behalf of all others similarly situated,   **PLAINTIFFS' NOTICE OF MOTION
                                                AND MOTION FOR CLASS
15                   Plaintiffs,               CERTIFICATION; MEMORANDUM OF
                                                POINTS AND AUTHORITIES IN
16  vs.                                        SUPPORT**

17  SPOKEO, INC.,                             Complaint Filed: Nov. 19, 2021

18                   Defendant.               Hearing Date: October 25, 2023
19                                            Hearing Time: 2:00 p.m.
                                              Judge William H. Orrick III, Courtroom 2
20

21

22

23

24

25

26

27

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on October 25, 2023, at 2:00 p.m. in Courtroom 2 of the United States District Court for the Northern District of California, San Francisco, Plaintiffs will and hereby do move for an Order certifying the Classes defined below pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3), or in the alternative, pursuant to Rule 23(c)(4). Plaintiffs further request the Order appoint them and Susan Gledhill Stephens, Benny Gallegos, and Shelly Boedeker as Class Representatives.[1] Plaintiffs further request the Order appoint Morgan & Morgan LLP, Turke & Strauss LLP, and the Law Office of Benjamin R. Osborn as Class Counsel.

In support of this Motion, Plaintiffs refer to the Memorandum of Points and Authorities below, the accompanying declarations of Michael Naaman, Steven Weisbrot, Michael F. Ram, Raina C. Borrelli, Benjamin R. Osborn, Aviva Kellman, Jason Fry, Nicholas Newell, Susan Gledhill Stephens, Benny Gallegos, and Shelly Boedeker, and the accompanying Proposed Order Granting Class Certification and Proposed Trial Plan.

## STATEMENT OF ISSUES TO BE DECIDED

Plaintiffs ask that the Court certify the following classes pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3).

### Viewed-Prior-to-Purchase Classes:

**Nationwide Viewed-Prior-to-Purchase Class** (claims under California law; represented by proposed class representatives Stephens, Gallegos, and Boedeker): All United States residents who are not registered users of Spokeo.com and whose teaser profile was viewed by a user immediately prior to purchasing a Spokeo.com subscription on or after November 19, 2019, where such teaser profile includes a name and home address.

**California Viewed-Prior-to-Purchase Class** (claims under California law; represented by proposed class representatives Stephens and Gallegos): All California residents who are not registered users of Spokeo.com and whose teaser

---

[1] The Parties have filed a stipulation for leave to file an amended complaint adding Ms. Stephens, Mr. Gallegos, and Ms. Boedeker as plaintiffs to this action who seek to represent the Viewed-Prior-to-Purchase Classes. *See* Dkt. No. 90.

i

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:21-cv-08976-WHO)

profile was viewed by a user immediately prior to purchasing a Spokeo.com subscription on or after November 19, 2019, where such teaser profile includes a name and home address.

**Nationwide Viewed-Prior-to-Purchase in Indiana Class** (claims under Indiana law; represented by proposed class representative Boedeker): All United States residents who are not registered users of Spokeo.com and whose teaser profile was viewed by a user immediately prior to purchasing a Spokeo.com subscription on or after November 19, 2019, where the purchasing user's billing information listed an address in Indiana, and where such teaser profile includes a name and home address.[2]

Plaintiffs also ask that the Court certify the following classes pursuant to Fed. R. Civ. P. 23(b)(2).

**Published Classes:**

**Nationwide Published Teaser Profile Class** (claims under California law; represented by Plaintiffs Kellman, Newell, and Fry and proposed class representatives Stephens, Gallegos, and Boedeker): All United States residents who are not registered users of Spokeo.com and whose teaser profile is searchable on www.spokeo.com, where such teaser profile includes a name and home address.

**California Published Teaser Profile Class** (claims under California law; represented by Plaintiffs Kellman, Stephens, and Gallegos): All United States residents who are not registered users of Spokeo.com and whose teaser profile is searchable on www.spokeo.com, where such teaser profile includes a name and home address.

**Ohio Published Teaser Profile Class** (claims under Ohio law; represented by Plaintiff Newell)**:** All Ohio residents who are not registered users of Spokeo.com and whose teaser profile is searchable on www.spokeo.com, where such teaser profile includes a name and home address.

Finally, Plaintiffs ask that the Court appoint the Class Representatives as noted in the class definitions above, and that the Court appoint Morgan & Morgan LLP, Turke & Strauss LLP, and the Law Office of Benjamin R. Osborn as Class Counsel.

---

[2] Uniquely, Indiana's Right of Publicity statute applies to "an act or event that occurs in Indiana, regardless of a personality's domicile, residence, or citizenship." Ind. Code § 32-36-1(a). Accordingly, any person whose teaser profile Spokeo used to advertise to someone in Indiana has a claim under the Indiana statute, regardless of that person's state of residence.

## **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................. i

TABLE OF CONTENTS ................................................................................................... iii

TABLE OF AUTHORITIES ............................................................................................... iv

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

    I.   INTRODUCTION ................................................................................................ 1

    II.  PROCEDURAL BACKGROUND AND PROPOSED CLASSES ............................ 3

    III. LEGAL STANDARD ......................................................................................... 3

    IV. ARGUMENT ..................................................................................................... 4

        A.  For All Classes, the Requirements of Rule 23(a) are Satisfied. ................... 4

            1.   The proposed Classes are so numerous that joinder is impracticable. ................... 4

            2.   There are questions of law and fact common to the proposed Classes. ................. 5

            3.   Plaintiffs' claims are typical of those of the proposed Classes. ........................... 13

            4.   Plaintiffs and their counsel are adequate representatives. ..................................... 14

                a.   There is no fundamental conflict of interest. .............................................. 15

                b.   Plaintiffs and their counsel have and will prosecute vigorously. .............. 15

        B.  For the Viewed-Prior-to-Purchase Classes, the Predominance Requirement of Rule 23(b)(3) is Satisfied. ............................................................................................... 16

        C.  For the Viewed-Prior-to-Purchase Classes, the Superiority Requirement of Rule 23(b)(3) is Satisfied. ............................................................................................... 19

        D.  All of the Proposed Classes Satisfy the Requirements of Rule 23(b)(2) .................... 22

CONCLUSION ............................................................................................................... 23

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:21-cv-08976-WHO)

# TABLE OF AUTHORITIES

**Cases**

*Amgen v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013) ........................................................................................................16

*Bateman v. American Multi-Cinema, Inc.*,
623 F.3d 708 (9th Cir. 2010) ..........................................................................................20

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) .............................................................................................5

*Bonilla v. Ancestry.com*,
Case No. 20-cv-07390, --- F. Supp. 3d. ---, 2022 WL 4291359 (N.D. Ill. Sep. 16, 2022) ..........10

*Boyd v. Spokeo, Inc.*,
21-cv-13644 (Sup. Ct. Cal. Apr. 9, 2021) ........................................................................20

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ....................................................................................21, 22

*Christoff v. Nestle USA Inc.*,
152 Cal.App.4th 1439 (Cal. Ct. App. 2007) ..............................................................11, 12

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ........................................................................................................21

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) ........................................................................................................16

*Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*,
926 F.3d 539 (9th Cir. 2019) ..........................................................................................14

*Estate of Fuller v. Maxfield & Oberton Holdings, LLC*,
906 F. Supp. 2d 997 (N.D. Cal. 2012) .......................................................................11, 12

*Fischer v. InstantCheckmate LLC*,
2022 WL 971479, 15 (N.D. Ill. Mar. 31, 2022) .............................................2, 6, 9, 13, 16, 18

*Fraley v. Facebook, Inc.*,
966 F. Supp. 2d 939 (N.D. Cal. 2013) .............................................................................12

*Habig v. Bruning*,
613 N.E.2d 61 (Ind. Ct. App. 1993) ...............................................................................11

iv

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998),
*overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .............5, 16

*Hernandez v. Wells Fargo & Co.*,
No. 18-cv-07354, 2020 WL 469893 (N.D. Cal. Jan. 29, 2020) ....................................20

*Huebner v. Radaris, LLC*,
2016 WL 8114189 (N.D. Cal. Apr. 12, 2016) ..........................................................3, 13

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) ...........................................................................5

*Kellman, et al. v. Spokeo, Inc.*,
599 F. Supp. 3d 877 (N.D. Cal. 2022) ...............................................................2, 7, 18

*Knapke v. PeopleConnect*,
553 F. Supp. 3d 865 (W.D. Wash. 2021) ................................................................9

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ................................................................................19

*Levya v. Medline Indus., Inc.*,
716 F.3d 510 (9th Cir. 2013) ................................................................................20

*Lowdermilk v. U.S. Bank Nat'l Assoc.*,
479 F.3d 994 (9th Cir. 2007) .................................................................................4

*Martinez v. ZoomInfo*,
No. 21-cv-5725, 2022 WL 1078630 (W.D. Wash. Apr. 11, 2022) ..............................18

*McCluskey v. Trustees of Red Dot Corp. ESOP & Trust*,
268 F.R.D. 670 (W.D. Wash. 2010) ........................................................................5

*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012) ..............................................................................13

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ..............................................................................17

*Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ..................................................................................3

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ................................................................................22

*Perkins v. LinkedIn, Inc.*,
No. 13-cv-04303-LHK (N.D. Cal. Feb. 16, 2016) .....................................................12

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2009) ............................................................................................ 13

*Roe v. Amazon.com*,
170 F. Supp. 3d 1028 (S.D. Ohio 2016) .............................................................................. 19

*Ruiz Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016) ............................................................................................ 16

*Sessa v. Ancestry.com*,
561 F. Supp. 3d 1008 (D. Nev. 2021) .................................................................................. 18

*Siegel v. ZoomInfo Techs*,
No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021) .............................................. 9

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) .............................................................................................. 22

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .............................................................................................. 15

*T.S. v. Plain Dealer*,
954 N.E.2d 213 (Ohio Ct. App. 2011) ................................................................................ 11

*Tseng v. PeopleConnect*,
No. 20-cv-9203, 2023 WL 2725878 (N.D. Cal. March 30, 2023) ......................................... 9

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ............................................................................................................ 16

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .............................................................................................................. 5

*Wolin v. Jaguar Land Rover North America, LLC*,
617 F.3d 1168 (9th Cir. 2010) ............................................................................................ 13

*Yeager v. Bowlin*,
693 F.3d 1076 (9th Cir. 2012) .......................................................................................... 10

**Statutes**

Cal. Civ. Code § 3344 ............................................................................... 3, 5, 7, 8, 12, 13

Ind. Code § 32-36-1 ...................................................................................... 3, 5, 8, 11, 12

Ohio Rev. Code § 2741 ................................................................................... 3, 5, 8, 12

vi

**Rules**

Federal Rules of Civil Procedure, Rule 23 .......................................2, 3, 4, 5, 13, 14, 16, 19, 22, 23

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Spokeo, which owns and operates the website www.spokeo.com, trades on the public's curiosity in learning potentially scandalous information about friends, neighbors, and family members. Spokeo advertises subscription memberships by publicly displaying teaser profiles containing individuals' names; photographs; ages; current and past cities of residences; and partially redacted addresses, emails, and phone numbers. Each teaser profile also claims that Spokeo may possess additional information, including the individual's "Criminal Records," "Sex Offenses," "DUIs," "Relationship Status," "Estimated Salary," "Family Members," and "Location History." Spokeo advertises that, if a visitor purchases a subscription for $24.95 per month, she will receive all the personal and potentially scandalous information Spokeo possesses about a profiled individual, as well as full access to similar information about the millions of other individuals in its database. The members of the proposed Classes are individuals profiled in Spokeo's database who have never used Spokeo and never consented to its use of their names and personas. By using Class members' names and personas to advertise its intrusive and disturbing product without their consent, Spokeo violated California, Ohio, and Indiana law. Those states recognize the intellectual property and privacy rights of individuals to prevent the commercial misappropriation of their names and personas.

Plaintiffs move for certification under Rules 23(b)(3) and 23(b)(2) of their state statutory right of publicity and related statutory and common law claims. This is a paradigmatic case for class treatment. Liability is subject to Class-wide proof. Plaintiffs' and Class members' claims arise from Spokeo's use of their names and personas without consent in "teaser profile" webpages designed to advertise subscriptions to Spokeo.com. The teaser profiles are identical in form and advertising content for every member of every Class. The Class definitions exclude anyone who registered for an account on spokeo.com and agreed to the Terms of Use, which is the sole method

by which Spokeo claims to obtain consent for its use of individuals' personas. Therefore, commercial use to advertise and lack of consent can be shown on a Class wide basis.

Injury and entitlement to damages are also subject to Class-wide proof. California's and Indiana's right of publicity statutes provide for $750 and $1,000, respectively, in minimum statutory damages per violation. Class members are entitled to the statutory minimums if they show they "suffered injury." *See Callahan v. PeopleConnect***Error! Bookmark not defined.**, 2021 WL 5050079, at **16-17 (N.D. Cal. Nov. 1, 2021). Here, Class members suffered at least three forms of injury susceptible to common proof: misappropriation of their names and personas to advertise; Spokeo's unjust profiting from their intellectual property; and infringement of their right to control the commercial use of their names and persons. *See, e.g.*, *Kellman et al. v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 888 (N.D. Cal. 2022). Because each member of a given Class is entitled to the same minimum damages under the relevant state statute, even were there variation within a Class regarding how much injury individual Class members experienced, this would be irrelevant to the calculation of Class wide damages.

Finally, the proposed Classes are easy to ascertain and notify. Every teaser profile contains the Class member's name, home address, and state of residence. Most teaser profiles also contain emails. The profiles thus serve both to identify the Class members and facilitate Class notice.

At least two courts have granted class certification in highly similar cases involving statutory right of publicity claims. In *Fischer v. InstantCheckmate LLC*, Judge Feinerman certified a contested Rule 23(b)(3) class of Illinois residents whose names and personal information appeared in a searchable database published by InstantCheckmate, one of Spokeo's competitors. 2022 WL 971479, at *3, 15 (N.D. Ill. Mar. 31, 2022). Like Spokeo, InstantCheckmate uses search results containing individuals' names and identities to advertise subscriptions. *See id.*, at *8. Similarly, in *Huebner v. Radaris, LLC*, Judge Chhabria certified under Rules 23(b)(3) and 23(b)(2) a class of individuals asserting statutory right of publicity claims against another competing

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:21-cv-08976-WHO)

people-search site. 2016 WL 8114189, at *1-2 (N.D. Cal. Apr. 12, 2016). There is no reason for a different result here. Plaintiffs' motion should be granted.

## II.    PROCEDURAL BACKGROUND AND PROPOSED CLASSES

On November 19, 2021, Plaintiffs Aviva Kellman, Jason Fry, and Nicholas Newell filed a class action complaint asserting claims under California's, Ohio's, and Indiana's Right of Publicity statutes (Cal. Civ. Code § 3344, Ohio Rev. Code § 2741, Ind. Code § 32-36-1) and common law torts of misappropriation of name or likeness. Dkt. No. 1. Plaintiffs also asserted claims under California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200 *et seq.*). *Id.* Plaintiffs allege that Spokeo uses their names and personas without their consent to advertise subscriptions in violation of their intellectual property and privacy rights. *Id.*

On April 19, 2022, the Court denied Spokeo's motion to dismiss. Dkt. No. 41. On July 8, 2022, the Court denied Spokeo's motion to certify interlocutory appeal on standing and CDA immunity. Dkt. No. 64. Prior to filing this motion, the Parties filed a stipulation for leave to file an amended complaint adding three additional named Plaintiffs and the Viewed-Prior-to-Purchase Classes. Dkt. No. 90. The proposed First Amended Complaint (in redline) is attached to that stipulation as Exhibit A. Dkt. No. 90-1 ("FAC").

Plaintiff now respectfully moves for an Order certifying the Classes defined in the "Statement of Issues to be Decided" above. For the Viewed-Prior-to-Purchase Classes, Plaintiffs seek both injunctive relief and statutory damages pursuant to Rules 23(b)(3) and 23(b)(2). For the Published Classes, Plaintiffs seek injunctive relief only pursuant to Rule 23(b)(2).[3]

## III.    LEGAL STANDARD

"[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022).

---

[3] Should this Court determine that only certain issues are appropriate for Class treatment, Plaintiffs respectfully request in the alternative that the Court certify those issues under Rule 23(c)(4).

## IV.   ARGUMENT

### A.   For All Classes, the Requirements of Rule 23(a) are Satisfied.

#### 1.  The proposed Classes are so numerous that joinder is impracticable.

There can be no serious dispute that each of the proposed Classes satisfies the numerosity requirement. *See Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994, 997 (9th Cir. 2007) (numerosity requirement met for class that "exceed[ed] 30 persons"). Plaintiffs retained Dr. Michael Naaman, an economist, to assist in estimating the size of each Class. Relying on data produced by Spokeo,[4] Dr. Naaman's estimates indicate that the Nationwide, California, and Indiana Viewed-Prior-to-Purchase Classes contain more than three-hundred thousand members, more than forty thousand members, and more than six thousand members, respectively. Naaman Decl., ¶19.[5] He also estimates that the Nationwide, California, and Ohio Published Classes contain 253.7 million, 29.3 million, and 9.0 million members, respectively. *Id.*, ¶9. To estimate the Viewed-Prior-to-Purchase Classes, Mr. Naaman relied on ███████████████████ ██████████████████████████ *See id.*, §3.2 (relying on Kellman_00011909). Mr. Naaman then ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████

---

[4] Spokeo initially produced the relevant data on January 19, 2023. Spokeo subsequently produced a "corrected" version of the data on March 21, 2023. The figures differ substantially in the corrected version. For example, the data Spokeo produced on January 19, 2023, indicated that ██████████████████████████████████████████████ Osborn Decl., Ex. 1, at 14-15 (Response to ROG 15). The corrected data Spokeo produced on March 21, 2023, ██████████████████████████████████████ *Id.*, Ex. 2 (Corrected Response to ROG 15). Spokeo has not yet explained the reason for the correction. Mr. Naaman's analysis relies on the corrected data.

[5] Dr. Naaman's estimates of the Viewed-Prior-to-Purchase Class sizes are understated because, among other reasons, he relied on data that has not yet been updated to take into account sales made in 2023. *See* Naaman Decl., ¶26.

4

1   *See id*. To estimate the sizes of the Published Classes, Mr. Naaman relied on internal Spokeo
2   documentation regarding the broad extent of its teaser profile coverage for U.S. residents, then
3   adjusted to exclude people who do not have home addresses (who would therefore not appear in
4   Spokeo's teaser profiles) and are registered users of Spokeo.com. *See id.*, §3.1.

**2.   There are questions of law and fact common to the proposed Classes.**

Rule 23(a)(2) requires common questions of law or fact. The requirements for showing
commonality are "minimal." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998),
*overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 338 (2011). Plaintiffs
"need only show the existence of a common question of law or fact that is significant and capable
of Class-wide resolution." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 592 (N.D. Cal. 2015) (citations
omitted). Where, as here, the defendant is alleged to "have engaged in standardized conduct toward
the members of the proposed class," commonality is easily satisfied. *See McCluskey v. Trustees of
Red Dot Corp. ESOP & Trust*, 268 F.R.D. 670, 676 (W.D. Wash. 2010). Commonality is not
"defeated by slight differences in class members' positions." *Blackie v. Barrack*, 524 F.2d 891,
902 (9th Cir. 1975).

Here, the proposed Classes satisfy commonality. Indeed, as laid out below, every
meaningful issue in this case can be resolved on a common basis within each proposed Class:

**Spokeo's liability presents common issues of law and fact.** Spokeo's liability hinges on
Spokeo's publication of advertising teaser profiles; the identifiability of the Class members
portrayed in those teaser profiles; and Spokeo's failure to obtain each Class members' consent.
*See* Cal. Civ. Code § 3344; Ohio Rev. Code § 2741; Ind. Code § 32-36-1. All three elements are
subject to common proof.

First, each teaser profile published on Spokeo.com is, by design, identical in form and
advertising content. *See* Dkt. No. 1 ("Compl.") ¶¶40-46, 56-62, 72-78; FAC ¶¶56-62, 72-78, 88-
94, 104-109, 120-125, 136-141 (named Plaintiffs' teaser profiles); Osborn Decl., Ex. 3 ▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; *id.*, Ex. 4 ("Daly Tr."), at 38:3-40:5

1    & 94:14-25 █████████████████████████████████████████

2    ██████████████████████████; *id.*, 17:18-18:4 ████████████████████████

3    ██████████████████████████████ *id.*, Ex. 1, at 5 (Response to ROG 7, ██████████

4    ██████████████████████████████████████. Accordingly, whether Spokeo's publication

5    of the teaser profiles constitutes commercial use to advertise under the three state Right of Publicity

6    statutes is common across all Class members.

7    Second, Spokeo's Rule 30(b)(6) witness testified that █████████████████████████

8    ████████████████████████████████████ Daly Tr., at 60:6-15. Because each teaser

9    profile uniquely identifies the Class member,[6] recognizability can be shown on a Class-wide basis.

10    *See Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008, 1022 (2021) ("The use of an individual's likeness

11    for commercial purposes . . . establishes common law injury for right of publicity claims as long

12    as the individual is recognizable.").

13    Third, that Spokeo did not obtain prior consent for using individuals' names and personas

14    in advertisements can be established by showing that Spokeo has no policy for obtaining consent

15    other than displaying the Terms of Use to users who register an account on spokeo.com. *See*

16    *Fischer*, 2022 WL 971479, at *8-9 (certifying contested class and rejecting argument that

17    individualized issues of consent would predominate when defendant admitted it did not receive

18    consent apart from the Terms of Use). Here, the Class definitions exclude anyone who has

19    registered an account and agreed to Spokeo's Terms, and therefore exclude anyone who has even

20    arguably consented.

21    **Entitlement to Damages is a Common Issue of Law and Fact for the Viewed-Prior to**

22    **Purchases Classes.** Plaintiffs Stephens, Gallegos, and Boedeker seek statutory damages of $750

23

24

25

---

26    [6] It is highly unlikely that ███████████████████████████████████████

27    █████████

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:21-cv-08976-WHO)

(California) and $1,000 (Indiana) for each Class member in a "Viewed-Prior-to-Purchase" Class.[7] Class members may claim statutory damages under the relevant statutes if they "suffered injury" the statutes are designed to redress. *See Callahan v. PeopleConnect*, 2021 WL 5050079, at **16-17 (evaluating statutory damages for § 3344 claims). The statutes protect against the same harms that historically gave rise to a tort claim for misappropriation of name or likeness. *See, e.g.*, *Kellman v. Spokeo*, 599 F. Supp. 3d 877, 888 (N.D. Cal. 2022). Here, Plaintiffs and the Class members suffered three forms of injury that are prove-able on a Class-wide basis. First, "Spokeo misappropriated their names, likenesses, and personas," *see id.*, at 889, which can be shown by proof that Spokeo's standardized teaser profiles draw a direct link between the purchase of a subscription and the prospect of learning "additional information" about each Class member, such as their "Criminal Records," "Sex Offenses," and "Estimated Salary." *See id.*, at 884; Compl. ¶¶41, 57, 73; FAC ¶¶57, 73, 89, 105, 121, 137. Second, "Spokeo unjustly profited from their intellectual property," *see Spokeo*, 599 F. Supp. 3d at 889, which can be shown by proof that every Class members' teaser profile was viewed by a Spokeo.com subscriber immediately before they purchased a subscription;[8] ██████████████████████████████████████████

████████████████████████ *See, e.g.*, Daly Tr., at 159:3-180:11 (████████████████████

████████████████████████████████████████████████████████████████████████████

████████). Spokeo would not have ████████████████████████████ if it did not derive commercial benefit from publishing the teaser profiles. Third, Spokeo "infringed their right to control commercial use of their names and identities," *see Spokeo*, 599 F. Supp. 3d at 889, which can be shown by proof that Spokeo published its teaser profiles without attempting to verify

---

[7] Plaintiffs do not seek to "stack" statutory minimum damages for Class members who are members of multiple Classes, and instead seek only damages under the largest statutory damage provision available to a given individual.

[8] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████

whether the individual portrayed consented to this commercial use. Each of these injuries is independently sufficient to establish Class-wide entitlement to statutory damages for the Viewed-Prior-to-Purchase Classes, and each may be shown using common evidence.

Spokeo may argue that evidence of misappropriation and infringing commercial use alone is insufficient to establish entitlement to statutory minimum damages. That is, Spokeo may argue Plaintiffs must show they are entitled to some independent form of monetary recovery allowed by the statutes before they can claim the statutory minimum. Plaintiffs disagree on the law. But even were Spokeo correct, the Viewed-Prior-to-Purchase Plaintiffs can show on a Class-wide basis that they are entitled to recover Spokeo's "profits from the unauthorized use," which are recoverable under the statutes. Cal. Civ. Code § 3344; Ind. Code § 32-36-1-10 ("profits derived from the unauthorized use."); *see also* Ohio Rev. Code § 2741.07 (A)(1) ("profits derived from and attributable to the unauthorized use"). Plaintiffs are required to show "proof only of the gross revenue attributable to such use." *See* Cal. Civ. Code § 3344. Here, proof of the revenue Spokeo earned from subscription purchases that were made immediately after viewing Class members' teaser profiles is straightforward. ██████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████ *See* Osborn Decl., Ex. 6 (second supplemental response to ROG 4,
████████████████████████████████████████████████████████████████
█████████████████████████ ). Thus, even were entitlement to some independent form of monetary recovery required to claim the statutory minimums, Plaintiffs can prove Spokeo's unauthorized profits on a Class-wide basis.

**Entitlement to Injunctive Relief is a Common Issue of Law and Fact for All Classes.** Plaintiffs seek injunctive relief on behalf of all Classes prohibiting Spokeo from continuing its illegal advertising practices. Whether Class members are entitled to such relief, and what modifications Spokeo must make to its practices to bring its advertising in compliance with the law, are issues common for every member of every Class.

**Whether Purchase is Required is a Common Legal Issue.** Spokeo may argue that publishing a teaser profile does not count as use to advertise unless the teaser profile succeeded in drawing a purchase. That is, Spokeo may assert that the individuals with a valid Right of Publicity claim are those whose teaser profiles were viewed by a user immediately prior to that user purchasing a subscription. Plaintiffs disagree on the law. The publication of an advertisement is commercial use to advertise, regardless of whether and when the advertisement motivates a purchase. Indeed, multiple courts evaluating claims under Ohio's and Illinois' right of publicity statutes have ruled that whether and by whom the advertisement was even seen is irrelevant, much less whether it motivated a purchase. The right of publicity "does not impose a viewership requirement." *Fischer*, 2022 WL 971479, at *11; *see also Siegel v. ZoomInfo Techs*, No. 21-cv-2032, 2021 WL 4306148, at *3 (N.D. Ill. Sep. 22, 2021) (rejecting argument that "actual view[ing]" must be alleged); *Knapke v. PeopleConnect*, 553 F. Supp. 3d 865, 876 (W.D. Wash. 2021) (Ohio claims) (while common law false light claims require "some allegation that members of the public saw the offending image," there is "no valid basis" to import this requirement into the right of publicity). Plaintiffs' and Class members' claims arise from Spokeo's creation and publication of advertisements making unauthorized commercial use of their likenesses. The Class is not required to show whether or how often the advertisements were viewed by members of the public. *See Fischer*, 2022 WL 971479, at *10 ("how many (if any) InstantCheckmate users saw a putative class member's search result . . . is immaterial to whether InstantCheckmate violated the [Illinois right of publicity]").

That third-party viewing is not a required element is further confirmed by the many decisions holding that a cause of action accrues when the defendant first publishes the advertisement by making it available online, <u>not</u> when a member of the public first views it. In *Tseng v. PeopleConnect*, Judge Chen ruled that "claims [under California's statute] accrue . . . when the relevant material is first made publicly available." No. 20-cv-9203, 2023 WL 2725878, at *10 (N.D. Cal. March 30, 2023). Likewise, in *Bonilla v. Ancestry.com*, Case No. 20-

cv-07390, --- F. Supp. 3d. ---, 2022 WL 4291359 (N.D. Ill. Sep. 16, 2022), Judge Kendall held that an Illinois right of publicity claim accrued when the defendant website first uploaded the plaintiff's photograph to its website. A right of publicity action accrues on "the date [the defendant] started to publicly use the [plaintiff's] record," not the date on which some third party viewed the record. *Id.*, at *12; *see also Yeager v. Bowlin*, 693 F.3d 1076, 1081–82 (9th Cir. 2012) (California right of publicity action accrued when the defendant first uploaded the allegedly infringing content to its website, not when the content was first viewed by a member of the public). These holdings would make no sense if a "use to advertise" occurred only when a third party viewed the advertisement. *See Bonilla*, 2022 WL 4291359, at *3 (rejecting argument that a claim accrues when the defendant "actively generates each advertisement in response to a query").

While Plaintiffs are confident that the purchase issue will be resolved in their favor, at this stage the question is simply whether its resolution would affect Class members similarly. Here, should this Court decide that purchase is required, then all members of the Viewed-Prior-to-Purchase Classes would have claims, while those who are only members of the Published Classes would not. Conversely, should this Court agree with Plaintiffs' position, then the members of all Classes have claims.

**Application of the Statute of Limitations is a Common Issue**. Spokeo may argue that some Class Members' claims are untimely because Spokeo first published a teaser profile about them more than two years (the limitations period for California claims) or four years (Ohio claims) prior to the filing of this lawsuit. Resolution of this issue turns on a common question of fact: whether the significant modifications Spokeo made to its teaser profiles in late 2020 and early 2021 constitute a republication under the single-publication-rule, thereby retriggering the California and Ohio limitations periods.[9]

---

[9] Unlike California and Ohio, Indiana follows the discovery rule, under which a right of publicity claim does not accrue until the plaintiff actually becomes aware, or through reasonable diligence should have become aware, of the injury. *See Habig v. Bruning*, 613 N.E.2d 61, 64 (Ind. Ct. App.

1    California and Ohio follow the single publication rule, under which a right of publicity

2 claim accrues on the date the defendant first published the offending advertisement, unless the

3 advertisement is subsequently modified. *See Christoff v. Nestle USA Inc.,* 152 Cal.App.4th 1439,

4 1458-63 (Cal. Ct. App. 2007) (explaining that meaningful modifications constitute a republication

5 under the single publication rule); *T.S. v. Plain Dealer*, 954 N.E.2d 213 (Ohio Ct. App. 2011)

6 (similar). If a defendant modifies an advertisement, the modification will restart the limitations

7 period if it indicates "a conscious, deliberate choice to continue, renew or expand the use of . . .

8 plaintiff's misappropriated image." *Estate of Fuller v. Maxfield & Oberton Holdings, LLC*

9 ("*Oberton*"), 906 F. Supp. 2d 997, 1009 (N.D. Cal. 2012) (quoting *Christoff*).

10    Here, the record shows that Spokeo made significant modifications to the design and

11 content of every teaser profile on its website in late 2020/early 2021. *See, e.g.*, Osborn Decl., Ex. 7

12 ███████████████████████████████████████████████████████████

13 ██████████████████████████████████████ Ex. 3, at -6049 █████████

14 ███████████████████████████████████████████████████████████

15 █████████████████████████████████████████████ Daly Tr., at 99:24-

16 100:10 ████████████████████████████████████████████████████

17 ████████████████████████████████████████████ . The modifications evidence a

18 "conscious" and "deliberate" attempt to "expand" the effectiveness of the advertisements

19

20    _____

1993). Here, Spokeo violated the Indiana statute and injured Ms. Boedeker when it displayed her

21 teaser profile to a user in Indiana, who then purchased a subscription. *See* Ind. Code § 32-36-1(a)

(requiring, unlike California's or Ohio's statutes, "an act or event that occurs in Indiana"). Because

22 Spokeo did not notify Ms. Boedeker, she had no way of discovering this misuse absent counsel's

investigation. *See* FAC ¶¶134-35; 146. The same is true for the members of the nationwide class

23 pursuing Indiana claims that Ms. Boedeker seeks to represent. Their claims are therefore timely.

24

Spokeo may argue the Indiana limitations period should be measured from the date a purchase was

25 made, rather than the date of discovery. Plaintiffs disagree, but the issue is moot, because the

Nationwide Viewed-Prior-to-Purchase in Indiana members' claims would also be timely under

26 this reading. The Class asserting Indiana claims is limited to those whose teaser profiles motivated

a purchase in Indiana on or after November 19, 2019, *i.e.*, two years prior to the filing of this suit.

11

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:21-cv-08976-WHO)

incorporating Class member personas. *See Oberton*, 906 F. Supp. 2d at 1009. Spokeo made the modifications to "optimize [search engine] performance" – that is, to increase the prominence and frequency with which Spokeo's teaser profiles appear in search engine results. *See* Ex. 7. Under the single publication rule, Spokeo's 2020/2021 modifications were a republication, and therefore the statute of limitations restarted for every teaser profile in late 2020/early 2021. *See, e.g.*, *Christoff*, 152 Cal.App.4th at 1461; *Oberton*, 906 F. Supp. 2d at 1006.

Again, the task before this Court is not to resolve the statute of limitations issue on the law. Indeed, the issue is not appropriate for resolution without further development of the record. *See Christoff*, 152 Cal.App.4th at 1461-63 (whether a modification constitutes republication depends on the facts). Rather, the question is whether the statute of limitations issue is common to the members of each Class. Here, resolution of the issue will affect all members of a given Class in the same way.

**Whether California Law Protects Non-California Residents is a Common Issue.** Two of the proposed Classes assert claims under California law on behalf of nationwide classes. Spokeo is headquartered in California, and the decisions giving rise to this action took place in California. *See* Compl. ¶¶19-20, 37; FAC ¶¶20-21, 53; Daly Tr., at 164:9-21. Unlike some parallel statutes in other states, California's Right of Publicity statute contains no geographic limitations. *Compare* Ohio Rev. Code § 2471.03(a) (Ohio statute "applies only to . . . the persona of an individual whose domicile or residence is in this state") *and* Ind. Code § 32-36-1 (Indiana statute applies to "an act or event that occurs in Indiana, regardless of a personality's domicile, residence, or citizenship"); *with* Cal. Civ. Code § 3344 (no geographic limitation). Several courts have certified nationwide classes for settlement purposes where the plaintiffs asserted § 3344 claims against California companies. *See Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939 (N.D. Cal. 2013); *Perkins v. LinkedIn, Inc.*, No. 13-cv-04303-LHK (N.D. Cal. Feb. 16, 2016). Accordingly, Spokeo's use of individuals' personas without consent to advertise subscriptions violates California law, regardless of where in the United States those individuals reside. Spokeo may argue otherwise. Again, the

1  question at this stage is simply whether resolution of the issue will affect all members of the two

2  relevant Classes in the same way – which, clearly, it would.

3                                                      ***

4          Thus, while only one common question of law or fact is required, as shown above there are

5  many shared questions of law and fact for each proposed Class.  The courts in *Fischer* and *Huebner*

6  found commonality in cases presenting the same common issues. *See Fischer*, 2022 WL 971479,

7  at *4 (commonality satisfied in right of publicity case against website owned by PeopleConnect

8  that, like Spokeo, uses profiles of personal information to advertise subscriptions); *Huebner*, 2016

9  WL 8114189, at *1 (granting class certification under Rule 23(b)(3) because the defendant people-

10  search website "seems to have acted uniformly in all respects relevant to the plaintiffs' Civil Code

11  § 3344 . . . claims"). The Court should reach the same conclusion here.

12            **3.   Plaintiffs' claims are typical of those of the proposed Classes.**

13          Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical

14  of the claims or defenses of the class." The "test of typicality [] is whether other [class] members

15  have the same or similar injury, whether the action is based on conduct which is not unique to the

16  named plaintiffs, and whether other class members have been injured by the same course of

17  conduct." *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)

18  This test is met when the claims of the named plaintiffs are "reasonably co-extensive with those

19  of absent class members; they need not be substantially identical." *Meyer v. Portfolio Recovery*

20  *Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (quotation omitted). "Defenses unique to a

21  class representative counsel against class certification only where they threaten to become the

22  focus of the litigation." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009). In determining

23  whether a unique defense "threatens to become the focus," a court may consider the plausibility of

24  the defense and its own prior rulings regarding the defense. *See id.* (rejecting argument that unique

25  defense undermined typicality because the court had already rejected the defense).

26

27

1       Here, typicality is satisfied because Plaintiffs' claims arise from the same course of conduct,

2  are based on the same legal theories, and seek the same relief as those of the Classes they seek to

3  represent. As explained above, Spokeo published and maintains teaser profiles about the Plaintiffs,

4  which it uses to advertise subscriptions. *See* Compl.; FAC. Each of the Class members is the

5  subject of an advertising teaser profile identical in form and advertising content to those of the

6  named Plaintiffs. *See* Part A(2) *above*. The teaser profiles of Plaintiffs Susan Gledhill Stephens,

7  Benny Gallegos, and Shelly Boedeker each drew an actual purchase within the relevant limitations

8  period. That is, each of their teaser profiles were viewed by a spokeo.com visitor immediately prior

9  to that visitor purchasing a subscription. FAC ¶¶42, 47, 52. Their claims are therefore typical of

10  the Viewed-Prior-to-Purchase Classes they seek to represent. None of the Plaintiffs ever created

11  accounts with spokeo.com. *See* Compl. ¶¶38, 54, 70; FAC ¶¶54, 70, 86, 102, 118, 134. By

12  definition, neither have the absent Class members. Any issues arising from account creation – for

13  example, any alleged agreement to a Terms of Service – are therefore common. Plaintiffs seek the

14  same relief as absent Class Members, an injunction prohibiting Spokeo from advertising using

15  Class Members' names and personas and, for each of the Viewed-Prior-to-Purchase Class,

16  statutory damages.

17       In summary, Plaintiffs' claims are typical because they suffered the same injuries and seek

18  the same relief as the Class Members they seek to represent.

### 4.  Plaintiffs and their counsel are adequate representatives.

20       Rule 23(a)(4) requires that the parties will "fairly and adequately protect the interests of

21  the class." A court must "resolve two questions: (1) do the named plaintiffs and their counsel have

22  any conflicts of interest with other class members and (2) will the named plaintiffs and their

23  counsel prosecute the action vigorously on behalf of the class?" *Espinosa v. Ahearn (In re Hyundai*

24  *& Kia Fuel Econ. Litig.)*, 926 F.3d 539, 566 (9th Cir. 2019) (quotation omitted). Here, both

25  questions resolve in favor of certification.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:21-cv-08976-WHO)

### a.   There is no fundamental conflict of interest.

No fundamental conflict exists between the proposed Classes and Plaintiffs and their counsel. The Viewed-Prior-to-Purchase Plaintiffs seek the same compensation for themselves that they do for absent Class members, *i.e.*: $1,000 for members of the Nationwide class asserting Indiana claims; and $750 for members of the Nationwide and California classes asserting California claims who are not also members of the Nationwide class asserting Indiana claims. Plaintiffs also seek an injunction prohibiting Spokeo from using Class members' names and personas to advertise subscriptions, which would affect the members of all Classes similarly. The claims of all members of a given Class arise under the same state's law. Because "the requested relief applies equally throughout the class," as Plaintiffs prove their claims, they will also be proving the claims of the absent Class members. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (quotation omitted). Therefore, there is no fundamental conflict of interest.

### b.   Plaintiffs and their counsel have and will prosecute vigorously.

Plaintiffs submit with this motion declarations demonstrating their ability and interest in representing the Class and prosecuting this action, as Plaintiffs Kellman, Fry, and Newman have done since the Complaint was filed nearly two years ago. *See* Kellman Decl.; Fry Decl.; Newman Decl.; Stephens Decl.; Gallegos Decl.; Boedeker Decl. The law firms seeking to represent the Class include qualified lawyers experienced in the successful prosecution of consumer class actions. To support the determinations required under Rules 23(a)(4) and 23(g), the firms each submit with this motion declarations and/or firm resumes setting forth their relevant experience and expertise. *See* Osborn Decl., ¶¶14-21; Borrelli Decl. & Ex. A; Ram Decl. & Ex. A.[10] These firms stand ready, willing, and able to devote the resources necessary to litigate this case vigorously and see it through to the best possible resolution. Counsel have already devoted

---

[10] The firms are Morgan & Morgan, LLP; Turke & Strauss, LLP; and the Law Office of Benjamin R. Osborn.

1  substantial resources to this matter, litigating substantial motion practice before this Court and
2  conducting discovery.

3        **B.      For the Viewed-Prior-to-Purchase Classes, the Predominance Requirement of**
4               **Rule 23(b)(3) is Satisfied.**

5        Rule 23(b)(3) requires that common questions of law or fact predominate over individual
6  ones. This inquiry focuses on whether the "common questions present a significant aspect of the
7  case and [if] they can be resolved for all members of the class in a single adjudication." *Hanlon*,
8  150 F.3d at 1022 (internal quotations and citation omitted); *see also Tyson Foods, Inc. v.*
9  *Bouaphakeo*, 577 U.S. 442, 453 (2016). Each element of a claim need not be susceptible to class-
10 wide proof, *see Amgen v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013), and the
11 "important questions apt to drive the resolution of the litigation are given more weight in the
12 predominance analysis over individualized questions which are of considerably less significance."
13 *Ruiz Torres v. Mercer Canyons Inc.,* 835 F.3d 1125, 1134 (9th Cir. 2016). Rule 23(b)(3) permits
14 certification when "one or more of the central issues in the action are common to the class and can
15 be said to predominate . . . even though other important matters will have to be tried separately,
16 such as damages or some affirmative defenses peculiar to some individual class members." *Tyson*,
17 577 U.S. at 453.

18       As shown above in the discussion of commonality, liability and entitlement to relief may
19 be proved for every Class using the same evidence. *See Erica P. John Fund, Inc. v. Halliburton*
20 *Co.*, 563 U.S. 804, 809 (2011) (the predominance inquiry "begins, of course, with the elements of
21 the underlying cause of action.") (quotation omitted). Indeed, while common issues need only
22 "predominate," as shown above, every significant issue in this case is common to the members of
23 a given Class. Spokeo may argue, as its direct competitor InstantCheckmate did in *Fischer*, that
24 various individualized issues preclude a finding of predominance. *See Fischer*, 2022 WL 971479.
25 None of these potential arguments would hold water.

26
27

**Consent**: Spokeo may argue that consent presents an individualized issue, because some Class Members may have agreed to the Spokeo.com Terms of Use. Even were Spokeo correct that a person's agreement to the Terms constitutes consent to Spokeo's use of their name and persona to advertise, the Class definitions exclude registered users of Spokeo.com. Therefore, no member of any Class has agreed to Spokeo's Terms. The sole means by which users indicate agreement to the Terms is by registering an account and clicking a button that confirms purchase of a subscription. Osborn Decl., Ex. 8 (██████████████████████████████████████████████ ██████████████████████████████████████); Daly Tr., at 73:15-25 (██████ ████████████████████████████████████████████████████████████ ██████████████████████); *id.*, at 191:2-193:4 (████████████████████ ████████████████). Spokeo may attempt to argue that any Class member who visited spokeo.com implicitly agreed to the Terms simply by visiting the site, even though they did not register and therefore did not indicate their agreement in any way. This argument would be a non-starter. Such "browsewrap" agreements are unenforceable where, as here, "the link to [the] website's terms of use is buried at the bottom of the page." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014); *see* Osborn Decl., Ex. 9 (showing spokeo.com landing page, on which a link to the "Terms" appears in small font at the very bottom of a long webpage).

That Spokeo expressly does <u>not</u> elicit consent is demonstrated by the content of its advertisements. On the payment screen that appears just prior to purchase, Spokeo touts the fact that the subject of the teaser profile "will NOT be notified of your search." *See* FAC ¶¶109, 125, 141. Thus, far from informing the Class members and eliciting their consent, Spokeo's advertisements highlight the Class members' lack of consent as a <u>feature</u> of Spokeo's product.

Spokeo speculates, with no evidence, that Class members may have ████████████ ██████████████████████████████████████████████████████ Osborn Decl., Ex. 5, at 9 (supplemental response to ROG 3). But these speculations, even if true, are irrelevant. The relevant question is whether *Spokeo* obtained Class members' prior consent to

make commercial use of their personas, █████████████████████████████ *See*

*Fischer*, 2022 WL 971479, at *9 ("[W]hatever consent a putative class member gave to a non-party to use or share her identity has no bearing on whether that putative class member consented to [the defendant]'s use of her identity."). When shown the agreements Spokeo had with third party data-suppliers, Spokeo's Rule 30(b)(6) witness ███████████████████████████

████████████████████████████████. Daly Tr., at 159:8-180:10.

In short, should Spokeo argue that consent presents an individualized issue, that argument must fail.

**Voluntary sharing:** Spokeo may argue that the degree to which individual Class members voluntarily share their own personal information with the public – for example, by posting on social networking sites – presents an individualized issue. Spokeo may argue that Class members who have voluntarily shared their information have "less" of a claim than those who have not. This argument fails. Plaintiffs' and Class members' claims arise not from the disclosure of otherwise "private" information, but rather from Spokeo's *commercial use* of their information to advertise subscriptions without consent. *See, e.g.*, *Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008, 1022 n.3 (D. Nev. 2021) ("[R]ight of publicity claims do not depend on publication of private photos, but rather the use of one's likeness for commercial purposes"); *see also Martinez v. ZoomInfo*, No. 21-cv-5725, 2022 WL 1078630, at *5 (W.D. Wash. Apr. 11, 2022). That some Class members may voluntarily share some personal information with the public does not affect their right to prevent Spokeo from using their personal information to advertise its product. *See Kellman v. Spokeo, Inc.*, 2023 WL 411353, at *5 (N.D. Cal. Jan. 25, 2023) ("[I]t seems doubtful that any information that plaintiffs posted on their private social media accounts is relevant to defend against plaintiffs' claims about unlawful use of their personal information *for commercial purposes and without consent*, and Spokeo provides no authority to support its request.") (Court's emphasis).

State right of publicity statutes ensure that individuals can safely place their names, personas, and personal information in the public sphere, without fear that an unscrupulous

18

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:21-cv-08976-WHO)

company will misappropriate and exploit their names and personas for an unauthorized commercial purpose. *See, e.g.*, *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1031-33 (S.D. Ohio 2016) (non-celebrity plaintiffs who willingly posted their engagement photograph online had a "property right" in refusing commercial use of the photograph on a book cover because they "did not place the photograph on the internet for expropriation" by the defendant author). If, as Spokeo contends, sharing aspects of one's name and persona with one audience and purpose – for example, filling out an address in a loan application or posting a photograph on social media – constituted "implicit" consent for the use of one's name and persona by anyone and for any purpose, then the right of publicity would protect no one.

**Celebrities:** PeopleConnect may argue that whether individual Class members are celebrities or have otherwise previously invested in the commercial value of their likenesses presents an individualized issue. To the extent this argument relates to liability, this argument fails because Plaintiffs' claims do not require alleging celebrity status or commercial value independent of the defendants' use. *See, e.g.*, *Kellman*, 599 F. Supp. 3d at 891.

To the extent this argument relates to damages, Plaintiffs acknowledge that, although few in number, there are likely some celebrities in the Viewed-Prior-to-Purchase Classes for whom the potential value of their claim against Spokeo may exceed the statutory minimum damages Plaintiffs seek on their behalf. If these individuals wish to pursue recovery in a larger amount, they may opt-out of the Class and pursue their own action against Spokeo. In *Lane v. Facebook, Inc.*, 696 F.3d 811, 824 (9th Cir. 2012), the Ninth Circuit observed that Rule 23(b)(3) provides Class members the "opportunity to opt out . . . to pursue their claims separately" precisely because "individual class members will often claim differing amounts of damages."

**C.      For the Viewed-Prior-to-Purchase Classes, the Superiority Requirement of Rule 23(b)(3) is Satisfied.**

Rule 23 provides a non-exhaustive list of factors for consideration when determining whether a class action is superior to other methods for adjudicating the controversy:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and]

(D) the difficulties likely to be encountered in the management of a class action.

*See Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 713 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3)). These factors weigh in favor of class treatment here.

With respect to the first factor, the Class members' claims are so relatively small – between $750 and $1,000 for members of the Viewed-Prior-to-Purchases Classes, and injunctive relief only for members of the Published Classes – that it would cost more to litigate an individual's case than they could hope to recover. Class certification is "the only feasible means for them to adjudicate their claims." *See Levya v. Medline Indus., Inc.*, 716 F.3d 510, 515 (9th Cir. 2013).

The second and third factors also weigh in favor of certification. This case has been pending since November 2021. The parties have engaged in substantial discovery, including multiple rounds of written discovery, substantial document production, and depositions. Plaintiffs are aware of one parallel action pending in California state court, in which the plaintiffs assert claims under Ohio's and Illinois' right of publicity statutes. *See Boyd v. Spokeo, Inc.*, 21-cv-13644 (Sup. Ct. Cal. Apr. 9, 2021). Plaintiffs are in regular contact with counsel pursuing *Boyd* and understand that case is not as procedurally advanced as this one. This Court has become familiar with the factual and legal issues via the motion to dismiss, motion to certify interlocutory appeal, and the parties' motions to compel. *See Hernandez v. Wells Fargo  & Co.*, No. 18-cv-07354, 2020 WL 469893, at *15 (N.D. Cal. Jan. 29, 2020) (third factor weighed in favor of certification because "this Court has overseen this case for well over a year and is familiar with the underlying issues"). Holding

20

separate trials for claims that could be tried together would be costly, inefficient, and a burden on the court system.

The fourth "management" factor focuses on the "practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163 (1974). Here, Plaintiff does not foresee any serious manageability problems, and certainly none that would render millions of individual actions a better alternative.

Although manageability does not require "demonstrating an administratively feasible way to identify class members," *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017), here the Class members are easily identifiable by reference to the profiles Spokeo maintains on its website. The proposed Class is defined by "objective and definite" criteria, all of which are easily verified by reference to Spokeo's records. *See id.*, at 1126 n.6. Each Class member is the subject of a Spokeo teaser profile, and ███████████████████████████████████████ thus enabling precise identification of both the identity and state of residence of every Class member. *See* Daly Tr., at 60:6-15. ███████████████████████████████████████

███████████████████████████████████████ *See* Osborn Decl. ¶13; *id.*, Ex. 10, at 3 (second supplemental response to RFP 8, ███████████████████████████████████ ███████████████████████████████████; *id.*, Ex. 11, at 4-5 (corrected response to ROG 23, ███████████████████████████████████ ███████████████████████████ This enables identification of the Class members whose teaser profiles were viewed immediately prior to a purchase and, as relevant to the nationwide viewed-in-Indiana class, identification of those whose profiles motivated a purchase in Indiana. Spokeo also possesses the names, email addresses, and billing addresses of individuals who are registered users of Spokeo.com, thus enabling easy exclusion of those who thereby excluded from the Class definitions. *See id*, Ex. 10, at 3-5 (second supplemental response to RFP 8).

Class notice is also feasible. "[T]he Due Process Clause does not require actual, individual notice in all cases." *Briseno*, 844 F.3d at 1129 (quoting *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994)). Here, however, actual individual notice is both possible and practicable. Plaintiffs submit with this motion the Declaration of Steven Weisbrot, an experienced claims administrator, attesting to the feasibility of Class member identification and Class notice. *See* Weisbrot Decl. The vast majority of Spokeo's teaser profiles include email addresses.[11] Class members may therefore be notified by email. To the extent there are teaser profiles without associated email address,[12] those Class members may be reached through alternate means including programmatic display advertising, social media, paid search, and publication in print media. "Courts have routinely held that notice" by similar methods such as "publication in a periodical, on a website, or even at an appropriate physical location is sufficient." *Briseno*, 844 F.3d at 1129.

For these reasons, the superiority requirement is satisfied.

### D.      All of the Proposed Classes Satisfy the Requirements of Rule 23(b)(2).

The requirements of Rule 23(b)(2) "are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014). Here, all of the Plaintiffs seek an injunction prohibiting Spokeo from using names and personas to advertise subscriptions without consent, a practice that Spokeo engages in with respect to every member of every Class. Because Plaintiffs seek uniform injunctive relief from practices generally applicable to the Classes, the Classes should be certified under Rule 23(b)(2).

---

[11] Although the email addresses are redacted/blurred out in the "teaser" versions Spokeo publishes to advertise subscriptions, Spokeo possesses the full email addresses.

[12] Having reviewed hundreds of teaser profiles during their investigation, neither Plaintiffs' counsel nor the experts they retained encountered a single profile that lacks an email address.

1

**<u>CONCLUSION</u>**

2

For the reasons above, Plaintiffs respectfully requests the Court GRANT their motion to

3
certify the Viewed-Prior-to-Purchases Classes pursuant to Rules 23(b)(3) and 23(b)(2), and to

4
certify the Published Classes pursuant to Rule 23(b)(2). In the alternative, should this Court

5
determine that only certain issues are appropriate for class treatment, Plaintiffs respectfully request

6
certification of those issues under Rule 23(c)(4).

7

8
Dated: May 3, 2023                    By: <u>*/s/ Raina C. Borrelli*</u>
                                          Raina C. Borrelli (*pro hac vice*)

9                                         raina@turkestrauss.com
                                          Samuel J. Strauss (*pro hac vice*)

10                                        sam@turkestrauss.com
                                          Brittany Resch (*pro hac vice*)

11                                        brittanyr@turkestrauss.com
                                          TURKE & STRAUSS LLP

12                                        613 Williamson St., Suite 201

13                                        Madison, Wisconsin 53703-3515
                                          Telephone: (608) 237-1775

14                                        Facsimile: (608) 509-4423

15
                                          Benjamin R. Osborn (*pro hac vice*)

16                                        ben@benosbornlaw.com
                                          LAW OFFICE OF BENJAMIN R. OSBORN

17                                        102 Bergen Street
                                          Brooklyn, NY 11201

18                                        Telephone: (347) 645-0464

19
                                          Michael F. Ram (SBN 104805)

20                                        mram@forthepeople.com
                                          Marie N. Appel (SBN 187483)

21                                        mappel@forthepeople.com
                                          MORGAN & MORGAN

22                                        COMPLEX LITIGATION GROUP

23                                        711 Van Ness Avenue, Suite 500
                                          San Francisco, CA 94102

24                                        Telephone: (415) 358-6913
                                          Facsimile: (415) 358-6923

25

26                                        *Attorneys for Plaintiffs and the Proposed Classes*

27

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:21-cv-08976-WHO)

## <u>CERTIFICATE OF SERVICE</u>

I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 3rd day of May, 2023.

TURKE & STRAUSS LLP

By: <u>/s/ Raina C. Borrelli</u>
    Raina C. Borrelli (*pro hac vice*)
    raina@turkestrauss.com
    TURKE & STRAUSS LLP
    613 Williamson St., Suite 201
    Madison, WI 53703
    Telephone: (608) 237-1775
    Facsimile: (608) 509-4423

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:21-cv-08976-WHO)