1  Michael F. Ram (SBN 104805)
   mram@forthepeople.com
2  Marie N. Appel (SBN 187483)
   mappel@forthepeople.com
3  MORGAN & MORGAN
4  COMPLEX LITIGATION GROUP
   711 Van Ness Avenue, Suite 500
5  San Francisco, CA 94102
   Telephone: (415) 358-6913
6  Facsimile: (415) 358-6293

7
   Benjamin R. Osborn (to be admitted *Pro Hac Vice*)
8  Law Office of Benjamin R. Osborn
   102 Bergen St.
9  Brooklyn, NY 11201
   Telephone: (347) 645-0464
10 Email: ben@benosbornlaw.com

11
   Raina C. Borrelli (*pro hac vice*)
12 Samuel J. Strauss (*pro hac vice*)
   TURKE & STRAUSS LLP
13 613 Williamson St., Suite 201
   Madison, Wisconsin 53703-3515
14 Telephone: (608) 237-1775
15 Facsimile: (608) 509-4423
   raina@turkestrauss.com
16 sam@turkestrauss.com

17 *Attorneys for Plaintiffs and the Proposed Class*

18         **THE UNITED STATES DISTRICT COURT**

19      **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

20              **SAN FRANCISCO DIVISION**

21 AVIVA KELLMAN, JASON FRY,          Case No. 3:21-cv-08976-WHO
   NICHOLAS NEWELL, SUSAN GLEDHILL
22 STEPHENS, BENNY GALLEGOS,          **SECOND AMENDED CLASS ACTION**
   WILLIAM WILLIAMS, and SHELLY       **COMPLAINT FOR VIOLATION OF**
23 BOEDEKER, on behalf of themselves and all  **CALIFORNIA, OHIO, AND INDIANA**
   others similarly situated,         **RIGHT OF PUBLICITY STATUTES;**
24                      Plaintiffs,   **CALIFORNIA, OHIO, AND INDIANA**
                                      **MISAPPROPRIATION OF NAME OR**
25 v.                                 **LIKENESS; AND CALIFORNIA UCL**

26 SPOKEO, INC.,

27                      Defendant.    CLASS ACTION
                                      JURY TRIAL DEMANDED

**NATURE OF ACTION**

1.      Plaintiffs[1] and members of the proposed classes ("Class Members") are private individuals who have no relationship with the Defendant Spokeo, Inc. or the website it owns and operates at www.spokeo.com. Plaintiffs and Class Members have never used spokeo.com, nor did they provide their names, ages, photographs, addresses, emails, phone numbers, or any other personal information to Spokeo.

2.      Plaintiffs were seriously distressed to discover that Spokeo is using their names, personal information, photographs, likenesses, and personas to advertise paid subscriptions to its website. Spokeo's advertisements falsely suggest that the Plaintiffs may have criminal records.

3.      Plaintiffs and Class Members did not consent to Spokeo using their names, personal information, photographs, likenesses, and personas to advertise website subscriptions or any other product.

4.      Spokeo advertises its website by publicly displaying teaser profiles of the Plaintiffs and Class Members with their names; ages; current and past cities of residence; partially redacted addresses, emails, and phone numbers; and other personal information. Some teaser profiles include photographs.

5.      Spokeo advertises that it possesses additional information about Plaintiffs and Class Members including: "Criminal Records"; "Sex Offenses"; "DUIs"; "details about birth, marriage, and divorce"; "Relationship Status"; "Location History"; "Estimated Salary"; "Family Members"; and unredacted "Full Address[es]"; "Email Address[es]," and "Phone Number[s]."

6.      Spokeo advertises that, if users purchase a subscription plan at a cost of $24.95 per month, they will receive access to a full profile containing all the personal information

---

[1] Plaintiffs Gallegos and Boedeker voluntarily dismissed their claims on August 31, 2023, and are no longer parties to this action. Docs. 120, 121.

Spokeo has concerning Plaintiffs and Class Members, as well as full profiles containing similar information about millions of other individuals.

7.      Spokeo does not merely present Plaintiffs' and Class Members' profiles as "samples" advertising the purchase of a single profile containing information about the person whose persona Spokeo used in the advertisement. Rather, Spokeo uses Plaintiffs' and Class members' names and personas to advertise recurring subscriptions to the website. Although the webpage soliciting payment appears to be charging only "$0.95" for access to a specific profile, small print reveals that the purchaser is also purchasing a "Spokeo Membership," which after the expiration of a one-week free trial "will be billed [at] 24.95 per month."

8.      A Spokeo membership includes far more than access to the profile of the individual whose persona Spokeo used to advertise the membership. Membership delivers access to the full profiles of hundreds of millions of individuals, incorporating "over 12 billion records from thousands of data sources." Profiles include "available contact info, location history, photos, social media accounts, family members, court records, work information, and much more."

9.      A paid Spokeo membership also delivers Spokeo's "Stay Updated" service, with which members can track specific individuals and receive updates about changes to their personal information.

10.      Spokeo is the sole author, designer, and implementor of the advertising techniques and messages giving rise to this lawsuit. Spokeo does not host user-generated content. Spokeo is the sole curator, designer, and creator of the content described in this Complaint, including the teaser profiles representing Plaintiffs and Class Members and the advertisements soliciting subscriptions.

11.      Plaintiffs do not know how Spokeo obtained their personal information. Spokeo states that it collects "from a large variety of public online and offline sources," including "Property Records," "Consumer Records," "Historical Records," "Court Records," "Business Records," and "Social Networks. Spokeo does not disclose specific sources.

12.     Spokeo misappropriated Plaintiffs' and Class Members' names, ages, photographs, addresses, emails, phone numbers, additional personal information, personas, and likenesses without permission or consent from Plaintiffs or Class Members.

13.     Spokeo prompts visitors to its website to "[s]earch by name, phone, address or email to confidentially lookup information about people you know such as yourself, friends, family, acquaintances, and old classmates."

14.     Consent is not all or nothing. Plaintiffs and Class Members may have shared their names, photographs, addresses, and other personal information with certain companies or the government in a variety of contexts. For example, Plaintiffs or Class Members may have shared their names and addresses with a company when making a credit card purchase, or they may have shared their photographs with a social media site when creating profiles.

15.     But Plaintiffs and Class Members did not consent to the commercial use of their personal information and personas to promote subscriptions to a website with which they have no relationship. Spokeo makes money by peddling personal information it has no right to use. Spokeo's payment page intentionally misleads consumers into believing they are purchasing a single profile for 95 cents, when in fact they are purchasing a Spokeo membership at a cost of $24.95 per month. Plaintiffs and Class Members did not consent to the use of their likenesses and personas to promote Spokeo's unethical schemes.

16.     California, Ohio, and Indiana law recognize the intellectual property and privacy rights of individuals in controlling the use of their names, photographs, likenesses, and personas for commercial purposes.

17.     By using Plaintiffs' and Class Members' names, likenesses, photographs, and personas in advertisements for website subscriptions without consent, Spokeo violated their intellectual property and privacy rights. Plaintiffs and Class Members have the right not to have their names, likenesses, photographs, and personas exploited to promote a website with which they have no relationship and which they have no interest in supporting. Plaintiffs and Class Members have an economic interest in their names, likenesses, photographs, and personas,

which Spokeo has stolen, and a privacy interest in their names, likenesses, photographs, and personas, which Spokeo has violated. Spokeo has been unjustly enriched through its actions. Plaintiffs and Class Members have a right to the money Spokeo earned exploiting their names, likenesses, photographs, and personas.

18.     By these actions, Spokeo has violated California's Right of Publicity statute, codified in Cal. Civ. Code § 3344; California common law prohibiting misappropriation of a name or likeness; Ohio's Right of Publicity statute, codified in Ohio Rev. Code § 2741; Ohio common law prohibiting misappropriation of a name or likeness; Indiana's Right of Publicity statute, codified in Ind. Code § 32-36-1; Indiana common law prohibiting misappropriation of a name or likeness; and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* Plaintiffs and Class Members have suffered injury through the unlawful taking of their valuable intellectual property; through the invasion of their privacy rights protected by statute and common law; through Spokeo's unlawful profiting from its exploitation of their names, personas, and personal information; and through harm to peace of mind. Plaintiffs and the Class are entitled to relief including statutory damages, disgorgement of profits, royalties for the use of their names and personas, restitution of the value of their names and personas, an injunction prohibiting Spokeo's unlawful conduct, an award of attorneys' fees, expenses, and costs, and declaratory and injunctive relief.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act ("CAFA")), because: (A) at least one Class Member is a citizen of a state different from at least one defendant. Defendant Spokeo is incorporated in Delaware and has its principal place of business in Pasadena, California. Plaintiffs assert claims on behalf of a nationwide class, which includes members from every state in the country. (B) Each of the proposed Classes – including the two proposed sub-Classes limited to residents of Ohio and Indiana – consists of at least 100 members. And (C) the amount in controversy exceeds $5,000,000 exclusive of interest and costs based on the California statutory claims alone. Cal.

Civ. Code § 3344 provides for statutory damages "equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered," as well as "any profits from the unauthorized use." The statute also allows for punitive damages and an award of attorneys' fees and costs. Because Spokeo is a California corporation using the names and personal information of hundreds of millions of individuals to advertise its website, the amount in controversy is well over the jurisdictional limit.

20.     This Court has general personal jurisdiction over Spokeo because its headquarters and principal place of business are in this state.

21.     This Court has specific personal jurisdiction over Spokeo because a significant portion of the events giving rise to this lawsuit occurred in this state, including: Spokeo's design and creation of the advertisements incorporating Plaintiffs' and Class Members' names, likenesses, and personas; Spokeo's copying of Plaintiffs' and Class Members' personal information from a variety of online sources; Spokeo's display of Plaintiffs' and Class Members' teaser profiles in advertisements available to the public online; Spokeo's failure to obtain required consent from Class Members who reside in California; and Spokeo's violation of the intellectual property rights of Class Members who reside in California.

22.     Plaintiff Kellman resides in this state and District. Spokeo violated Plaintiff Kellman's intellectual property rights and misappropriated her name, personal information, and persona, the locus of which is in this state and District. Spokeo failed to obtain the required consent in this state and District. Spokeo displayed the advertisements using Plaintiff's name, personal information, and persona in this state and District.

23.     Plaintiffs Stephens and Gallegos reside in this state. Spokeo violated their intellectual property rights and misappropriated their names, personal information, and personas, the locus of which is in this state. Spokeo failed to obtain the required consent in this state. Spokeo displayed the advertisements using their names, personal information, and personas in this state.

24.     Plaintiffs Fry, Newell, Williams, and Boedeker do not reside in California. However, Spokeo's illegal use of their names, likenesses, photographs, and personas in advertisements for website subscriptions without their consent in violation of their intellectual property and privacy rights originated from and was directed by Spokeo from its California headquarters.

25.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged occurred in this District.

## PARTIES

26.     Plaintiff Aviva Kellman is a citizen of California. Ms. Kellman resides in Alameda, California. Ms. Kellman has never used or subscribed to the website spokeo.com.

27.     Spokeo has Ms. Kellman's name, current and past addresses, current and past phone numbers, current and past email addresses, and relative's names. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Ms. Kellman that Spokeo distributes publicly on its website.

28.     The purpose of the teaser profile is to advertise paid Spokeo Memberships. The unredacted information visible on Ms. Kellman's teaser profile uniquely identifies Ms. Kellman.

29.     Spokeo claims to have additional information about Ms. Kellman, including her "Court Records," "Arrests," "Felonies," "Marital Status," "Vital Info & Historical Records," "Online Aliases," "Photos and Videos," and "Employment History." Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Ms. Kellman, and the ability to search for similar information about hundreds of millions of other individuals.

30.     Plaintiff Jason Fry is a citizen of Indiana. Mr. Fry resides in Wabash, Indiana. Mr. Fry has never used or subscribed to the website spokeo.com.

31.     Spokeo has Mr. Fry's name, current and past addresses, current and past phone numbers, current and past email addresses, and relative's names. Spokeo uses this personal

information, some of which is partially redacted, in a teaser profile about Mr. Fry that Spokeo distributes publicly on its website.

32.    The purpose of the teaser profile is to advertise paid Spokeo Memberships. The unredacted information visible on Mr. Fry's teaser profile uniquely identifies Mr. Fry.

33.    Spokeo claims to have additional information about Mr. Fry, including his "Court Records," "Arrests," "Felonies," "Marital Status," "Vital Info & Historical Records," "Online Aliases," "Photos and Videos," and "Employment History." Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Fry, and the ability to search for similar information about hundreds of millions of other individuals.

34.    Plaintiff Nicholas Newell is a citizen of Ohio. Mr. Newell resides in Zanesville, Ohio. Mr. Newell has never used or subscribed to the website spokeo.com.

35.    Spokeo has Mr. Newell's name, current and past addresses, current and past phone numbers, current and past email addresses, and relative's names. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Mr. Newell that Spokeo distributes publicly on its website.

36.    The purpose of the teaser profile is to advertise paid Spokeo Memberships. The unredacted information visible on Mr. Newell's teaser profile uniquely identifies Mr. Newell.

37.    Spokeo claims to have additional information about Mr. Newell, including his "Court Records," "Arrests," "Felonies," "Marital Status," "Vital Info & Historical Records," "Online Aliases," "Photos and Videos," and "Employment History." Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Newell, and the ability to search for similar information about hundreds of millions of other individuals.

38.    Plaintiff Susan Gledhill Stephens is a citizen of California. Ms. Stephens resides in Redondo Beach, California. Ms. Stephens has never used or subscribed to the website spokeo.com.

39.     Spokeo has Ms. Stephens' name, current and past addresses, current and past phone numbers, email address, and relative's names. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Ms. Stephens that Spokeo distributes publicly on its website.

40.     The purpose of the teaser profile is to advertise paid Spokeo Memberships. The unredacted information visible on Ms. Stephens' teaser profile uniquely identifies Ms. Stephens.

41.     Spokeo claims to have additional information about Ms. Stephens, including her "Court Records," "Arrests," "Felonies," "Marital Status," "Vital Info & Historical Records," "Online Aliases," "Photos and Videos," and "Employment History." Spokeo advertises that users who purchase a Spokeo Membership will receive access to this additional information about Ms. Stephens, and the ability to search for similar information about hundreds of millions of other individuals.

42.     Ms. Stephen's teaser profile motivated the purchase of a Spokeo Membership subscription. That is, at least one individual purchased a subscription immediately after viewing Spokeo's teaser profile about Ms. Stephens.

43.     Plaintiff Benny Gallegos is a citizen of California. Mr. Gallegos resides in Fresno, California. Mr. Gallegos has never used or subscribed to the website spokeo.com.

44.     Spokeo has Mr. Gallegos' name, current and past addresses, current and past phone numbers, current and past email addresses, and relative's names. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Mr. Gallegos that Spokeo distributes publicly on its website.

45.     The purpose of the teaser profile is to advertise paid Spokeo Memberships. The unredacted information visible on Mr. Gallegos' teaser profile uniquely identifies Mr. Gallegos.

46.     Spokeo claims to have additional information about Mr. Gallegos, including his "Court Records," "Arrests," "Felonies," "Marital Status," "Vital Info & Historical Records," "Online Aliases," "Photos and Videos," and "Employment History." Spokeo advertises that

users who purchase a Spokeo Membership will receive access to this additional information about Mr. Gallegos, and the ability to search for similar information about hundreds of millions of other individuals.

47.     Mr. Gallegos' teaser profile motivated the purchase of a Spokeo Membership subscription. That is, at least one individual purchased a subscription immediately after viewing Spokeo's teaser profile about Mr. Gallegos.

48.     Plaintiff William Williams is a citizen of Ohio. Mr. Newell resides in Tiffin, Ohio. Mr. Williams has never used or subscribed to the website spokeo.com.

49.     Spokeo has Mr. Williams' name, current and past addresses, current and past phone numbers, current and past email addresses, and relative's names. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Mr. Williams that Spokeo distributes publicly on its website.

50.     The purpose of the teaser profile is to advertise paid Spokeo Memberships. The unredacted information visible on Mr. Williams' teaser profile uniquely identifies Mr. Williams.

51.     Spokeo claims to have additional information about Mr. Williams, including his "Court Records," "Arrests," "Felonies," "Marital Status," "Vital Info & Historical Records," "Online Aliases," "Photos and Videos," and "Employment History." Spokeo advertises that users who purchase a Spokeo Membership will receive access to this additional information about Mr. Williams, and the ability to search for similar information about hundreds of millions of other individuals.

52.     Mr. Williams' teaser profile motivated the purchase of a Spokeo Membership subscription. That is, at least one individual purchased a subscription immediately after viewing Spokeo's teaser profile about Mr. Williams.

53.     Plaintiff Shelly Boedeker is a citizen of Indiana. Ms. Boedeker resides in Valparaiso, Indiana. Ms. Boedeker has never used or subscribed to the website spokeo.com.

54.     Spokeo has Ms. Boedeker's name, current and past addresses, current and past phone numbers, email address, and relative's names. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Ms. Boedeker that Spokeo distributes publicly on its website.

55.     The purpose of the teaser profile is to advertise paid Spokeo Memberships. The unredacted information visible on Ms. Boedeker's teaser profile uniquely identifies Ms. Boedeker.

56.     Spokeo claims to have additional information about Ms. Boedeker, including her "Court Records," "Arrests," "Felonies," "Marital Status," "Vital Info & Historical Records," "Online Aliases," "Photos and Videos," and "Employment History." Spokeo advertises that users who purchase a Spokeo Membership will receive access to this additional information about Ms. Boedeker, and the ability to search for similar information about hundreds of millions of other individuals.

57.     Ms. Boedeker's teaser profile motivated the purchase of a Spokeo Membership subscription in Indiana. That is, at least one individual in Indiana purchased a subscription immediately after viewing Spokeo's teaser profile about Ms. Boedeker.

58.     Defendant Spokeo, Inc. is a Delaware corporation with its headquarters in Pasadena, California. Defendant owns and operates the website spokeo.com.

### FACTUAL ALLEGATIONS

**Plaintiff Aviva Kellman**

59.     Plaintiff Aviva Kellman is not a subscriber and has never used spokeo.com.

60.     Ms. Kellman did not give consent to Spokeo to use her name, likeness, personal information, or persona in any way. Had Spokeo requested her consent, Ms. Kellman would not have provided it.

61.     Spokeo uses Ms. Kellman's name and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Ms. Kellman. The teaser profile includes her name, age, city of residence, and partially redacted phone number and email. The teaser profile uniquely identifies Ms. Kellman. Screenshots depicting the teaser profile are shown below.



1
2
3
4
5
6
7
8
9
10
11
12
13
14



15
16
17
18
19

62.     As shown in the screenshots above, Ms. Kellman's teaser profile advertises that Spokeo has additional personal information about Ms. Kellman, including: "8 phone numbers and emails"; "9 addresses" in her address history; the identity of one of her family members; two of her social media accounts; one "Court Record," which the profile suggests may include "Arrests," "Sex Offenders," or "Felonies"; details about Ms. Kellman's "marriage, and divorce"; "property details"; and "employment history."

20
21
22
23
24
25
26
27

63.     Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Ms. Kellman by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates."



64.     Users who searched for Ms. Kellman received the teaser profile uniquely identifying Ms. Kellman by name, age, city of residence, and partially redacted contact information.

65.     Spokeo uses Ms. Kellman's teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Ms. Kellman, and (2) searchable access to personal information about hundreds of millions of other individuals.

66.     Users who clicked on the button marked "Unlock Profile" on Ms. Kellman's teaser profile were shown a page encouraging them to buy the full profile about Ms. Kellman for $0.95. Although the page intentionally conceals this, users who made this $0.95 purchase were automatically signed up for a Spokeo Membership, which costs $24.95 per month after a seven-day trial period. For privacy, Plaintiffs have obscured the names of Ms. Kellman's family members, which appear unredacted on the original webpage.



67.     After clicking "Continue," users see a page soliciting payment by credit or debit card. As shown in the screenshot below, although the bolded purchase price appears to be only $0.95, Spokeo discloses in small italic text that the user "will be billed 24.95 per month" for a Spokeo Membership.



68.     Spokeo's purpose in using Ms. Kellman's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

69.     Ms. Kellman does not know how Spokeo obtained her personal information.

70.     Contrary to the insinuations Spokeo published in its advertisements about Ms. Kellman, she has not committed any felony, nor is she a sex offender.

71.     Spokeo misappropriated Ms. Kellman's personal information and persona without permission from Ms. Kellman or the various sources from which it presumably stole her information.

72.     Ms. Kellman has intellectual property and privacy interests in her name,

likeness, and persona recognized by California statutory and common law. She has the right to exclude anyone from making commercial use of her persona without her permission.

73.     Spokeo has injured Ms. Kellman by taking her intellectual property without compensation; by invading her privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of her personal information.

74.     Spokeo's illegal actions caused Ms. Kellman mental injury and disturbed her peace of mind. Ms. Kellman is deeply uncomfortable that Spokeo is using her name and persona in advertisements for a website she does not use or approve of. Ms. Kellman believes her persona is rightly hers to control. Spokeo's illegal use has left her worried and uncertain about her inability to control how her name and persona is used. Ms. Kellman feels that Spokeo's use of her name and persona is an alarming invasion of her privacy. Ms. Kellman believes that Spokeo's collection and publication of intimate personal details about her and her family members encourages and enables identity fraud.

**Plaintiff Jason Fry**

75.     Plaintiff Jason Fry is not a subscriber and has never used spokeo.com.

76.     Mr. Fry did not give consent to Spokeo to use his name, likeness, photograph, personal information, or persona in any way. Had Spokeo requested his consent, Mr. Fry would not have provided it.

1    77.    Spokeo uses Mr. Fry's name, photograph, and persona in advertisements

2  promoting its website memberships. Spokeo publicly displays a teaser profile of personal

3  information about Mr. Fry. The teaser profile includes a photograph of his face, name, age, city

4  of residence, past cities of residence, and partially redacted phone number and email. The teaser

5  profile uniquely identifies Mr. Fry. Screenshots depicting the teaser profile are shown below.

6  For privacy, Plaintiffs have redacted the photograph depicting Mr. Fry's face. The original is

7  blurred but identifiable as Mr. Fry.



78.     As shown in the screenshots above, Mr. Fry's teaser profile advertises that Spokeo has additional personal information about Mr. Fry, including: "9 phone numbers and emails"; "13 addresses" in his address history; the identity of five of his family members; ten of his social media accounts; three "Court Records," which the profile suggests may include "Arrests," "Sex Offenders," or "Felonies"; details about Mr. Fry's "marriage, and divorce"; "property details"; and "employment history."

79.     Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Mr. Fry by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See* ¶ 58 *above*.

80.     Users who searched for Mr. Fry received the teaser profile uniquely identifying Mr. Fry by photograph, name, age, current and past cities of residence, and partially redacted contact information.

1   81.   Spokeo uses Mr. Fry's teaser profile to advertise a paid "Spokeo Membership,"

2   which provides (1) access to the additional personal information and unredacted contact

3   information of Mr. Fry, and (2) searchable access to personal information about hundreds of

4   millions of other individuals.

5   82.   Users who clicked on the button marked "Unlock Profile" on Mr. Fry's teaser

6   profile were shown a page encouraging them to buy the full profile about Mr. Fry for $0.95.

7   Although the page intentionally conceals this fact, users who made this $0.95 purchase were

8   automatically signed up for a Spokeo Membership, which costs $24.95 per month after a seven-

9   day trial period. For privacy, Plaintiffs' counsel redacted the names of Mr. Fry's family

10  members, which appear unredacted on the original webpage.



83.     After clicking "Continue," users see a page soliciting payment by credit or debit card. As shown in the screenshot below, although the bolded purchase price appears to be only $0.95, Spokeo discloses in small italic text that the user "will be billed 24.95 per month" for a Spokeo Membership.



84.     Spokeo's purpose in using Mr. Fry's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

85.     Mr. Fry does not know how Spokeo obtained his personal information.

86.     Contrary to the insinuations Spokeo published in its advertisements about Mr. Fry, he has not committed any felony, nor is he a sex offender.

87.     Spokeo misappropriated Mr. Fry's image, personal information, and persona without permission from Mr. Fry or the various sources from which it presumably stole his information.

88.     Mr. Fry has intellectual property and privacy interests in his name, likeness, and persona recognized by California and Indiana statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

89.     Spokeo has injured Mr. Fry by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

90.     Spokeo's illegal actions caused Mr. Fry mental injury and disturbed his peace of mind. Mr. Fry is deeply uncomfortable that Spokeo is using his name and persona in advertisements for a website he does not use or approve of. Mr. Fry believes his persona is rightly his to control. Spokeo's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. Fry feels that Spokeo's use of his name and persona is an alarming invasion of his privacy. Mr. Fry believes that Spokeo's collection and publication of intimate personal details about him and his family members encourages and enables identity fraud.

**Plaintiff Nicholas Newell**

91.     Plaintiff Nicholas Newell is not a subscriber and has never used spokeo.com.

92.     Mr. Newell did not give consent to Spokeo to use his name, personal information, or persona in any way. Had Spokeo requested his consent, Mr. Newell would not have provided it.

93.     Spokeo uses Mr. Newell's name and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Mr. Newell. The teaser profile includes his name, age, current and past cities of residence, and partially redacted phone number and email. The teaser profile uniquely identifies Mr. Newell. Screenshots depicting the teaser profile are shown below.





94.    As shown in the screenshots above, Mr. Newell's teaser profile advertises that Spokeo has a host of additional personal information about Mr. Newell, including: "19 phone numbers and emails"; "9 addresses" in his address history; the identity of four of his family members; thirty-two of his social media accounts; six "Court Records," which the profile suggests may include "Arrests," "Sex Offenders," or "Felonies"; details about Mr. Newell's "marriage, and divorce"; "property details"; and "employment history."

95.    Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Mr. Newell by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See* ¶ 58 *above*.

96.    Users who searched for Mr. Newell received the teaser profile uniquely identifying Mr. Newell by name, age, current and past cities of residence, and partially redacted contact information.

97.     Spokeo uses Mr. Newell's teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Mr. Newell, and (2) searchable access to personal information about hundreds of millions of other individuals.

98.     Users who clicked on the button marked "Unlock Profile" on Mr. Newell's teaser profile were shown a page encouraging them to buy the full profile about Mr. Newell for $0.95. Although the page intentionally conceals this fact, users who made this $0.95 purchase were automatically signed up for a Spokeo Membership, which costs $24.95 per month after a seven-day trial period. For privacy, Plaintiffs have redacted the names of Mr. Newell's family members, which appear unredacted on the original webpage.



1

99.     After clicking "Continue," users see a page soliciting payment by credit or debit

2   card. As shown in the screenshot below, although the bolded purchase price appears to be only

3   $0.95, Spokeo discloses in small italic text that the user "will be billed 24.95 per month" for a

4   Spokeo Membership.

5

6

7

8

9

10



11

12

13

14

15

16

17

18

19      100.    Spokeo's purpose in using Mr. Newell's name, personal information, and

20   persona on its website is to solicit the purchase of paid memberships.

21      101.    Mr. Newell does not know how Spokeo obtained his personal information.

22      102.    Contrary to the insinuations Spokeo published in its advertisements about Mr.

23   Newell, he has not committed any felony, nor is he a sex offender.

24      103.    Spokeo misappropriated Mr. Newell's personal information and persona without

25   permission from Mr. Newell or the various sources from which it presumably stole his

26   information.

27

104.    Mr. Newell has intellectual property and privacy interests in his name, likeness, and persona recognized by California and Ohio statutory and common law. He has the right to exclude anyone from making commercial use of her persona without her permission.

105.    Spokeo has injured Mr. Newell by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

106.    Spokeo's illegal actions caused Mr. Newell mental injury and disturbed his peace of mind. Mr. Newell is deeply uncomfortable that Spokeo is using his name and persona in advertisements for a website he does not use or approve of. Mr. Newell believes his persona is rightly his to control. Spokeo's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. Newell feels that Spokeo's use of his name and persona is an alarming invasion of his privacy. Mr. Newell believes that Spokeo's collection and publication of intimate personal details about him and his family members encourages and enables identity fraud.

**Plaintiff Susan Gledhill Stephens**

107.    Plaintiff Susan Gledhill Stephens is not a subscriber and has never used spokeo.com.

108.    Ms. Stephens did not give consent to Spokeo to use her name, personal information, or persona in any way. Had Spokeo requested her consent, Ms. Stephens would not have provided it.

1    109.     Spokeo uses Ms. Stephens' name and persona in advertisements promoting its

2   website memberships. Spokeo publicly displays a teaser profile of personal information about

3   Ms. Stephens. The teaser profile includes her name, age, current and past cities of residence,

4   and partially redacted phone number and email. The teaser profile uniquely identifies Ms.

5   Stephens. Screenshots depicting the teaser profile are shown below. For privacy, counsel have

6   redacted the names, ages, and locations of two of Ms. Stephens' family members, which appear

7   on the unredacted teaser profile.

8





110.     As shown in the screenshots above, Ms. Stephens' teaser profile advertises that Spokeo has a host of additional personal information about Mr. Newell, including: "4 phone numbers and emails"; "3 addresses" in her address history; the identity of four of her family members; three of his social media accounts; sixty-five "Court Records," which the profile suggests may include "Arrests," "Sex Offenders," or "Felonies"; details about Ms. Stephens' "marriage, and divorce"; "property details"; and "employment history."

111.     Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Ms. Stephens by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See* ¶ 58 *above.*

112.     Users who searched for Ms. Stephens received the teaser profile uniquely identifying Ms. Stephens by name, age, current and past cities of residence, and partially redacted contact information.

113.    Spokeo uses Ms. Stephens' teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Ms. Stephens, and (2) searchable access to personal information about hundreds of millions of other individuals.

114.    Users who click on the button marked "Unlock Profile" on Ms. Stephens' teaser profile are shown a page encouraging them to buy a subscription membership at a cost ranging from $18.95 per month to $23.95 per month. (It appears that, since the time Plaintiffs filed their initial complaint, Spokeo has changed this page such that it no longer misleadingly conceals the fact that those who purchase a name report for $0.95 will automatically be signed up for a monthly subscription at a much higher price.) As shown below, the page highlights as a selling point that Ms. Stephens "will NOT be notified of your search."

115.     Spokeo's purpose in using Ms. Stephen's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

116.     At least one user viewed Ms. Stephens' teaser profile immediately prior to purchasing a subscription Spokeo membership.

117.     Ms. Stephens does not know how Spokeo obtained her personal information.

118.     Contrary to the insinuations Spokeo published in its advertisements about Ms. Stephens, she has not committed any felony, nor is she a sex offender.

119.     Spokeo misappropriated Ms. Stephens' personal information and persona without permission from Ms. Stephens.

120.     Ms. Stephens has intellectual property and privacy interests in her name, likeness, and persona recognized by California statutory and common law. She has the right to exclude anyone from making commercial use of her persona without her permission.

121.     Spokeo has injured Ms. Stephens by taking her intellectual property without compensation; by invading her privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of her personal information.

122.     Spokeo's illegal actions caused Ms. Stephens mental injury and disturbed her peace of mind. Ms. Stephens is deeply uncomfortable that Spokeo is using her name and persona in advertisements for a website she does not use or approve of. Ms. Stephens believes her persona is rightly hers to control. Spokeo's illegal use has left her worried and uncertain about her inability to control how her name and persona is used. Ms. Stephens feels that Spokeo's use of her name and persona is an alarming invasion of her privacy. Ms. Stephens believes that Spokeo's collection and publication of intimate personal details about her and her family members encourages and enables identity fraud.

**Plaintiff Benny Gallegos**

123.    Benny Gallegos is not a subscriber and has never used spokeo.com.

124.    Mr. Gallegos did not give consent to Spokeo to use his name, personal information, or persona in any way. Had Spokeo requested her consent, Mr. Gallegos would not have provided it.

125.    Spokeo uses Mr. Gallegos's name and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Mr. Gallegos. The teaser profile includes his name, age, current and past cities of residence, and partially redacted phone number and email. The teaser profile uniquely identifies Mr. Gallegos. Screenshots depicting the teaser profile are shown below. For privacy, counsel have redacted the names, ages, and locations of two of Mr. Gallegos' family members, which appear on the unredacted teaser profile.



126.    As shown in the screenshots above, Mr. Gallegos's teaser profile advertises that Spokeo has a host of additional personal information about Mr. Gallegos, including: "12 phone numbers and email addresses"; "8 addresses" in his address history; the identity of 9 of his family members; 49 of his social media accounts; 22 "Court Records," which the profile suggests may include "Arrests," "Sex Offenders," or "Felonies"; details about Mr. Gallegos' "marriage, and divorce"; "property details"; and "employment history."

127.    Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Mr. Gallegos by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See* ¶ 58 *above.*

128.    Users who searched for Mr. Gallegos received the teaser profile uniquely identifying Mr. Gallegos by name, age, current and past cities of residence, and partially redacted contact information.

129.    Spokeo uses Mr. Gallegos' teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Mr. Gallegos, and (2) searchable access to personal information about hundreds of millions of other individuals.

130.    Users who click on the button marked "Unlock Profile" on Mr. Gallegos's teaser profile are shown a page encouraging them to buy a subscription membership at a cost ranging from $18.95 per month to $23.95 per month. (It appears that, since the time Plaintiffs filed their initial complaint, Spokeo has changed this page such that it no longer misleadingly conceals the fact that those who purchase a name report for $0.95 will automatically be signed up for a monthly subscription at a much higher price.) As shown below, the page highlights as a selling point that Mr. Gallegos "will NOT be notified of your search."



131.    Spokeo's purpose in using Mr. Gallegos's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

132.    At least one user viewed Mr. Gallegos' teaser profile immediately prior to purchasing a subscription Spokeo membership.

133.    Mr. Gallegos does not know how Spokeo obtained his personal information.

134.    Contrary to the insinuations Spokeo published in its advertisements about Mr. Gallegos, he has not committed any felony, nor is he a sex offender.

135.    Spokeo misappropriated Mr. Gallegos' personal information and persona without permission from Mr. Gallegos.

136.    Mr. Gallegos has intellectual property and privacy interests in his name, likeness, and persona recognized by California statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

137.    Spokeo has injured Mr. Gallegos by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

138.    Spokeo's illegal actions caused Mr. Gallegos mental injury and disturbed his peace of mind. Mr. Gallegos is deeply uncomfortable that Spokeo is using his name and persona in advertisements for a website he does not use or approve of. Mr. Gallegos believes his persona is rightly his to control. Spokeo's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. Gallegos feels that Spokeo's use of his name and persona is an alarming invasion of his privacy. Mr. Gallegos believes that Spokeo's collection and publication of intimate personal details about him and his family members encourages and enables identity fraud.

**Plaintiff William Williams**

139.    Plaintiff William Williams is not a subscriber and has never used spokeo.com.

140.    Mr. Williams did not give consent to Spokeo to use his name, personal information, or persona in any way. Had Spokeo requested his consent, Mr. Williams would not have provided it.

141.     Spokeo uses Mr. William's name and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Mr. Williams. The teaser profile includes his name, age, current and past cities of residence, and partially redacted phone number and email. The teaser profile uniquely identifies Mr. Williams. Screenshots depicting the teaser profile are shown below.





142.    As shown in the screenshots above, Mr. Williams' teaser profile advertises that Spokeo has a host of additional personal information about Mr. Williams, including: "10 phone numbers and emails"; "8 addresses" in his address history; the identity of 12 of his family members; sixty-five of his social media accounts; three "Court Records," which the profile suggests may include "Arrests," "Sex Offenders," or "Felonies"; details about Mr. Williams' "marriage, and divorce"; "property details"; and "employment history."

143.    Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Mr. Williams by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See* ¶ 58 *above*.

144.    Users who searched for Mr. Williams received the teaser profile uniquely identifying Mr. Williams by name, age, current and past cities of residence, and partially redacted contact information.

145.    Spokeo uses Mr. Williams' teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Mr. Williams, and (2) searchable access to personal information about hundreds of millions of other individuals.

146.    Users who click on the button marked "Unlock Profile" on Mr. Williams' teaser profile are shown a page encouraging them to buy a subscription membership at a cost ranging from $18.95 per month to $23.95 per month. (It appears that, since the time Plaintiffs filed their initial complaint, Spokeo has changed this page such that it no longer misleadingly conceals the fact that those who purchase a name report for $0.95 will automatically be signed up for a monthly subscription at a much higher price.) As shown below, the page highlights as a selling point that Mr. Williams "will NOT be notified of your search."

147.    Spokeo's purpose in using Mr. Williams' name, personal information, and persona on its website is to solicit the purchase of paid memberships.

148.    At least one user viewed Mr. Williams' teaser profile immediately prior to purchasing a subscription Spokeo membership.

149.    Mr. Williams does not know how Spokeo obtained his personal information.

150.    Contrary to the insinuations Spokeo published in its advertisements about Mr. Williams, he has not committed any felony, nor is he a sex offender.

151.    Spokeo misappropriated Mr. Williams' personal information and persona without permission from Mr. Williams.

152.    Mr. Williams has intellectual property and privacy interests in his name, likeness, and persona recognized by California and Ohio statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

153.    Spokeo has injured Mr. Williams by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

154.    Spokeo's illegal actions caused Mr. Williams mental injury and disturbed his peace of mind. Mr. Williams is deeply uncomfortable that Spokeo is using his name and persona in advertisements for a website he does not use or approve of. Mr. Williams believes his persona is rightly his to control. Spokeo's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. Williams feels that Spokeo's use of his name and persona is an alarming invasion of his privacy. Mr. Williams believes that Spokeo's collection and publication of intimate personal details about him and his family members encourages and enables identity fraud.

**Plaintiff Shelly Boedeker**

155.    Shelly Boedeker is not a subscriber and has never used spokeo.com.

156.    Ms. Boedeker did not give consent to Spokeo to use her name, personal information, or persona in any way. Had Spokeo requested her consent, Ms. Boedeker would not have provided it.

157.    Spokeo uses Ms. Boedeker's name and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Ms. Boedeker. The teaser profile includes her name, age, current and past cities of residence, and partially redacted phone number and email. The teaser profile uniquely identifies Ms. Boedeker Screenshots depicting the teaser profile are shown below. For privacy, counsel have redacted the names, ages, and locations of two of Ms. Boedeker's family members, which appear on the unredacted teaser profile.



158.    As shown in the screenshots above, Ms. Boedeker's teaser profile advertises that Spokeo has a host of additional personal information about Ms. Boedeker, including: "11 phone numbers and email addresses"; "2 addresses" in her address history; the identity of 4 of her family members; 20 of her social media accounts; "Court Records," which the profile suggests may include "Arrests," "Sex Offenders," or "Felonies"; and details about Ms. Boedeker's "marriage, and divorce"; "property details"; and "employment history."

159.    Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Ms. Boedeker by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See* ¶ 58 *above*.

160.    Users who searched for Ms. Boedeker received the teaser profile uniquely identifying Ms. Boedeker by name, age, current and past cities of residence, and partially redacted contact information.

161.    Spokeo uses Ms. Boedeker's teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Ms. Boedeker, and (2) searchable access to personal information about hundreds of millions of other individuals.

162.    Users who click on the button marked "Unlock Profile" on Ms. Boedeker's teaser profile are shown a page encouraging them to buy a subscription membership at a cost ranging from $18.95 per month to $23.95 per month. (It appears that, since the time Plaintiffs filed their initial complaint, Spokeo has changed this page such that it no longer misleadingly conceals the fact that those who purchase a name report for $0.95 will automatically be signed up for a monthly subscription at a much higher price.) As shown below, the page highlights as a selling point that Ms. Boedeker "will NOT be notified of your search."

163. Spokeo's purpose in using Ms. Boedeker's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

164. At least one user in Indiana viewed Ms. Boedeker's teaser profile immediately prior to purchasing a subscription Spokeo membership.

165. Ms. Boedeker does not know how Spokeo obtained her personal information.

166. Contrary to the insinuations Spokeo published in its advertisements about Ms. Boedeker, she has not committed any felony, nor is he a sex offender.

167. Spokeo misappropriated Ms. Boedeker's personal information and persona without permission from Ms. Boedeker.

168. Ms. Boedeker has intellectual property and privacy interests in her name, likeness, and persona recognized by California statutory and common law. She has the right to exclude anyone from making commercial use of her persona without her permission.

169. Spokeo has injured Ms. Boedeker by taking her intellectual property without compensation; by invading her privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of her personal information.

170. Spokeo's illegal actions caused Ms. Boedeker mental injury and disturbed her peace of mind. Ms. Boedeker is deeply uncomfortable that Spokeo is using her name and persona in advertisements for a website she does not use or approve of. Ms. Boedeker believes her persona is rightly hers to control. Spokeo's illegal use has left her worried and uncertain about her inability to control how her name and persona is used. Ms. Boedeker feels that Spokeo's use of her name and persona is an alarming invasion of her privacy. Ms. Boedeker believes that Spokeo's collection and publication of intimate personal details about her and her family members encourages and enables identity fraud.

1

## CLASS ACTION ALLEGATIONS

2        171.    Plaintiffs bring this action both individually and as a class action pursuant to

3   Fed. R. Civ. P. 23(b)(2) and (b)(3). Plaintiffs seek to represent the following Classes:

4        Viewed-Prior-to-Purchase Classes:

5        **Nationwide Viewed-Prior-to-Purchase Class** (claims under California law;
         represented by Plaintiffs Stephens, Gallegos, Williams, and Boedeker): All United
6        States residents who are not registered users of Spokeo.com and whose teaser
         profile was viewed by a user immediately prior to purchasing a Spokeo.com
7        subscription on or after November 19, 2019, where such teaser profile includes a
         name and home address.
8

9        **California Viewed-Prior-to-Purchase Class** (claims under California law;
         represented by Plaintiffs Stephens and Gallegos): All California residents who are
10       not registered users of Spokeo.com and whose teaser profile was viewed by a user
         immediately prior to purchasing a Spokeo.com subscription on or after November
11       19, 2019, where such teaser profile includes a name and home address.

12
         **Ohio Viewed-Prior-to-Purchase Class** (claims under Ohio law; represented by
13       Plaintiff Williams): All Ohio residents who are not registered users of Spokeo.com
         and whose teaser profile was viewed by a user immediately prior to purchasing a
14       Spokeo.com subscription on or after November 18, 2017, where such teaser profile
         includes a name and home address.
15

16       **Nationwide Viewed-Prior-to-Purchase in Indiana Class** (claims under Indiana
         law; represented by Plaintiff Boedeker): All United States residents who are not
17       registered users of Spokeo.com and whose teaser profile was viewed by a user
         immediately prior to purchasing a Spokeo.com subscription on or after November
18       19, 2019, where the purchasing user's billing information listed an address in
19       Indiana, and where such teaser profile includes a name and home address.

20       Published Classes:

21       **Nationwide Published Teaser Profile Class** (claims under California law;
         represented by all Plaintiffs): All United States residents who are not registered
22       users of Spokeo.com and whose teaser profile is searchable on www.spokeo.com,
         where such teaser profile includes a name and home address.
23

24       **California Published Teaser Profile Class** (claims under California law;
         represented by Plaintiffs Kellman, Stephens, and Gallegos): All United States
25       residents who are not registered users of Spokeo.com and whose teaser profile is
         searchable on www.spokeo.com, where such teaser profile includes a name and
26       home address.

27

**Ohio Published Teaser Profile Class** (claims under Ohio law; represented by Plaintiffs Fry and Williams)**:** All Ohio residents who are not registered users of Spokeo.com and whose teaser profile is searchable on www.spokeo.com, where such teaser profile includes a name and home address.

172.    Excluded from the proposed Classes are Plaintiffs' counsel; Spokeo, its officers and directors, counsel, successors, and assigns; any entity in which Spokeo has a controlling interest; and the judge to whom this case is assigned and the judge's immediate family.

173.    The members of the proposed Classes are so numerous that joinder of individual claims is impracticable. Spokeo advertises that users can find profiles on "virtually any one of the 300 million people living within the United States within seconds." Accordingly, Spokeo claims to have teaser profiles on every or nearly every person in the United States. The size of the Nationwide Class is therefore close to the population of the United States, and the sizes of the Indiana and Ohio Sub-Classes are close to the populations of those states.

174.    There are significant questions of fact and law common to the members of each Class. These include:

    a.  Whether Spokeo's misappropriation of names and personal information, and use of that information in the advertising techniques described in this Complaint, constitutes the knowing use for commercial purposes without consent of another's name, photograph, likeness, persona, or personality, in violation of California, Ohio, and Indiana law;

    b.  Whether Spokeo solicited and obtained consent from the Class members prior to using their personas in advertisements promoting its website, as required by California, Ohio, and Indiana law;

    c.  Whether Spokeo's use of the Nationwide Class Members' names and personal information in advertisements falls within any statutory exceptions recognized by California's, Ohio's, and Indiana's right of publicity statutes;

    d.  The amount of Spokeo's profits from the unauthorized use of Class members' names and personal information to advertise;

e.   Whether Plaintiffs and the Nationwide Class Members are entitled to the injunctive, declaratory, monetary, punitive, and other relief requested in this Complaint.

175.   The Plaintiffs' claims are typical of those of the proposed Classes they seek to represent. Plaintiffs and all members of the proposed Classes have been harmed by Spokeo's misappropriation and misuse of their identifies, names, likenesses, personas, and other personal information in advertisements promoting spokeo.com. Spokeo presents its advertisements in the same way for each Class member. For the Plaintiffs seeking to represent Viewed-Prior-to-Purchase Classes, each Plaintiff's teaser profile was viewed by a Spokeo user immediately prior to that user purchasing a subscription.

176.   The proposed Class representatives will fairly and adequately represent the proposed Classes. The Class representative's claims are co-extensive with those of the rest of the Classes. Plaintiffs are represented by qualified counsel experienced in class action litigation of this nature.

177.   A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the proposed Classes is impracticable. Many members of the Classes do not have the financial resources necessary to pursue this claim, and even if they did, the size of their interest in the case may not be large enough to merit the cost of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in which individualized cases would proceed. Individual litigation would greatly increase the time and expense needed to resolve a dispute concerning Spokeo's common actions towards an entire group. Class action procedures allow for the benefits of unitary adjudication, economy of scale, and comprehensive supervision of the controversy by a single court.

178.   The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Spokeo has acted on grounds generally applicable to the

proposed Classes, such that final injunctive and declaratory relief is appropriate with respect to the Classes as a whole.

179.   The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of law and fact common to Class Members predominate over questions affecting individual members, and a class action is superior to other available methods for fairly and efficiency adjudicating the controversy.

## FIRST CAUSE OF ACTION

## California Right of Publicity Statute, Cal. Civ. Code § 3344

All Plaintiffs on behalf of the Nationwide Published Class
Plaintiffs Kellman, Stephens, and Gallegos on behalf of the California Published Class
Plaintiffs Stephens, Gallegos, Williams, and Boedeker on behalf of the Nationwide Viewed Class
Plaintiffs Stephens and Gallegos on behalf of the California Viewed Class

180.   Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

181.   California's right of publicity statute prohibits the "knowing[] use[] of another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent." Cal. Civ. Code § 3344.

182.   By engaging in the foregoing acts and omissions, Spokeo used Plaintiffs' and the Class Members' names, likenesses, photographs, and personas for commercial purposes without consent. Plaintiffs and the Class members' names and personas have commercial value as demonstrated by Spokeos use and similar use by Spokeo's competitors.

183.   Spokeo is a California company. Most of the wrongful acts and omissions giving rise to this complaint occurred in California. Accordingly, each use of a Class member's name, likeness, or persona in a Spokeo advertisement violates Cal. Civ. Code § 3344, wherever the Class member resides in the United States.

184.    Each use of a Class members' name and personal information in a teaser profile or full profile is a separate and distinct violation of Cal. Civ. Code § 3344.

185.    Cal. Civ. Code § 3344 provides that a person who violates the statute is liable "in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages," in addition to "any profits from the unauthorized use." The statute also provides for "[p]unitive damages" and "attorney's fees and costs."

186.    As a result of Spokeo's violation of Cal. Civ. Code § 3344, Plaintiffs and the Class members have suffered injury to their privacy rights and actual damages both economic and emotional. Plaintiffs and the Class members have been denied the economic value of their names, likenesses, and personas, which Spokeo misappropriated without compensation to Plaintiffs and the Class members. Plaintiffs and the Class members were denied their statutorily protected right to refuse consent and protect their privacy and the economic value of their names, likenesses, and personas. Plaintiffs and the Class members suffered emotional disturbance from the misappropriation and misuse of their names and personal information.

187.    Plaintiffs on behalf of the Classes seek actual damages, including Spokeo's profits from its misuse; statutory damages; compensatory damages for the royalties Spokeo failed to pay; restitution; punitive damages; nominal damages; the award of attorneys' fees and costs; the entry of an injunction prohibiting Spokeo's illegal conduct; and declaratory relief.

## SECOND CAUSE OF ACTION

### California Tort of Appropriation of a Name or Likeness

All Plaintiffs on behalf of the Nationwide Published Class
Plaintiffs Kellman, Stephens, and Gallegos on behalf of the California Published Class
Plaintiffs Stephens, Gallegos, Williams, and Boedeker on behalf of the Nationwide Viewed Class
Plaintiffs Stephens and Gallegos on behalf of the California Viewed Class

188.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

189.    California common law recognizes the tort of "appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Eastwood v. Superior Court*, 149 Cal.App.3d 409, 416 (Cal. Ct. App. 1983).

190.    Spokeo is a California company. Most of the wrongful acts and omissions giving rise to this complaint occurred in California. Accordingly, each use of a Class member's name, likeness, or persona in a Spokeo advertisement violates California common law, wherever the Class member resides in the United States.

191.    By engaging in the forgoing acts and omissions, Spokeo (1) used the identities of Plaintiffs and the Class members in advertisements for subscriptions and as part of its subscription products; (2) appropriated Plaintiffs' and the Class members' names and likenesses to Spokeo's commercial advantage; (3) failed to obtain Plaintiffs' and the Nationwide Class members' consent; and (4) injured Plaintiffs' and the Class Members by causing harms both economic and emotional. *See Eastwood,* at 417.

192.    On behalf of the Classes, Plaintiffs seek monetary recovery in the amount of the commercial advantage Spokeo derived from its misuse; compensatory damages for Spokeo's failure to pay royalties owed; and the entry of an injunction prohibiting Spokeo's tortious acts.

### THIRD CAUSE OF ACTION

### Indiana Right of Publicity Statute, Ind. Code § 32-36-1

Plaintiff Boedeker on behalf of the Nationwide Viewed in Indiana Class

193.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

194.    Indiana's right of publicity statute prohibits the use of any "aspect of a personality's right of publicity for a commercial purpose . . . without having obtained previous written consent." Ind. Code. § 32-36-1-8.

195.    By engaging in the forgoing acts and omissions, Spokeo used aspects of Plaintiff Boedeker's and the Class members' personalities, including their names, photographs, images,

likenesses, and distinctive appearances, for commercial purposes without consent. These aspects of Plaintiff Boedeker's and the Class members' personalities have commercial value.

196.    Each use of a Class members' name, photograph, or personality in Indiana is a separate and distinct violation of Ind. Code. § 32-36-1-8.

197.    The following facts and events occurred within Indiana: Spokeo's misappropriation of Plaintiff Boedeker's and Class members' personal information from sources in Indiana; Spokeo's failure to obtain the required consent from Plaintiff Boedeker and Class members in Indiana; Spokeo's display of Plaintiff Boedeker and Class members names, photographs, and personalities in advertisements displayed on Spokeo's website to users in Indiana; and the injury to Plaintiff Plaintiff Boedeker and Class members' intellectual property and privacy rights, which are harms felt in Indiana. *See* Ind. Code § 32-36-1-1(a).

198.    Ind. Code § 32-36-1-10 provides that a person who violates the statute is liable for (1) statutory damages in the amount of $1,000; (b) "actual damages, including profits derived from unauthorized use," if this amount is greater than $1,000; and (c) "[t]reble or punitive damages, as the injured party may elect, if the violation . . . is knowing, willful, or intentional."

199.    Because of Spokeo's violation of Ind. Code. § 32-36-1-8, Plaintiff Boedeker and Class members have suffered injury to their privacy rights and actual damages both economic and emotional. Plaintiff Boedeker and Class members have been denied the economic value of their personalities, which Spokeo misappropriated without compensation to Plaintiff Boedeker and Class members. Plaintiff Boedeker and Class members were denied their statutorily protected right to refuse consent and protect their privacy. Plaintiff Boedeker and Class members suffered emotional disturbance from the misappropriation and misuse of their personalities.

200.    On behalf of the Class, Plaintiff Boedeker seeks actual damages, including Spokeo's profits from its misuse; statutory damages; compensatory damages for the royalties Spokeo failed to pay; treble and punitive damages in light of Spokeo's knowing, willful, and

intentional misuse; nominal damages; the award of attorneys' fees and costs; the entry of an injunction prohibiting Spokeo's illegal conduct; and declaratory relief.

### FOURTH CAUSE OF ACTION

**Indiana Tort of Appropriation of a Name or Likeness**

<u>Plaintiff Boedeker on behalf of the Nationwide Viewed in Indiana Class</u>

201.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

202.    Indiana common law recognizes the tort of appropriation of a name or likeness. The tort creates a cause of action for the appropriation of a likeness by a defendant for the defendant's "own use or benefit." *See, e.g.*, *Felsher v. University of Evansville*, 755 N.E.2d 589 (Ind. 2001).

203.    By engaging in the forgoing acts and omissions, Spokeo appropriated Boedeker and Class members' names and likenesses for its own commercial benefit.

204.    As provided for under Indiana common law, on behalf of the Class, Plaintiff Boedeker seeks monetary recovery in the amount of the commercial benefit Spokeo derived from its misuse of their likeness, as well as the entry of an injunction prohibiting Spokeo's tortious acts.

### FIFTH CAUSE OF ACTION

**Ohio Right of Publicity Statute, Ohio Rev. Code § 2741**

<u>Plaintiffs Newell and Williams on behalf of the Ohio Published Class</u>
<u>Plaintiff Williams on behalf of the Ohio Viewed Class</u>

205.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

206.    Ohio's right of publicity statute prohibits the use of "any aspect of an individual's persona for a commercial purpose" unless the person "first obtains the written consent" of the individual. Ohio Rev. Code § 2741.02 & § 2741.05.

207.    By engaging in the forgoing acts and omissions, Spokeo used aspects of Plaintiff Newell's, Plaintiff Williams' and the Ohio Class Members' personalities, including their

names, photographs, images, likenesses, and distinctive appearances, for a commercial purpose without consent. These aspects of Plaintiff Newell's and the Ohio Class Members' personalities have commercial value, as evidenced by Spokeo's use and similar use by other companies.

208.    Each use of an Ohio Class Members' personality is a separate and distinct violation of Ohio Rev. Code § 2741.02.

209.    Plaintiff Newell, Plaintiff Williams, and the Ohio Class Members are residents of the state of Ohio. *See* Ohio Rev. Code § 2741.03.

210.    Ohio Rev. Code § 2741.07 provides that a person who violates the statute is liable for (1) "[a]ctual damages, including any profits derived from and attributable to the unauthorized use"; (2) "[a]t the election of the plaintiff and in lieu of actual damages, statutory damages in the amount of at least two thousand five hundred dollars and not more than ten thousand dollars"; and (3) "punitive or exemplary damages" if applicable under Ohio Rev. Code § 2315.21. The statute provides that "[t]he trier of fact shall include any profits derived . . in calculating the award of actual damages." Ohio Rev. Code § 3741.07.

211.    Because of Spokeo's violation of Ohio Rev. Code § 2741, Plaintiff Newell, Plaintiff Williams, and the Ohio Classes have suffered injury to their privacy and intellectual property rights, and actual damages both economic and emotional, including actual damages in the amount of the profits Spokeo derived from its unauthorized use.  Plaintiff Newell, Plaintiff Williams, and the Ohio Classes have been denied the economic value of their personas, which Spokeo appropriated without compensation. Plaintiff Newell, Plaintiff Williams, and the Ohio Classes were denied their statutorily protected right to refuse consent and protect their privacy. Plaintiff Newell, Plaintiff Williams, and the Ohio Classes suffered emotional disturbance from the appropriation and misuse of their personas.

212.    On behalf of the Ohio Classes, Plaintiffs Newell and Williams seek statutory damages; actual damages, including Spokeo's profits from its misuse; compensatory damages for royalties Spokeo failed to pay; restitution, punitive and exemplary damages; the award of attorneys' fees and costs; an injunction prohibiting Spokeo's unauthorized use; and declaratory

relief. Plaintiffs Newell and Williams intends to elect between actual and statutory damages at a later stage of the lawsuit, after discovery has revealed the amount of Spokeo's profits.

## SIXTH CAUSE OF ACTION

### Ohio Tort of Appropriation of a Name or Likeness
Plaintiffs Newell and Williams on behalf of the Ohio Published Class
Plaintiff Williams on behalf of the Ohio Viewed Sub-Class

213.   Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

214.   Ohio common law recognizes the tort of appropriation of a name or likeness. The tort creates a cause of action for the appropriation of a likeness by a defendant for the defendant's "own use or benefit." *See, e.g.*, *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St. 2d 224, 231 n. 4 (Ohio 1976) (quotation omitted).

215.   By engaging in the forgoing acts and omissions, Spokeo appropriated Plaintiff Newell's, Plaintiff Williams', and the Ohio Class Members' names and likenesses for its own commercial benefit.

216.   As provided for under Ohio common law, on behalf of the Ohio Classes, Plaintiffs Newell and Williams seek monetary recovery in the amount of the commercial benefit Spokeo derived from its misuse of their likeness, as well as the entry of an injunction prohibiting Spokeo's tortious acts.

## SEVENTH CAUSE OF ACTION

### California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*

All Plaintiffs on behalf of the Nationwide Published Class
Plaintiffs Kellman, Stephens, and Gallegos on behalf of the California Published Class
Plaintiffs Stephens, Gallegos, and Boedeker on behalf of the Nationwide Viewed Class
Plaintiffs Stephens and Gallegos on behalf of the California Viewed Class

217.   Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

218.   Spokeo has and is engaged in unfair competition, as that term is defined in the California Unfair Competition Law, Cal. Bus. & Prof. Code. § 17200 et seq. ("UCL").

219.    As described in this complaint, Spokeo's misappropriation and use without consent of Plaintiffs' and Class members' names, photographs, likenesses, and personal information is a violation of California's Right of Publicity statute, Cal. Civ. Code § 3344; Indiana's Right of Publicity statute, Ind. Code § 32-36-1; Ohio's Right of Publicity statute, Ohio Rev. Code § 2741; and California, Ohio, and Indiana common law prohibiting misappropriation of a name or likeness.

220.    By engaging in the conduct described in this complaint and violating California, Indiana, and Ohio law, Spokeo engaged in and continues to engage in "unlawful" business acts and practices prohibited by the UCL.

221.    By engaging in the conduct described in this complaint, including profiting from the sale and use in advertising of personal information it misappropriated without consent, Spokeo engaged in and continues to engage in "unfair" business acts and practices prohibited by the UCL.

222.    As a result of Spokeo's actions, Plaintiffs and the Class members have been injured. Plaintiffs and the Class members lost the economic value of their names, personas, and likenesses, and are entitled to restitution, declaratory relief and an injunction. Plaintiffs and the Class members were denied their rights to refuse consent and protect their privacy.

### PRAYER FOR RELIEF

223.    WHEREFORE Plaintiffs, individually and on behalf of the Classes, request the following relief:

(a)    For an order certifying the proposed Classes and appointing Plaintiffs and their counsel to represent the Classes;

(b)    For a declaration that Spokeo's acts and omissions constitute a knowing and willful misappropriation of names, likeness, personas, and personalities, and infringe on protected privacy and intellectual property rights, in violation of California, Ohio, and Indiana statutes and common law;

(c)  For nominal damages awarded in recognition of Spokeo's violation of the statutorily protected property and privacy rights of Plaintiffs and Class members;

(d)  For preliminary and permanent injunctive relief enjoining and preventing Spokeo from continuing to operate its spokeo.com website without appropriate safeguards to ensure people's personal information is not used illegally without their consent;

(e)  For restitution to Plaintiffs and Class members of the money Spokeo unjustly earned through sales made by misappropriating their names, likenesses, personas, and personalities;

(f)  For an award of damages, including without limitation: damages for actual harm; profits earned by Spokeo; reasonable royalties for the infringement of Plaintiffs and Class Members' intellectual property rights; and statutory damages;

(g)  For an award of reasonable attorneys' fees and costs incurred by Plaintiffs and Class members; and

(h)  Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial for all individual and Class claims so triable.


Dated: September 8, 2023              By: */s/ Raina C. Borrelli*
                                      Raina C. Borrelli (*pro hac vice*)
                                      Samuel J. Strauss (*pro hac vice*)
                                      Brittany Resch (*pro hac vice*)
                                      TURKE & STRAUSS LLP
                                      613 Williamson St., Suite 201
                                      Madison, Wisconsin 53703-3515
                                      Telephone: (608) 237-1775
                                      Facsimile: (608) 509-4423
                                      raina@turkestrauss.com
                                      sam@turkestrauss.com

brittanyr@turkestrauss.com

Michael F. Ram (SBN 104805)
Marie N. Appel (SBN 187483)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923
mram@forthepeople.com
mappel@forthepeople.com

Benjamin R. Osborn (to be admitted *pro hac vice*)
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464
Email: ben@benosbornlaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

## <u>CERTIFICATE OF SERVICE</u>

I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 8th day of September, 2023.

By: <u>*/s/ Raina C. Borrelli*</u>
Raina C. Borrelli (*pro hac vice*)
raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (608) 509 4423