UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AVIVA KELLMAN, et al.,

        Plaintiffs,

      v.

SPOKEO, INC.,

        Defendant.

Case No. 21-cv-08976-WHO

**ORDER REGARDING CLASS CERTIFICATION**

Defendant Spokeo, Inc., ("Spokeo") runs a website that collects consumer and public data from various public sources and private vendors, associates that data with particular names, and publishes it online. The plaintiffs here are Aviva Kellman, Jason Fry, Nicholas Newell, Susan Gledhill Stephens, and William Williams V. They assert that their statutory rights of publicity and common law rights regarding misappropriation of name and likeness were and are being violated by Spokeo's publication of their personal information. They seek class certification against Spokeo for four classes of people in California and Ohio.[1] For the following reasons, the motion is granted.

## BACKGROUND

### A. FACTUAL BACKGROUND

Much of the relevant case background was discussed in detail in my prior order addressing the defendant's motion to dismiss. ("Prior Order") [Dkt. No. 41]. This Order assumes familiarity with the Prior Order and reproduces key facts, including those based on newly discovered evidence.

---

[1] In their motion, plaintiffs also sought to certify two nationwide classes. They withdrew that request prior to the hearing. Dkt. No. 187.

Spokeo is headquartered in Pasadena, California; it owns and operates the website spokeo.com.  *See* Second Amended Complaint ("SAC") [Dkt. No. 123] ¶ 58; Answer [Dkt. No. 129] ¶ 58.  Spokeo collects data and information about the American adult public from public sources and data vendors.  Deposition of Mike Daly ("Daly Depo.") [Dkt. No. 91-8] 133:25–134:1, 156:3–161:11.

Using proprietary algorithms and systems, Spokeo "attempt[s] to collect and aggregate and merge all that data into persons, person objects, which are then designated with a unique [personal identifier or 'PID'] for that person object."  *Id.* 21:12–21.  That aggregated data, associated with a particular PID, can then be searched for by users of the website.  *See id.* 39:3–40:21.  It is also used to populate "teaser profiles," *id.* 22:18–21, which can be viewed by the public without a subscription to the website.  Any visitor to spokeo.com can search for a specific teaser profile, using a name, phone number, address, or email.  *See, e.g.*, SAC ¶ 63.  Each teaser profile contains at least a name and address.  Daly Depo. 60:6–8.

The plaintiffs here each found a teaser profile associated with their personal information.  *See* SAC ¶¶ 61, 77, 93, 109, 141.  For example, the teaser profile for Kellman shows:



United States District Court
Northern District of California



*Id.* ¶ 61.

The teaser profiles advertise additional personal information about the subject of the profile, including about their family, court records, sex offender registration status, marital status, and more.  *See id.* ¶ 62.  Visitors to spokeo.com can pay to access this additional information, including by paying for a single report or a subscription.  *See id.* ¶¶ 66–67.

The plaintiffs say that they did not consent to Spokeo's use of their information on its website.  *See id.* ¶¶ 60, 76, 92, 108, 140.  Their theory of the case is that Spokeo unfairly and unlawfully profited by publishing their personal information in the teaser profiles, thereby enticing consumers to pay Spokeo so they could access additional information about people.  Plaintiffs all say that  they suffered emotional and mental injury stemming from this nonconsensual loss of control of their personal information.  *See id.* ¶¶ 72–74, 88–90, 104–06, 121–22, 153–54.  At least one distinct consumer viewed Stephens's profile and viewed Williams's profile prior to purchasing a subscription.  *Id.* ¶¶ 116, 148.

As a result of these alleged injuries, the plaintiffs filed a class action in this court.

## B.  PROCEDURAL BACKGROUND

The plaintiffs filed their complaint in November 2021, [Dkt. No. 1], and their operative second amended complaint in September 2023, ("SAC") [Dkt. No. 123].  Spokeo filed an answer.

United States District Court
Northern District of California

("Answer") [Dkt. No. 129].

I previously denied Spokeo's motion to dismiss.  ("Prior Order") [Dkt. No. 41]; *see also Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877 (N.D. Cal. 2022), *motion to certify appeal denied*, No. 3:21-CV-08976-WHO, 2022 WL 2965399 (N.D. Cal. July 8, 2022).  I denied Spokeo's motion to certify the order for interlocutory appeal.  [Dkt. No. 64].

Now the plaintiffs have filed their motion for class certification, seeking to certify two nationwide classes, two California classes, and two Ohio class.  ("Mot.") [Dkt. No. 91-3]; *see also* Supplement to Motion for Class Certification ("Mot. Suppl.") [Dkt. No. 127].  Spokeo opposed. ("Oppo.") [Dkt. No. 141-3].  The plaintiffs replied.  ("Repl.") [Dkt. No. 154-3].

Spokeo also moved to exclude the declaration and testimony of plaintiffs' expert, Michael Naaman.  ("Naaman Mot.") [Dkt. NO. 141-4].  The plaintiffs opposed.  ("Naaman Oppo.") [Dkt. No. 154-6].  Spokeo replied.  ("Naaman Repl.") [Dkt. No. 173-3].

Spokeo also moved to exclude the declaration and testimony of plaintiffs' expert, Steven Weisbrot.  ("Weisbrot Mot.") [Dkt. No. 173-4].  The plaintiffs opposed.  ("Weisbrot Oppo.") [Dkt. No. 152[2]].  Spokeo replied.  ("Weisbrot Repl.") [Dkt. No. 173-4].

The plaintiffs also filed a motion to exclude Spokeo's expert, David Alfaro.  ("Alfaro Mot.") [Dkt. No. 167-7].  Spokeo opposed.  ("Alfaro Oppo.") [Dkt. No. 175-3].  The plaintiffs replied.  ("Alfaro Repl.") [Dkt. No. 177-4].

Finally, Spokeo filed a motion to strike.  ("Strike Mot.") [Dkt. No. 168].  The plaintiffs filed an opposition.  ("Strike. Oppo.") [Dkt. No. 176].

I held a hearing at which counsel for both parties appeared.

## LEGAL STANDARD

### I.    CLASS CERTIFICATION

Federal Rule of Civil Procedure 23 governs class actions.  *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663–64 (9th Cir. 2022) (en banc).

---

[2] The docket entry for this document asserts that it is redacted, but the document itself does not appear to have redactions, and the plaintiffs did not file another unredacted version or a motion to seal.  For those reasons, I based my analysis on the document filed at Dkt. No. 152.

United States District Court
Northern District of California

1   "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis,'" that the

2   requirements of Rule 23 are met.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)

3   (quoting *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 161 (1982)).  "[P]laintiffs must prove the

4   facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by

5   a preponderance of the evidence."  *Olean*, 31 F.4th at 665.

6         A "plaintiff[] must make two showings" to certify its purported class.  *Olean*, 31 F.4th at

7   663.  "First, the plaintiffs must establish 'there are questions of law or fact in common to the

8   class,' as well as demonstrate numerosity, typicality, and adequacy of representation."  *Id.*

9   (quoting Fed. R. Civ. Proc. 23(a)).[3]  "Commonality requires the plaintiff to demonstrate that the

10  class members 'have suffered the same injury,'" and the "claims must depend upon a common

11  contention."  *Wal-Mart*, 564 U.S. at 349–50 (quoting *Falcon*, 457 U.S. at 157).

12        "Second, the plaintiffs must show that the class fits into one of three categories" as

13  provided in Rule 23(b).  *Olean*, 31 F.4th at 663.  Under Rule 23(b)(3), a class may be certified if

14  "questions of law or fact common to class members predominate over the questions affecting only

15  individual members, and a class action is superior to other available methods for fairly and

16  efficiently adjudicating the controversy." Fed. R. Civ. Proc. 23(b)(3). In deciding this, courts

17  consider:
        (A) the class members' interests in individually controlling the prosecution or
18      defense of separate actions;
        (B) the extent and nature of any litigation concerning the controversy already begun
19      by or against class members;
        (C) the desirability or undesirability of concentrating the litigation of the claims in
20      the particular forum; and
21      (D) the likely difficulties in managing a class action.

22  *Id.*

23  _____

24  [3] Rule 23(a) provides:
        One or more members of a class may sue or be sued as representative parties on
25      behalf of all members only if:
        (1) the class is so numerous that joinder of all members is impracticable;
26      (2) there are questions of law or fact common to the class;
        (3) the claims or defenses of the representative parties are typical of the claims or
27      defenses of the class; and
        (4) the representative parties will fairly and adequately protect the interests of the
28      class.

Under Rule 23(b)(2), a class can be certified where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. Proc. 23(b)(2). To establish standing for prospective injunctive relief, a plaintiff must demonstrate that she "has suffered or is threatened with a concrete and particularized legal harm . . . coupled with a sufficient likelihood that [s]he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (internal quotation marks and citations omitted). A plaintiff must establish a "real and immediate threat of repeated injury." *Id*. (internal quotation marks and citations omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

"[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence. In carrying the burden of proving facts necessary for certifying a class under Rule 23(b)(3), plaintiffs may use any admissible evidence." *Olean*, 31 F.4th at 665 (citing *Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 454-55 (2016)). While the class-certification analysis "may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (internal citations and quotation marks omitted). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* (citation omitted).

In considering a motion for class certification, the substantive allegations of the complaint are accepted as true, but "the court need not accept conclusory or generic allegations regarding the suitability of the litigation for resolution through class action." *Hanni v. Am. Airlines*, No. C-08-00732-CW, 2010 WL 289297, at *8 (N.D. Cal. Jan. 15, 2010). The court may also "consider supplemental evidentiary submissions of the parties." *Id.* "[T]he 'manner and degree of evidence required' at the preliminary class certification stage is not the same as 'at the successive stages of the litigation'—*i.e.*, at trial." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018)

1    (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

2    **C.  DAUBERT MOTIONS TO EXCLUDE AND STRIKE**

3         Federal Rule of Evidence 702 provides:

4         A witness who is qualified as an expert by knowledge, skill, experience, training, or
         education may testify in the form of an opinion or otherwise if: (a) the expert's
5         scientific, technical, or other specialized knowledge will help the trier of fact to
         understand the evidence or to determine a fact in issue; (b) the testimony is based
6         on sufficient facts or data; (c) the testimony is the product of reliable principles and
         methods; and (d) the expert has reliably applied the principles and methods to the
7         facts of the case.

8         Courts apply the *Daubert* standard "in evaluating challenged expert testimony in support

9    class certification." *Sali*, 909 F.3d at 1006.  Under *Daubert*, courts "must assure that the expert

10    testimony 'both rests on a reliable foundation and is relevant to the task at hand.'"  *City of*

11    *Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (quoting *Primiano v. Cook*,

12    598 F.3d 558, 564 (9th Cir. 2010)).  The testimony is "relevant if the knowledge underlying it has

13    a valid connection to the pertinent inquiry." *Id.* at 1044 (quoting *Primiano*, 598 F.3d at 565).  It is

14    "reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the

15    relevant discipline." *Id.* (quoting *Primiano*, 598 F.3d at 565).  Though courts should exclude

16    "unreliable nonsense opinions," they do not exclude evidence for being shaky or opinions for

17    being impeachable or even wrong.  *See id.* (citing *Alaska Rent-A-Car, Inc. v. Avis Budget Grp.,*

18    *Inc.*, 738 F.3d 960, 969 (9th Cir. 2013)).

19         For reliability, the test looks at the "soundness of [the expert's] methodology" rather than

20    the correctness of the opinions.  *Id.* (citation omitted); *see also* Fed. R. Evid. 702.  Courts "must

21    act as a 'gatekeeper' to exclude 'junk science' that does not meet Rule 702's reliability standards

22    by making a preliminary determination that the expert's testimony is reliable."  *Cooper v. Brown*,

23    510 F.3d 870, 943 (9th Cir. 2007).  "Rule 702 demands that expert testimony relate to scientific,

24    technical or other specialized knowledge, which does not include unsubstantiated speculation and

25    subjective beliefs."  *Id.*

26         At class certification, admissibility of evidence "go[es] to the weight that evidence is

27    given" in the class certification analysis, but admissibility is not dispositive.  *Sali*, 909 F.3d at

28

United States District Court
Northern District of California

1006.

## DISCUSSION

**I.     MOTION FOR CLASS CERTIFICATION**

The plaintiffs seek to certify the following four classes:

**California Viewed-Prior-to-Purchase Class** (claims under California law; represented by proposed class representative Stephens): All California residents who are not registered users of Spokeo.com and whose teaser profile was viewed by a user immediately prior to purchasing a Spokeo.com subscription on or after November 19, 2019, where such teaser profile includes a name and home address.

**Ohio Viewed-Prior-to-Purchase Class** (claims under Ohio law; represented by Plaintiff Williams): All Ohio residents who are not registered users of Spokeo.com and whose teaser profile was viewed by a user immediately prior to purchasing a Spokeo.com subscription on or after November 18, 2017, where such teaser profile includes a name and home address.

**California Published Teaser Profile Class** (claims under California law; represented by Plaintiffs Kellman and Stephens): All United States residents who are not registered users of Spokeo.com and whose teaser profile is searchable on www.spokeo.com, where such teaser profile includes a name and home address.

**Ohio Published Teaser Profile Class** (claims under Ohio law; represented by Plaintiff Newell): All Ohio residents who are not registered users of Spokeo.com and whose teaser profile is searchable on www.spokeo.com, where such teaser profile includes a name and home address.

Mot. i–ii; Mot. Suppl. 1.

Spokeo argues that none of the classes can or should be certified.  I first address its arguments about standing and then turn to the class certification considerations under the Federal Rules, including Spokeo's arguments about commonality, predominance, and superiority.

### A.  Standing

Spokeo contends that the plaintiffs do not have Article III standing to bring their claims at all, let alone as class representatives.  *See* Oppo. 7–11.  I considered and rejected many of these arguments in the Prior Order, and the others are similarly unpersuasive.  The plaintiffs have standing.

I previously addressed and rejected Spokeo's arguments that the plaintiffs whose teaser profiles were not viewed do not have standing.  *See Kellman*, 599 F. Supp. 3d at 888–90; Oppo. 8–10.  The injuries that the plaintiffs assert based on the publication of their information—not the

United States District Court
Northern District of California

United States District Court
Northern District of California

viewing of their information—include the violation of their right to control their identities, the plaintiffs' mental and emotional harm, and the defendants' unjust enrichment and profit. *See* SAC ¶¶ 72–74 (Kellman), 88–90 (Fry), 104–06 (Newell). All were recognized under historical and common law analogues, which is enough to assert a sufficiently concrete injury for Article III standing. *Cf. Kellman*, 599 F. Supp. 3d at 889–90. Sufficient for standing at this class certification stage, each Purchase class plaintiff has shown some evidence of this injury—that Spokeo published teaser profiles with their names and addresses, and that they were damaged by loss of control of their identities and emotional and mental harm. *See* SAC ¶¶ 66–67 (Kellman), 77, 82–83 (Fry), 93–94, 98–99 (Newell). Whether they can show that this harm is from that publication and is legally sufficient to prove injury and yield a remedy is a common question that will be resolved at summary judgment. *Cf.* Oppo. 9–10 (asserting the harm is speculative).

Spokeo's new counterarguments are unpersuasive. First, it cites *TransUnion LLC v. Ramirez*, 594 U.S. 413, 434 (2021), in which the Supreme Court held that where the appellant-defendant stored inaccurate information about consumers but did not publish or disclose it to third parties, the consumers could not show injury for standing. The plaintiffs tried to bring claims for violations under the Fair Credit Reporting Act, which the Court analogized to defamation claims. *See id.* at 431. The Court reasoned, "the plaintiffs' harm is roughly the same, legally speaking, as if someone wrote a defamatory letter and then stored it in her desk drawer." *Id.* at 434. This case differs for two interrelated reasons. The plaintiffs are bringing right to publicity and misappropriation claims, not defamation claims, and Spokeo did publish the information—using the Court's analogy, it took the letter out of the drawer and tacked it to a public bulletin board. The question now is whether publication alone is enough to create the requisite harm and prove injury for right to publicity and misappropriation claims. That was not at issue in *TransUnion*.

For similar reasons, I am unpersuaded by Spokeo's reliance on three recent cases that found no standing for similar allegations. *See* Oppo. 8–9 (first citing *Ridgeway v. Spokeo, Inc.*, No. 2:23-CV-01660-MEMF-AS, 2023 WL 6795277, at *5 (C.D. Cal. Oct. 11, 2023) (relying on *TransUnion* to find lack of injury and standing without addressing legal differences between plaintiffs' publicity claims and the defamation claims in *TransUnion*); then citing *Fry v.*

*Ancestry.com Operations Inc.*, No. 3:22-CV-140 JD, 2023 WL 2631387, at *5 (N.D. Ind. Mar. 24, 2023) (relying on *TransUnion* for similar proposition, with similar lack of distinction between claims, and asserting without citations that misappropriation "necessarily requires" viewership); and then citing *Verde v. Confi-Chek, Inc.*, No. 21 C 50092, 2021 WL 4264674, at *4 (N.D. Ill. Sept. 20, 2021) (similar, and noting that another court in that district recently came out differently on the standing analysis in a similar case).

Spokeo also argues that Williams does not have standing because his profile does not use or name or identity, *see* Oppo. at 9, but there is sufficient evidence in the record to suggest that the profile is of Williams and that both he and his father recognized it as referring to Williams's identity, *see* Deposition of William Williams V ("Williams Depo.") [Dkt. No. 158-1] 28:18–29:21 (recognizing address); Declaration of William Williams ("Williams Decl.") [Dkt. No. 159] (explaining the format of his name in the teaser profile); [Dkt No. 138-19] 28:9–29:8 (plaintiff Williams' father recognizing address), 77:3-78:20 (recognizing the photo as his son and the name as his son's combined with his father's).  True, plaintiffs' counsel somehow mistakenly identified their own plaintiff, but that goes to attorney competency and not to standing.  For the same reason, Spokeo's motion to strike Williams' declaration as a sham, [Dkt. No. 168], is DENIED.  His declaration that he recognizes himself in the teaser profile does not contradict his previous sworn testimony; his explanations about the roman numerals in his and his association with the addresses are consistent across testimonies.  *See* Williams Decl.  The validity of these explanations can be addressed at summary judgment or at trial; whether the teaser profile sufficiently identifies him is a question of law for summary judgment.  *See infra* Part III.D.1.

Finally, the plaintiffs have standing to pursue injunctive relief.  *See* Oppo. 10–11; Fed. R. Civ. Proc. 23(b)(2).  The plaintiffs' theory of the case is, in part, that Spokeo continues to unjustly profit from publishing teaser profile with their names and likenesses and without consent, *see, e.g.*, Mot. 22:13–20; because this harm is ongoing, the plaintiffs show "continuing, present adverse effects."  *Id.* at 10 (quoting *Khasin v. R. C. Bigelow, Inc.*, No. 12-CV-02204-WHO, 2016 WL 1213767, at *4 (N.D. Cal. Mar. 29, 2016)); *see Bates*, 511 F.3d at 985 (requiring plaintiffs to show, for standing under Rule 23(b)(2), concrete and particularized harm coupled with likelihood

United States District Court
Northern District of California

10

United States District Court
Northern District of California

of future harm in a similar way). Additionally, the current record suggests that opting out does not necessarily end the harm. For example, Spokeo co-founder and Chief Technology Officer, Mike Daly, explained that opting out is not perfect and does not necessarily catch all information, given how their data flow and systems operate. *See* Daly Depo. 202:8–209:25; *see also* Declaration of Mike Daly ("Daly Decl.") [Dkt. No. 141-6] ¶ 36 (describing opt out procedure). It also does not account for whether individuals consented to use *before* information is published. Spokeo's citation to *Mendia v. Garcia*, 768 F.3d 1009, 1013 n.1 (9th Cir. 2014), where the plaintiff was granted release from prison but chose to stay—to avoid potential immigration deportation upon release—and endure the ongoing alleged harm, is different from the plaintiffs' cases, where the record shows that the harm may continue regardless of plaintiffs' actions.

Accordingly, the plaintiffs have standing for all of their claims.

**B.  Rule 23(a)**

Rule 23(a) requires that plaintiffs show numerosity, commonality, typicality, and adequacy. Fed. R. Civ. Proc. 23(a). Spokeo challenges adequacy but not numerosity or typicality, and it combines its challenge to commonality with its arguments under Rule 23(b)(3) about predominance and superiority. *See generally* Oppo. Accordingly, I address the 23(a) factors in this section, except for commonality which I address later.

First, the class here "is so numerous that joinder of all members is impracticable." Fed. R. Civ. Proc. 23(a)(1). "[C]ourts within the Ninth Circuit generally agree that numerosity is satisfied if the class includes forty or more members." *Hilario v. Allstate Ins. Co.*, 642 F. Supp. 3d 1048, 1059 (N.D. Cal. 2022), *aff'd*, No. 23-15264, 2024 WL 615567 (9th Cir. Feb. 14, 2024) (citations omitted). The parties argue over how many people are in each class and disagree about the accuracy of the expert reports about this number. *See, e.g.*, Naaman Mot.; Naaman Oppo. However, the plaintiffs show and Spokeo does not contest that each proposed class has many thousands of members. The numerosity requirement is met.

Second, the plaintiffs have shown that their "claims or defenses . . . are typical of the claims or defenses of the class." *A. B. v. Hawai'i State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022) (quoting Fed. R. Civ. Proc. 23(a)(3)). The crux of the case is that Spokeo published teaser

profiles with individuals' names and home addresses, without their consent, in violation of statutory rights of publicity and common law misappropriation theories.  All class members have the "same or similar injury," *id.* (citation omitted)—violation of their statutory and common law rights, as discussed in the standing section and the Prior Order.  The lawsuit as a whole is also "based on conduct which is not unique to the named plaintiffs" but rather affected all individuals nationally, *id.* (citation omitted)—publication of teaser profiles without consent for commercial gain.  And each class member's injury resulted from the "same course of conduct"—this nonconsensual publication and resulting harm.  *Id.* (citation omitted).  The typicality requirement is met.

Third, though I take Spokeo's point, plaintiffs and their counsel are adequate.  To meet the Rule 23(a)(4) requirement, "the plaintiff must show that (1) the named plaintiff and her counsel do not have conflicts of interests with other class members," and that (2) the named plaintiff and plaintiffs' counsel "will prosecute the action vigorously on behalf of the class, which includes a showing that class counsel is competent and qualified." *Hilario*, 642 F. Supp. 3d at 1062 (citation omitted).  The named plaintiffs here are adequate because they are typical and because their claims are identical to those of the other class members. *See id.* (drawing similar conclusion).  Spokeo asserts that the named plaintiffs are conflicted because they are pursuing the statutory minimum in penalties rather than "actual damages or the full statutory damages that [unknown class members] could recover."  Oppo. 30:1–19 (citing *Sanchez v. Wal Mart Stores, Inc.*, No. Civ. 2:06-CV-02573-JAM-KJM, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009), which found the plaintiff was inadequate in part because her counsel chose to pursue only "economic injury" rather than the personal injury claims on behalf of the class).  But from the briefing and record at this stage, it seems that the vast majority of the members of all classes would only be entitled to the statutory minimum.  Even for individuals who incurred actual damages, there is no evidence thus far that the relatively substantial statutory minimums—$750 for California and $2500 for Ohio, Ohio Rev. Code Ann. § 2741.07—are less than the amount they would be entitled to in actual damages.  The few potential class members who incurred damages in higher amounts can always opt out of the class.  Spokeo does not assert otherwise.

12

United States District Court
Northern District of California

To determine whether class counsel is adequate, I look to: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. Proc. 23(g)(1)(A). Class counsel have dedicated a substantial amount of time and resources to the present case as evident from the docket, and they intend to continue to do so. *See* Mot. 15:23–16:2. In addition, they have substantial experience litigating consumer class actions, including other privacy class actions. Declaration of Ben Osborn ("Osborn Decl.") [Dkt. No. 93] ¶¶ 15, 19–20; Declaration of Michael Ram ("Ram. Decl.") [Dkt. No. 95] ¶¶ 3–8. They have no conflicts of interest with any class members, and they are competent and qualified, despite initial issues identifying their plaintiffs. Contrary to Spokeo's assertions, Oppo. 29:13–28, filing amended complaints or having experts challenged by opposing counsel are not reasons to find counsel inadequate. They meet the Rule 23 standard.

### C. Rule 23(b)(3)

Spokeo challenges four requirements under Rules 23(a) and 23(b)(3): commonality, predominance, superiority, and adequacy. Oppo. 14–25. It makes the same arguments about the first three requirements—asserting that if that there are no common contentions or questions under the commonality requirement of Rule 23(a), then the plaintiffs cannot meet the commonality or superiority requirements of Rule 23(b)(3)—so I address these arguments together. Spokeo does not challenge numerosity, though it does challenge the expert and report related to this calculations. *See* Oppo. 14–26.

#### 1.    Commonality and Predominance

Courts in this district have addressed commonality and predominance in the same analysis. *See, e.g.*, *Nolen v. PeopleConnect, Inc.*, No. 20-CV-09203-EMC, 2023 WL 9423286, at *8–23 (N.D. Cal. Dec. 14, 2023).

"[T]he predominance requirement" of Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." *Lytle v. Nutramax Lab'ys, Inc.*, No. 22-55744, 2024 WL 1710663, at *5 (9th Cir. Apr. 22, 2024)

(quoting Fed. R. Civ. Proc. 23(b)(3)). "This requirement presupposes satisfaction of the commonality requirement of FRCP 23(a)(2), which itself tests 'the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Id.* (quoting *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015)). "But the predominance inquiry goes further and 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id.* (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

"The commonality requirement of Rule 23(a)(2) requires plaintiffs seeking class certification to show that their claims 'depend upon a common contention' that 'is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *A.B.*, 30 F.4th at 839 (quoting *Wal-Mart*, 564 U.S. at 350). "In determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial. While such an analysis may 'entail some overlap with the merits of the plaintiff's underlying claim,' the '[m]erits questions may be considered [only] to the extent [ ] that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *Olean*, 31 F.4th at 666-67 (first quoting *Wal-Mart*, 564 U.S. at 351; then quoting *Amgen*, 568 U.S. at 466; and then citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011)).

"In order for the plaintiffs to carry their burden of proving that a common question predominates, they must show that the common question relates to a central issue in the plaintiffs' claim." *Id.* at 665 (citing *Wal-Mart*, 564 U.S. at 349-50). "Therefore, '[c]onsidering whether "questions of law or fact common to class members predominate" begins, of course, with the elements of the underlying cause of action.'" *Id.* (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)).

The plaintiffs identify several central questions of law and fact that they say will be determined on a common basis based on class-wide evidence and proof, including: "Spokeo's

liability," which seems to include whether publishing a person's name and home address constitute appropriation and whether the plaintiffs consented, Mot. 5:18–6:20; "[e]ntitlement to damages"; *id.* 6–8; "[e]ntitlement to injunctive relief," *id.* 8; whether a profile must be viewed for each claim to lie, *id.* 9–10; and how and whether statutes of limitations apply, *id.* 10–11.  I address these below.

Starting with the causes of action and their elements, *see Olean*, 31 F.4th at 665, the underlying claims are for violations of the California and Ohio right of publicity statutes, Cal. Civ. Code § 3344; Ohio Rev. Code Ann. § 2741.02; common law torts of misappropriation of name or likeness in California and in Ohio; and violations of California's Unfair Competition Law ("UCL").  SAC ¶¶ 180–92, 205–22.  The elements of the California right of publicity cause of action are "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury."  *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1008 n.2 (9th Cir. 2017) (quoting *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1918 (1996)); *see also* Ohio Rev. Code Ann. § 2741.02 (requiring similar elements).  In addition to those elements, liability under California Civil Code section 3344 also requires "knowing use of the plaintiff's name, photograph or likeness for purposes of advertising or solicitation or purchases" as well as a "'direct' connection . . . between the use and the commercial purpose."  *Maloney*, 853 F.3d at 1008 n.2 (quoting *Fleet*, 50 Cal. App. 4th at 1918).  Finally, a UCL claim may be "derivative of [a plaintiff's] publicity-right claims" where, like here, "it invokes alleged publicity-right violations as its basis."  *Id.*

Though the plaintiffs frame this overbroadly as "Spokeo's liability," they are correct that use and appropriation of a class member's identity are common questions of law and fact, based on this record.  That is because the evidence suggests that for each potential class member, Spokeo used the same common process to collect data from vendors, associate it with PIDs, and publish it on its website.  *See* Daly Depo. 21:12–24:17, 133:25–134:1, 156:3–161:11; Declaration of David Alfaro ("Alfaro Decl.") [Dkt. No. 141-7] 10–19; *see also Kellman*, 599 F. Supp. 3d at 895 ("As the plaintiffs allege it, Spokeo's business model depends on using the names, information, and likenesses of average people to entice others to subscribe to its services.").  Every teaser profile

features at least a name and home address—another common fact.  *See* Daly Depo. 60:1–15.  The resulting common issue of law is whether using and publishing this information without consent is sufficient to constitute use or appropriation of identity under California, Ohio, or common law.  *Cf.* Oppo. 15:21–18:23.  Spokeo argues that individualized inquiries will be necessary to ascertain whether any particular class member is identifiable based on this information, but because the evidence shows—and the class definition requires—that every class member's name and address was published, the *common* inquiry is whether name and address are enough to make someone identifiable and thereby violate the law.  This common inquiry is the central legal question in this case.

Additionally, based on the plaintiffs' theory of the case and class definitions, the inquiry that determines class membership asks whether the class member's name and address match the teaser profile's name and address.  That can be established via affidavit, which also addresses Spokeo's concern that some teaser profiles have inaccurate, fake, or nonresidential addresses.  *See, e.g.*, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017) (noting that a consumer may present an affidavit "in a claims administration process after a liability determination has already been made" to determine class membership and confirm liability as to that individual); *see also Nolen*, 2023 WL 9423286, at *16–17 (citing *Briseno* and explaining that plaintiffs can self-identify post-certification, noting that the defendant could move for decertification if necessary).  As for profiles that have a class member's former address or previously used name or alias (such as a maiden name), this too presents a common question of law—whether the name and address must be current, or whether it is sufficient under the relevant laws that the address is merely associated with the class member.  Notably, Judge Chen recently conditionally certified a class asserting essentially identical causes of action against a very similar defendant, and in doing so he emphasized the importance of the defendants including someone's name as a "critical" reason for why the other information (there, photographs) made the person identifiable.  *See Nolen*, 2023 WL 9423286, at *11.  Here, the question is whether that name combined with an address is enough.

Spokeo cites for support *Davis v. Electronic Arts Inc.* ("*Davis II*"), No. 10-CV-03328-RS, 2018 WL 11436326, at *4 (N.D. Cal. Aug. 17, 2018), where Judge Seeborg denied class

certification to NFL players alleging that their identities were used as avatars in video games.  But *Davis* does not help Spokeo because there, each avatar had to be examined individually to determine whether it identified any particular individual, *see id.*, whereas here the theory of the case is that posting someone's name and address is enough to identify them.  In other words, in *Davis* identifiability turned on the individualized inquiry of whether a video game avatar looked like a class member.  Here, identifiability turns on the legal question of whether name and residence are sufficient to make someone identifiable under the law.

That said, because of the plaintiffs' theory of the case, their class definitions must be amended slightly.  *See Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 546 (9th Cir. 2013) ("Rule 23 provides district courts with broad authority at various stages in the litigation to revisit class certification determinations and to redefine or decertify classes as appropriate."); *Hilario v. Allstate Ins. Co.*, No. 23-15264, 2024 WL 615567, at *1 (9th Cir. Feb. 14, 2024) (unpublished) (citing *Wang* with approval and holding that "[t]he district court did not abuse its discretion in redefining the certified class").  The definitions currently include relevant individuals who have a "teaser profile [that] includes a name and home address."  *See* Mot. i–ii.  These definitions are now each amended to include individuals with a teaser profile that "includes the individual's name and home address."  This clarifies that the address must be the class member's address—it cannot be *any* home address.  As discussed, though, it will be up to the parties at summary judgment to determine whether a prior address is sufficient for liability.[4]

The consent element also meets the commonality requirement.  First, whether Spokeo received "prior consent" to use plaintiffs' identities, as required by the California and Ohio statutes, is subject to common proof, including whether there were procedures in place to obtain and confirm consent before publication.  Spokeo says that the class members can use the opt-out feature on their websites, but asking to remove information after publication does not address whether plaintiffs consented *prior* to publication.  Second, whether the plaintiffs subsequently

---

[4] There appears to be a typographical error in the plaintiffs' original motion that includes "All United States residents . . ." in the California Published class.  *See* Mot. ii:14–16.  This is amended to say "All California residents . . .".

United States District Court
Northern District of California

consented to use of their identities—an element of the common law claims—is also likely subject to common proof based on whether there were effective procedures available.  For example, the plaintiffs note that Spokeo's sole procedure for obtaining consent occurs when users register for the website; whether there even is a process available for nonusers is "common question is *capable* of class-wide resolution" even if the ultimate answer does not support the plaintiffs' theory of the case.  *Olean*, 31 F.4th at 666-67.  Additionally, whether the availability of the opt-out process is sufficient to show implied consent is also a common question of law.  Finally, whether a plaintiff ever consented to arbitration by signing up for Spokeo or agreeing to its terms may ultimately be an individualized inquiry, but it does not defeat the commonality of the consent element as a whole; indeed, it is possible that this question of fact could be addressed through common evidence if, for example, Spokeo has a list of known users or individuals who have agreed to arbitration.

And contrary to Spokeo's argument, the injury element also presents common questions of law and fact.  Whether the nonconsensual use of someone's identity for commercial purposes is a legally sufficient injury is a common question of law, central to the claim of each plaintiff in the Published classes.  *See, e.g.*, *See Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008, 1022 (2021) ("The use of an individual's likeness for commercial purposes . . . establishes common law injury for right of publicity claims as long as the individual is recognizable.").  And whether the combination of publication and at least one view of someone's information is a legally sufficient injury is a common question of law, central to the claim of each member of the Viewed Prior to Purchase classes.  If these central questions are decided in the plaintiffs' favor, there will be no issues of individualized proof.  And even if the questions are decided in Spokeo's favor, whether a claimant was injured—here, whether they experienced the requisite mental or emotional harm for a privacy claim, *see Kellman*, 599 F. Supp. 3d at 889—is an underlying issue in *every* class action.  Proof of injury can be provided by a sworn affidavit, a receipt, or something else.[5]  *Cf. Briseno*, 844 F.3d at

---

[5] This also addresses Spokeo's arguments that only individualized inquiries can determine if each individual had a teaser profile.  An individual cannot be injured without a teaser profile; if someone proves injury, she inherently proved she has a teaser profile.  Wisely, the class definition only includes people with teaser profiles.

1131–32 (noting that class members may self-identify post certification).  Just because a claimant

must show she was injured to recover does not mean a class cannot be certified.[6]  Spokeo points to

no law that provides otherwise.  Common questions of law therefore predominate the injury

analysis.

Next, Spokeo challenges calculation of damages, but in the same breath concedes that the

plaintiffs are only seeking to certify classes based on statutory, not actual, damages.  *See* Oppo.

26–27.  Statutory damages are calculated as prescribed by the statutes.  What the statute provides

is a common question of law, so common questions predominate for the damages analysis, too.

Spokeo also argues that some class members will be subject to affirmative defenses.  *See*

*id.* 23–25.  I already addressed its implied consent argument.  With respect to its assertion that

some claimants may be public figures subject to the First Amendment newsworthiness exception,

it is true that this legal question would not apply class wide and would be subject to an

individualized inquiry.  But "so long as one or more central issues in the action are common to the

class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)

even though other important matters will have to be tried separately, such as . . . some affirmative

defenses peculiar to some individual class members."  *Olean*, 31 F.4th at 668 (citation omitted).

As discussed above, there are many central issues that are common to the class.  It is clear that

they predominate over this single affirmative defense, particularly without evidence of how much

of the class might be subject to the defense.  Accordingly, this does not preclude certification.  *See*

*id.* at 668–69.

Spokeo's remaining arguments about commonality are not persuasive.  Whether each

teaser profile is a real person might go to the total number of class members, but it is not clear how

it would affect commonality for class members, who each have a teaser profile by definition of the

class.  Dead class members, Oppo. 21–22, will not file claims; Spokeo does not point to evidence

suggesting any likelihood of fraudulent claims being filed on behalf of the deceased.  Individuals

who used Spokeo or consented to arbitration, *id.* 19–21, are not included in the class definition,

---

[6] This is another reason that Spokeo's standing argument, Oppo. 22–23, fails.

*see Nolen*, 2023 WL 9423286, at \*23 (same).  They can also be screened out through common evidence within Spokeo's control.

I am also unpersuaded by Spokeo's arguments that class notification is implausible.  *See* Oppo. 26.  As discussed below, plaintiffs' expert proposes notification by email, by publication in the media, and by class website.  *See infra,* Part II.B.  For the reasons explained below, this is sufficient to notify the California and Ohio classes.

For those reasons, the plaintiffs meet the commonality requirement of Rule 23(a) and the predominance requirement of Rule 23(b)(3).

### D.  Superiority

The plaintiffs must also show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. Proc. 23(b)(3).  The Federal Rules provide four considerations for courts assessing superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. Proc. 23(b)(3)(A)-(D).

Each consideration favors finding that the superiority requirement is met.  First, the class members' interests in pursuing and controlling their own litigation are lessened here, where the questions of law and fact are common and must be addressed whether the case is brought by an individual or a class.  *See id.* 23(b)(3)(A).  No individual plaintiff would have a greater or lesser interest in determining, for example, whether her name and home address are sufficient to make her identifiable under right to publicity law.  Though some individual plaintiffs may arguably have interests in pursuing more than the statutory minimum in damages, as discussed this is likely a very small number of possible class members, and they will be able to opt of the class action if they wish.

Additionally, there appears to be at least one prior case where plaintiffs are pursuing

20

similar claims against Spokeo, but that case brought suit only under Alabama right to publicity law and was recently dismissed. *Ridgeway v. Spokeo, Inc.*, No. 2:23-CV-01660-MEM-FAS, 2023 WL 6795277 (C.D. Cal. Oct. 11, 2023). The plaintiffs also point to one parallel action filed in state court, *see Boyd v. Spokeo, Inc.*, 21-cv-13644 (Sup. Ct. Cal. Apr. 9, 2021), and assert that they are in contact with counsel for that case, noting that case is not as "procedurally advanced" as this one. *See* Mot. 20:17–21. Accordingly, the extent and nature of litigation concerning potential class members is minimal. *See* Fed. R. Civ. Proc. 23(b)(3)(B).

Litigation in this forum is highly desirable given that Spokeo is located here, its witnesses and documents are here, and the underlying alleged violations mostly took place here. *See id.* 23(b)(3)(C). And finally, this case does not clearly present manageability issues above and beyond those typically associated with class actions. *See id.* 23(b)(3)(D). Accordingly, the superiority requirement is met.

Spokeo asserts in its motion that it contests superiority, but it does not discuss the Rule 23(b)(3) considerations. Instead, it seems to argue that the superiority element is not met because the plaintiffs cannot use common proof to show who is a Spokeo user and therefore excluded from the class. *See* Oppo. 21:4–5 (mentioning superiority in the second case in a "*see, e.g.*," string cite). This is the same argument I rejected above when analyzing the commonality and predominance requirements, and I reject it again here for the same reasons.

Spokeo also cites superiority as a reason that its Due Process rights would be violated, arguing again that the damages calculations and amounts for the nationwide classes are immense. *See id.* 3:18–20, 27:20–28:4. Plaintiffs no longer seek to certify nationwide classes, so this argument is moot.

Accordingly, the superiority requirement is met.

**E. Rule 23(b)(2)**

Spokeo argues that the plaintiffs lack standing to seek an injunction and that their Rule 23(b)(2) classes lack commonality, ascertainability,[7] and superiority, *see* Oppo. 28:6–15, all of

---

[7] *See Hilario*, 642 F. Supp. 3d at 1064 n.5 (declining to consider ascertainability as a separate element of Rule 23 and instead assessing it with the other factors).

United States District Court
Northern District of California

1    which I addressed and rejected above.  Its only new argument is that an injunction would be

2    improper on behalf of a nationwide class because different states offer different forms of relief, so

3    class members would be (or would not be, as provided by some states) entitled to different

4    injunctions.  *See id.* 28:15–25.  As plaintiffs withdrew the request for the nationwide classes, this

5    argument is moot.

6           As Judge Chen explained in a similar right of publicity case, the "damages class is the

7    driver of this case, and if the damages class should be certified, then necessarily at Rule 23(b)(2)

8    should be certified as well."  *Nolen*, 2023 WL 9423286, at *8 (citing Fed. R. Civ. Proc. 23(b)(2)).

9    That is because Rule 23(b)(2) provides that a class may be certified under that rule if the Rule

10   23(a) requirements are met and "the party opposing the class has acted or refused to act on

11   grounds that apply generally to the class, so that final injunctive relief or corresponding

12   declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. Proc. 23(b)(2).

13   Those requirements are met here; the Rule 23(a) factors favor certification, and the plaintiffs

14   presented sufficient evidence that Spokeo acted in a way that applies generally to the California

15   and Ohio classes through its common policy and process for gathering consumer data and

16   publishing it via teaser profiles on its website.  I will therefore also grant certification of the

17   California and Ohio classes under 23(b)(2), with the following amendment: "such teaser profile

18   includes a name and home address" shall be amended to read "such teaser profile includes the

19   individual's name and home address."  *See Wang*, 737 F.3d at 546.

20          Accordingly, the motion to certify under Rule 23(b)(2) is granted.

21   **F.  MOTIONS TO DISQUALIFY AND STRIKE**

22       **A.  Spokeo's Motion to Exclude Declarations and Testimony of Michael Naaman and**

23           **Spokeo's Motion to Strike Naaman's New Reply Declaration**

24          Spokeo moves to exclude Naaman's declaration and testimony, arguing that his class size

25   calculations are unreliable and that his method to calculate damages is fundamentally flawed.[8]  *See*

26   Naaman Mot. 11–21; Declaration of Michael Naaman ("Naaman Decl.") [Dkt. No. 91-15].

27   _____

28   [8] Because I declined to certify the nationwide class above, here I only address Spokeo's challenges
     to Naaman's calculations of the California and Ohio classes.

United States District Court
Northern District of California

1    Most of Spokeo's arguments miss the mark because Spokeo frames them as taking issue

2  with the calculations of class size, but it does not challenge numerosity.  For example, Spokeo

3  argues that Naaman failed to exclude Spokeo users, dead people, people who assigned their rights,

4  duplicated profiles, profiles with inaccurate home addresses, and profiles that refer to people who

5  are not real from his class size calculations.  *See* Naaman Mot. 7–9, 15–18.  But even if Naaman

6  should have excluded each of these—which I do not find at this point—the classes clearly would

7  still meet the numerosity requirements given the data upon which he relied and the evidence of

8  Spokeo's business model, which is apparently designed to have a teaser profile for every

9  American adult.  *See, e.g.*, Daly Depo. 47:12–48:25.  Spokeo also repeats arguments that it made

10  in its opposition to class certification, asserting that Naaman did not verify that each teaser profile

11  corresponded with a real individual and residence.  *See* Naaman Mot. 11–14.  Again, these are

12  framed as challenges to how Naaman calculated class size, *see id.;* Spokeo does not challenge

13  numerosity, so the argument is superfluous.

14    It seems that Spokeo is trying to use Naaman's declaration as support for its argument that

15  the plaintiffs' claims are not subject to common proof, particularly with respect to the arguments

16  about whether each profile represents a real person and whether each residence is accurate.  But it

17  is not clear why Naaman should be the source of proof of commonality, as his declaration and

18  analyses were submitted to show numerosity, *see* Naaman Decl. ¶¶ 1–2, (which is why the

19  declaration is not irrelevant, *see* Oppo. 19:11–20:22), and *potentially* for superiority, though it is

20  not clear that superiority is really an issue, *supra* Part III.D.2.  And importantly, I rejected

21  Spokeo's arguments about commonality above.  *Supra* Part III.D.1.  I am unconvinced by its

22  parallel arguments here.

23    Spokeo also seeks to exclude Naaman's declaration and testimony about damages

24  calculations, which is an element of class certification that Spokeo actually challenges.  *See*

25  Naaman Mot. 20:23–22:1; Oppo. 13:14–17.  But the argument is unpersuasive.  Spokeo asserts

26  that Naaman does not provide a method for calculating damages and instead simply multiplies the

27  number of class members by the minimum statutory penalty sought by the plaintiffs for the

28  Viewed Prior to Purchase classes.  That is a logical way to calculate damages in a case where the

plaintiffs seek the statutory minimum for damages, and this would help the trier of fact.  *See* Fed. R. Evid. 702.  As discussed, *supra* Part III.D.1, entitlement to damages presents a common question of law.  This is not a reason to exclude Naaman's declaration.

For those reasons, then, the motion to exclude Naaman's declaration and testimony is DENIED.

In reply, the plaintiffs submitted a supplemental declaration from Naaman; Spokeo moved to strike it as improperly submitting new evidence.  *See* Strike Mot.  Because I do not rely on the newly submitted declaration in my class certification analysis and findings, I do not need to address the merits of this motion.  The motion is DENIED as moot on this point.[9]

**G.  Spokeo's Motion to Exclude Declarations and Testimony of Steven Weisbrot**

Spokeo also moves to exclude the declaration and testimony from Weisbrot about class notification, asserting that it is irrelevant and that its methodology is unreliable.  *See* Weisbrot Mot.  Weisbrot's proposed notification method involves sending emails to potential class members using the email addresses posted on Spokeo's teaser profiles, by publication in the media, and by website.  Declaration of Steven Weisbrot ("Weisbrot Decl.") [Dkt. No. 96] ¶¶ 13–14, 18–19, 26, 30–31.  Though his proposed method provides notice to the nationwide classes, he explained how he would and could use the same method on a narrower target audience if smaller classes were certified, such as statewide classes.  *See* Transcript of Steven Weisbrot ("Weisbrot Tr.") [Dkt. No. 153-1[10]] 62:3–25.

Spokeo's argument about relevance is unpersuasive.  Spokeo contends that Weisbrot's

---

[9] I also denied the other argument in this motion.  *Supra* Part I.A.

[10] Plaintiffs did a terrible job of citing and filing this document.  Their opposition merely cites the transcript as "Exhibit A."  There are no exhibits attached to the opposition.  *See* [Dkt. No. 155].  Because the opposition is labeled as "redacted," I searched for the unredacted version on the docket, thinking it might have the missing Exhibit A.  There is no unredacted version to be found.  I then looked at Weisbrot's declaration—but Exhibit A to the declaration is just a firm CV for Angeion Group.  [Dkt. No. 96] Ex. A.  Eventually and after serious digging throughout the docket, I turned to [Dkt. No. 156], which is labeled "Declaration of Raina C. Borrelli in Support of 155 Opposition/Response to Motion" and includes attachments labeled as "Exhibit 1, Exhibit 2"—in other words, there is no clear labeling indicating the connection to the Weisbrot declaration.  *Then* I found that Exhibit 1—not Exhibit A, and not in a document attached to the opposition— contained the correct document.  Plaintiffs need to work on their filing procedures.

United States District Court
Northern District of California

notice plan will provide notice to all potential class members in the Purchase classes, and that this is overbroad because it is not directed *only* to members of the Viewed Prior to Purchase classes, for which notice is mandatory under Rule 23(b)(3).  But the Federal Rules permit notice to 23(b)(2) classes like the Purchase classes, *see* Fed. R. Civ. Proc. 23(c)(2)(A), and Spokeo offers no reason why notice should not be provided to them.  Instead, Spokeo's argument that Weisbrot does not offer a way to target solely Viewed Prior to Purchase members is merely another way to argue that the plaintiffs are unable to identify their own class members from common evidence— but I analyzed this assertion at length and rejected it above.  And Spokeo's argument about plaintiffs self-identifying is bizarre; claimants do not have to know pre-filing which class they are in, and because this information is solely within Spokeo's control, it would be nearly impossible for claimants to know without confirmation from Spokeo if they are members of the Viewed Prior to Purchase classes in addition to solely the Purchase classes.  And the plaintiffs may use the claims administration process to determine which claimants belong in which classes, using common evidence—in Spokeo's possession, including about its subscriptions and users—to determine class membership.  *See Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2020 WL 7042871, at *3 (N.D. Cal. Dec. 1, 2020) ("[A]ny issue about identifying who is entitled to recover is handled at the claims administration stage of the case." (citing *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017))).

Spokeo's argument about notice methodology also fails.  It asserts that Weisbrot should not rely on the email addresses that Spokeo has in its possession and includes for teaser profiles because they might not be real or correspond to a real person.  *See* Weisbrot Mot. 12, Weisbrot Repl. 1, 4–7.  First, Weisbrot's methodology for removing junk, fake, or inaccurate emails, to the extent possible, is reliable and relevant.  *See* Weisbrot Decl. ¶¶ 13–17; *City of Pomona*, 750 F.3d at 1043.  Second, with respect to Spokeo's assertion that its email address data is inherently unreliable, and given the evidence about its use of data gathering and associating via personal identifier labels to connect names with addresses and other information, it seems highly likely that many of the email addresses are correct for many of the teaser profiles.  Third, if a notice email is improperly received by someone who had an email published but not a name and residence, and so

25

does not fall into the class definition, they simply will not (and cannot) file a claim; it is not dispositive for class notice to be overinclusive.  *See Chinitz*, 2020 WL 7042871, at *3–4.  And fourth, even if an email bounces back, fails to reach its recipient, or is incorrectly assumed to belong to a particular potential class member, Weisbrot presents two other ways of providing notice.  The fact that these methods notify members of the Purchase classes as well as the Viewed Prior to Purchase classes is not a reason to find the method is unreliable.

For those reasons, the motion is DENIED.

**B.  Plaintiffs' Motion to Exclude Declaration and Testimony of David Alfaro**

Finally, the plaintiffs move to exclude Spokeo's expert, David Alfaro.  *See* Alfaro Mot. They argue that Alfaro misrepresents evidence about Spokeo data vendors, is unqualified to opine on class size or Naaman's methodology, is not an expert on class notice and cannot opine on Weisbrot's methodology, and provides improper legal conclusions.  *See also* Alfaro Decl.

The underlying basis for plaintiffs' motion is that Alfaro's declaration cannot be used to discount the declarations from Naaman or Weisbrot.  But as I explained, there are independent reasons that I find Naaman's and Weisbrot's declarations reliable and so I denied Spokeo's motions to exclude them.  For Naaman, Spokeo does not challenge numerosity; to the extent that Alfaro challenges Naaman's calculations of class size, I do not rely on those opinions because, as explained, they are not relevant.  Again, Naaman's declaration is not the basis for the evidence of or arguments about commonality; to the extent that Alfaro challenges it for these reasons, I do not consider those challenges.  And to the extent that Alfaro challenges the resulting damages calculations—that are calculated by assuming each potential class member would receive the statutory minimum—again I do not rely on Alfaro's declaration for these arguments, because *of course* this is the proper method for calculating damages here.  As I do not rely on Alfaro's declarations in assessing Naaman's declaration, and because that is the driving basis for which the plaintiffs challenge Alfaro's declaration, I do not need to address the plaintiffs' challenges.  Their motion is DENIED as moot for these reasons.

Plaintiffs also challenge Alfaro's critique of Weisbrot's methodology, but again, I do not rely on Alfaro's declaration to assess the validity of Weisbrot's methodology.  Even if Alfaro is

entirely correct that not all email addresses are accurate, I have already explained why that critique does not affect the sufficiency of Weisbrot's proposed notice plan.  The plaintiffs' challenge to Alfaro's declaration is DENIED as moot for these reasons.

Finally, I decline to address the plaintiffs' arguments about Alfaro's methodology and qualifications at this stage.  If they are still relevant at summary judgment, the plaintiffs may reraise their concerns then.

**CONCLUSION**

The plaintiffs' motion for class certification is GRANTED for the California and Ohio classes, with the above amendments to the class definitions.  The motion for the nationwide classes is withdrawn.  Spokeo's motion to exclude Naaman's declaration and testimony, to exclude Weisbrot's declaration and testimony, and to strike, are DENIED.  The plaintiffs' motion to exclude Alfaro's declaration and testimony is DENIED as moot.

**IT IS SO ORDERED.**

Dated: May 29, 2024

William H. Orrick
United States District Judge