MAYER BROWN LLP
JOHN NADOLENCO (SBN 181128)
*jnadolenco@mayerbrown.com*
DANIEL D. QUEEN (SBN 292275)
*dqueen@mayerbrown.com*
JENNIFER M. CHANG (SBN 315711)
*jchang@mayerbrown.com*
MAX W. HIRSCH (SBN 301872)
*mhirsch@mayerbrown.com*
333 South Grand Avenue, 47th Floor
Los Angeles, CA 90071
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

Attorneys for Defendant
SPOKEO, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| AVIVA KELLMAN, JASON FRY, NICHOLAS NEWELL, SUSAN GLEDHILL STEPHENS, and WILLIAM WILLIAMS, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SPOKEO, INC., <br><br> Defendant. | Case No. 3:21-cv-08976 <br><br> Honorable Judge William H. Orrick III <br><br> **DEFENDANT SPOKEO, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** <br><br> *[Declaration of Jennifer M. Chang and David Alfaro filed concurrently herewith]* <br><br> Date: July 9, 2025 <br> Time: 2:00pm <br> Courtroom: 2 <br><br> Complaint Filed: November 19, 2021 <br><br> Amended Complaint filed: May 12, 2023 <br><br> Second Amended Complaint filed: Sep. 8, 2023 |

## TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................................1

II.    PLAINTIFFS' CLAIMS ARE TIME-BARRED...................................................................3

       A.     Plaintiffs' Right of Publicity Claims Are Based Only on the Use of Plaintiffs' Names. ........................................................................................................................3

       B.     Spokeo's ████████████████████████████ Are Not Republications......5

       C.     Viewed-Prior-to-Purchase Class Members Do Not Have Unique "Injury." .................8

III.   THERE IS NO EVIDENCE THAT SPOKEO USED WILLIAMS' NAME...........................9

IV.    PLAINTIFFS' CLASS CLAIMS ALSO FAIL ...................................................................10

       A.     The Ohio Plaintiffs' and Class Members' Identities Lack Commercial Value and Spokeo's Use Was Incidental. .......................................................................................10

       B.     The Ohio Plaintiffs' and Class Members' UCL Claims Fail. ....................................12

       C.     Plaintiffs Do Not Offer Admissible Evidence that Spokeo Teaser Profiles Used Absent Class Members' Names and Home Addresses. ...............................................12

              1.     Plaintiffs' Attempt to Offer Evidence of Class-wide Liability Fails. ..............12

              2.     The Proposed Post-Trial Affidavit Process Violates Due Process. .................14

       D.     The "Public Affairs" Exception Bars Some Class Members' Claims. .......................15

       E.     The Dormant Commerce Clause Bars Plaintiffs' and Class Members' Claims. .........17

V.     THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR A RULE 56(G) ORDER..........................................................................................................................19

VI.    CONCLUSION.............................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdul-Jabbar v. GMC*,
  85 F.3d 407 (9th Cir. 1996). ...................................................................................................4

*Alario v. Knudsen*,
  704 F. Supp. 3d 1061 (D. Mont. 2023)................................................................................2, 18

*Backpage.com, LLC v. McKenna*,
  881 F. Supp. 2d 1262 (W.D. Wash. 2012)...............................................................................19

*Bd. of Trs. v. KMA Concrete Constr. Co.*,
  2011 WL 2135202 (N.D. Cal. May 27, 2011) ..........................................................................20

*Bonilla v. Ancestry.com Operations Inc.*,
  628 F. Supp. 3d 812 (N.D. Ill. 2022) .........................................................................................7

*Booth v. Appstack, Inc.*,
  2016 WL 3030256 (W.D. Wash. May 25, 2016)......................................................................18

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ..................................................................................................15

*Brown v. DirecTV, LLC*,
  2022 WL 1591325 (C.D. Cal. Mar. 31, 2022) .........................................................................15

*Carson v. Here's Johnny Portable Toilets, Inc.*,
  698 F.2d 831 (6th Cir. 1983) ......................................................................................................4

*Christoff v. Nestlé USA, Inc.*,
  62 Cal. Rptr. 3d 122 (2009) ...................................................................................................5, 6

*Clark v. Viacom Int'l Inc.*,
  617 F. App'x 495 (6th Cir. 2015) ...........................................................................................5, 8

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
  25 Cal. 4th 387 (2001) ................................................................................................................4

*DeBose v. Dun & Bradstreet Holdings, Inc.*,
  2025 WL 732288 (D.N.J. Mar. 7, 2025)..............................................................................10, 11

*Devereaux v. Abbey*,
  263 F.3d 1070 (9th Cir. 2001) ..................................................................................................10

*Doe v. Aylo Glob. Ent. Inc.*,
  2025 WL 1382196 (C.D. Cal. Apr. 15, 2025) .............................................................................5

*Dora v. Frontline Video, Inc.*,
15 Cal. App. 4th 536 (1993) ...............................................................................................16

*Eastwood v. Superior Ct.*,
149 Cal. App. 3d 409 (Cal. Ct. App. 1983) ...........................................................................3

*Estate of Fuller v. Maxfield & Oberton Holdings, LLC*,
906 F. Supp. 2d 997 (N.D. Cal. 2012) ...................................................................................6

*Gionfriddo v. Major League Baseball*,
94 Cal. App. 4th 400 (2001) ...............................................................................................16

*Hilton v. Hallmark Cards*,
599 F.3d 894 (9th Cir. 2010) .................................................................................................4

*Hodges v. Hertz Corp.*,
351 F. Supp. 3d 1227 (N.D. Cal. 2018) .................................................................................7

*Honchariw v. Cnty. of Stanislaus*,
530 F. Supp. 3d 939 (E.D. Cal. 2021)....................................................................................9

*Hudson v. Datanyze, LLC*,
2025 WL 80806 (6th Cir. Jan. 13, 2025) ..............................................................1, 3, 10, 11

*Hudson v. Datanyze, LLC*,
702 F. Supp. 3d 628 (N.D. Ohio 2023)................................................................................11

*Jenkins v. Cnty. of Riverside*,
398 F.3d 1093 (9th Cir. 2005) .............................................................................................12

*Kellman v. Spokeo, Inc.*,
599 F. Supp. 3d 877 (N.D. Cal. 2022) .................................................................................18

*Kensington Apartment Props., LLC v. Loanvest IX, L.P.*,
2023 WL 6450513 (N.D. Cal. Oct. 3, 2023)........................................................................19

*Knapke v. PeopleConnect, Inc.*,
553 F. Supp. 3d 865 (W.D. Wash. 2021)..............................................................................18

*Krause v. RocketReach, LLC*,
561 F. Supp. 3d 778 (N.D. Ill. 2021) ...................................................................................18

*LaFleur v. Yardi Sys., Inc.*,
765 F. Supp. 3d 640 (N.D. Ohio 2025)....................................................................10, 11, 12

*Monarch Consulting, Inc. v. Specialty Risk Servs., LLC*,
2014 WL 12737620 (C.D. Cal. Jan. 21, 2014) ....................................................................19

DEFENDANT SPOKEO, INC.'S REPLY ISO ITS MOTION FOR SUMMARY JUDGMENT;
CASE NO. 3:21-cv-08976

*National Association of Optometrists & Opticians v. Harris*,
682 F.3d 1144 (9th Cir. 2012) ....................................................................................................18

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
724 F.3d 1268 (9th Cir. 2013) .........................................................................................6, 10, 16

*Newcombe v. Adolf Coors Co.*,
157 F.3d 686 (9th Cir. 1998) ........................................................................................................4

*Nunes v. Meredith*,
2022 WL 2214205 (E.D. Cal. June 21, 2022) ............................................................................16

*Park Pet Shop, Inc. v. City of Chi.*,
872 F.3d 495 (7th Cir. 2017) ......................................................................................................18

*Perata v. City & Cnty. of S.F.*,
2023 WL 4537695 (N.D. Cal. July 13, 2023)..............................................................................12

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970)...............................................................................................................17, 18

*Platt Elec. Supply, Inc. v. EOFF Elec. Inc.*
522 F.3d 1049 (9th Cir. 2008) .......................................................................................................9

*Regan v. City of Hammond, Indiana*,
934 F.3d 700 (7th Cir. 2019) ......................................................................................................18

*Regents of Univ. of Cal. v. Affymetrix, Inc.*,
2018 WL 2215432 (S.D. Cal. May 14, 2018)..............................................................................19

*Roe v. Amazon.com*,
170 F. Supp. 3d 1028 (S.D. Ohio 2016) ........................................................................................4

*Scott v. Citizen Watch Co. of Am., Inc.*,
2018 WL 1626773 (N.D. Cal. Apr. 4, 2018) ..............................................................................16

*Sessa v. Ancestry.com Operations, Inc.*,
561 F. Supp. 3d 1008 (D. Nev. 2021)........................................................................................4, 7

*In re SFPP Right-of-Way Claims*,
2017 WL 2378363 (C.D. Cal. May 23, 2017) .............................................................................15

*Steeped, Inc. v. Nuzee, Inc.*,
2020 WL 6891832 (N.D. Cal. Nov. 24, 2020) ............................................................................20

*Steinberger v. IndyMac Mortg. Servs.*,
2017 WL 6040003 (D. Ariz. Jan. 12, 2017) ...............................................................................10

DEFENDANT SPOKEO, INC.'S REPLY ISO ITS MOTION FOR SUMMARY JUDGMENT;
CASE NO. 3:21-cv-08976

*T.S. v. Plain Dealer*,
  954 N.E.2d 213 (Ohio Ct. App. 2011) .................................................................................6

*Tseng v. PeopleConnect*,
  665 F. Supp. 3d 1136 (N.D. Cal. 2023) ..............................................................................7

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ...................................................................................................13, 14

*Valenzuela v. Union Pac. R.R. Co.*,
  2017 WL 679095 (D. Ariz. Feb. 21, 2017) .......................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...........................................................................................................14

*Ward v. Paperback Brewing LLC*,
  2024 Cal. Super. LEXIS 59375 (Mar. 19, 2024) .................................................................4

*Yeager v. Bowlin*,
  693 F.3d 1076 (9th Cir. 2012) .............................................................................................6

**Statutes**

California Civ. Code § 3344 ............................................................................... 3, 4, 15-16

Ohio Rev. Code § 2741.01(A) .................................................................................................3

Ohio Rev. Code § 2741.01(C) ...............................................................................................10

**Other Authorities**

Local Rule 7-2 .................................................................................................................2, 20

## I.    INTRODUCTION

Spokeo's Motion relied on the undisputed factual record and analogous legal authority to show that Plaintiffs' claims, and many of the class members' claims, failed. In their Opposition, despite having years to take discovery and develop their arguments, Plaintiffs failed to dispute those material facts, distinguish key cases, or cite any cases remotely similar to this one that justify denying Spokeo's Motion. Instead, Plaintiffs misconstrue the record and invent their own standard for publicity cases.

***Statute of Limitations***: Plaintiffs do not dispute that a teaser profile with each of their names was available to be searched before the applicable statute of limitations period. Nor do they dispute that the single publication rule governs their claims. Instead, Plaintiffs contend that their claims are timely because it is not their names, but "an identifiable combination of personal information" that triggers their claims. That is a blatant misstatement of the law: the statutes and common law at issue only protect the use of names, likenesses, and other specific, enumerated characteristics. There is no catch-all for contact information. Further, the supposedly "███████████████████████████████" are not a "re-publication" that re-triggers the statute of limitations, because there is no evidence that any ████████ were aimed at a "new" audience or that the material information (the names on teaser profiles) was █████.

*Plaintiff Williams:* Plaintiffs do not dispute that "William O V Williams III" is not Plaintiff Williams's name, nor has it ever been his name. This, alone, dooms Williams' claim. While Plaintiffs again shift the goalposts and argue that all that is required is that Williams is "recognizable to Spokeo's intended audience," that is not what the right of publicity statutes or caselaw require. Plaintiff Williams simply cannot base a publicity claim on a fictitious person.

***Lack of Commercial Value***: Plaintiffs do not dispute that there is nothing in their names or other personal information that has inherent commercial value. Instead, Plaintiffs claim that the purchases on Spokeo's website are the only evidence of commercial value required. That is not what Ohio courts interpreting this law have said. While Plaintiffs attempt to distinguish *Hudson v. Datanyze*, they ignore the district court cases applying *Hudson* in analogous situations. This Court should follow those courts.

*UCL*: Despite alleging the opposite (SAC ¶ 218), Plaintiffs concede that non-Californians cannot assert UCL claims. The Court should enter summary judgment for Spokeo on those claims.

***Using Affidavits and Statistics to Establish Class-Wide Liability***: Plaintiffs seem content to punt

the question of whether Spokeo used class members' names and addresses—and thus, whether Spokeo is liable to those class members—to a claims administrator through an affidavit process, or through an aggregated statistical analysis. But the Court cannot simply delegate liability determinations to a claims administrator, and Plaintiffs' expert analyses cannot be the basis for determining liability or aggregate damages. Indeed, Plaintiffs' experts have estimated completely different class sizes and aggregated damages amounts, and their analyses suffer from various methodological deficiencies described in Spokeo's contemporaneously-filed motions to exclude and the declarations of its expert, David Alfaro.[1] ("Alfaro Decl."). They cannot form the basis of any class-wide liability or damages calculations. Thus, Plaintiffs have offered no class-wide evidence that Spokeo used class members' names or addresses.

*Public Affairs Exception*: Plaintiffs do not dispute that Fry testified that he is a public figure, about whom the public would want to know certain information. Plaintiffs also ignore caselaw (including this Court's prior ruling) establishing that the public affairs exception applies when a defendant is "informing the public about a matter of genuine public interest," and it is the use of someone's name—not the nature of the defendant—that governs the applicability of the exception.

*Dormant Commerce Clause ("DCC")*: Plaintiffs claim that Spokeo did not offer any evidence of the "burden" their application of these laws would impose. In fact, Spokeo offered the Declaration of Mike Daly, describing the exact impact Plaintiffs' application of these laws would have on Spokeo's business model. Plaintiffs also completely ignore *Alario v. Knudsen*, a directly-analogous, in-circuit case.

*Request for a 56(g) Order and to Strike Alfaro's Testimony*: Plaintiffs improperly append two procedurally deficient arguments to their opposition. First, Plaintiffs cannot ask for a 56(g) order in their opposition or aimed at adjudicating legal issues instead of facts. Second, Plaintiffs cannot move to exclude Alfaro's testimony without complying with Local Rule 7-2, and for the reasons stated in Spokeo's opposition to Plaintiff's original motion to exclude Alfaro's testimony (ECF No. 176), Alfaro is qualified.

Plaintiffs cannot bend the facts and law to their liking. Plaintiffs have no claims, and they do not and cannot establish that the remainder of the class have claims, either. Accordingly, the Court should grant Spokeo's motion for summary judgment.

---

[1] In addition to the Declaration of David Alfaro submitted contemporaneously herewith (the "Alfaro Decl."), Spokeo previously submitted a declaration from David Alfaro that appears at ECF No. 139.

## II.     PLAINTIFFS' CLAIMS ARE TIME-BARRED

Plaintiffs do not dispute the applicable statute of limitations for their claims, that the single-publication-rule governs, or that Plaintiffs' names have been searchable in teaser profiles on Spokeo's website since at least 2017—more than the applicable two- and four-year limitations periods. Mot. at 15-17; Opp. at 4-14. Instead, Plaintiffs contend that their claims are timely because (i) it is not names, but "an identifiable combination of personal information," that gives rise to their claims; and (ii) Spokeo republished teaser profiles within two years of their November 29, 2021 filing of this action based on a ███████████████████████████████████████████████. Opp. at 4-14. Both arguments fail.

### A.     Plaintiffs' Right of Publicity Claims Are Based Only on the Use of Plaintiffs' Names.

Plaintiffs' republication argument is premised on the contention that, legally, it is not Spokeo's use of their names that give rise to their claims, but instead "an identifiable combination of personal information." Opp. at 11-14. That is not the law. Significantly, Plaintiffs support their incorrect statement of the law by relying on this "Court's prior rulings," which they say confirm that use of their name alone does not give rise to their claims, but rather the "combination of an accurate name with additional accurate personal information, including an address." *Id.* at 12. All of that is wrong.

As made clear in Spokeo's Motion and as Plaintiffs do not rebut, Section 3344, the ORPS, and California and Ohio common law only protect *names* and *likenesses* from unauthorized use, along with other specific aspects of an individual's identity. Mot. at 13. For example, Section 3344 and the ORPS protect unauthorized uses of a person's "voice," "signature," and "photograph," and the ORPS also protects a someone's "image" and "distinctive appearance." Cal. Civ. Code. § 3344(a), Ohio Rev. Code § 2741.01(A). Likewise, to the extent their common-law claims still apply (given that Plaintiffs are only pursuing statutory damages under Section 3344 and the ORPS), those are likewise limited to name and likeness. *E.g.*, *Hudson v. Datanyze, LLC*, 2025 WL 80806, at *3 (6th Cir. Jan. 13, 2025) ("*Hudson II*") (Ohio common law protects appropriation of "name or likeness"); *Eastwood v. Superior Ct.*, 149 Cal. App. 3d 409, 416 (Cal. Ct. App. 1983) (same under California law). These specific categories—not someone's contact information—give rise to a right-of-publicity claim. And of these categories, it is only a person's name that Plaintiffs claim gives rise to their claims here. Mot. at 13-14 (collecting cites).

Plaintiffs lift the "readily identifiable" language from Section 3344's definition of "photograph":

"As used in this section, 'photograph' means any photograph . . . of any person, such that the person is readily identifiable." Cal. Civ. Code. § 3344(b); Opp. at 2, 23. Here, the language acts as a limitation on what *photographs* give rise to Section 3344 liability. But Plaintiffs hope to apply that same language to their right-of-publicity claims here. That is not what the statutes or caselaw say: they do not provide for liability based upon an individual's name so long as an individual is "readily identifiable."

Undaunted by the statutory text, Plaintiffs cite various cases in "support" that are easily distinguishable, and none of which hold that contact information can constitute someone's "identity" or "persona" sufficient to trigger a right-of-publicity claim. But six of Plaintiffs' cited cases concern a "likeness" (*i.e.*, an image) or a photograph, which are no longer part of the named Plaintiffs' claims here, and which are not the basis for inclusion within the classes. *See Sessa v. Ancestry.com Operations, Inc.*, 561 F. Supp. 3d 1008, 1022 (D. Nev. 2021) ("use of an individual's likeness for commercial purposes" establishes common-law claim if "the individual is recognizable"); *Hilton v. Hallmark Cards*, 599 F.3d 894, 899, 909 (9th Cir. 2010) (concerning use of "name or likeness" where defendant used "[a]n oversized photograph of Hilton's head"); *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 393 (2001) (claim based on "lithographs and T-shirts bearing a likeness of The Three Stooges"); *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1030 (S.D. Ohio 2016) (claim premised on "photograph of Plaintiffs"), *aff'd*, 714 F. App'x 565 (6th Cir. 2017); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 689 (9th Cir. 1998) (challenging "drawing" of "baseball scene" featuring pitcher's distinctive "windup position"); *Ward v. Paperback Brewing LLC*, 2024 Cal. Super. LEXIS 59375, at *20 (Mar. 19, 2024) (applying "readily identifiable" photograph provision of Section 3344). As for *Carson v. Here's Johnny Portable Toilets, Inc.*, that case addressed the use of a "celebrity's identity" under Michigan common law. 698 F.2d 831, 835 (6th Cir. 1983) (holding that under Michigan common law, right of publicity is violated "[i]f the celebrity's identity is commercially exploited"). And in *Abdul-Jabbar v. GMC*, the Ninth Circuit stated that California's common law "protects **celebrities** from appropriations of their *identity*" beyond "the statutory 'laundry list' of particular means of appropriation." 85 F.3d 407, 415 (9th Cir. 1996).

Here, Plaintiffs do not premise their claims on a photo, drawing, or likeness. Mot. at 13-14 (collecting cites). Nor do they bring claims under Michigan common law or contend that they are "celebrities" or "famous." *See generally*, SAC. Instead, they ask this Court to find that a Section 3344,

4

ORPS, or common law claims can be based upon Spokeo's alleged use of their ***contact information***. But Plaintiffs have cited no case so holding. And while this Court included a home address in the certified class definitions to help identify class members, that does not mean that their right-of-publicity claims can be premised on a use of an address; the statutes and case law do not allow it. To hold otherwise would materially expand California and Ohio right-of-publicity law to places never before held by any court.

   **B.    Spokeo's ███████████████████████████████ Are Not Republications.**

Based on their argument that names alone do not give rise to their claims, Plaintiffs argue that their claims and absent class members' claims are timely because the "████████████████████ ████████" were a 'republication' under the single-publication-rule, which retriggered the California and Ohio limitations periods." Opp. at 5. But courts have already rejected the notion that a website defendant's "extensive efforts" to "maximize profit by modifying and redirecting content, including Plaintiff's content" is a republication that re-triggers the statute of limitations. *Doe v. Aylo Glob. Ent. Inc.*, 2025 WL 1382196, at *7 (C.D. Cal. Apr. 15, 2025). Even when a website "rebranded, reposted, retargeted, readvertised and redirected [Plaintiff's content] in order to maximize views," "promot[ed] it to others . . . identifie[d] as likely to be interested' in the content," and added new content ("titles, themes, descriptions, text, keywords, tags, categories, images, etc."), this effort to "maximize traffic to the various websites" was not a republication. *Id.* Instead, these traffic-generating techniques "are similarly employed by the vast majority of . . . websites operating in the twenty-first century[,]" so the notion that use of "these techniques constitutes a republication would extend and transform the republication doctrine into the very thing the Single Publication Rule sought to prevent." *Id.* at *7-8; *see also Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 506 (6th Cir. 2015) (same). Here, Plaintiffs argue that Spokeo ██████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Opp. at 6, 8. But under *Doe* and *Clark*, ████████████████████████████████████ ████████████████████ cannot retrigger the statute of limitations.

None of Plaintiffs' cases hold otherwise. First, in *Christoff*, the court held that "[t]he **modification to a Web site does not constitute a republication**." *Christoff v. Nestlé USA, Inc.*, 62 Cal. Rptr. 3d 122, 138 (2009) (emphasis added). The *Christoff* court found that a republication occurs if the new version

5

"was undoubtedly intended to **and did** reach a new [audience]." *Id*. at 137. The court then instructed the trial court, on remand, to consider whether "there [was] a describable difference in the audience sufficient to constitute a republication," or if the actual image of the plaintiff (which gave rise to his claim) was altered by "adding sideburns and darkening his complexion." *Id*. at 139. Similarly, in *T.S. v. Plain Dealer*, the Ohio Court of Appeals ruled that "mere modifications to the way information is accessed, as opposed to changes in the nature of the information itself, does not constitute republication." 954 N.E.2d 213, 215 (Ohio Ct. App. 2011). Finally, in *Yeager v. Bowlin*, the Ninth Circuit determined that no republication occurred because "under California law, a [challenged] statement on a website is not republished unless the [challenged] statement itself is substantively altered or added to, or the website is directed to a new audience." 693 F.3d 1076, 1082 (9th Cir. 2012).[2] In summary, all of these cases ask two basic questions: was the "new" publication intended to reach a new audience, and was the information giving rise to plaintiff's claim altered. Plaintiffs attempt to answer both of these questions in the affirmative by pointing to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Opp. at 6-11. Neither carries Plaintiffs' burden to establish a re-publication.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮: First, Plaintiffs claim that Spokeo ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Opp. at 5-6. But as Plaintiffs admit in their Opposition, the ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. at 9. None of these ▮▮▮▮▮ constitute a republication. For starters, Plaintiffs do not claim that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As explained above (*supra* Section II(A)), it is an individual's *name* that triggers the statutory right of publicity claims here—not an individual's address, phone number, or email.[3] For this reason, Plaintiffs' attempt to

---

[2] Plaintiffs also cite *Estate of Fuller v. Maxfield & Oberton Holdings, LLC*, but there, at the motion to dismiss stage, the district court determined that it could not make a decision on the applicability of the single-publication-rule "without the benefit of evidence." 906 F. Supp. 2d 997, 1009 (N.D. Cal. 2012). Accordingly, this case offers little guidance here.

[3] Plaintiffs' request "for further development of the factual record" (Opp. at 10) is rich. Spokeo produced the screenshots of ▮▮▮▮▮▮▮▮▮▮▮▮▮ in 2022 and has asserted a statute-of-limitations defense

6

distinguish *Tseng v. PeopleConnect*, 665 F. Supp. 3d 1136 (N.D. Cal. 2023), and *Bonilla v. Ancestry.com Operations Inc.*, 628 F. Supp. 3d 812 (N.D. Ill. 2022), fail. Plaintiffs argue that those cases are inapposite because they involved misappropriated photographs that "remained static" through the relevant limitations period—but here, too, the "relevant content"—Plaintiffs' names—"remained static." Opp. at 9. The Court should follow *PeopleConnect* and *Ancestry.com* and dismiss Plaintiffs' claims as time-barred.

Plaintiffs also are wrong that the ███████████████████████████. As shown in the ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Reply Declaration of Jennifer Chang ("Chang Decl.") ¶¶ 4-8, 12, Exs. 7, 11.[4] Moreover, the first page of the ████████████ includes an embedded Google Maps image with a pinpoint corresponding to the address associated with the teaser profile. *Id.* Exs. 3-6; Opp. at 7 (screenshot of ████████). Users could zoom in and out on the Google Maps image to see the street name associated with the teaser profile. Chang Decl. Exs. 3-6. In short, ██████████████████████████████████████████████████████████████.[5]

Further, while Plaintiffs incorrectly state that Spokeo was trying to "reach[] 'a new audience,'" citing Mike Daly's deposition transcript, nowhere did Daly testify that Spokeo ██████████████ ██████████████████████████████ Opp. at 6. Instead, Daly testified that Spokeo ██████████████████████████████████████████████████████████████ ██████████ ECF No. 253-3 (Daly Dep.) at 100:6-9. Nor do "██████████████████████" (Opp. at 9)

since its first Answer. ECF No. 44 (Spokeo's answer to complaint) at 20 (listing Spokeo's statute of limitations affirmative defense); Chang Decl. ¶¶ 4-8, 12, Exs. 3-7, 11. Since then, Plaintiffs have had two opportunities to depose Spokeo's 30(b)(6) witness on, *inter alia*, "[t]he facts and evidence that serve as the basis for each affirmative defense set forth in Spokeo's Answer." *Id.* Exs. 8-9 (Plaintiffs' 30(b)(6) deposition notices). And in the parties' October 22, 2024 joint status report, Plaintiffs argued, over Spokeo's objection, that "[t]here is very little fact and expert discovery that remains to be taken in this case. . . . Spokeo had every opportunity to take discovery on its affirmative defenses." ECF No. 214 at 13.

[4] *See Hodges v. Hertz Corp.*, 351 F. Supp. 3d 1227, 1249 (N.D. Cal. 2018) (considering new evidence on reply that responded to opposition and was consistent with argument and evidence in moving papers).

[5] Were Plaintiffs correct that the ██████████████████ contain no partial addresses, that would mean that no California or Ohio resident whose ████████████████████████████████████████████████████ ████████████████████████ before ████ would meet the Viewed-Prior-to-Purchase class definitions, which require the teaser profile to include "the individual's name and home address." ECF No. 197 (Class Cert. Order) at 17. That would reduce the size of the Viewed-Prior-to-Purchase Classes by approximately 25 percent. *See* ECF No. 247-11 at Ex. 26 (spreadsheet listing ██████████████████).

DEFENDANT SPOKEO, INC.'S REPLY ISO ITS MOTION FOR SUMMARY JUDGMENT;
CASE NO. 3:21-cv-08976



For similar reasons, seeking to ... ECF No. 253-3 (Daly Dep.) at 42:1-12. There is no evidence that Spokeo ... Indeed, "website updates[] or interface redesigns typically demonstrate neither the intent nor the ability to garner a wider audience than the initial iteration of the online statement could reach." *Clark*, 617 F. App'x at 506.

... : Plaintiffs next contend that a republication occurred because ... Opp. at 10-11. But Plaintiffs do not even attempt to explain why ... would result in a republication of teaser profiles sufficient to re-start the statute of limitations. Plaintiffs do not contend that ... Instead, Plaintiffs contend that because ... *Id.* at 11. But Plaintiffs misunderstand the testimony they cite: while ... Mot. at 15-17. Plaintiffs do not dispute these facts. Thus, Spokeo's ... is of no matter to this Court's statute of limitations analysis.

In short, no republication occurred here sufficient to re-trigger the statute of limitations.

### C.  Viewed-Prior-to-Purchase Class Members Do Not Have Unique "Injury."

Finally, Plaintiffs claim that the Viewed-Prior-To-Purchase Class Members claims should be spared because their "relevant injury" is when their teaser profile was viewed, which happened within the limitations period. Opp. at 13-14. Accordingly, Plaintiffs claim that these individuals' claims did not accrue until "their teaser profiles drew a purchase." *Id*. at 14.[6] But Plaintiffs obtained certification of their

---

[6] Plaintiffs also claim that "Spokeo does not dispute that it ...," citing "Exhibit 21" in support. Opp. at 14. This is one of many of Plaintiffs' misstatements of the record. Exhibit 21, which is Spokeo's supplemental responses and objections to Plaintiffs' interrogatories (ECF No. 251-9), says no such thing,

8

Published Classes on the premise that those class members' right-of-publicity claims are triggered by Spokeo's making their information available for search. SAC ¶¶ 44-45 (asserting right-of-publicity claims for individuals "whose teaser profile is searchable"). "A cause of action accrues when the claim is complete with all of its elements." *Platt Elec. Supply, Inc. v. EOFF Elec. Inc.* 522 F.3d 1049, 1054 (9th Cir. 2008). Under Plaintiffs' theory of liability, if the Published Classes can assert right-of-publicity claims—with all elements satisfied—based on the mere searchability of their information on spokeo.com, the Viewed Prior to Purchase Classes must be able to assert their claims on the same basis. SAC ¶¶ 180-92, 205-216 (asserting same claims, with same elements, for the Viewed-Prior-to-Purchase and Published Classes); *Honchariw v. Cnty. of Stanislaus*, 530 F. Supp. 3d 939, 948–49 (E.D. Cal. 2021) (calculating claim accrual based on "plaintiff's theory of liability"), *aff'd*, 2022 WL 522287 (9th Cir. Feb. 22, 2022). Thus, the claims of the Viewed-Prior-to-Purchase Classes must have accrued at the time their teaser profiles became "searchable" on spokeo.com. If Plaintiffs now argue that instead, a search and/or viewing of the class members' teaser profiles is required for the Viewed-Prior-to-Purchase Classes' claims to accrue, logically, then, the Published Classes should have no right-of-publicity claims to assert.

In sum, Plaintiffs' names undisputedly have been available to be searched on teaser profiles since July 2017 or earlier—more than four years before Plaintiffs filed this action in November 2021. The Court should grant Spokeo summary judgment because their claims are time-barred.

**III.      THERE IS NO EVIDENCE THAT SPOKEO USED WILLIAMS' NAME**

Plaintiffs do not dispute that "William O V Williams III" is not Plaintiff Williams' name. And unlike the other Plaintiffs, Plaintiff Williams did not (and cannot) proffer any declaration or other testimony stating otherwise; rather, he previously testified about a list of names that he used, and "William O V Williams III" was not one of them. ECF No. 138-21 (Williams V Dep.) 7:20-22; 17:3-8, 17:14-22, 74:1-2. Instead, Plaintiffs argue that Spokeo has failed to show the absence of a triable issue of fact and that a genuine dispute exists as to "whether Plaintiff Williams's teaser profile is . . . recognizable to Spokeo's intended audience, *i.e.*, to 'friends, family, acquaintances, and old classmates,' . . . to 'help

nor ███████████████████████████████████ be relevant to this case. Instead, Spokeo identified the ███
███████████████████████████████████ *Id*. at 4.

9

[users] locate the person they're looking for[.]'" Opp. at 19. But as discussed (*supra* § II.A), the recognizability of Williams' teaser profile as a whole to a particular "intended audience" is not the relevant legal question; rather, it's whether Williams' "actual, assumed, or clearly identifiable" *name* was used. Ohio Rev. Code § 2741.01(C); *see also Hudson II*, 2025 WL 80806, at *3 (common-law right of publicity requires "appropriation . . . of the plaintiff's name or likeness."). Here, Plaintiffs have not met their burden to establish that it was, and Williams' claims fail. *E.g.*, *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (to obtain summary judgment, moving party "need only point out 'that there is an absence of evidence to support the nonmoving party's case'").

## IV.    PLAINTIFFS' CLASS CLAIMS ALSO FAIL

### A.    The Ohio Plaintiffs' and Class Members' Identities Lack Commercial Value and Spokeo's Use Was Incidental.

The Ohio Plaintiffs and class members' ORPS and Ohio common law claims fail because there is no evidence that their identities have commercial value or that Spokeo's use of their identities was not incidental. Plaintiffs' arguments to the contrary miss the mark.

Plaintiffs downplay *Hudson II* as a nonbinding, unpublished, and supposedly distinguishable case. Opp. at 15. But *Hudson II* is the Sixth Circuit applying Ohio law, and thus should be persuasive to this Court's analysis of Plaintiffs' ORPS and Ohio common law claims. *See Steinberger v. IndyMac Mortg. Servs.*, 2017 WL 6040003, at *10 (D. Ariz. Jan. 12, 2017), *aff'd sub nom. Steinberger v. Ocwen Loan Servicing, LLC*, 739 F. App'x 881 (9th Cir. 2018) (if a "relevant intermediate appellate court decision is unpublished . . . a federal court must 'consider' the unpublished decision as an indication of the proper interpretation of [the underlying state] law"). And while Plaintiffs invoke the Ninth Circuit rule against citing unreported cases (going so far as to imply counsel "discipline" is warranted), they ignore that this is not a Ninth Circuit case, and the applicable rule only applies to in-circuit cases. Indeed, Plaintiffs' Opposition itself cites several unpublished in-circuit cases. Opp. at 4, 10, 22, 24, 26, 28. Moreover, Plaintiffs fail to distinguish and ignore completely the three district court cases applying *Hudson II*'s reasoning that Spokeo cited in its Motion. Those courts are unanimous: "without any allegation to indicate that [defendant] did anything more than treat Plaintiffs' profiles like the millions of others in its database," or that their "names and likenesses had commercial value before or after their appropriation," the court

10

cannot "infer that Plaintiffs' names or likenesses have commercial value." *Hudson II*, 2025 WL 80806, at *3; *accord Hudson v. Datanyze, LLC*, 702 F. Supp. 3d 628, 634 (N.D. Ohio 2023) (*Hudson I*); *LaFleur v. Yardi Sys., Inc.*, 765 F. Supp. 3d 640, 651 (N.D. Ohio 2025); *DeBose v. Dun & Bradstreet Holdings, Inc.*, 2025 WL 732288, at *7 (D.N.J. Mar. 7, 2025).

Plaintiffs next attempt to distinguish *Hudson II* because there, "[t]here was nothing to show that any single person in the database was uniquely valuable to any potential purchaser," whereas Spokeo's teaser profiles supposedly "[are] centered around the potential purchaser's interest in the specific individual portrayed." Opp. at 15. But in *Hudson II*, just like here, the plaintiffs' specific profiles on the Datanyze database "were accessed" by users "through Datanyze's free trial," as part of that defendant's effort "to solicit paid subscriptions." *Hudson II*, 2025 WL 80806, at *1, *3. In other words, the potential purchasers in *Hudson II* were specifically interested in those plaintiffs—as demonstrated by their accessing those specific profiles. Nonetheless, the Sixth Circuit flatly rejected the argument that this access *and* accessibility of plaintiffs' profiles was enough to establish commercial value: "[n]either Ohio courts, nor this court when applying Ohio law, have endorsed . . . [the theory that] misappropriation of [plaintiffs'] names or likenesses to solicit paid subscriptions, in and of itself, demonstrates commercial value." *Id*. at *3. For the same reason, Plaintiffs cannot distinguish *Hudson II* by asserting Ohio class members' identities have commercial value because their teaser profiles "successfully attracted at least one purchase." *Id*. at 15-16. Even if that is true—and Spokeo disputes that the fact a ███████████ ███████████████████████████████████ means that the teaser profile *caused* that purchase— the *Hudson II* plaintiffs' profiles also were accessed before Datanyze users purchased subscriptions to its database. *Hudson II*, 2025 WL 80806, at *1. *Hudson II* is on all fours with the facts here, and it precludes all of the Plaintiffs' and class members' Ohio claims.

Finally, Plaintiffs argue that the incidental use doctrine does not apply for the same reasons—*i.e.*, because "the identity portrayed in each teaser profile is central to the value proposition Spokeo offers to potential purchasers." *Id*. at 17, n.8. Plaintiffs again misread the caselaw: "Even when a defendant uses a plaintiff's name in an advertisement, that use is merely incidental if the defendant mentions the name 'within the context of accurate, historical information' and does not imply that plaintiff 'uses, supports, or promotes' the product the defendant is advertising." *LaFleur*, 765 F. Supp. 3d at 661. Plaintiffs do not

11

address this argument—much less offer evidence that the incidental use doctrine requirements discussed in *LaFleur* do not apply (Mot. at 19)—and therefore concede this point. *See Perata v. City & Cnty. of S.F.*, 2023 WL 4537695, at *24 (N.D. Cal. July 13, 2023) ("Plaintiff fails to address Defendant's argument in her opposition and thus concedes it."). The Court should dismiss their Ohio claims.

### B.    The Ohio Plaintiffs' and Class Members' UCL Claims Fail.

In their Opposition, Plaintiffs insist that "only California residents" assert a UCL claim. Opp. at 21. Though they are wrong,[7] there is now no dispute that Plaintiffs do not assert viable UCL claims on behalf of non-Californian named Plaintiffs and class members, so the Court should grant Spokeo summary judgment on the UCL claims of Plaintiffs Fry, Newell, and Williams and the Ohio Published and Viewed-Prior to-Purchase Classes. *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (plaintiff "abandoned" claims by not arguing them in opposition to summary judgment motion).

Next, Plaintiffs attempt to save their UCL claims for California Plaintiffs and class members by jettisoning their demand for "restitution [and] declaratory relief" for these claims, for which Plaintiffs' other claims provide "an adequate remedy at law." SAC ¶ 222; Opp. at 21-23. Plaintiffs now clarify that "no Class member will seek restitution at trial" and request only injunctive relief for the UCL claims. Opp. at 23. As Plaintiffs have abandoned their request for restitution and declaratory relief, the Court should excise those forms of relief from this case. *Jenkins*, 398 F.3d at 1095 n.4.

### C.    Plaintiffs Do Not Offer Admissible Evidence that Spokeo Teaser Profiles Used Absent Class Members' Names and Home Addresses.

Plaintiffs cannot establish that Spokeo used absent class members' names or home addresses in its "teaser profiles"; they cannot prove the residence of absent class members; and they therefore also cannot prove Spokeo's aggregate liability. Mot. at 20-25. Plaintiffs' arguments to the contrary fail.

#### 1.    *Plaintiffs' Attempt to Offer Evidence of Class-wide Liability Fails.*

Plaintiffs first argue that they can use expert evidence to show the number of teaser profiles, class-wide, that use names and home addresses—and, therefore, the class size and aggregate liability amount—

---

[7] The SAC asserts the UCL claim on behalf of "all Plaintiffs." SAC ¶ 217. Further, when the parties conferred before Spokeo filed its Motion, Plaintiffs refused to dismiss Plaintiff Fry from the case even though his only remaining claim—as an Indiana resident—was a UCL claim. Chang Decl. ¶ 14.

by relying on the declarations of their experts, Anya Verkhovskaya and Michael Naaman. Opp. at 20-21, 24. But Verkhovskaya and Naaman merely purport to *estimate* the damages class size, not offer an opinion on the *exact* size of those classes.[8] And, tellingly, their estimates vary dramatically—with Verkhovskaya estimating a range between 39,368 and 43,533 class members, and Naaman offering estimates of between 56,830 and 61,789 class members. *Compare* Declaration of Anya Verkhovskaya ("AV Decl.") ¶ 106 *with* ECF No. 127-1 (Suppl. Naaman Decl.) at 2. Plaintiffs simply cannot meet their burden of showing liability or damages on a class-wide basis.

Indeed, as described in more detail in the concurrently-filed declaration of its expert, David Alfaro, as well as the motion to exclude Verkhovskaya's declaration, Verkhovskaya's declaration actually confirms that class-wide evidence is *not* available. She purports to use a "sample" of potential class members to assess liability as a whole. AV Decl. ¶ 106. But Verkhovskaya confirmed that Spokeo's data was insufficient to confirm class membership for all potential class members. AV Dep. 55:17-56:10; Alfaro Decl. ¶¶ 11-27. What's more, her analysis did not even consider which addresses or names actually appeared in Spokeo teaser profiles (as opposed to                          ), and simply assumes that the address used in Spokeo teaser profiles accurately reflected their California or Ohio residence. AV Dep. 56:3-19; Alfaro Decl. ¶¶ 28-39. Further, her methodology requires individualized, subjective judgment calls, *e.g.*, to determine whether a mismatched name in a "teaser profile" is incorrect or merely a "nickname." AV Dep. 79:18-25-80:1-6; Alfaro Decl. ¶¶ 40-41. It treats incorrect names or addresses in "teaser profiles" as valid if they are "fuzzy" matches—such that a teaser profile with the name Jon Smith and address of 50 Los Angeles Street is treated as "correct" if the relevant individual's actual name was John Smyth and he lived at 50 Los Feliz Boulevard. AV Dep. 81:17-24, 103:16-25-104:1-13; Alfaro Decl. ¶¶ 40-47. Verkhovskaya's declaration is thus both unreliable and irrelevant and cannot be used to determine liability across the class. And Naaman's previously-submitted declaration does not help Plaintiffs, either, for the reasons described in Spokeo's renewed motion to exclude his declarations.

In any event, Plaintiffs' reliance on *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) to

---

[8] *E.g.*, Chang Decl. Ex. 2 ("AV Dep.") 24:19-25:1 (Verkhovskaya offering opinion on "estimated size of the class," or else "which *portion* of the class can be determined to have an identifiable name and an associated home address" (emphasis added)); ECF No. 97 at 4 (offering merely "estimates" of class size); ECF No. 154-7 (same) at 5 (offering merely "estimates" of class size); Alfaro Decl. ¶ 12.

DEFENDANT SPOKEO, INC.'S REPLY ISO ITS MOTION FOR SUMMARY JUDGMENT;
CASE NO. 3:21-cv-08976

suggest that they could use this sort of sampling methodology to estimate aggregate liability (Opp. at 20) is plainly wrong. In *Tyson*, the Supreme Court held that statistical evidence was appropriate if "each class member could have relied on that sample to establish liability if he or she had brought an individual action." *Id*. at 460. For instance, in *Tyson*, which was a FLSA class action, the defendant failed to maintain appropriate timekeeping records showing how much time employees had spent on a particular activity, so there was insufficient evidence of the precise amount of time each class member had worked. *Id.* at 456. In an individual suit, any one of those class members could have relied on expert evidence to show how much time that activity had taken—such that it was also admissible on a class-wide basis. *Id.* at 456-57. But that is not true here, where an estimate of overall class size has no bearing on whether a particular class member has a claim, and any particular class member would need to prove that his or her own name and home address was present in a Spokeo "teaser profile." Rather, Plaintiffs' proposal of using a statistical sample to prove liability is the very same "trial by formula" that the Supreme Court rejected in *Wal-Mart Stores, Inc. v. Dukes*. *See* 564 U.S. 338, 367 (2011) (rejecting methodology in which [t]he percentage of claims determined to be valid would then be applied to the entire remaining class"). Thus, Plaintiffs have not provided any class-wide evidence that Spokeo used absent class members' names and addresses, and therefore, have not provided evidence of Spokeo's liability to the class as a whole.

### 2.    *The Proposed Post-Trial Affidavit Process Violates Due Process.*

Plaintiffs alternatively contend that they have "proposed a procedure to establish recognizability via affidavits at the claims administration stage," supported by "testimony about exactly how that process would play out," citing the declaration of their expert, Steven Weisbrot. Opp. at 19-20. But Weisbrot testified that he is *not* opining on how such a claims administration would work, such as what steps would be used or what a claims form would look like. Chang Decl. Ex. 1 ("Weisbrot Dep.") 81:14-22; *see also* Weisbrot Motion to Exclude at 1. Nor did he consider that, in this case, there have been multiple instances of named Plaintiffs submitting incorrect affidavits impacting their potential liability, only to later retract them after prolonged discovery revealed those claims to be false. ECF No. 138 (Queen Decl.) at 4-5 (describing the discovery issues of former Plaintiffs Gallegos and Boedeker). Regardless, Plaintiffs' proposal for using post-trial claims administration to establish which class members have claims is an implicit concession that any judgment amount cannot be determined until well after trial is complete.

Thus, Plaintiffs' proposed affidavit procedure flies in the face of Ninth Circuit precedent by impermissibly deferring the question of liability "to the claims administrat[or]." *Brown v. DirecTV, LLC*, 2022 WL 1591325, at *4 (C.D. Cal. Mar. 31, 2022). A class administrator reviewing affidavits is a ministerial process that can begin only "after a finding of liability." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017). For instance, in *Briseno*, the trial court was able to calculate total liability by using the total number of units sold multiplied by a price premium, which did not require affidavits to verify; and the claims administration process was simply used to verify which individuals attempting to recover damages "really bought the product or used the service at issue" and were entitled to some recovery. *Id*. at 1130.[9] In contrast, here, Spokeo's aggregate liability depends on the number of absent class members who establish the elements of their California and Ohio claims, which itself must be determined individually. In analogous circumstances, courts have recognized *Briseno* as affording no license to delegate "threshold liability concern[s] that require[] a legal determination" to "claims administrators." *In re SFPP Right-of-Way Claims*, 2017 WL 2378363, at *14 (C.D. Cal. May 23, 2017); *see also Valenzuela v. Union Pac. R.R. Co.*, 2017 WL 679095, at *18 (D. Ariz. Feb. 21, 2017) (*Briseno* does not mean "predominating individual issues can be disregarded at class certification because creative case management techniques may be found to deal with them later"). Because Plaintiffs have not offered meaningful or reliable evidence establishing that Spokeo used absent class members' names or their home addresses and residence, these claims fail, too.

### D.    The "Public Affairs" Exception Bars Some Class Members' Claims.

In arguing against applying the "public affairs exception" to the Section 3344 and ORPS claims of class members who are public officials, Plaintiffs ignore that this Court's decision to not apply the exception at the pleadings stage turned on the fact (as alleged) that Plaintiffs were "not . . . public official[s] or . . . persons of public interest." ECF No. 41 at 15. Accordingly, "communicating some of [their] information in a teaser is not newsworthy." *Id.* Yet discovery has since revealed that Plaintiff Fry and other members of the certified classes *are* public officials whose teaser profile information *is* newsworthy.

---

[9] Though Plaintiffs suggest that *estimated* aggregate liability is sufficient because *Briseno* states that the defendant need only "generally know" its exposure (Opp. at 20), Plaintiffs mis-cite that portion of *Briseno*, which was referring to the fact that, in the context of products-based class actions, defendants will "generally know" how many products they sold in a particular geographic area. 844 F.3d at 1132.

Mot. at 8. Under the logic of its prior ruling, then, the Court should grant Spokeo summary judgment on the Section 3344 and ORPS claims of class members who are or are later shown to be public officials. Plaintiffs' arguments against applying the "public affairs" exception are unavailing.

First, Plaintiffs argue that the public affairs exception cannot apply because Spokeo's teaser profiles are not newspapers and Spokeo is not a "news agency." Opp. at 24-25. But courts have consistently applied the public affairs exception to uses outside newspaper stories or news agencies. *See, e.g., Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 546 (1993) (concluding "we cannot limit the term 'public affairs' to topics that might be covered on public television or public radio[]").[10] Here, Spokeo's teaser profiles that feature public officials are a means for obtaining information about individuals of general interest to the public at large, falling squarely within the Ninth Circuit's articulation of the public affairs exception. *Nunes*, 2022 WL 2214205, at *10 ("Matters of current political issues, such as commentary on the suitability of a political official squarely fall within the § 3344(d) exemptions.").

Second, Plaintiffs incorrectly assert that Spokeo "fails to establish Plaintiffs are public figures[.]" Opp. at 27. For starters, Spokeo is not arguing that all the named Plaintiffs are public figures. Instead, the record establishes that Plaintiff Fry and other class members are public officials. Mot. at 26-27. And Plaintiffs offer no rebuttal to Plaintiff Fry's testimony, where he affirmatively testified that he is, in fact, a public official, and that therefore the public has an interest in his name, whether he has a criminal record, and other information that is available in Spokeo's teaser profiles. ECF No. 138-10 (Fry Dep.) at 46:10-16, 48:13-18, 49:13-50:2; 59:9-14; SAC ¶ 77 (showing Fry's teaser profile). Nor do Plaintiffs rebut Spokeo's evidence that Plaintiff Williams' father, along with other class members (like Gavin Newsom, Janice Hahn, and Paula Hicks-Hudson) are public officials. Mot. at 27. Therefore, the evidence offered by Spokeo (and unrebutted by Plaintiffs) has established that Plaintiff Fry's teaser profile, and teaser profiles related to other public officials, involve "the 'publication of matters in the public interest[.]'" *Scott v. Citizen Watch Co. of Am., Inc.,* 2018 WL 1626773, at *5 (N.D. Cal. Apr. 4, 2018).

---

[10] *See also, e.g.*, *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 406 (2001) (use of baseball player's "names and statistics . . . on . . . baseball Web sites" satisfied public affairs exception); *Nunes v. Meredith,* 2022 WL 2214205, at *10 (E.D. Cal. June 21, 2022) (claim based on private citizen's Twitter posts barred under public affairs exception); *c.f. In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1283 (9th Cir. 2013) (public affairs exception did not apply because "unlike in *Gionfriddo*, *Montana*, and *Dora*, [defendant] is not publishing or reporting factual data.").

Third, Plaintiffs argue that the Court should not apply the exception to class members whose teaser profiles were viewed before a Spokeo.com user purchased a subscription *along with* that teaser profile's associated criminal records. Plaintiffs' sole argument is that Spokeo's "criminal record reporting is not at issue in this case." Opp. at 28. But Plaintiffs repeatedly have cited Spokeo's inclusion of "additional information" about "criminal records" in teaser profiles to support their claims—and indeed, to survive dismissal. *See, e.g.*, ECF No. 29 (opposition to motion to dismiss) at 1, 9, 21; ECF No. 92 (motion to certify class) at 1, 7; ECF No. 41 (motion to dismiss order) at 25 (teaser profiles indicate individuals "'may' have felonies, arrests, and similar records even when that is not true"). Plaintiffs cannot have it both ways. Moreover, Plaintiffs admit that there is a public interest in class members' criminal histories. Plaintiffs argue that Spokeo's teaser profiles are "[d]esigned to [e]xcite [i]nterest in a [s]pecific [c]lass [m]ember," and one way they do so is by "promising that a purchase will reveal that individual's 'Arrests,' 'Felonies,' . . . and 'Sex Offend-ers [*sic*].'" Opp. at 14-15. Because the public has an interest in whether an individual has a criminal record, the "public affairs" exception applies.

The Court should grant Spokeo summary judgment on the claims of (a) any member of the Viewed-Prior-to-Purchase Classes who is or is later determined to be a public official, and (b) any class member whose criminal records were purchased in connection with a Spokeo subscriber viewing their teaser profile and purchasing a Spokeo subscription.

### E.    The Dormant Commerce Clause Bars Plaintiffs' and Class Members' Claims.

Finally, Plaintiffs' arguments against applying the dormant Commerce Clause fail. For starters, Plaintiffs wrongly argue that the dormant Commerce Clause does not preclude their claims because a state law must discriminate against interstate commerce to violate the Clause. Opp. at 28. Not so. The dormant Commerce Clause also applies if "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

Plaintiffs then misstate the factual record, claiming that Spokeo "assume[d], without evidence, that it cannot advertise in California and Ohio" based on Plaintiffs' view of the law. Opp. at 29. Not so. Spokeo submitted evidence of the burden that Plaintiffs' proposed relief would impose through the declaration of Spokeo CTO and co-founder Mike Daly. *See* ECF No. 247-11, ¶¶ 46-47. Plaintiffs do not dispute this evidence that Spokeo would have to change its operations entirely under Plaintiff's proposed application

of the right-of-publicity statutes; they simply ignore it. *See* Opp. at 28-29. But this evidentiary offering is sufficient to establish the burden Spokeo faces, as courts have found dormant Commerce Clause violations based on similar declaration evidence. *See Alario v. Knudsen*, 704 F. Supp. 3d 1061, 1086-87 (D. Mont. 2023) (plaintiffs demonstrated a likelihood that the burden on interstate commerce exceeded the statute's local benefits where plaintiffs submitted declaration evidence of the burden). Tellingly, Plaintiffs do not even mention *Alario* in their Opposition, let alone attempt to distinguish it or its holding that the statute there would impermissibly burden TikTok by requiring it to "completely change its business." *Id.* at 1086.[11] The same is true of Spokeo's business if Plaintiffs' view of the right-of-publicity statutes applies. Indeed, Plaintiffs' own expert, Verkhovskaya, agrees with Daly—conceding that she sometimes cannot determine the California or Ohio residence of individuals in teaser profiles, including, for instance, for individuals who have moved in or out of the states, but whose teaser profiles have not yet been updated. AV Dep. 40:14-25-41:1-12; Alfaro Decl. ¶ 22.

Plaintiffs next invent their own requirements, faulting Spokeo for not showing "how much it would cost Spokeo to comply, the sales losses compliance would cause, and why no alternatives exist to its teaser advertising in those states." Opp. at 29. Plaintiffs cite no authority that such a showing is required to prevail on a dormant Commerce Clause defense. For instance, the affidavit that TikTok offered in support of its successful dormant Commerce Clause argument contained no such information. *See* ECF No. 16, ¶ 36, *Alario et al v. Knudsen*, Case No. 9:23-cv-00061 (D. Mont. July 5, 2023) ("If Montana's TikTok Ban enters into effect, we will be barred from operating TikTok in Montana. That ban will cause

---

[11] Instead, Plaintiffs cite seven cases in support, but none aid their argument. Four of the seven were decided at the motion to dismiss stage, where for obvious reasons no evidentiary showing of burden could be made. *See Kellman v. Spokeo, Inc.,* 599 F. Supp. 3d 877, 899 (N.D. Cal. 2022); *Krause v. RocketReach, LLC*, 561 F. Supp. 3d 778, 785 (N.D. Ill. 2021); *Knapke v. PeopleConnect, Inc.,* 553 F. Supp. 3d 865, 880–81 (W.D. Wash. 2021); *Park Pet Shop, Inc. v. City of Chi.,* 872 F.3d 495, 501 (7th Cir. 2017). As for the rest, in *Regan v. City of Hammond, Indiana,* the Seventh Circuit determined that the ordinance did not "impose a disparate burden . . . so as to trigger the *Pike* analysis." 934 F.3d 700, 704-705 (7th Cir. 2019). As explained, that is not the case here. As for *Booth v. Appstack, Inc.*, that case actually supports Spokeo, because there the court determined that the dormant Commerce Clause "*precludes* applying the [challenged statute] . . . 'outside the State of Washington.'" 2016 WL 3030256, at *10 (W.D. Wash. May 25, 2016) (emphasis added, citation omitted). Finally, in *National Association of Optometrists & Opticians v. Harris*, the Ninth Circuit rejected plaintiff's argument of a "significant burden on interstate commerce" demonstrated by "an incidental shift in sales and profits to in-state entities from retailers that operate in-state but are owned by companies incorporated out-of-state." 682 F.3d 1144, 1155 (9th Cir. 2012). The Ninth Circuit also noted that this type of industry did not "require a uniform system of regulation." *Id.* Neither of those linchpins of the Ninth Circuit's holding are present here.

DEFENDANT SPOKEO, INC.'S REPLY ISO ITS MOTION FOR SUMMARY JUDGMENT; CASE NO. 3:21-cv-08976

significant and irreversible harms to our business and our brand."). Indeed, in *Backpage.com, LLC v. McKenna*, the court found a dormant Commerce Clause violation without *any* evidence of the burden placed on plaintiffs. 881 F. Supp. 2d 1262, 1285-86 (W.D. Wash. 2012) (plaintiffs demonstrated a likelihood that the burden on interstate commerce exceeded the statute's local benefits based on case law and text of law itself rather than citing any evidence of burden). Here, Spokeo has done more than that. The unrebutted Daly Declaration is sufficient to find a dormant Commerce Clause violation.

In short, Spokeo provided evidence that Plaintiffs' proposed application of Section 3344 and ORPS would require a complete operational change. The Court should find that Plaintiffs' interpretation of the statutes imposes an excessive burden on Spokeo and violates the dormant Commerce Clause.

## V.    THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR A RULE 56(G) ORDER

Finally, Plaintiffs improperly append two ancillary requests to their Opposition, neither of which the Court should entertain. First, Plaintiffs request that the Court issue an order under Federal Rule of Civil Procedure 56(g) that (i) "all of Plaintiffs' and Class members' claims are timely," (ii) the "public affairs exception does not apply to bar Plaintiffs' claims," and (iii) "none of Plaintiffs' and Class members' claims are barred by the dormant Commerce Clause." Opp. at 3. This request is both procedurally and substantively improper. Procedurally, Plaintiffs may not obtain a Rule 56(g) order through their Opposition; instead, Plaintiffs needed to affirmatively cross-move for summary judgment to seek this relief. *See Regents of Univ. of Cal. v. Affymetrix, Inc.*, 2018 WL 2215432, at *4 n.2 (S.D. Cal. May 14, 2018) (denying plaintiffs' request in their opposition to summary judgement for a Rule 56(g) order because "[p]laintiffs did not cross-move for summary judgment"); *Monarch Consulting, Inc. v. Specialty Risk Servs., LLC*, 2014 WL 12737620, at *4 n.3 (C.D. Cal. Jan. 21, 2014) (declining to rule on plaintiff's request for a Rule 56(g) order because the "request was made in Monarch's Opposition rather than in a properly noticed and briefed motion."). Substantively, a Rule 56(g) order can only be issued as to *facts* that are not in dispute, not legal conclusions. Specifically, Rule 56(g) states that a court "may enter an order stating any ***material fact*** . . . that is not genuinely in dispute and treating the ***fact*** as established in the case." (emphasis added). Accordingly, courts have denied requests for Rule 56(g) orders aimed at legal conclusions, rather than facts. *See Kensington Apartment Props., LLC v. Loanvest IX, L.P.*, 2023 WL 6450513, at *2 n.1 (N.D. Cal. Oct. 3, 2023) (declining to adopt finding under Rule 56(g) because

19

"whether [party] is entitled to a credit . . . is not a question of fact; it is a question of law."), *aff'd sub nom. Kensington Apartment Props., LLC v. Loanvest IX, LP.*, 2025 WL 1201427 (9th Cir. Apr. 25, 2025); *Steeped, Inc. v. Nuzee, Inc.*, 2020 WL 6891832, at *2 (N.D. Cal. Nov. 24, 2020) (denying defendant's request for a Rule 56(g) order because it "entail[ed] a legal conclusion."). Here, Plaintiffs' requests for a Rule 56(g) order (the timeliness of claims and whether claims are barred by affirmative defenses) are legal conclusions, not facts. The Court therefore should deny Plaintiffs' request for a Rule 56(g) order.

Second, in their Opposition, Plaintiffs "renew their motion to strike Mr. Alfaro's declaration[.]" Opp. at 30. Plaintiffs premise their argument on the Court's class certification order, which noted that if Plaintiffs' arguments for excluding Alfaro are "still relevant at summary judgment, the plaintiffs may reraise their concerns then." *Id.* But these comments are not an invitation to violate Local Rule 7-2, which provides that "[e]xcept as otherwise ordered or permitted by the assigned Judge . . . all motions must be filed, served, and noticed in writing on the motion calendar of the assigned judge for hearing not less than 35 days after filing of the motion." L.R. 7-2. Plaintiffs did not follow this rule, they did not file any motion, and they did not notice any hearing. Instead, they re-upped their old request to exclude Alfaro in their Opposition brief. Opp. at 29-30. This is procedurally improper, and the Court should require Plaintiffs to file a noticed motion to seek this relief under Local Rule 7-2. *See, e.g.*, *Bd. of Trs. v. KMA Concrete Constr. Co.*, 2011 WL 2135202, at *2 (N.D. Cal. May 27, 2011) (instructing party filing a "renewed motion for default judgment," to "notice it for a hearing date on the court's civil law and motions calendar that is at least 35 from the date they file the motion" pursuant to "L.R. 7–2").[12]

## VI.   CONCLUSION

For the reasons above and in its Motion, the Court should grant Spokeo's Motion.

Dated: June 20, 2025

MAYER BROWN LLP

By: */s/ John Nadolenco*
John Nadolenco
Attorneys for Defendant SPOKEO, INC.

---

[12] Should the Court consider this argument on the merits, for the reasons stated in Spokeo's Opposition to Plaintiffs' Motion to Exclude Alfaro, ECF No. 176, Alfaro was eminently qualified to give his opinions, and his declaration should not be excluded.