Brittany Resch (*pro hac vice*)
Raina C. Borrelli (*pro hac vice*)
Samuel J. Strauss (*pro hac vice*)
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago, IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
bresch@straussborrelli.com
raina@straussborrelli.com
sam@straussborrelli.com

*Attorneys for Plaintiffs and the Classes*
[Additional Counsel Appear on Signature Page]

# THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| AVIVA KELLMAN, JASON FRY, NICHOLAS NEWELL, SUSAN STEPHENS, WILLIAM WILLIAMS, WILLIS RIDGEWAY, ANNA BOYD, RYAN GOHEEN, SYDNEY MCCONNELL, ROBERT LINGO, BENJAMIN LITTLE, SHARON GILLIS, BRANT ADAMS, RODNEY CARTER, TERRYL GOLDSBARY, PAUL GAUDE, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SPOKEO, INC., <br><br> Defendant. | Case No. 3:21-cv-08976-WHO <br><br> **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> CLASS ACTION <br><br> JURY TRIAL DEMANDED <br><br> Hearing Date:    August 19, 2026 <br> Hearing Time:    2:00 p.m. |

# TABLE OF CONTENTS

I.    Introduction...................................................................................................................1

II.   Case Summary ...............................................................................................................3

    A.  The Relevant Right of Publicity Laws....................................................................3

    B.  Plaintiffs' Allegations ............................................................................................4

    C.  Litigation, Negotiation, and Settlement..................................................................4

III.  Settlement Terms ...........................................................................................................6

    A.  Settlement Class Definitions....................................................................................6

    B.  Monetary Relief ......................................................................................................7

    C.  Prospective Relief ...................................................................................................8

    D.  Notice and Claims Process......................................................................................8

        1.  Notice        8

        2.  Claims, Objections, and Requests for Exclusion ...........................................9

    E.  Attorneys' Fees, Costs, and Service Awards ........................................................10

IV.   Legal Standard .............................................................................................................10

V.    The Proposed Settlement Should be Preliminarily Approved and Notice Directed to the
    Proposed Settlement Classes.........................................................................................12

    A.  The Rule 23(e)(2) Requirements Are Met Because the Proposed Settlement is Fair,
    Reasonable, and Adequate. ...................................................................................12

        1.  The Class Representatives and Class Counsel have Adequately Represented the
            Class        12

        2.  The Settlement Was Negotiated at Arm's Length. ......................................13

        3.  The Settlement Will Provide Substantial Relief to Class Members. .........14

            a.    The Settlement is an Excellent Outcome for the Class................................14

            b.    The Classes Faced Significant Litigation Risk Both at Trial and on
Appeal.          16

            c.    The Distribution Method is Effective and Fair........................................16

        d.    The Anticipated Request for Awards, Costs, and Fees................................17

        e.    No Other Agreements Requirement Disclosure Under Rule 23(e)(3).........17

    4.  The Settlement Treats Class Members Equitably. ......................................................18

B.  The Parties' Notice Plan Comports with Due Process.......................................................18

VI. Conclusion ...............................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*AdTrader, Inc. v. Google LLC*,
No. 17-07082, 2021 WL 2073816 (N.D. Cal. Mar. 23, 2021) .................................................... 19

*Bayat v. Bank of the W.*,
No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015)...................................... 17

*Butler v. Whitepages, Inc.*,
No. 19-cv-04871 (N.D. Ill.) ................................................................................................. 15

*Carlotti v. ASUS Computer Int'l*,
2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ........................................................................ 11

*Fischer v. Instant Checkmate, LLC*,
19-cv-04892 (N.D. Ill.) ........................................................................................................ 15

*Fraley v. Facebook, Inc.*,
966 F. Supp. 2d 939 (N.D. Cal. 2013), *aff'd sub nom Fraley v. Batman*, 638 Fed. App'x 594
(9th Cir. 2016) ...................................................................................................................... 15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......................................................................................... 11, 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ................................................................................................ 17

*In re California Pizza Kitchen Data Breach Litig.*,
129 F.4th 667 (9th Cir. 2025) ............................................................................................... 11

*In re ConAgra Foods, Inc.*,
2022 WL 17243625 (C.D. Cal. Nov. 14, 2022) ..................................................................... 16

*In re Google Buzz Priv. Litig.*,
No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ........................................ 15

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ................................................................................................ 10

*In re Linkedin User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) .......................................................................................... 16

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ........................................................................................... 11, 15

*Novoa v. GEO Grp., Inc.*,
   No. 17-2514, 2020 WL 6694349 (C.D. Cal. Sept. 14, 2020)....................................................... 19

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ........................................................................................... 11

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................................... 17

*Terry v. Hoovestol, Inc.*,
   2018 WL 4283420 (N.D. Cal. Sept. 7, 2018).......................................................................... 11

**Other Authorities**

William B. Rubenstein, Newberg and Rubenstein on Class Actions (6th ed. June 2025 update) 13

**Rules**

Federal Rules of Civil Procedure, Rule 23 .........................................i, ii, 10, 11, 12, 13, 14, 17, 18

**MOTION AND MEMORANDUM IN SUPPORT**

Plaintiffs Aviva Kellman, Jason Fry, Nicholas Newell, Susan Stephens, William Williams, Willis Ridgeway, Anna Boyd, Ryan Goheen, Sydney McConnell, Robert Lingo, Benjamin Little, Sharon Gillis, Brant Adams, Rodney Carter, Terryl Goldsbary, and Paul Gaude respectfully submit their Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion").[1] The Terms of the class action settlement (the "Settlement") are set forth in a Settlement Agreement dated July 14, 2026 (the "Settlement Agreement" or "SA").[2]

## I.   INTRODUCTION

Spokeo Inc. ("Defendant") owns and operates a "people-search" website that provides information about individuals. Plaintiffs filed a lawsuit asserting that Defendant used Plaintiffs' and the putative Class members' information, including names and addresses, without their consent in "teaser profiles" on Defendant's website to advertise subscriptions to the website, in violation of state right of publicity laws. Users of the site must purchase a subscription to view further information about Plaintiffs' and putative Class members, including, when applicable, criminal records, sex offender records, family members' identities, and contact information. Defendant denies any wrongdoing and denies liability.

Recognizing the risks of protracted litigation, the Parties agreed to mediate this matter with Magistrate Judge Nathanal Cousins, who is widely respected and experienced in mediating

---

[1] Defendant Spokeo, Inc. advises that, while it does not oppose the granting of this Motion, it expressly reserves all rights with respect to Federal Rule of Civil Procedure 23 as well as its defenses of the merits in this action in the event the Court does not grant preliminary or final approval of the Settlement, or in the event the Settlement or any portion thereof is overturned on appeal. Moreover, Defendant does not admit or acknowledge liability or wrongdoing and expressly disputes the allegations made by Plaintiffs and their counsel, including but not limited to allegations made in this memorandum. The Parties have expressly agreed that Defendant's non-opposition to this Motion and agreement to the Settlement will not be treated as any form of admission and/or construed against Defendant in this or any other proceeding.

[2] Unless otherwise indicated, the defined terms herein shall have the same definitions as set forth in the Settlement Agreement, attached as an exhibit to the Declaration of Raina Borrelli in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Borrelli Decl.") (Ex. A), filed herewith.

class action cases.[3] Through mediation and extensive negotiations that followed the mediation, the Parties reached an agreement that would provide significant monetary relief to Settlement Class members. The agreement also provides for meaningful injunctive relief to Settlement Class members. Defendant would substantially redact the names and addresses of Settlement Class members in key pages of its teaser profile search flow. SA, § 2.2.

The Settlement would resolve claims under the right of publicity laws of Alabama, California, Illinois, Indiana, Louisiana, Nevada, Ohio, South Dakota, and Washington. *See id.*, § 1 (defining Classes). The Settlement contemplates a damages Class and an injunction Class for each of the nine states at issue, comprising eighteen Classes in total. *See id.* Each damages Class comprises residents of the relevant state whose teaser profiles were viewed by a user in the relevant time period immediately prior to that user purchasing a Spokeo.com subscription, where the teaser profile includes that individual's name and home address. *See id.* Each injunction Class comprises residents of the relevant state whose teaser profiles are searchable on www.spokeo.com, where those teaser profiles include the resident's name and home address. *See id.*

Pursuant to the Parties' agreement, Plaintiffs now respectfully request this Court: (1) preliminarily approve the Parties' settlement as fair, adequate, reasonable, and within the range of possible final approval; (2) appoint Aviva Kellman, Jason Fry, Nicholas Newell, Susan Stephens, William Williams, Willis Ridgeway, Anna Boyd, Ryan Goheen, Sydney McConnell, Robert Lingo, Benjamin Little, Sharon Gillis, Brant Adams, Rodney Carter, Terryl Goldsbary, and Paul Gaude as Settlement Class Representatives of the respective state-specific Classes; (3) appoint Raina Borrelli of Strauss Borrelli PLLC, Benjamin Osborn of the Law Office of Benjamin Osborn PLLC, Michael F. Ram of Morgan & Morgan LLP, Michael W. Ovca of Edelson PC, Phil Fraietta of Bursor and Fisher, P.A., and Sam Jackson of Carney Bates & Pulliam PLLC as Settlement Class Counsel; (4) provisionally certify the Settlement Class for settlement purposes only; (5) approve the Parties' proposed notice program and confirm it is appropriate and satisfies

---

[3] The Parties previously participated in mediation with Magistrate Judge Jay Gandhi. That mediation did not yield a settlement.

due process; (6) set a date for a final approval hearing; and (7) set deadlines for members of the Settlement Class to submit claims for compensation and to object to or exclude themselves from the settlement.

## II.     CASE SUMMARY

### A.  The Relevant Right of Publicity Laws

Alabama, California, Illinois, Indiana, Louisiana, Nevada, Ohio, South Dakota, and Washington have each passed a statute codifying the common law tort of misappropriation of name or likeness. These statutes protect a person's right of publicity, prohibiting the use of an individual's identity for a commercial purpose without his or her prior consent. *See* Alabama Code § 6-5-770 *et seq.* (Alabama), Cal Civ. Code § 3344 (California), 765 ILCS 1075/1 *et seq.* (Illinois), Ind. Code § 32-36-1 *et seq.* (Indiana), La. Rev. Stat. Ann. 51-470.1 *et seq.* (Louisiana), Nev. Rev. Stat. § 597.790 (Nevada), Oh. Rev. Code § 2741 (Ohio), S.D. Codified Laws § 21-64 (South Dakota), Wash. Stat. § 63.60 (Washington). In general, these statutes variously define a person's "identity" or "persona" to encompass attributes such as name, photograph, image, likeness, or other personal information. *See id.* In general, an identity is used for a commercial purpose when it is used to promote a good or service. *Id.* Each statute includes a private right of action that allows individuals whose identities were used without their permission to recover statutory minimum damages, without the need to show out-of-pocket loss. Alabama Code § 6-5-774(1)(a) (providing for $5,000 in statutory minimum damages), Cal. Civ. Code § 3344(a) (providing for $750 in statutory minimum damages), 765 ILCS 1075/40 (providing for $1,000 in statutory minimum damages), Oh. Rev. Code § 2741.07 (providing for $2,500 in statutory minimum damages), Ind. Code Ann. § 32-36-1-10(1)(a) (providing for $1,000 in statutory minimum damages), La. Rev. Stat. Ann. 51-470.4 (providing for $1,000 in statutory minimum damages), Nev. Rev. Stat. Ann. § 597.810(1)(b)(1) (providing for $750 in statutory minimum damages), S.D. Codified Laws § 21-64-5(2) (providing for $1,000 in statutory minimum damages), Wash. Stat. § 63.60.060 (providing for $1,500 in statutory minimum damages).

### B. Plaintiffs' Allegations

Plaintiffs allege that Defendant owns and operates the website www.spokeo.com. Third Amended Complaint ("TAC"), ¶1 (dkt. 305-2, filed July 13). Defendant sells access to information about individuals. *Id.*, ¶¶ 2-9. To market its subscription database, Defendant provides a free version of the site, on which users may perform a free search for an individual by typing that individual's name, phone number, address, or email address into a search bar. *Id.*, ¶13. In response, Defendant provides a "teaser profile" of information that may pertain to the searched-for individual, including identifying information such as name and location. *See, e.g.*, *id.*, ¶45 (Plaintiff Kellman's teaser profile). The teaser profile also contains additional redacted information that may relate to the searched-for individual, which the user must pay to access. *Id.* Redacted information may include a precise street address, past addresses, full phone numbers, email addresses, "Court Records," details about the individual's "marriage, and divorce," "property details," and "employment history," among other information. *See id.*, ¶¶ 45-46. Users who click "Unlock Profile" to reveal the redacted information are shown a page encouraging them to purchase a Spokeo membership for $24.95 per month. *Id.*, § 51. Plaintiffs allege that using individuals' identifying information to market a subscription people-search website without first obtaining their consent violates the right of publicity laws of Alabama, California, Illinois, Indiana, Louisiana, Nevada, Ohio, South Dakota, and Washington.

### C. Litigation, Negotiation, and Settlement

Plaintiffs Aviva Kellman, Jason Fry, and Nicholas Newell filed suit on November 19, 2021, asserting claims under California, Ohio, and Indiana law. Dkt. 1. Defendant moved to dismiss the complaint, arguing that Plaintiffs lacked Article III standing and that Plaintiffs' allegations failed to state valid claims under California, Ohio, and Indiana law. Dkt. 23 (filed February 11, 2022). Plaintiffs filed their opposition, dkt. 24. Spokeo filed its reply, dkt. 32. On April 19, 2022, this Court denied Defendant's motion to dismiss. Dkt. 41. Defendant moved to certify an interlocutory appeal, dkt. 45, which Plaintiffs opposed and this Court denied on July 8, 2022. Dkt. 64.

Over the subsequent year-and-a-half, the Parties engaged in extensive discovery, including depositions, written discovery, document production, and motion practice. *See, e.g.*, Dkt nos. 80 & 89 (rulings on the Parties' discovery disputes). Of relevance to the structure of the proposed Settlement, Defendant produced a database establishing which teaser profiles had been viewed immediately prior to a user purchasing a subscription within a certain geography and timeframe.

On May 3, 2023, Plaintiffs moved for Class Certification. Dkt. 92. Defendant filed its opposition on January 26, 2024. Dkt. 134. Both Parties offered expert testimony in support. Before the hearing on the motion for Class Certification motion, Plaintiffs withdrew their request for certification of a Nationwide damages class. Dkt. 187. On September 8, 2023, the Court granted Plaintiffs' motion, certifying California and Ohio classes with modifications to Plaintiffs' proposed class definitions. Dkt. 197. Defendant petitioned the Ninth Circuit under Fed. R. Civ. P. 23(f) for leave to appeal this Court's decision on Class Certification. Plaintiffs opposed, and the Ninth Circuit denied the petition on August 30, 2024. *See* Dkts. 198 & 200.

Over the subsequent months, the Parties continued to engage in discovery. *See, e.g.*, Dkt. 233 (ruling on discovery dispute).

On April 11, 2025, Defendant moved for summary judgment. Dkt. 247. Plaintiff opposed and requested summary judgment on certain issues. Dkt. 252. Spokeo filed its reply. Dkt. 264. Both Parties offered expert testimony in support. On March 2, 2026, the Court terminated both motions as moot because of the Parties intent to settle. Dkt. 297.

Beginning in early 2024, in recognition of the risks of continuing litigation, the Parties began discussing potential resolution. Borrelli Decl., ¶6. The Parties engaged in two rounds of mediation. The first mediation with retired Magistrate Judge Gandhi took place in April 2024. It did not result in settlement. *Id.*, ¶8. In February 2025, the Parties engaged in a second mediation with Magistrate Judge Nathanal Cousins. *Id.*, ¶9. While the second mediation also did not result in settlement, the Parties continued to exchange proposals over the subsequent months. *Id.* As part of this process, Plaintiffs sought and obtained information for settlement purposes regarding

Defendant's ███████████████████████████████████████████████ ████████████████████. *Id.*, ¶9.

The Parties spent months finalizing the written settlement agreement detailing terms of the multi-state Settlement now before this court. *Id.*, ¶10. The Parties also agreed that Plaintiffs would file a new complaint in this Court encompassing all claims that are being resolved by this Settlement. *Id.* The Parties now seek preliminary approval of the proposed Settlement.

## III.    SETTLEMENT TERMS

The terms of the Settlement are set forth in Exhibit 1 to the Declaration of Raina Borrelli ("SA") and are briefly summarized here.

### A.  Settlement Class Definitions

The Settlement defines the eighteen state-specific Settlement Classes (*see* SA, § 1). For each of the nine relevant states there are two Classes: a "Damages Class" and an "Injunction Settlement Class." The Class definitions are provided below. To avoid duplication, the placeholder "STATE" appears where each of the nine states appear in the Settlement Agreement: Alabama, California, Illinois, Indiana, Louisiana, Nevada, Ohio, South Dakota, and Washington. Likewise, "LIMITATIONS DATE" appears where each state-specific limitations date appears in the Settlement Agreement. The state-specific limitations dates account for the various statutes of limitation applicable under the relevant states' laws.

> **STATE Damages Class** means all STATE residents whose teaser profile was viewed by a user immediately prior to purchasing a Spokeo.com subscription on or after LIMITATIONS DATE through July 10, 2026, where such teaser profile includes the individual's name and home address. *See, e.g., id.*, §1.12 (defining California Damages Class).

> **STATE Injunction Settlement Class** means all STATE residents whose teaser profile is searchable on www.spokeo.com, where such teaser profile includes the individual's name and home address. *See, e.g., id.*, §1.10 (defining California Injunction Settlement Class).

Excluded from the Settlement Classes are: any Judge or Magistrate presiding over this action and members of their families, (2) the legal representatives, successors, or assigns of any such excluded persons, or of Spokeo, Spokeo's subsidiaries, successors, predecessors, and any

entity in which Spokeo has a controlling interest, and (3) with respect to the Damages classes, persons who properly execute and file a timely request for exclusion from the classes, and (4) the legal representatives, successors, or assigns of any such excluded persons. *See, e.g., id.*, §§ 1.10 & 1.12.

## B. Monetary Relief

Pursuant to the Settlement Agreement, Defendant will establish non-reversionary State-Specific Settlement Funds for each of the Settlement Classes. The amount of each Fund varies based on the estimated size of the Settlement Class in that state, the statutory damages available under each state's right of publicity law, and the procedural progress and legal risk associated with claims under each state's law. The Fund sizes are: Alabama, $603,012.85;  California, $4,017,407.25;  Illinois, $693,745.92;  Indiana, $26,970.00;  Louisiana, $19,400;  Nevada, $45,217.50; Ohio, $4,436,565.00; South Dakota, $18,810; and Washington, $138,780.00. SA, §1. In total, Spokeo's payments into the Funds will be $10 million. SA, §1.71; *see also* §6.2 (providing for adjustment of the State-Specific Settlement Funds to ensure the total amount allocated to the funds will equal $10 million). Settlement Class Members will be entitled to submit claims to their respective State-Specific Settlement Funds. *Id.*, §2.1. All Settlement Class Members who submit an Approved Claim will be entitled to a *pro rata* portion of their respective State-Specific Settlement Fund after payment of Settlement Administration Expenses, attorneys' fees and costs, and any incentive awards approved by the Court. *Id.*

Defendant has represented to Plaintiffs ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. As part of Settlement negotiations between the parties, Defendant produced ▇▇▇▇▇▇▇▇ to Plaintiffs and Plaintiffs retained an ▇▇▇▇ expert to assist in verifying Defendant's representations. Accordingly, under the Settlement Agreement Defendant shall fund each Settlement Fund in four installments: 10% of each Fund within thirty days of entry of Preliminary Approval; an additional 23.33% by December 31, 2026; an additional 33.33% by December 31, 2027; and an additional 33.34% by

December 31, 2028. SA, § 2.1(a). Class Members with Approved Claims will receive payments on a *pro rata* basis as Defendant makes each Installment payment. SA, § 2.1(c).

Any uncashed checks or electronic payments unable to be processed within 180 days of issuance will revert to their respective State-Specific Settlement Funds. *Id.*, § 2.1(d). Such funds are to be distributed pro rata to the claiming Settlement Class Members from that State-Specific Settlement Fund, if practicable, or in a manner otherwise to be directed by the Court. *See* SA, §2.1 (e). No portion of any State-Specific Settlement Fund will revert to the Defendants. *Id.*

### C. Prospective Relief

The Settlement Agreement provides for injunctive relief for the Injunction Settlement Classes. SA, § 2.2. For individuals who enter a search on the www.spokeo.com landing page that Spokeo's algorithms interpret as a name search, Spokeo will modify the Purchase and Payment Pages in that website flow such that it will not display the full name and address of any Injunction Settlement Class member. *Id.* This change would be implemented within thirty days of the entry of an Order granting final approval. *Id.*

### D. Notice and Claims Process

#### 1. Notice

Subject to Court approval, the Parties have agreed to use Simpluris as the Settlement Administrator. SA, § 1.70. All Notice and Settlement Administration costs shall be paid from the respective State-Specific Settlement Funds on a proportional basis. *See* SA, § 1 (definitions of each State-Specific Fund); § 1.69 (definition of "Settlement Administration Expenses"). This includes all reasonable expenses incurred by the Settlement Administrator in administering the Settlement including expenses relating to providing Notice, processing Claim Forms, responding to inquiries from members of the Settlement Classes, and distributing payments for Approved Claims. *Id.*

Within twenty-one (21) days after the entry of a Preliminary Approval Order ("Notice Date"), and subject to the requirements of the Settlement Agreement and the Preliminary Approval Order, the Settlement Administrator will provide Notice to the Settlement Class via a

combination of email and U.S. mail where email addresses are unavailable or undeliverable. *See* SA, §§ 1.52-1.53; §§ 4.1-4.3 (description of how Notice will be accomplished); Exs. C-T (proposed Notices). Thirty (30) days prior to the Claims Deadline, and again seven (7) days prior to the Claims Deadline, the Settlement Administrator will send reminder notice via email. *Id.*, § 4.2(c). If the number of Claim Forms submitted does not equal at least 10% of each state-specific Class, the Administrator shall send a final notice reminder two days before the Claims Deadline. *Id.*

The Settlement Administrator will also be responsible for creating a Settlement Website and shall maintain and update the website throughout the claim period. SA, §§ 1.72 & 4.2(d). The Website will include links to the Short Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement, the operative Complaint, FAQs, a Claim Form that may be submitted online through the Settlement Website or mailed to the Settlement Administrator, the deadlines for filing a Claim, Objection, Exclusion requests, Fee and Expense Application, the date of the Final Approval Hearing, and any other materials agreed upon by the Parties or directed by the Court. *Id.*

### 2. Claims, Objections, and Requests for Exclusion

The claims process is designed to ensure all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether they would like to opt-out or object. Borrelli Decl., ¶11.

Settlement Class Members will have 63 days from the Notice Date to submit their Claim Form to the Settlement Administrator, either by mail or online. SA, § 1.15. The Settlement Administrator has authority to assess the validity of claims. Upon receipt of an incomplete or unsigned Claim Form, the Administrator will request additional information, after which the Settlement Class Member will have twenty-one days to cure the defect. SA, § 5.7.

Settlement Class Members who wish to opt out may do so within 63 days after the Notice Date by providing written notice that they would like to be excluded from a Settlement Class. SA, §§ 1.54 & 4.5. Likewise, Settlement Class Members who wish to object to the Settlement

Agreement may do so by filing their written objection with the Clerk of this Court within 63 days after the Notice Date. *Id.*, § 4.4. The written objection must include: (i) the Settlement Class Member's full name and current mailing address; (ii) a statement that the objector believes themselves to be a member of one or more of the relevant Classes; (iii) whether the objection applies only to the objector or to other Class members as well; (iv) a statement of the specific grounds for the objection, as well as any documents supporting the objection; (v) the identity of any attorney(s) representing the objector, if any; and (vi) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing. *Id.*

### E. Attorneys' Fees, Costs, and Service Awards

Plaintiffs have agreed, with no consideration from Defendant, to limit their request for attorneys' fees to one-third (33.33%) of the total value of the State-Specific Settlement Funds. SA § 8.1. Defendant retains the right to object to any fee request. *Id.* In the event the Court awards less than the amount sought by Class Counsel, the difference shall remain in the State-Specific Settlement Funds for distribution to Class members. *Id.*

The Settlement Agreement also provides that Plaintiffs may petition for incentive awards to the named Plaintiffs from their respective State-Specific Settlement Funds. § 8.3. Spokeo retains the right to challenge Plaintiffs' petition. *Id.*

The Settling Parties did not discuss the amount of attorneys' fees, costs, or service awards until after the substantive terms of the Settlement had been agreed upon. Borrelli Decl., ¶12. Plaintiffs will seek the Court's approval of the requested attorneys' fees, costs, and Service Awards prior to the Final Fairness Hearing by way of a separate motion, and will post the relevant papers on the Settlement Website.

## IV. LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). Thus, while "Rule 23 imposes strict procedural requirements on

the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure that it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). District courts conduct that task by applying the *Hanlon* factors and the Rule 23(e) criteria, *see In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025), as well as by considering the Northern District's Procedural Guidance for Class Action Settlements ("Guidance"). *See Carlotti v. ASUS Computer Int'l*, 2019 WL 6134910, at *13–17 (N.D. Cal. Nov. 19, 2019). At the preliminary approval stage, the court's role is to assess whether the settlement "falls within the range of possible approval." *Terry v. Hoovestol, Inc.*, 2018 WL 4283420, at *1 (N.D. Cal. Sept. 7, 2018) (internal quotation marks and further citations omitted).

Under Rule 23(e), to determine whether a settlement is "fair, reasonable, and adequate," courts consider whether: (A) "the class representatives and class counsel have adequately represented the class"; (B) "the proposal was negotiated at arm's length"; (C) "the relief provided for the class is adequate"; and (D) "the proposal treats class members equitably relative to each other." *In re California Pizza Kitchen*, 129 F.4th at 674. Under *Hanlon*, the pertinent factors are (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Id*. The court must assess the settlement in its entirety, rather than dissecting its individual components, to determine overall fairness. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). For that reason, the "relative degree of importance to be attached to any particular factor will depend upon . . . the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

## V. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AND NOTICE DIRECTED TO THE PROPOSED SETTLEMENT CLASSES

The proposed Settlement promises to bring meaningful benefits to the Class members. Despite the Defendant's ████████████, the proposed Settlement would deliver substantial cash payments to those whose teaser profiles were viewed immediately prior to a subscription purchase. The proposed Settlement satisfies the Federal Rule of Civil Procedure 23(e)(2) and comports with the Northern District's Procedural Guidance for Class Action Settlements.

### A. The Rule 23(e)(2) Requirements Are Met Because the Proposed Settlement is Fair, Reasonable, and Adequate.

#### 1. The Class Representatives and Class Counsel have Adequately Represented the Class

The Court must first consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This analysis includes "the nature and amount of discovery" undertaken in the case. Fed. R. Civ. P. 23(e), advisory committee's note to 2018 amendment.

Here, the Class Representatives and proposed Settlement Class Counsel meet the test of adequacy. First, over the last four years Counsel have vigorously litigated this case on behalf of the Class. Counsel engaged in substantial motion practice, including: opposing Defendant's motions to dismiss, to certify an interlocutory appeal of this Court's ruling on the motion to dismiss, and Rule 23(f) petition seeking review of this Court's Class Certification decision. Counsel also successfully moved for Class certification and requested summary judgment on certain issues. Counsel also litigated many discovery disputes. Counsel reviewed many thousands of documents and took many hours of deposition testimony. To support Plaintiffs' motion for Class certification and opposition to Spokeo's motion for summary judgment, Plaintiffs retained multiple experts who spent dozens of hours analyzing the facts, preparing reports, and critiquing the reports of Defendants' experts. The litigation has been intense, hard-fought, and resource-intensive for both Parties, and Plaintiffs' counsel has proved more than adequate to the task.

Second, Plaintiffs' counsel have extensive experience in privacy and consumer class actions and are leaders in the field. *See* Borrelli Decl., Exs. B-G (Settlement Class Counsel firm resumes).

Third, the proposed Class Representatives are adequate to represent the Class. There is no conflict between the Class Representatives and the Settlement Classes they seek to represent. Class Representatives were harmed in the same manner as all other Settlement Class Members: by Defendant's alleged non-consensual use of their names and identities to advertise paid website subscriptions. And the Class Representatives seek the same remedy on their own behalf that they seek on behalf of the absent Settlement Class Members: statutory damages, and injunctive relief preventing future misappropriation. Because the harms and remedy sought are identical between all Settlement Class Members, the named Plaintiffs have every incentive to vigorously pursue the Class claims – as they have done. No conflict exists.

### 2. The Settlement Was Negotiated at Arm's Length.

Rule 23(e)(2)(B) directs courts to consider whether "the proposal was negotiated at arm's length." This "'procedural' concern[]" requires the Court to examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. "The presence of a neutral third party mediator" is evidence of "a truly adversarial bargaining process."  4 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 13:50 (6th ed. June 2025 update) ("Newberg"); *see also* Fed. R. Civ. P. 23 (e)(2)(B) advisory committee's note to 2018 amendment (noting that "the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests"). Here, the Parties reached Settlement after many months of arms-length settlement negotiations. The Parties engaged in two separate rounds of mediation: a first round with Hon. Jay Ghandi (ret.) of JAMS, and a second round with Magistrate Judge Nathanael Cousins. Borrelli Decl., ¶¶8-9. In both rounds, Plaintiffs and Defendant put together detailed mediation submissions setting forth their respective views as to the strengths of Plaintiffs' case and Defendants' defenses, and Defendant

produced pre-mediation documents. *Id.*, ¶¶7-8. The first round did not produce a term sheet. The second round also did not produce an agreement during the mediation sessions. But the Parties continued to exchange proposals over the succeeding months, eventually arriving at an agreement in principle. Thereafter, the Parties spent several months negotiating specific terms and finalizing settlement documents. At all times, the settlement negotiations were adversarial, non-collusive, and conducted at arm's length. *Id.*, ¶¶6-10.

### 3.   The Settlement Will Provide Substantial Relief to Class Members.

Rule 23(e)(2)(C) directs the Court to evaluate whether "the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief . . . ; (iii) the terms of any proposed award of attorney's fees . . . ; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" *See also Hanlon*, 150 F.3d at 1026 (Factors 2–5). Each of these factors weighs in favor of preliminary approval.

### a.   The Settlement is an Excellent Outcome for the Class.

The Settlement secures non-reversionary common funds on behalf of each of the nine state-specific Damages Classes. The sum of the nine funds is $10 million. The amounts allocated to each of the nine state-specific Damages Classes varies as a function of the estimated size of the Classes, the amount of statutory damages available under each state's law, and the procedural progress and legal risks associated with claims under each state's law.

The estimated per-person settlement payments compare favorably to prior right of publicity settlements. Net of fees and costs, Settlement Class Members in every state can expect to receive payments ranging from tens to hundreds of dollars, depending on the claims rates in each state. Assuming a claims rate of 10%, claimants from the Nevada Damages Class ($750 minimum statutory damages, no current pending case) would receive the lowest payouts, at about $75.00 per claimant, less fees and administration costs. Claimants from the Ohio Damages Class ($2,500 minimum statutory damages, certified class in the *Kellman* action) would receive the highest payouts, at about $1,175.00 per claimant, less fees and administration costs. Because the

funds are non-reversionary and distributed to claimants *pro rata*, actual payouts may be higher if the claims rate is lower than 10% in a given state, or lower if the claims rate is higher than 10%.

These amounts compare favorably with take-home recoveries in similar right of publicity settlements. *See, e.g. Fischer v. Instant Checkmate, LLC*, 19-cv-04892 (N.D. Ill.), dkt. 283 at 2 (calculating final take-home payments as follows: California, $148.18; Illinois, $745.01; Indiana, $197.20; and Nevada, $180.23); *Butler v. Whitepages, Inc.*, No. 19-cv-04871 (N.D. Ill.), dkt. 272 ($95 to each valid Illinois claimant); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 943–44 (N.D. Cal. 2013), *aff'd sub nom Fraley v. Batman*, 638 Fed. App'x 594, 597 (9th Cir. 2016) (approving California right of publicity settlement providing $15 to each claiming class member). And the monetary relief provided under the Settlement stands apart from other consumer privacy class actions that may provide no monetary relief. *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820– 22 (9th Cir. 2012) (resolving tens of millions of claims under the Electronic Communications Privacy Act ["ECPA"] for a $9.5 million cy pres-only settlement—amounting to pennies per class member—where $10,000 in statutory damages were available per claim); *In re Google Buzz Priv. Litig.*, No. C 10-00672 JW, 2011 WL 7460099, at *3–5 (N.D. Cal. June 2, 2011) (resolving tens of millions of claims, again under the ECPA, for an $8.5 million *cy pres*-only settlement).

The total monetary recovery here is particularly favorable to the Class considering the Defendant's ▮▮▮▮▮▮▮. As part of the settlement negotiation process, Plaintiffs sought and obtained ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As it stands, Defendant's ▮▮▮▮▮▮ is such that, pursuant to the Settlement Agreement, funding payments are divided into four installments. *See* SA, § 2.1(a); Declaration of Mike Daly (Ex. 2, ▮▮▮▮▮▮▮▮▮).

The Settlement also secures prospective relief on behalf of the Injunction Classes. Defendant will modify its teaser profile search flow to substantially redact the names and addresses of Class members on pages where an offer to purchase a subscription appears. *Id.*, § 2.2. This relief ensures that the alleged violation – using information that identifies a specific individual to advertise a paid subscription – will no longer occur.

Thus, the settlement secures both substantial monetary relief and appropriate injunctive relief for the Classes.

### b. The Classes Faced Significant Litigation Risk Both at Trial and on Appeal.

The value achieved through the Settlement Agreement is guaranteed, whereas the chances of prevailing on the merits are uncertain. *See In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). While Plaintiffs strongly believe in the merits of their case, they also understand that should this litigation continue, Defendants will assert defenses, continue to deny liability, and litigate this action vigorously. Furthermore, the risk of obtaining no relief through continued litigation is significant. Should this litigation continue, Plaintiffs would need to survive summary judgment; prevail at trial; prevail on any motion to decertify; and prevail on appeal. An adverse decision at any of these potentially dispositive stages could leave the Classes with nothing. Furthermore, with respect to the Classes that have not yet been certified (all Classes except those in Ohio and California), the risks of continued litigation are even greater because they might fail at an earlier procedural stage.

Accordingly, the significant risks of continued litigation weigh in favor of granting final approval. *See id.* (affirming approval of privacy settlement awarding $14.81 per claimant).

### c. The Distribution Method is Effective and Fair.

"A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *In re ConAgra Foods, Inc.*, 2022 WL 17243625, at *8 (C.D. Cal. Nov. 14, 2022) (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). Here, the proposed claims process will not be unduly demanding. Claimants will be able to submit a claim form either online, or by mail. *See* SA, § 4.2(d); *see id.* (finding distribution effective where, as here, "[c]lass members will be able to easily complete and submit a claim form by mail or online"). To enable efficient Claims

verification, Spokeo will provide the Settlement Administrator a file containing possible contact information Spokeo possesses for each member of a Damages Class. SA, § 4.1. The administrator will then use this information to verify Damages Class membership by cross-checking personal information provided by the claimants against the information in Spokeo's database.

### d.  The Anticipated Request for Awards, Costs, and Fees.

The Settlement Agreement provides for attorneys' fees in an amount not to exceed one-third of the gross benefits provided to the Settlement Class, and reimbursement for all expenses incurred or to be incurred. SA, § 8.1. Class Counsel's application seeking their costs, attorneys' fees, and any incentive award will be proposed to be scheduled to be heard at the same time as the final approval hearing. The fee and expense application, along with the detailed bases for any requested Service Awards, will be posted on the Settlement Website upon filing and before the objection deadline, affording Class Members ample opportunity to evaluate and comment. The Settlement Agreement is not conditioned on the Court ordering a fee award, and Spokeo retains the right to oppose the motion, eliminating any "clear-sailing" concern. *See Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *7 (N.D. Cal. Apr. 15, 2015) ("[B]ecause any attorneys' fees award will come out of the common fund, there is no 'clear sailing' agreement here that would warrant against settlement approval." (*citing In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). Finally, any proposed service awards will be modest relative to the size of the case and will be justified by the Class Representatives' extensive efforts over the past years and anticipated ongoing efforts in communicating with fellow Class Members. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases.").

### e.  No Other Agreements Requirement Disclosure Under Rule 23(e)(3).

The Parties have no agreements "made in connection with the proposal" other than the Settlement Agreement before this Court. Fed. R. Civ. P. 23(e)(3). Accordingly, this factor weighs in favor of preliminary approval.

#### 4.  The Settlement Treats Class Members Equitably.

The final Rule 23 (e)(2) factor asks whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The proposed Settlement satisfies this standard.

First, the members of each state-specific Settlement Class are treated identically. Each Damages Class member from a given state who submits a valid claim will receive an identical payment. This uniform intra-state treatment is appropriate because Class members from a given state are identically situated with respect to the strength of their legal claims and the extent to which those claims have progressed through the procedural steps of a class action lawsuit.

Second, the amounts available to Damages Class members take into account factors unique to each state, including the amount of statutory damages available (compare Ohio, providing for $2,500 in statutory damages, with California, providing for $750) and the legal risks associated with their claims (compare Ohio and California, each of which have a certified class, with Washington, which has no pending claims). The proposed allocation method ensures that claimants from states with uniquely strong claims (*e.g.*, Ohio) will not be made to subsidize claimants from states with relatively riskier claims.

Third, Spokeo's commitment to substantially redact the names and addresses of Class members from all nine states will benefit all Class Members equally.

For these reasons, the proposed Settlement satisfies all the Rule 23(e)(2) factors. It is the product of vigorous, arm's-length negotiations, provides substantial and equitable relief to the Class, and was achieved through the diligent efforts of experienced counsel and representatives.

### B.  The Parties' Notice Plan Comports with Due Process.

Once the Court concludes a proposed settlement is likely to be approved and that the prerequisites for class certification are satisfied, Federal Rule of Civil Procedure 23 mandates that the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23 (e)(1)(B). Plaintiffs' proposed Notice Plan comports with Rule 23 and due process. The comprehensive plan for disseminating notice includes direct email notice, and direct mail notice where email addresses are unavailable or undeliverable, in addition

to the case website. SA, § 4.2. The plan contemplates multiple rounds of reminder notice, including a final round that will be sent if the claims rate in any state does not equal at least 10%. *Id.*, § 4.2(c). The plan constitutes the best notice practicable under the circumstances. *See, e.g., AdTrader, Inc. v. Google LLC*, No. 17-07082, 2021 WL 2073816 (N.D. Cal. Mar. 23, 2021) (approving notice plan that included direct mailings, emails, and a case-specific website); *Novoa v. GEO Grp., Inc.*, No. 17-2514, 2020 WL 6694349 (C.D. Cal. Sept. 14, 2020) (approving notice plan that included emails, publication of notice, and a case specific website). The comprehensive Notice Plan is directed to reach the Damages Classes, satisfying Fed. R. Civ. P. 23(e)(1)(B). Finally, Class Members will have 63 days from the Notice Date to opt out or object. The proposed Notice Plan complies with Rule 23 (e)(5) by instructing Class Members who wish to opt out of or object to the Settlement how to do so. The Notice Plan clearly apprises Class Members of (1) the deadlines to opt out or exclude themselves from the Settlement; (2) the method to opt out; and (3) the consequence of opting out. *See* SA, Ex. B (Long Form Notice). Likewise, pursuant to Rule 23(e)(5), the proposed Notice Plan instructs Class Members of their right to object to the Settlement and the deadline to submit an objection.

## VI.    CONCLUSION

Plaintiffs respectfully request  the Court (1) preliminarily approve the Parties' Settlement as fair, adequate, reasonable, and within the range of possible final approval; (2) appoint Plaintiffs as the Settlement Class Representatives; (3) appoint Plaintiffs' Counsel as Settlement Class Counsel; (4) provisionally certify the Settlement Classes that have not already been certified for settlement purposes only; (5) approve the Parties' proposed Notice program, and confirm that it is appropriate notice that satisfies due process; (6) set deadlines for Settlement Class Members to submit claims for compensation, objections and requests for exclusion; and (7) set a date for a Final Approval Hearing. A proposed Preliminary Approval Order is submitted herewith.

Dated: July 14, 2026                    Respectfully submitted,

By: */s/ Raina C. Borrelli*
Raina C. Borrelli (*pro hac vice*)
Brittany Resch (*pro hac vice*)
Samuel J. Strauss (*pro hac vice*)
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago, IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com
bresch@straussborrelli.com
sam@straussborrelli.com

Michael F. Ram, SBN 104805
MORGAN & MORGAN COMPLEX
LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923
mram@forthepeople.com

Benjamin R. Osborn
(to be admitted *pro hac vice*)
LAW OFFICE OF BENJAMIN R. OSBORN
63 Fiddlers Elbow Rd.
Margaretville, NY 12455
Phone: (347) 645-0464
ben@benosbornlaw.com
Michael W. Ovca (*pro hac pending*)
movca@edelson.com
EDELSON PC
350 N LaSalle St, 14th floor
Chicago, IL 60654
Telephone: (312) 589-6370

Phil Fraietta (*pro hac pending*)
pfraietta@bursor.com
BURSOR & FISHER, P.A.
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: 914-874-0710

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT (Case No: 3:21-cv-08976-WHO) – 20

Sam Jackson (*pro hac pending*)
sjackson@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
One Allied Drive, Suite 1400
Little Rock, Arkansas 72202
Telephone: 501-312-8500

*Attorneys for Plaintiffs and the Classes*