Brittany Resch (*pro hac vice*)
Raina C. Borrelli (*pro hac vice*)
Samuel J. Strauss (*pro hac vice*)
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago, IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
bresch@straussborrelli.com
raina@straussborrelli.com
sam@straussborrelli.com

*Attorneys for Plaintiffs and the Classes*
[Additional Counsel Appear on Signature Page]

# THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| AVIVA KELLMAN, JASON FRY, NICHOLAS NEWELL, SUSAN STEPHENS, WILLIAM WILLIAMS, WILLIS RIDGEWAY, ANNA BOYD, RYAN GOHEEN, SYDNEY MCCONNELL, ROBERT LINGO, BENJAMIN LITTLE, SHARON GILLIS, BRANT ADAMS, RODNEY CARTER, TERRYL GOLDSBARY, PAUL GAUDE, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br>v.<br><br>SPOKEO, INC.,<br><br>          Defendant. | Case No. 3:21-cv-08976-WHO<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA, OHIO, INDIANA, ALABAMA, ILLINOIS, LOUISIANA, NEVADA, SOUTH DAKOTA, and WASHINGTON RIGHT OF PUBLICITY STATUTES; CALIFORNIA UCL; and CALIFORNIA, OHIO, and INDIANA, MISAPPROPRIATION OF NAME OR LIKENESS**<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**NATURE OF ACTION**

1.      Plaintiffs and members of the proposed classes ("Class Members") are private individuals who have no relationship with the Defendant Spokeo, Inc. or the website it owns and operates at www.spokeo.com. Plaintiffs and Class Members have never used spokeo.com, nor did they provide their names, ages, photographs, addresses, emails, phone numbers, or any other personal information to Spokeo.

2.      Plaintiffs were seriously distressed to discover that Spokeo is using their names, personal information, photographs, likenesses, and personas to advertise paid subscriptions to its website. Spokeo's advertisements falsely suggest that the Plaintiffs may have criminal records.

3.      Plaintiffs and Class Members did not consent to Spokeo using their names, personal information, photographs, likenesses, and personas to advertise website subscriptions or any other product.

4.      Spokeo advertises its website by publicly displaying teaser profiles of the Plaintiffs and Class Members with their names; ages; current and past cities of residence; partially redacted addresses, emails, and phone numbers; and other personal information. Some teaser profiles include photographs.

5.      Spokeo advertises that it possesses additional information about Plaintiffs and Class Members including: "Criminal Records"; "Sex Offenses"; "DUIs"; "details about birth, marriage, and divorce"; "Relationship Status"; "Location History"; "Estimated Salary"; "Family Members"; and unredacted "Full Address[es]"; "Email Address[es]," and "Phone Number[s]."

6.      Spokeo advertises that, if users purchase a subscription plan at a cost of $24.95 per month, they will receive access to a full profile containing all the personal information Spokeo has concerning Plaintiffs and Class Members, as well as full profiles containing similar information about millions of other individuals.

7. Spokeo does not merely present Plaintiffs' and Class Members' profiles as "samples" advertising the purchase of a single profile containing information about the person whose persona Spokeo used in the advertisement. Rather, Spokeo uses Plaintiffs' and Class members' names and personas to advertise recurring subscriptions to the website. Although the webpage soliciting payment appears to be charging only "$0.95" for access to a specific profile, small print reveals that the purchaser is also purchasing a "Spokeo Membership," which after the expiration of a one-week free trial "will be billed [at] 24.95 per month."

8. A Spokeo membership includes far more than access to the profile of the individual whose persona Spokeo used to advertise the membership. Membership delivers access to the full profiles of hundreds of millions of individuals, incorporating "over 12 billion records from thousands of data sources." Profiles include "available contact info, location history, photos, social media accounts, family members, court records, work information, and much more."

9. A paid Spokeo membership also delivers Spokeo's "Stay Updated" service, with which members can track specific individuals and receive updates about changes to their personal information.

10. Spokeo is the sole author, designer, and implementor of the advertising techniques and messages giving rise to this lawsuit. Spokeo does not host user-generated content. Spokeo is the sole curator, designer, and creator of the content described in this Complaint, including the teaser profiles representing Plaintiffs and Class Members and the advertisements soliciting subscriptions.

11. Plaintiffs do not know how Spokeo obtained their personal information. Spokeo states that it collects "from a large variety of public online and offline sources," including "Property Records," "Consumer Records," "Historical Records," "Court Records," "Business Records," and "Social Networks. Spokeo does not disclose specific sources.

12. Spokeo misappropriated Plaintiffs' and Class Members' names, ages, photographs, addresses, emails, phone numbers, additional personal information, personas, and likenesses without permission or consent from Plaintiffs or Class Members.

13. Spokeo prompts visitors to its website to "[s]earch by name, phone, address or email to confidentially lookup information about people you know such as yourself, friends, family, acquaintances, and old classmates."

14. Consent is not all or nothing. Plaintiffs and Class Members may have shared their names, photographs, addresses, and other personal information with certain companies or the government in a variety of contexts. For example, Plaintiffs or Class Members may have shared their names and addresses with a company when making a credit card purchase, or they may have shared their photographs with a social media site when creating profiles.

15. But Plaintiffs and Class Members did not consent to the commercial use of their personal information and personas to promote subscriptions to a website with which they have no relationship. Spokeo makes money by peddling personal information it has no right to use. Spokeo's payment page intentionally misleads consumers into believing they are purchasing a single profile for 95 cents, when in fact they are purchasing a Spokeo membership at a cost of $24.95 per month. Plaintiffs and Class Members did not consent to the use of their likenesses and personas to promote Spokeo's unethical schemes.

16. California, Ohio, Indiana, Alabama, Illinois, Louisiana, Nevada, South Dakota, and Washington law recognize the intellectual property and privacy rights of individuals in controlling the use of their names, photographs, likenesses, and personas for commercial purposes.

17. By using Plaintiffs' and Class Members' names, likenesses, photographs, and personas in advertisements for website subscriptions without consent, Spokeo violated their intellectual property and privacy rights. Plaintiffs and Class Members have the right not to have their names, likenesses, photographs, and personas exploited to promote a website with which they have no relationship and which they have no interest in supporting. Plaintiffs and Class

Members have an economic interest in their names, likenesses, photographs, and personas, which Spokeo has stolen, and a privacy interest in their names, likenesses, photographs, and personas, which Spokeo has violated. Spokeo has been unjustly enriched through its actions. Plaintiffs and Class Members have a right to the money Spokeo earned exploiting their names, likenesses, photographs, and personas.

18.     By these actions, Spokeo has violated California's Right of Publicity statute, Cal. Civ. Code § 3344; California common law prohibiting misappropriation of a name or likeness; Ohio's Right of Publicity statute, Ohio Rev. Code § 2741; Ohio common law prohibiting misappropriation of a name or likeness; Indiana's Right of Publicity statute, Ind. Code § 32-36-1; Indiana common law prohibiting misappropriation of a name or likeness; California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, Alabama Right of Publicity Act, Ala. Code 1975 § 6-5-771 *et seq.*; Illinois Right of Publicity Act, 765 ILCS 1075/1, *et seq.*; Nevada Right of Publicity Statute, Nev. Rev. Stat. §§ 597.770 *et seq*; South Dakota Statutory Right of Publicity, S.D. Codified Laws § 21-64 *et seq.*; Louisiana Allen Toussaint Legacy Act, Louisiana Rev. Statute 51:470.1, *et seq.*; Washington Personality Rights Statute, RCW 63.60, *et seq.*  Plaintiffs and Class Members have suffered injury through the unlawful taking of their valuable intellectual property; through the invasion of their privacy rights protected by statute and common law; through Spokeo's unlawful profiting from its exploitation of their names, personas, and personal information; and through harm to peace of mind. Plaintiffs and the Class are entitled to relief including statutory damages, disgorgement of profits, royalties for the use of their names and personas, restitution of the value of their names and personas, an injunction prohibiting Spokeo's unlawful conduct, an award of attorneys' fees, expenses, and costs, and declaratory and injunctive relief.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act ("CAFA")), because: (A) at least one Class Member is a citizen of a state different from at least one defendant. Defendant Spokeo is incorporated in Delaware and

has its principal place of business in Pasadena, California. Plaintiffs assert claims on behalf of classes of people residing in Alabama, California, Illinois, Indiana, Louisiana, Nevada, Ohio, South Dakota, and Washington. (B) Each of the proposed Classes consists of at least 100 members. And (C) the amount in controversy exceeds $5,000,000 exclusive of interest and costs based on the California statutory claims alone. Cal. Civ. Code § 3344 provides for statutory damages "equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered," as well as "any profits from the unauthorized use." The statute also allows for punitive damages and an award of attorneys' fees and costs. Because Spokeo is a California corporation using the names and personal information of hundreds of millions of individuals to advertise its website, the amount in controversy is well over the jurisdictional limit.

20.     This Court has general personal jurisdiction over Spokeo because its headquarters and principal place of business are in this state.

21.     This Court has specific personal jurisdiction over Spokeo because a significant portion of the events giving rise to this lawsuit occurred in this state, including: Spokeo's design and creation of the advertisements incorporating Plaintiffs' and Class Members' names, likenesses, and personas; Spokeo's copying of Plaintiffs' and Class Members' personal information from a variety of online sources; Spokeo's display of Plaintiffs' and Class Members' teaser profiles in advertisements available to the public online; Spokeo's failure to obtain required consent from Class Members who reside in California; and Spokeo's violation of the intellectual property rights of Class Members who reside in California.

22.     Plaintiff Kellman resides in this state and District. Spokeo violated Plaintiff Kellman's intellectual property rights and misappropriated her name, personal information, and persona, the locus of which is in this state and District. Spokeo failed to obtain the required consent in this state and District. Spokeo displayed the advertisements using Plaintiff's name, personal information, and persona in this state and District.

23.     Plaintiff Stephens resides in this state. Spokeo violated her intellectual property rights and misappropriated her name, personal information, and persona, the locus of which is

in this state. Spokeo failed to obtain the required consent in this state. Spokeo displayed the advertisements using her name, personal information, and persona in this state.

24. Plaintiffs Fry, Newell, Williams, Ridgeway, Boyd, Goheen, McConnell, Lingo, Little, Gillis, Adams, Carter, Goldsbary, and Gaude do not reside in California. However, Spokeo's illegal use of their names, likenesses, photographs, and personas in advertisements for website subscriptions without their consent in violation of their intellectual property and privacy rights originated from and was directed by Spokeo from its California headquarters.

25. Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged occurred in this District.

## PARTIES

26. Plaintiff Aviva Kellman is a citizen of California and resides in Alameda, California.

27. Plaintiff Jason Fry is a citizen of Indiana and resides in Wabash, Indiana.

*28.* Plaintiff Nicholas Newell is a citizen of Ohio and resides in Zanesville, Ohio.

29. Plaintiff Susan Stephens is a citizen of California and resides in Redondo Beach, California.

30. Plaintiff William Williams is a citizen of Ohio and resides in Tiffin, Ohio.

31. Plaintiff Willis Ridgeway is a citizen of Alabama and resides in Tuscaloosa, Alabama.

32. Plaintiff Anna Boyd is a citizen of Illinois and resides in Springfield, Illinois.

33. Plaintiff Ryan Goheen is a citizen of Illinois and resides in Chicago, Illinois.

34. Plaintiff Sydney McConnell is a citizen of Ohio and resides in Medina, Ohio.

35. Plaintiff Robert Lingo is a citizen of South Dakota and resides in Rapid City, South Dakota.

36. Plaintiff Paul Gaude is a citizen of Louisiana and resides in Folsom, Louisiana.

37. Plaintiff Rodney Carter is a citizen of Nevada and resides in Las Vegas, Nevada.

38.     Plaintiff Terryl Goldsbary is a citizen of Washington and resides in Graham, Washington.

39.     Plaintiff Brant Adams is a citizen of Indiana and resides in Jonesboro, Indiana.

40.     Plaintiff Benjamin Little is a citizen of Alabama and resides in Anniston, Alabama.

41.     Plaintiff Sharon Gillis is a citizen of Illinois and resides in Peotone, Illinois.

42.     Defendant Spokeo, Inc. is a Delaware corporation with its headquarters in Pasadena, California. Defendant owns and operates the website spokeo.com.

### FACTUAL ALLEGATIONS

**Plaintiff Aviva Kellman**

43.     Plaintiff Aviva Kellman is not a subscriber and has never used spokeo.com.

44.     Ms. Kellman did not give consent to Spokeo to use her name, likeness, personal information, or persona in any way. Had Spokeo requested her consent, Ms. Kellman would not have provided it.

45.     Spokeo uses Ms. Kellman's name and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Ms. Kellman. The teaser profile includes her name, age, current and past addresses, current and past phone numbers, current and past email addresses, relative's names, city of residence, and partially redacted phone number and email. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Ms. Kellman that Spokeo distributes

publicly on its website. The teaser profile uniquely identifies Ms. Kellman. Screenshots depicting the teaser profile are shown below.





46.    As shown in the screenshots above, Ms. Kellman's teaser profile advertises that Spokeo has additional personal information about Ms. Kellman, including: "8 phone numbers and emails"; "9 addresses" in her address history; the identity of one of her family members; two of her social media accounts; one "Court Record," which the profile suggests may include "Arrests," "Sex Offenders," or "Felonies"; details about Ms. Kellman's "marriage, and divorce"; "property details"; and "employment history."

47.     Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Ms. Kellman by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates."



48.     Users who searched for Ms. Kellman received the teaser profile uniquely identifying Ms. Kellman by name, age, city of residence, and partially redacted contact information.

49.     Spokeo uses Ms. Kellman's teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Ms. Kellman, and (2) searchable access to personal information about hundreds of millions of other individuals.

50.     The unredacted information visible on Ms. Kellman's teaser profile uniquely identifies Ms. Kellman.

51. Users who clicked on the button marked "Unlock Profile" on Ms. Kellman's teaser profile were shown a page encouraging them to buy the full profile about Ms. Kellman for $0.95. Although the page intentionally conceals this, users who made this $0.95 purchase were automatically signed up for a Spokeo Membership, which costs $24.95 per month after a seven-day trial period. For privacy, Plaintiffs have obscured the names of Ms. Kellman's family members, which appear unredacted on the original webpage.



52.    After clicking "Continue," users see a page soliciting payment by credit or debit card. As shown in the screenshot below, although the bolded purchase price appears to be only $0.95, Spokeo discloses in small italic text that the user "will be billed 24.95 per month" for a Spokeo Membership.

53.    Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Ms. Kellman, and the ability to search for similar information about hundreds of millions of other individuals.

54.    Spokeo's purpose in using Ms. Kellman's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

55.    Ms. Kellman does not know how Spokeo obtained her personal information.

56.    Contrary to the insinuations Spokeo published in its advertisements about Ms. Kellman, she has not committed any felony, nor is she a sex offender.

57.    Spokeo misappropriated Ms. Kellman's personal information and persona

without permission from Ms. Kellman or the various sources from which it presumably stole her information.

58.    Ms. Kellman has intellectual property and privacy interests in her name, likeness, and persona recognized by California statutory and common law. She has the right to exclude anyone from making commercial use of her persona without her permission.

59.    Spokeo has injured Ms. Kellman by taking her intellectual property without compensation; by invading her privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of her personal information.

60.    Spokeo's illegal actions caused Ms. Kellman mental injury and disturbed her peace of mind. Ms. Kellman is deeply uncomfortable that Spokeo is using her name and persona in advertisements for a website she does not use or approve of. Ms. Kellman believes her persona is rightly hers to control. Spokeo's illegal use has left her worried and uncertain about her inability to control how her name and persona is used. Ms. Kellman feels that Spokeo's use of her name and persona is an alarming invasion of her privacy. Ms. Kellman believes that Spokeo's collection and publication of intimate personal details about her and her family members encourages and enables identity fraud.

**Plaintiff Jason Fry**

61.    Plaintiff Jason Fry is not a subscriber and has never used spokeo.com.

62.    Mr. Fry did not give consent to Spokeo to use his name, likeness, photograph, personal information, or persona in any way. Had Spokeo requested his consent, Mr. Fry would not have provided it.

63.     Spokeo uses Mr. Fry's name, photograph, and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Mr. Fry. The teaser profile includes his name, age, current and past addresses, current and past phone numbers, current and past email addresses, relative's names, city of residence, and partially redacted phone number and email. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Mr. Fry that Spokeo distributes publicly on its website. The teaser profile uniquely identifies Mr. Fry. A screenshot depicting the teaser profile is shown below.



64.     For privacy, Plaintiffs have redacted the photograph depicting Mr. Fry's face. The original is blurred but identifiable as Mr. Fry.



65.    As shown in the screenshots above, Mr. Fry's teaser profile advertises that Spokeo has additional personal information about Mr. Fry, including: "9 phone numbers and emails"; "13 addresses" in his address history; the identity of five of his family members; ten of his social media accounts; three "Court Records," which the profile suggests may include "Arrests," "Sex Offenders," or "Felonies"; details about Mr. Fry's "marriage, and divorce"; "property details"; and "employment history."

66.    Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Mr. Fry by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See* ¶ 47 *above.*

67.    Users who searched for Mr. Fry received the teaser profile uniquely identifying Mr. Fry by photograph, name, age, current and past cities of residence, and partially redacted contact information.

68.     Spokeo uses Mr. Fry's teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Mr. Fry, and (2) searchable access to personal information about hundreds of millions of other individuals.

69.     The unredacted information visible on Mr. Fry's teaser profile uniquely identifies Mr. Fry.

70.     Users who clicked on the button marked "Unlock Profile" on Mr. Fry's teaser profile were shown a page encouraging them to buy the full profile about Mr. Fry for $0.95. Although the page intentionally conceals this fact, users who made this $0.95 purchase were automatically signed up for a Spokeo Membership, which costs $24.95 per month after a seven-day trial period. For privacy, Plaintiffs' counsel redacted the names of Mr. Fry's family members, which appear unredacted on the original webpage.

71. After clicking "Continue," users see a page soliciting payment by credit or debit card. As shown in the screenshot below, although the bolded purchase price appears to be only $0.95, Spokeo discloses in small italic text that the user "will be billed 24.95 per month" for a Spokeo Membership.

72. Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Fry, and the ability to search for similar information about hundreds of millions of other individuals.

73. Spokeo's purpose in using Mr. Fry's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

74. Mr. Fry does not know how Spokeo obtained his personal information.

75. Contrary to the insinuations Spokeo published in its advertisements about Mr. Fry, he has not committed any felony, nor is he a sex offender.

76.    Spokeo misappropriated Mr. Fry's image, personal information, and persona without permission from Mr. Fry or the various sources from which it presumably stole his information.

77.    Mr. Fry has intellectual property and privacy interests in his name, likeness, and persona recognized by Indiana statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

78.    Spokeo has injured Mr. Fry by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

79.    Spokeo's illegal actions caused Mr. Fry mental injury and disturbed his peace of mind. Mr. Fry is deeply uncomfortable that Spokeo is using his name and persona in advertisements for a website he does not use or approve of. Mr. Fry believes his persona is rightly his to control. Spokeo's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. Fry feels that Spokeo's use of his name and persona is an alarming invasion of his privacy. Mr. Fry believes that Spokeo's collection and publication of intimate personal details about him and his family members encourages and enables identity fraud.

**Plaintiff Nicholas Newell**

80.    Plaintiff Nicholas Newell is not a subscriber and has never used spokeo.com.

81.    Mr. Newell did not give consent to Spokeo to use his name, personal information, or persona in any way. Had Spokeo requested his consent, Mr. Newell would not have provided it.

82.    Spokeo uses Mr. Newell's name and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Mr. Newell. The teaser profile includes his name, age, current and past addresses, current and past phone numbers, current and past email addresses, relative's names, city of residence, and partially redacted phone number and email. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Mr. Newell that Spokeo distributes publicly on its website. The teaser profile uniquely identifies Mr. Newell. Screenshots depicting the teaser profile are shown below.





83.    As shown in the screenshots above, Mr. Newell's teaser profile advertises that Spokeo has a host of additional personal information about Mr. Newell, including: "19 phone numbers and emails"; "9 addresses" in his address history; the identity of four of his family members; thirty-two of his social media accounts; six "Court Records," which the profile suggests may include "Arrests," "Sex Offenders," or "Felonies"; details about Mr. Newell's "marriage, and divorce"; "property details"; and "employment history."

84.    Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Mr. Newell by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See* ¶ 47 *above.*

85.    Users who searched for Mr. Newell received the teaser profile uniquely identifying Mr. Newell by name, age, current and past cities of residence, and partially redacted contact information.

86.     Spokeo uses Mr. Newell's teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Mr. Newell, and (2) searchable access to personal information about hundreds of millions of other individuals.

87.     The unredacted information visible on Mr. Newell's teaser profile uniquely identifies Mr. Newell.

88.     Users who clicked on the button marked "Unlock Profile" on Mr. Newell's teaser profile were shown a page encouraging them to buy the full profile about Mr. Newell for $0.95. Although the page intentionally conceals this fact, users who made this $0.95 purchase were automatically signed up for a Spokeo Membership, which costs $24.95 per month after a seven-day trial period. For privacy, Plaintiffs have redacted the names of Mr. Newell's family members, which appear unredacted on the original webpage.

89.     After clicking "Continue," users see a page soliciting payment by credit or debit card. As shown in the screenshot below, although the bolded purchase price appears to be only $0.95, Spokeo discloses in small italic text that the user "will be billed 24.95 per month" for a Spokeo Membership.

90.     Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Newell, and the ability to search for similar information about hundreds of millions of other individuals.

91.     Spokeo's purpose in using Mr. Newell's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

92.     Mr. Newell does not know how Spokeo obtained his personal information.

93.     Contrary to the insinuations Spokeo published in its advertisements about Mr. Newell, he has not committed any felony, nor is he a sex offender.

94.     Spokeo misappropriated Mr. Newell's personal information and persona without permission from Mr. Newell or the various sources from which it presumably stole his information.

95.     Mr. Newell has intellectual property and privacy interests in his name, likeness, and persona recognized by California and Ohio statutory and common law. He has the right to exclude anyone from making commercial use of her persona without her permission.

96.     Spokeo has injured Mr. Newell by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

97.     Spokeo's illegal actions caused Mr. Newell mental injury and disturbed his peace of mind. Mr. Newell is deeply uncomfortable that Spokeo is using his name and persona in advertisements for a website he does not use or approve of. Mr. Newell believes his persona is rightly his to control. Spokeo's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. Newell feels that Spokeo's use of his name and persona is an alarming invasion of his privacy. Mr. Newell believes that Spokeo's collection and publication of intimate personal details about him and his family members encourages and enables identity fraud.

**Plaintiff Susan Stephens**

98.     Plaintiff Susan Stephens is not a subscriber and has never used spokeo.com.

99.     Ms. Stephens did not give consent to Spokeo to use her name, personal information, or persona in any way. Had Spokeo requested her consent, Ms. Stephens would not have provided it.

100.    Spokeo uses Ms. Stephens' name and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Ms. Stephens. The teaser profile includes his name, age, current and past addresses, current and past phone numbers, current and past email addresses, relative's names, city of residence, and partially redacted phone number and email. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Ms. Stephens that Spokeo distributes publicly on its website. The teaser profile uniquely identifies Ms. Stephens. Screenshots depicting the teaser profile are shown below. For privacy, counsel have redacted the names, ages, and locations of two of Ms. Stephens' family members, which appear on the unredacted teaser profile.



101.    As shown in the screenshots above, Ms. Stephens' teaser profile advertises that Spokeo has a host of additional personal information about Mr. Newell, including: "4 phone numbers and emails"; "3 addresses" in her address history; the identity of four of her family members; three of his social media accounts; sixty-five "Court Records," which the profile suggests may include "Arrests," "Sex Offenders," or "Felonies"; details about Ms. Stephens' "marriage, and divorce"; "property details"; and "employment history."

102.    Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Ms. Stephens by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See* ¶ 47 *above.*

103.    Users who searched for Ms. Stephens received the teaser profile uniquely identifying Ms. Stephens by name, age, current and past cities of residence, and partially redacted contact information.

104. Spokeo uses Ms. Stephens' teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Ms. Stephens, and (2) searchable access to personal information about hundreds of millions of other individuals.

105. The unredacted information visible on Ms. Stephens' teaser profile uniquely identifies Ms. Stephens.

106. Users who click on the button marked "Unlock Profile" on Ms. Stephens' teaser profile are shown a page encouraging them to buy a subscription membership at a cost ranging from $18.95 per month to $23.95 per month. (It appears that, since the time Plaintiffs filed their initial complaint, Spokeo has changed this page such that it no longer misleadingly conceals the fact that those who purchase a name report for $0.95 will automatically be signed up for a monthly subscription at a much higher price.) As shown below, the page highlights as a selling point that Ms. Stephens "will NOT be notified of your search."

107. Spokeo advertises that users who purchase a Spokeo Membership will receive access to this additional information about Ms. Stephens, and the ability to search for similar information about hundreds of millions of other individuals.

108. Spokeo's purpose in using Ms. Stephen's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

109. Indeed, Ms. Stephen's teaser profile motivated the purchase of a Spokeo Membership subscription. At least one user viewed Ms. Stephens' teaser profile immediately prior to purchasing a subscription Spokeo membership.

110. Ms. Stephens does not know how Spokeo obtained her personal information.

111. Contrary to the insinuations Spokeo published in its advertisements about Ms. Stephens, she has not committed any felony, nor is she a sex offender.

112. Spokeo misappropriated Ms. Stephens' personal information and persona without permission from Ms. Stephens.

113. Ms. Stephens has intellectual property and privacy interests in her name, likeness, and persona recognized by California statutory and common law. She has the right to exclude anyone from making commercial use of her persona without her permission.

114. Spokeo has injured Ms. Stephens by taking her intellectual property without compensation; by invading her privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of her personal information.

115. Spokeo's illegal actions caused Ms. Stephens mental injury and disturbed her peace of mind. Ms. Stephens is deeply uncomfortable that Spokeo is using her name and persona in advertisements for a website she does not use or approve of. Ms. Stephens believes her persona is rightly hers to control. Spokeo's illegal use has left her worried and uncertain about her inability to control how her name and persona is used. Ms. Stephens feels that Spokeo's use of her name and persona is an alarming invasion of her privacy. Ms. Stephens

believes that Spokeo's collection and publication of intimate personal details about her and her family members encourages and enables identity fraud.

**Plaintiff William Williams**

116.    Plaintiff William Williams is not a subscriber and has never used spokeo.com.

117.    Mr. Williams did not give consent to Spokeo to use his name, personal information, or persona in any way. Had Spokeo requested his consent, Mr. Williams would not have provided it.

118.    Spokeo uses Mr. Williams' name and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Mr. Williams. The teaser profile includes his name, age, current and past addresses, current and past phone numbers, current and past email addresses, relative's names, city of residence, and partially redacted phone number and email. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Mr. Williams that Spokeo distributes publicly on its website. The teaser profile uniquely identifies Mr. Williams. Screenshots depicting the teaser profile are shown below.

SPOKEO

William Williams

ABOUT    LOGIN    SIGN UP

People Search  >  Williams  >  William Williams  >  Ohio  >  Tiffin  >  **William O V Williams III**

## William O V Williams III, Age 36

*aka W Williams, William Williamsv, Williamsv William, Williams v William*

✔ **Current Address:** ▢▢▢ Vine St, Tiffin, OH

✔ **Past Addresses:** Marion OH, Tiffin OH +5 more

✔ **Phone Number:** (419) 618-▢▢▢▢ +4 phones

✔ **Email Address:** b▢▢▢@yahoo.com +4 emails

**UNLOCK PROFILE**

● Phone & Email *(10)*    ● All Addresses *(8)*    ● Family *(12)*    ● Social *(65)*    ● Court *(3)*    ● And More

### PHONE & EMAIL *(10)*

We found 10 phone numbers and email addresses.

See William's contact info now »

📱 **(419) 618-▢▢▢▢**
Tiffin, OH • Verizon Wireless

📱 **(217) 358-▢▢▢▢**
Decatur, IL • AT&T Mobility

✉ **b▢▢▢@yahoo.com**
yahoo • 2 social profiles

### ADDRESS HISTORY *(8)*

We found 8 addresses for William.

See where William has lived »

Address information for William may include:

✔ Current Address        ✔ Past Addresses
✔ Property Owner         ✔ Home Value

### FAMILY MEMBERS *(12)*

We found 12 relatives for William.

See William's family members »

Family member details may include:

✔ Name & Age        ✔ Contact Info
✔ Demographics      ✔ Location

---

SPOKEO

William Williams

ABOUT    LOGIN    SIGN UP

WILLIAM O V WILLIAMS III, AGE 36

**UNLOCK PROFILE**

✉ **b▢▢▢@cinci.rr.com**
email

🏠 **▢▢▢ Vine St**
TIFFIN, OH • 2011-2016
This 845 square foot home is the last known address for William.
View more

🏠 **▢▢▢ Scrant**
MARION, OH • 20
William moved
in 2012.

👤 **Walter Williams**
MALE • AGE 69
William resides in Tiffin, OH in a single family house with Walter.
View more

👤 **Anthony Will**
MALE • AGE 61
William has live
family house in
Anthony.

**VIEW 6 MORE** ›

### SOCIAL PROFILES *(65)*

We found Facebook and 64 more accounts.

Uncover William's photos, videos, and more »

Social information for William may include:

✔ Online Aliases        ✔ Photos and Videos
✔ Dating Sites          ✔ Posts and Wish Lists

**Facebook**
EMAIL MATCH
Facebook is a social network where users can create a profile, add friends, exchange   View more

**Instagram**
USERNAME MATC
Instagram is a f
app which allow
photo, apply a c

### COURT RECORDS* *(3)*

3 records for "William Williams" in "Seneca County".

View court record search results »

Court record search results may include:

✔ Arrests               ✔ Sex Offenders
✔ Traffic Violations    ✔ Felonies

**County Court Records**
SENECA COUNTY
There are 3 court records for "William Williams" in "Seneca County".   View more

**State Record**
OHIO
We identified 4,
related to "Willi
the state of Ohi

### ADDITIONAL DETAILS

Personal details for William may include »

📄 **Personal Information**
VITAL INFO & HISTORICAL RECORDS
Uncover details about birth, marriage, and divorce. Find census, military, and other historical records.*

📈 **Wealth**
PROPERTY, HOUSEHOLD INCOME, & MORE
View property details and household demographic information related to income, investments, and interests.

💼 **Work**
EMPLOYMENT HISTORY
Discover work experience, company details, and more.

* Historical, vital, and court records and search results may require an additional purchase. Spokeo's database, while extensive, does not contain all U.S. warrant, arrest, court, or other related

119. As shown in the screenshots above, Mr. Williams' teaser profile advertises that Spokeo has a host of additional personal information about Mr. Williams, including: "10 phone numbers and emails"; "8 addresses" in his address history; the identity of 12 of his family members; sixty-five of his social media accounts; three "Court Records," which the profile suggests may include "Arrests," "Sex Offenders," or "Felonies"; details about Mr. Williams' "marriage, and divorce"; "property details"; and "employment history."

120. Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Mr. Williams by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See* ¶ 47 *above.*

121. Users who searched for Mr. Williams received the teaser profile uniquely identifying Mr. Williams by name, age, current and past cities of residence, and partially redacted contact information.

122. Spokeo uses Mr. Williams' teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Mr. Williams, and (2) searchable access to personal information about hundreds of millions of other individuals.

123. The unredacted information visible on Mr. Williams' teaser profile uniquely identifies Mr. Williams.

124.    Users who click on the button marked "Unlock Profile" on Mr. Williams' teaser profile are shown a page encouraging them to buy a subscription membership at a cost ranging from $18.95 per month to $23.95 per month. (It appears that, since the time Plaintiffs filed their initial complaint, Spokeo has changed this page such that it no longer misleadingly conceals the fact that those who purchase a name report for $0.95 will automatically be signed up for a monthly subscription at a much higher price.) As shown below, the page highlights as a selling point that Mr. Williams "will NOT be notified of your search."



125.    Spokeo advertises that users who purchase a Spokeo Membership will receive access to this additional information about Mr. Williams, and the ability to search for similar information about hundreds of millions of other individuals.

126.    Spokeo's purpose in using Mr. Williams' name, personal information, and persona on its website is to solicit the purchase of paid memberships.

127.    Indeed, Mr. Williams' teaser profile motivated the purchase of a Spokeo Membership subscription. At least one user viewed Mr. Williams' teaser profile immediately prior to purchasing a subscription Spokeo membership.

128.    Mr. Williams does not know how Spokeo obtained his personal information.

129.    Contrary to the insinuations Spokeo published in its advertisements about Mr. Williams, he has not committed any felony, nor is he a sex offender.

130.    Spokeo misappropriated Mr. Williams' personal information and persona without permission from Mr. Williams.

131.    Mr. Williams has intellectual property and privacy interests in his name, likeness, and persona recognized by Ohio statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

132.    Spokeo has injured Mr. Williams by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

133.    Spokeo's illegal actions caused Mr. Williams mental injury and disturbed his peace of mind. Mr. Williams is deeply uncomfortable that Spokeo is using his name and persona in advertisements for a website he does not use or approve of. Mr. Williams believes his persona is rightly his to control. Spokeo's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. Williams feels that Spokeo's use of his name and persona is an alarming invasion of his privacy. Mr. Williams believes that Spokeo's collection and publication of intimate personal details about him and his family members encourages and enables identity fraud.

**Plaintiff Willis Ridgeway**

134.    Plaintiff Willis Ridgeway is not a subscriber and has never used spokeo.com.

135.    Mr. Ridgeway did not give consent to Spokeo to use his name, likeness, photograph, personal information, or persona in any way. Had Spokeo requested his consent, Mr. Ridgeway would not have provided it.

136.     Spokeo uses Mr. Ridgeway's name, photograph, and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Mr. Ridgeway. The teaser profile includes his name, age, current and past addresses, current and past phone numbers, current and past email addresses, relative's names, city of residence, and partially redacted phone number and email. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Mr. Ridgeway that Spokeo distributes publicly on its website. The teaser profile uniquely identifies Mr. Ridgeway. A screenshot depicting the teaser profile is shown below.



137.     Spokeo claims to have additional information about Mr. Ridgeway, including his "Court Records," "Arrests," "Felonies," "Marital Status," "Vital Info & Historical Records," "Online Aliases," "Photos and Videos," and "Employment History." Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Ridgeway, and the ability to search for similar information about hundreds of millions of other individuals.




138.    Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Mr. Ridgeway by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See* ¶ 47 *above*.

139.    Users who searched for Mr. Ridgeway received the teaser profile uniquely identifying Mr. Ridgeway by photograph, name, age, current and past cities of residence, and partially redacted contact information.

140.    Spokeo uses Mr. Ridgeway's teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Mr. Ridgeway, and (2) searchable access to personal information about hundreds of millions of other individuals.

141.    The unredacted information visible on Mr. Ridgeway's teaser profile uniquely identifies Mr. Ridgeway.

142.    Users who clicked on the button marked "Unlock Profile" on Mr. Ridgeway's

teaser profile were shown a page encouraging them to buy the full profile about Mr. Ridgeway for $0.95. Although the page intentionally conceals this fact, users who made this $0.95 purchase were automatically signed up for a Spokeo Membership, which costs $24.95 per month after a seven-day trial period. As shown below, the page highlights as a selling point that Mr. Ridgeway "will NOT be notified of your search."



143.    After clicking "Continue," users see a page soliciting payment by credit or debit card. *See* ¶¶ 52, 106, 124 *above*. Although the bolded purchase price appears to be only $0.95, Spokeo discloses in small italic text that the user "will be billed 24.95 per month" for a Spokeo Membership. *See* ¶ 89 *above*.

144.   Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Ridgeway, and the ability to search for similar information about hundreds of millions of other individuals.

145.   Spokeo's purpose in using Mr. Ridgeway's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

146.   Mr. Ridgeway does not know how Spokeo obtained his personal information.

147.   Contrary to the insinuations Spokeo published in its advertisements about Mr. Ridgeway, he has not committed any felony, nor is he a sex offender.

148.   Spokeo misappropriated Mr. Ridgeway's image, personal information, and persona without permission from Mr. Ridgeway or the various sources from which it presumably stole his information.

149.   Mr. Ridgeway has intellectual property and privacy interests in his name, likeness, and persona recognized by Alabama statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

150.   Spokeo has injured Mr. Ridgeway by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

151.   Spokeo's illegal actions caused Mr. Ridgeway mental injury and disturbed his peace of mind. Mr. Ridgeway is deeply uncomfortable that Spokeo is using his name and persona in advertisements for a website he does not use or approve of. Mr. Ridgeway believes his persona is rightly his to control. Spokeo's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. Ridgeway feels that Spokeo's use of his name and persona is an alarming invasion of his privacy. Mr. Ridgeway believes that Spokeo's collection and publication of intimate personal details about him and his family members encourages and enables identity fraud.

**Plaintiff Sydney McConnell**

152.   Plaintiff Sydney McConnell is not a subscriber and has never used spokeo.com.

153.    Ms. McConnell did not give consent to Spokeo to use her name, likeness, photograph, personal information, or persona in any way. Had Spokeo requested her consent, Ms. McConnell would not have provided it.

154.    Spokeo uses Ms. McConnell's name, photograph, and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Ms. McConnell. The teaser profile includes her name, age, current and past addresses, current and past phone numbers, current and past email addresses, relative's names, city of residence, and partially redacted phone number and email. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Ms. McConnell that Spokeo distributes publicly on its website. The teaser profile uniquely identifies Ms. McConnell. A screenshot depicting the teaser profile is shown below.

155.    Spokeo claims to have additional information about Ms. McConnell, including her "Court Records," "Arrests," "Felonies," "Marital Status," "Vital Info & Historical Records," "Online Aliases," "Photos and Videos," and "Employment History." Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive

access to this additional information about Ms. McConnell, and the ability to search for similar information about hundreds of millions of other individuals.

156. Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Ms. McConnell by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See* ¶ 47 *above.*

157. Users who searched for Ms. McConnell received the teaser profile uniquely identifying Ms. McConnell by photograph, name, age, current and past cities of residence, and partially redacted contact information.

158. Spokeo uses Ms. McConnell's teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Ms. McConnell, and (2) searchable access to personal information about hundreds of millions of other individuals.

159. The unredacted information visible on Ms. McConnell's teaser profile uniquely identifies Ms. McConnell.

160. Users who clicked on the button marked "Unlock Profile" on Ms. McConnell's teaser profile were shown a page encouraging them to buy the full profile about Ms. McConnell for $0.95. Although the page intentionally conceals this fact, users who made this $0.95 purchase were automatically signed up for a Spokeo Membership, which costs $24.95 per

month after a seven-day trial period.



161.    After clicking "Continue," users see a page soliciting payment by credit or debit card. Although the bolded purchase price appears to be only $0.95, Spokeo discloses in small italic text that the user "will be billed 24.95 per month" for a Spokeo Membership.



162. Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Ms. McConnell, and the ability to search for similar information about hundreds of millions of other individuals.

163. Spokeo's purpose in using Ms. McConnell's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

164. Ms. McConnell does not know how Spokeo obtained her personal information.

165. Contrary to the insinuations Spokeo published in its advertisements about Ms. McConnell, she has not committed any felony, nor is she a sex offender.

166. Spokeo misappropriated Ms. McConnell's image, personal information, and persona without permission from Ms. McConnell or the various sources from which it presumably stole her information.

167. Ms. McConnell has intellectual property and privacy interests in her name, likeness, and persona recognized by Ohio statutory and common law. She has the right to exclude anyone from making commercial use of her persona without her permission.

168. Spokeo has injured Ms. McConnell by taking her intellectual property without compensation; by invading her privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of her personal information.

169. Spokeo's illegal actions caused Ms. McConnell mental injury and disturbed her peace of mind. Ms. McConnell is deeply uncomfortable that Spokeo is using her name and persona in advertisements for a website she does not use or approve of. Ms. McConnell believes her persona is rightly hers to control. Spokeo's illegal use has left her worried and uncertain about her inability to control how her name and persona is used. Ms. McConnell feels that Spokeo's use of her name and persona is an alarming invasion of her privacy. Ms. McConnell believes that Spokeo's collection and publication of intimate personal details about her and her family members encourages and enables identity fraud.

**Plaintiff Anna Boyd (*nee* Campbell *nee* Gillespie)**

170. Plaintiff Anna Boyd (*nee* Campbell *nee* Gillespie) is not a subscriber and has

never used spokeo.com.

171.    Ms. Boyd did not give consent to Spokeo to use her name, likeness, photograph, personal information, or persona in any way. Had Spokeo requested her consent, Ms. Boyd would not have provided it.

172.    Spokeo uses Ms. Boyd's name, photograph, and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Ms. Boyd. The teaser profile includes her name, age, current and past addresses, current and past phone numbers, current and past email addresses, relative's names, city of residence, and partially redacted phone number and email. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Ms. Boyd that Spokeo distributes publicly on its website. The teaser profile uniquely identifies Ms. Boyd. A screenshot depicting the teaser profile are shown below.



173.    Spokeo claims to have additional information about Ms. Boyd, including her "Court Records," "Arrests," "Felonies," "Marital Status," "Vital Info & Historical Records,"

"Online Aliases," "Photos and Videos," and "Employment History." Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Ms. Boyd, and the ability to search for similar information about hundreds of millions of other individuals.

174.    Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Ms. Boyd by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See* ¶ 47 *above.*

175.    Users who searched for Ms. Boyd received the teaser profile uniquely identifying Ms. Boyd by photograph, name, age, current and past cities of residence, and partially redacted contact information.

176.    Spokeo uses Ms. Boyd's teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Ms. Boyd, and (2) searchable access to personal information about hundreds of millions of other individuals.

177.    The unredacted information visible on Ms. Boyd's teaser profile uniquely identifies Ms. Boyd.

178.    Users who clicked on the button marked "Unlock Profile" on Ms. Boyd's teaser profile were shown a page encouraging them to buy the full profile about Ms. Boyd for $0.95. Although the page intentionally conceals this fact, users who made this $0.95 purchase were automatically signed up for a Spokeo Membership, which costs $24.95 per month after a seven-day trial period.



179.    After clicking "Continue," users see a page soliciting payment by credit or debit card. Although the bolded purchase price appears to be only $0.95, Spokeo has also advertised several different tiers of membership.



180. Spokeo advertises that users who purchase a monthly Spokeo Membership will receive access to this additional information about Ms. Boyd, and the ability to search for similar information about hundreds of millions of other individuals.

181. Spokeo's purpose in using Ms. Boyd's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

182. Ms. Boyd does not know how Spokeo obtained her personal information.

183. Contrary to the insinuations Spokeo published in its advertisements about Ms. Boyd, she has not committed any felony, nor is she a sex offender.

184. Spokeo misappropriated Ms. Boyd's image, personal information, and persona without permission from Ms. Boyd or the various sources from which it presumably stole her information.

185. Ms. Boyd has intellectual property and privacy interests in her name, likeness, and persona recognized by Illinois statutory and common law. She has the right to exclude anyone from making commercial use of her persona without her permission.

186. Spokeo has injured Ms. Boyd by taking her intellectual property without compensation; by invading her privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of her personal information.

187. Spokeo's illegal actions caused Ms. Boyd mental injury and disturbed her peace of mind. Ms. Boyd is deeply uncomfortable that Spokeo is using her name and persona in advertisements for a website she does not use or approve of. Ms. Boyd believes her persona is rightly hers to control. Spokeo's illegal use has left her worried and uncertain about her inability to control how her name and persona is used. Ms. Boyd feels that Spokeo's use of her name and persona is an alarming invasion of her privacy. Ms. Boyd believes that Spokeo's collection and publication of intimate personal details about her and her family members encourages and enables identity fraud.

**Plaintiff Ryan Goheen**

188. Plaintiff Ryan Goheen is not a subscriber and has never used spokeo.com.

189.    Mr. Goheen did not give consent to Spokeo to use his name, likeness, photograph, personal information, or persona in any way. Had Spokeo requested his consent, Mr. Goheen would not have provided it.

190.    Spokeo uses Mr. Goheen's name, photograph, and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal



information about Mr. Goheen. The teaser profile includes his name, age, current and past addresses, current and past phone numbers, current and past email addresses, relative's names, city of residence, and partially redacted phone number and email. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Mr. Goheen that Spokeo distributes publicly on its website. The teaser profile uniquely identifies Mr. Goheen. A screenshot depicting the teaser profile is shown below. For privacy, Plaintiffs have obscured the names of Mr. Goheen's family members, which appear unredacted on the original webpage.

191. Spokeo claims to have additional information about Mr. Goheen, including his "Court Records," "Arrests," "Felonies," "Marital Status," "Vital Info & Historical Records," "Online Aliases," "Photos and Videos," and "Employment History." Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Goheen, and the ability to search for similar information about hundreds of millions of other individuals.

192. Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Mr. Goheen by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See* ¶ 47 *above.*

193. Users who searched for Mr. Goheen received the teaser profile uniquely identifying Mr. Goheen by photograph, name, age, current and past cities of residence, and partially redacted contact information.

194. Spokeo uses Mr. Goheen's teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Mr. Goheen, and (2) searchable access to personal information about hundreds of millions of other individuals.

195. The unredacted information visible on Mr. Goheen's teaser profile uniquely identifies Mr. Goheen.

196. Users who click on the button marked "Unlock Profile" on Mr. Goheen's teaser profile are shown a page encouraging them to buy a subscription membership at a cost ranging from $18.95 per month to $23.95 per month. (It appears that, since the time Plaintiffs filed their initial complaint, Spokeo has changed this page such that it no longer misleadingly conceals the fact that those who purchase a name report for $0.95 will automatically be signed up for a monthly subscription at a much higher price.) The page highlights as a selling point that Mr. Goheen "will NOT be notified of your search." *See* ¶¶ 52, 106, 124 *above.*

197.     Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Goheen, and the ability to search for similar information about hundreds of millions of other individuals.

198.     Spokeo's purpose in using Mr. Goheen's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

199.     Mr. Goheen does not know how Spokeo obtained his personal information.

200.     Contrary to the insinuations Spokeo published in its advertisements about Mr. Goheen, he has not committed any felony, nor is he a sex offender.

201.     Spokeo misappropriated Mr. Goheen's image, personal information, and persona without permission from Mr. Goheen or the various sources from which it presumably stole his information.

202.     Mr. Goheen has intellectual property and privacy interests in his name, likeness, and persona recognized by Illinois statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

203.     Spokeo has injured Mr. Goheen by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

204.     Spokeo's illegal actions caused Mr. Goheen mental injury and disturbed his peace of mind. Mr. Goheen is deeply uncomfortable that Spokeo is using his name and persona in advertisements for a website he does not use or approve of. Mr. Goheen believes his persona is rightly his to control. Spokeo's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. Goheen feels that Spokeo's use of his name and persona is an alarming invasion of his privacy. Mr. Goheen believes that Spokeo's collection and publication of intimate personal details about him and his family members encourages and enables identity fraud.

**Plaintiff Robert Lingo**

205.     Plaintiff Robert Lingo is not a subscriber and has never used spokeo.com.

206.    Mr. Lingo did not give consent to Spokeo to use his name, likeness, photograph, personal information, or persona in any way. Had Spokeo requested his consent, Mr. Lingo would not have provided it.

207.    Spokeo uses Mr. Lingo's name, photograph, and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Mr. Lingo. The teaser profile includes his name, age, current and past addresses, current and past phone numbers, current and past email addresses, relative's names, city of residence, and partially redacted phone number and email. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Mr. Lingo that Spokeo distributes publicly on its website. The teaser profile uniquely identifies Mr. Lingo. A screenshot depicting the teaser profile is shown below. For privacy, Plaintiffs have obscured the names of Mr. Lingo's family members, which appear unredacted on the original webpage.



208.    Spokeo claims to have additional information about Mr. Lingo, including his "Court Records," "Arrests," "Felonies," "Marital Status," "Vital Info & Historical Records," "Online Aliases," "Photos and Videos," and "Employment History." Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Lingo, and the ability to search for similar information about hundreds of millions of other individuals.

209.    Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Mr. Lingo by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See* ¶ 47 *above.*

210.    Users who searched for Mr. Lingo received the teaser profile uniquely identifying Mr. Lingo by photograph, name, age, current and past cities of residence, and partially redacted contact information.

211.    Spokeo uses Mr. Lingo's teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Mr. Lingo, and (2) searchable access to personal information about hundreds of millions of other individuals.

212.    The unredacted information visible on Mr. Lingo's teaser profile uniquely identifies Mr. Lingo.

213.    Users who click on the button marked "Unlock Profile" on Mr. Lingo's teaser profile are shown a page encouraging them to buy a subscription membership at a cost ranging from $18.95 per month to $23.95 per month. (It appears that, since the time Plaintiffs filed their initial complaint, Spokeo has changed this page such that it no longer misleadingly conceals the fact that those who purchase a name report for $0.95 will automatically be signed up for a monthly subscription at a much higher price.) The page highlights as a selling point that Mr. Lingo "will NOT be notified of your search." *See* ¶¶ 52, 106, 124 *above.*

214. Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Lingo, and the ability to search for similar information about hundreds of millions of other individuals.

215. Spokeo's purpose in using Mr. Lingo's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

216. Indeed, Mr. Lingo's teaser profile motivated the purchase of a Spokeo Membership subscription. At least one user viewed Mr. Lingo's teaser profile immediately prior to purchasing a subscription Spokeo membership.

217. Mr. Lingo does not know how Spokeo obtained his personal information.

218. Contrary to the insinuations Spokeo published in its advertisements about Mr. Lingo, he has not committed any felony, nor is he a sex offender.

219. Spokeo misappropriated Mr. Lingo's image, personal information, and persona without permission from Mr. Lingo or the various sources from which it presumably stole his information.

220. Mr. Lingo has intellectual property and privacy interests in his name, likeness, and persona recognized by South Dakota statutory law. He has the right to exclude anyone from making commercial use of his persona without his permission.

221. Spokeo has injured Mr. Lingo by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

222. Spokeo's illegal actions caused Mr. Lingo mental injury and disturbed his peace of mind. Mr. Lingo is deeply uncomfortable that Spokeo is using his name and persona in advertisements for a website he does not use or approve of. Mr. Lingo believes his persona is rightly his to control. Spokeo's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. Lingo feels that Spokeo's use of his name and persona is an alarming invasion of his privacy. Mr. Lingo believes that Spokeo's collection and publication of intimate personal details about him and his family members encourages and

enables identity fraud.

**Plaintiff Terryl Goldsbary**

223.    Plaintiff Terryl Goldsbary is not a subscriber and has never used spokeo.com.

224.    Mr. Goldsbary did not give consent to Spokeo to use his name, likeness, photograph, personal information, or persona in any way. Had Spokeo requested his consent, Mr. Goldsbary would not have provided it.

225.    Spokeo uses Mr. Goldsbary's name, photograph, and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Mr. Goldsbary. The teaser profile includes his name, age, current and past addresses, current and past phone numbers, current and past email addresses, relative's names, city of residence, and partially redacted phone number and email. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Mr. Goldsbary that Spokeo distributes publicly on its website. The teaser profile uniquely identifies Mr. Goldsbary. A screenshot depicting the teaser profile is shown below. For privacy, Plaintiffs have obscured the names of Mr. Goldsbary's family members, which appear unredacted on the original webpage.



226.    Spokeo claims to have additional information about Mr. Goldsbary, including his "Court Records," "Arrests," "Felonies," "Marital Status," "Vital Info & Historical Records," "Online Aliases," "Photos and Videos," and "Employment History." Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Goldsbary, and the ability to search for similar information about hundreds of millions of other individuals.

227.    Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Mr. Goldsbary by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See* ¶ 47 *above*.

228.    Users who searched for Mr. Goldsbary received the teaser profile uniquely

identifying Mr. Goldsbary by photograph, name, age, current and past cities of residence, and partially redacted contact information.

229. Spokeo uses Mr. Goldsbary's teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Mr. Goldsbary, and (2) searchable access to personal information about hundreds of millions of other individuals.

230. The unredacted information visible on Mr. Goldsbary's teaser profile uniquely identifies Mr. Goldsbary.

231. Users who click on the button marked "Unlock Profile" on Mr. Goldsbary's teaser profile are shown a page encouraging them to buy a subscription membership at a cost ranging from $18.95 per month to $23.95 per month. (It appears that, since the time Plaintiffs filed their initial complaint, Spokeo has changed this page such that it no longer misleadingly conceals the fact that those who purchase a name report for $0.95 will automatically be signed up for a monthly subscription at a much higher price.) The page highlights as a selling point that Mr. Goldsbary "will NOT be notified of your search." *See* ¶¶ 52, 106, 124 *above*.

232. Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Goldsbary, and the ability to search for similar information about hundreds of millions of other individuals.

233. Spokeo's purpose in using Mr. Goldsbary's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

234. Indeed, Mr. Goldsbary's teaser profile motivated the purchase of a Spokeo Membership subscription. At least one user viewed Mr. Goldsbary's teaser profile immediately prior to purchasing a subscription Spokeo membership.

235. Mr. Goldsbary does not know how Spokeo obtained his personal information.

236. Contrary to the insinuations Spokeo published in its advertisements about Mr. Goldsbary, he has not committed any felony, nor is he a sex offender.

237. Spokeo misappropriated Mr. Goldsbary's image, personal information, and persona without permission from Mr. Goldsbary or the various sources from which it presumably stole his information.

238. Mr. Goldsbary has intellectual property and privacy interests in his name, likeness, and persona recognized by Washington statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

239. Spokeo has injured Mr. Goldsbary by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

240. Spokeo's illegal actions caused Mr. Goldsbary mental injury and disturbed his peace of mind. Mr. Goldsbary is deeply uncomfortable that Spokeo is using his name and persona in advertisements for a website he does not use or approve of. Mr. Goldsbary believes his persona is rightly his to control. Spokeo's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. Goldsbary feels that Spokeo's use of his name and persona is an alarming invasion of his privacy. Mr. Goldsbary believes that Spokeo's collection and publication of intimate personal details about him and his family members encourages and enables identity fraud.

**Plaintiff Brant Adams**

241. Plaintiff Brant Adams is not a subscriber and has never used spokeo.com.

242. Mr. Adams did not give consent to Spokeo to use his name, likeness, photograph, personal information, or persona in any way. Had Spokeo requested his consent, Mr. Adams would not have provided it.

243. Spokeo uses Mr. Adams's name, photograph, and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Mr. Adams. The teaser profile includes his name, age, current and past addresses, current and past phone numbers, current and past email addresses, relative's names, city of residence, and partially redacted phone number and email. Spokeo uses this personal

information, some of which is partially redacted, in a teaser profile about Mr. Adams that Spokeo distributes publicly on its website. The teaser profile uniquely identifies Mr. Adams. A screenshot depicting the teaser profile is shown below. For privacy, Plaintiffs have obscured the names of Mr. Adams's family members, which appear unredacted on the original webpage.



244.    Spokeo claims to have additional information about Mr. Adams, including his "Court Records," "Arrests," "Felonies," "Marital Status," "Vital Info & Historical Records," "Online Aliases," "Photos and Videos," and "Employment History." Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Adams, and the ability to search for similar information about hundreds of millions of other individuals.

245.    Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Mr. Adams by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See ¶ 47 above.*

246.    Users who searched for Mr. Adams received the teaser profile uniquely identifying Mr. Adams by photograph, name, age, current and past cities of residence, and partially redacted contact information.

247.    Spokeo uses Mr. Adams's teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Mr. Adams, and (2) searchable access to personal information about hundreds of millions of other individuals.

248.    The unredacted information visible on Mr. Adams's teaser profile uniquely identifies Mr. Adams.

249.    Users who click on the button marked "Unlock Profile" on Mr. Adams's teaser profile are shown a page encouraging them to buy a subscription membership at a cost ranging from $18.95 per month to $23.95 per month. (It appears that, since the time Plaintiffs filed their initial complaint, Spokeo has changed this page such that it no longer misleadingly conceals the fact that those who purchase a name report for $0.95 will automatically be signed up for a monthly subscription at a much higher price.) The page highlights as a selling point that Mr. Adams "will NOT be notified of your search." *See ¶¶ 52, 106, 124 above.*

250.    Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Adams, and the ability to search for similar information about hundreds of millions of other individuals.

251.    Spokeo's purpose in using Mr. Adams's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

252.    Indeed, Mr. Adams's teaser profile motivated the purchase of a Spokeo Membership subscription. At least one user viewed Mr. Adams's teaser profile immediately prior to purchasing a subscription Spokeo membership.

253.    Mr. Adams does not know how Spokeo obtained his personal information.

254.    Contrary to the insinuations Spokeo published in its advertisements about Mr. Adams, he has not committed any felony, nor is he a sex offender.

255.    Spokeo misappropriated Mr. Adams's image, personal information, and persona without permission from Mr. Adams or the various sources from which it presumably stole his information.

256.    Mr. Adams has intellectual property and privacy interests in his name, likeness, and persona recognized by Indiana statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

257.    Spokeo has injured Mr. Adams by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

258.    Spokeo's illegal actions caused Mr. Adams mental injury and disturbed his peace of mind. Mr. Adams is deeply uncomfortable that Spokeo is using his name and persona in advertisements for a website he does not use or approve of. Mr. Adams believes his persona is rightly his to control. Spokeo's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. Adams feels that Spokeo's use of his name and persona is an alarming invasion of his privacy. Mr. Adams believes that Spokeo's collection and publication of intimate personal details about him and his family members encourages and enables identity fraud.

**Plaintiff Sharon Gillis**

259.    Plaintiff Sharon Gillis is not a subscriber and has never used spokeo.com.

260.    Ms. Gillis did not give consent to Spokeo to use her name, likeness, photograph, personal information, or persona in any way. Had Spokeo requested his consent, Ms. Gillis

would not have provided it.

261.    Spokeo uses Ms. Gillis's name, photograph, and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Ms. Gillis. The teaser profile includes her name, age, current and past addresses, current and past phone numbers, current and past email addresses, relative's names, city of residence, and partially redacted phone number and email. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Ms. Gillis that Spokeo distributes publicly on its website. The teaser profile uniquely identifies Ms. Gillis. A screenshot depicting the teaser profile is shown below. For privacy, Plaintiffs have obscured the names of Ms. Gillis's family members, which appear unredacted on the original webpage.

262. Spokeo claims to have additional information about Ms. Gillis, including her "Court Records," "Arrests," "Felonies," "Marital Status," "Vital Info & Historical Records," "Online Aliases," "Photos and Videos," and "Employment History." Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Ms. Gillis, and the ability to search for similar information about hundreds of millions of other individuals.

263. Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Ms. Gillis by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See* ¶ 47 *above.*

264. Users who searched for Ms. Gillis received the teaser profile uniquely identifying Ms. Gillis by photograph, name, age, current and past cities of residence, and partially redacted contact information.

265. Spokeo uses Ms. Gillis's teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Ms. Gillis, and (2) searchable access to personal information about hundreds of millions of other individuals.

266. The unredacted information visible on Ms. Gillis's teaser profile uniquely identifies Ms. Gillis.

267. Users who click on the button marked "Unlock Profile" on Ms. Gillis's teaser profile are shown a page encouraging them to buy a subscription membership at a cost ranging from $18.95 per month to $23.95 per month. (It appears that, since the time Plaintiffs filed their initial complaint, Spokeo has changed this page such that it no longer misleadingly conceals the fact that those who purchase a name report for $0.95 will automatically be signed up for a monthly subscription at a much higher price.) The page highlights as a selling point that Ms. Gillis "will NOT be notified of your search." *See* ¶¶ 52, 106, 124 *above.*

268.    Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Ms. Gillis, and the ability to search for similar information about hundreds of millions of other individuals.

269.    Spokeo's purpose in using Ms. Gillis's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

270.    Indeed, Ms. Gillis's teaser profile motivated the purchase of a Spokeo Membership subscription. At least one user viewed Ms. Gillis's teaser profile immediately prior to purchasing a subscription Spokeo membership.

271.    Ms. Gillis does not know how Spokeo obtained her personal information.

272.    Contrary to the insinuations Spokeo published in its advertisements about Ms. Gillis, she has not committed any felony, nor is she a sex offender.

273.    Spokeo misappropriated Ms. Gillis's image, personal information, and persona without permission from Ms. Gillis or the various sources from which it presumably stole her information.

274.    Ms. Gillis has intellectual property and privacy interests in her name, likeness, and persona recognized by Illinois statutory and common law. She has the right to exclude anyone from making commercial use of her persona without her permission.

275.    Spokeo has injured Ms. Gillis by taking her intellectual property without compensation; by invading her privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of her personal information.

276.    Spokeo's illegal actions caused Ms. Gillis mental injury and disturbed her peace of mind. Ms. Gillis is deeply uncomfortable that Spokeo is using her name and persona in advertisements for a website she does not use or approve of. Ms. Gillis believes her persona is rightly hers to control. Spokeo's illegal use has left her worried and uncertain about her inability to control how her name and persona is used. Ms. Gillis feels that Spokeo's use of her name and persona is an alarming invasion of her privacy. Ms. Gillis believes that Spokeo's collection and publication of intimate personal details about her and her family members

encourages and enables identity fraud.

**Plaintiff Rodney Carter**

277.    Plaintiff Rodney Carter is not a subscriber and has never used spokeo.com.

278.    Mr. Carter did not give consent to Spokeo to use his name, likeness, photograph, personal information, or persona in any way. Had Spokeo requested his consent, Mr. Carter would not have provided it.

279.    Spokeo uses Mr. Carter's name, photograph, and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Mr. Carter. The teaser profile includes his name, age, current and past addresses, current and past phone numbers, current and past email addresses, relative's names, city of residence, and partially redacted phone number and email. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Mr. Carter that Spokeo distributes publicly on its website. The teaser profile uniquely identifies Mr. Carter. A screenshot depicting the teaser profile is shown below.



280.    Spokeo claims to have additional information about Mr. Carter, including his "Court Records," "Arrests," "Felonies," "Marital Status," "Vital Info & Historical Records," "Online Aliases," "Photos and Videos," and "Employment History." Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Carter, and the ability to search for similar information about hundreds of millions of other individuals.

281.    Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Mr. Carter by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See* ¶ 47 *above*.

282.    Users who searched for Mr. Carter received the teaser profile uniquely identifying Mr. Carter by photograph, name, age, current and past cities of residence, and

partially redacted contact information.

283. Spokeo uses Mr. Carter's teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Mr. Carter, and (2) searchable access to personal information about hundreds of millions of other individuals.

284. The unredacted information visible on Mr. Carter's teaser profile uniquely identifies Mr. Carter.

285. Users who click on the button marked "Unlock Profile" on Mr. Carter's teaser profile are shown a page encouraging them to buy a subscription membership at a cost ranging from $18.95 per month to $23.95 per month. (It appears that, since the time Plaintiffs filed their initial complaint, Spokeo has changed this page such that it no longer misleadingly conceals the fact that those who purchase a name report for $0.95 will automatically be signed up for a monthly subscription at a much higher price.) The page highlights as a selling point that Mr. Carter "will NOT be notified of your search." *See* ¶¶ 52, 106, 124 *above*.

286. Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Carter, and the ability to search for similar information about hundreds of millions of other individuals.

287. Spokeo's purpose in using Mr. Carter's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

288. Indeed, Mr. Carter's teaser profile motivated the purchase of a Spokeo Membership subscription. At least one user viewed Mr. Carter's teaser profile immediately prior to purchasing a subscription Spokeo membership.

289. Mr. Carter does not know how Spokeo obtained his personal information.

290. Contrary to the insinuations Spokeo published in its advertisements about Mr. Carter, he has not committed any felony, nor is he a sex offender.

291.    Spokeo misappropriated Mr. Carter's image, personal information, and persona without permission from Mr. Carter or the various sources from which it presumably stole his information.

292.    Mr. Carter has intellectual property and privacy interests in his name, likeness, and persona recognized by Nevada statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

293.    Spokeo has injured Mr. Carter by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

294.    Spokeo's illegal actions caused Mr. Carter mental injury and disturbed his peace of mind. Mr. Carter is deeply uncomfortable that Spokeo is using his name and persona in advertisements for a website he does not use or approve of. Mr. Carter believes his persona is rightly his to control. Spokeo's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. Carter feels that Spokeo's use of his name and persona is an alarming invasion of his privacy. Mr. Carter believes that Spokeo's collection and publication of intimate personal details about him and his family members encourages and enables identity fraud.

**Plaintiff Paul Gaude**

295.    Plaintiff Paul Gaude is not a subscriber and has never used spokeo.com.

296.    Mr. Gaude did not give consent to Spokeo to use his name, likeness, photograph, personal information, or persona in any way. Had Spokeo requested his consent, Mr. Gaude would not have provided it.

297.    Spokeo uses Mr. Gaude's name, photograph, and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Mr. Gaude. The teaser profile includes his name, age, current and past addresses, current and past phone numbers, current and past email addresses, relative's names, city of residence, and partially redacted phone number and email. Spokeo uses this personal

information, some of which is partially redacted, in a teaser profile about Mr. Gaude that Spokeo distributes publicly on its website. The teaser profile uniquely identifies Mr. Gaude. A screenshot depicting the teaser profile is shown below. For privacy, Plaintiffs have obscured the names of Mr. Gaude's family members, which appear unredacted on the original webpage.

298.    Spokeo claims to have additional information about Mr. Gaude, including his "Court Records," "Arrests," "Felonies," "Marital Status," "Vital Info & Historical Records," "Online Aliases," "Photos and Videos," and "Employment History." Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Gaude, and the ability to search for similar information about hundreds of millions of other individuals.

299. Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Mr. Gaude by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See ¶ 47 above.*

300. Users who searched for Mr. Gaude received the teaser profile uniquely identifying Mr. Gaude by photograph, name, age, current and past cities of residence, and partially redacted contact information.

301. Spokeo uses Mr. Gaude's teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Mr. Gaude, and (2) searchable access to personal information about hundreds of millions of other individuals.

302. The unredacted information visible on Mr. Gaude's teaser profile uniquely identifies Mr. Gaude.

303. Users who click on the button marked "Unlock Profile" on Mr. Gaude's teaser profile are shown a page encouraging them to buy a subscription membership at a cost ranging from $18.95 per month to $23.95 per month. (It appears that, since the time Plaintiffs filed their initial complaint, Spokeo has changed this page such that it no longer misleadingly conceals the fact that those who purchase a name report for $0.95 will automatically be signed up for a monthly subscription at a much higher price.) The page highlights as a selling point that Mr. Gaude "will NOT be notified of your search." *See ¶¶ 52, 106, 124 above.*

304. Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Gaude, and the ability to search for similar information about hundreds of millions of other individuals.

305. Spokeo's purpose in using Mr. Gaude's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

306.    Indeed, Mr. Gaude's teaser profile motivated the purchase of a Spokeo Membership subscription. At least one user viewed Mr. Gaude's teaser profile immediately prior to purchasing a subscription Spokeo membership.

307.    Mr. Gaude does not know how Spokeo obtained his personal information.

308.    Contrary to the insinuations Spokeo published in its advertisements about Mr. Gaude, he has not committed any felony, nor is he a sex offender.

309.    Spokeo misappropriated Mr. Gaude's image, personal information, and persona without permission from Mr. Gaude or the various sources from which it presumably stole his information.

310.    Mr. Gaude has intellectual property and privacy interests in his name, likeness, and persona recognized by Louisiana statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

311.    Spokeo has injured Mr. Gaude by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

312.    Spokeo's illegal actions caused Mr. Gaude mental injury and disturbed his peace of mind. Mr. Gaude is deeply uncomfortable that Spokeo is using his name and persona in advertisements for a website he does not use or approve of. Mr. Gaude believes his persona is rightly his to control. Spokeo's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. Gaude feels that Spokeo's use of his name and persona is an alarming invasion of his privacy. Mr. Gaude believes that Spokeo's collection and publication of intimate personal details about him and his family members encourages and enables identity fraud.

**Plaintiff Benjamin Little**

313.    Plaintiff Benajmin Little is not a subscriber and has never used spokeo.com.

314.    Mr. Little did not give consent to Spokeo to use his name, likeness, photograph, personal information, or persona in any way. Had Spokeo requested his consent, Mr. Little

would not have provided it.

315. Spokeo uses Mr. Little's name, photograph, and persona in advertisements promoting its website memberships. Spokeo publicly displays a teaser profile of personal information about Mr. Little. The teaser profile includes his name, age, current and past addresses, current and past phone numbers, current and past email addresses, relative's names, city of residence, and partially redacted phone number and email. Spokeo uses this personal information, some of which is partially redacted, in a teaser profile about Mr. Little that Spokeo distributes publicly on its website. The teaser profile uniquely identifies Mr. Little. A screenshot depicting the teaser profile is shown below. For privacy, Plaintiffs have obscured the names of Mr. Little's family members, which appear unredacted on the original webpage.

316.    Spokeo claims to have additional information about Mr. Little, including his "Court Records," "Arrests," "Felonies," "Marital Status," "Vital Info & Historical Records," "Online Aliases," "Photos and Videos," and "Employment History." Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Little, and the ability to search for similar information about hundreds of millions of other individuals.

317.    Spokeo provides a publicly accessible landing page at spokeo.com on which users may search, and have searched, for Mr. Little by "Name, Phone Number, Address or Email." The landing page encourages users to search for "people you know such as yourself, friends, family, acquaintances, and old classmates." *See* ¶ 47 *above.*

318.    Users who searched for Mr. Little received the teaser profile uniquely identifying Mr. Little by photograph, name, age, current and past cities of residence, and partially redacted contact information.

319.    Spokeo uses Mr. Little's teaser profile to advertise a paid "Spokeo Membership," which provides (1) access to the additional personal information and unredacted contact information of Mr. Little, and (2) searchable access to personal information about hundreds of millions of other individuals.

320.    The unredacted information visible on Mr. Little's teaser profile uniquely identifies Mr. Little.

321.    Users who click on the button marked "Unlock Profile" on Mr. Little's teaser profile are shown a page encouraging them to buy a subscription membership at a cost ranging from $18.95 per month to $23.95 per month. (It appears that, since the time Plaintiffs filed their initial complaint, Spokeo has changed this page such that it no longer misleadingly conceals the fact that those who purchase a name report for $0.95 will automatically be signed up for a monthly subscription at a much higher price.) The page highlights as a selling point that Mr. Little "will NOT be notified of your search." *See* ¶¶ 52, 106, 124 *above.*

322. Spokeo advertises that users who purchase a Spokeo Membership for $24.95 per month will receive access to this additional information about Mr. Little, and the ability to search for similar information about hundreds of millions of other individuals.

323. Spokeo's purpose in using Mr. Little's name, personal information, and persona on its website is to solicit the purchase of paid memberships.

324. Indeed, Mr. Little's teaser profile motivated the purchase of a Spokeo Membership subscription. At least one user viewed Mr. Little's teaser profile immediately prior to purchasing a subscription Spokeo membership.

325. Mr. Little does not know how Spokeo obtained his personal information.

326. Contrary to the insinuations Spokeo published in its advertisements about Mr. Little, he has not committed any felony, nor is he a sex offender.

327. Spokeo misappropriated Mr. Little's image, personal information, and persona without permission from Mr. Little or the various sources from which it presumably stole his information.

328. Mr. Little has intellectual property and privacy interests in his name, likeness, and persona recognized by Alabama statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

329. Spokeo has injured Mr. Little by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

330. Spokeo's illegal actions caused Mr. Little mental injury and disturbed his peace of mind. Mr. Little is deeply uncomfortable that Spokeo is using his name and persona in advertisements for a website he does not use or approve of. Mr. Little believes his persona is rightly his to control. Spokeo's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. Little feels that Spokeo's use of his name and persona is an alarming invasion of his privacy. Mr. Little believes that Spokeo's collection and publication of intimate personal details about him and his family members encourages and

enables identity fraud.

## CLASS ACTION ALLEGATIONS

331.    Plaintiffs bring this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3). Plaintiffs seek to represent the following Classes:

Damages Classes:

Alabama Damages Class (claims under Alabama law; represented by Plaintiff Benjamin Little): "all Alabama residents whose teaser profile was viewed by a user immediately prior to purchasing a Spokeo.com subscription on or after December 6, 2021 through July 10, 2026, where such teaser profile includes the individual's name and home address."

California damages class (claims under California law; represented by Plaintiff Susan Stephens): "all California residents whose teaser profile was viewed by a user immediately prior to purchasing a Spokeo.com subscription on or after November 19, 2019 through July 10, 2026, where such teaser profile includes the individual's name and home address."

Illinois damages class (claims under Illinois law; represented by Plaintiff Sharon Gillis): "all Illinois residents whose teaser profile was viewed by a user immediately prior to purchasing a Spokeo.com subscription on or after April 9, 2020 through July 10, 2026, where such teaser profile includes the individual's name and home address."

Indiana damages class (claims under Indiana law; represented by Plaintiff Brant Adams): "all Indiana residents whose teaser profile was viewed by a user immediately prior to purchasing a Spokeo.com subscription on or after September 1, 2023 through July 10, 2026, where such teaser profile includes the individual's name and home address."

Louisiana damages class (claims under Louisiana law; represented by Plaintiff Paul Gaude): "all Louisiana residents whose teaser profile was viewed by a user immediately prior to purchasing a Spokeo.com subscription on or after September 1, 2023 through July 10, 2026, where such teaser profile includes the individual's name and home address."

Nevada damages class (claims under Nevada law; represented by Plaintiff Rodney Carter): "all Nevada residents whose teaser profile was viewed by a user immediately prior to purchasing a Spokeo.com subscription on or after September 1, 2021 through July 10, 2026, where such teaser profile includes the individual's name and home address."

Ohio damages class (claims under Ohio law; represented by Plaintiff William Williams): "all Ohio residents whose teaser profile was viewed by a user immediately prior to purchasing a Spokeo.com subscription on or after November 19, 2017 through July 10, 2026, where such teaser profile includes the individual's name and home address."

South Dakota damages class (claims under South Dakota law; represented by Plaintiff Robert Lingo): "all South Dakota residents whose teaser profile was viewed by a user immediately prior to purchasing a Spokeo.com subscription on or after September 1, 2019 through July 10, 2026, where such teaser profile includes the individual's name and home address."

Washington damages class (claims under Washington law; represented by Plaintiff Terryl Goldsbary): "all Washington residents whose teaser profile was viewed by a user immediately prior to purchasing a Spokeo.com subscription on or after September 1, 2022 through July 10, 2026, where such teaser profile includes the individual's name and home address."

<u>Injunction Classes:</u>

Alabama Injunction Class (claims under Alabama law; represented by Plaintiffs Willis Ridgeway and Benjamin Little): "all Alabama residents whose teaser profile is searchable on www.spokeo.com, where such teaser profile includes the individual's name and home address."

California Injunction Class (claims under California law; represented by Plaintiffs Aviva Kellman and Susan Stephens): "all California residents whose teaser profile is searchable on www.spokeo.com, where such teaser profile includes the individual's name and home address."

Illinois Injunction Class (claims under Illinois law; represented by Plaintiffs Anna Boyd, Ryan Goheen, and Sharon Gillis): "all Illinois residents whose teaser profile is searchable on www.spokeo.com, where such teaser profile includes the individual's name and home address."

Indiana Injunction Class (claims under Indiana law; represented by Plaintiffs Jason Fry and Brant Adams): "all Indiana residents whose teaser profile is searchable on www.spokeo.com, where such teaser profile includes the individual's name and home address."

Louisiana Injunction Class (claims under Louisiana law; represented by Plaintiff Paul Gaude): "all Louisiana residents whose teaser profile is searchable on www.spokeo.com, where such teaser profile includes the individual's name and home address."

Nevada Injunction Class (claims under Nevada law; represented by Plaintiff Rodney Carter): "all Nevada residents whose teaser profile is searchable on

www.spokeo.com, where such teaser profile includes the individual's name and home address."

Ohio Injunction Class (claims under Ohio law; represented by Plaintiffs Nicholas Newell, William Williams, and Sydney McConnell): "all Ohio residents whose teaser profile is searchable on www.spokeo.com, where such teaser profile includes the individual's name and home address."

South Dakota Injunction Class (claims under South Dakota law; represented by Plaintiff Robert Lingo): "all South Dakota residents whose teaser profile is searchable on www.spokeo.com, where such teaser profile includes the individual's name and home address."

Washington Injunction Class (claims under Washington law; represented by Plaintiff Terryl Goldsbary): "all Washington residents whose teaser profile is searchable on www.spokeo.com, where such teaser profile includes the individual's name and home address."

332.    Excluded from each settlement class are (1) any Judge or Magistrate presiding over this action and members of their families, and (2) the legal representatives, successors, or assigns of any such excluded persons, or of Spokeo, Spokeo's subsidiaries, successors, predecessors, and any entity in which Spokeo has a controlling interest.

333.    The members of the proposed Classes are so numerous that joinder of individual claims is impracticable. Spokeo advertises that users can find profiles on "virtually any one of the 300 million people living within the United States within seconds." Accordingly, Spokeo claims to have teaser profiles on every or nearly every person in the United States.

334.    There are significant questions of fact and law common to the members of each Class. These include:

    a.    Whether Spokeo's misappropriation of names and personal information, and use of that information in the advertising techniques described in this Complaint, constitutes the knowing use for commercial purposes without consent of another's name, photograph, likeness, persona, or personality, in violation of Alabama, California, Illinois, Indiana, Louisiana, Nevada, Ohio, South Dakota, and Washington law;

b.   Whether Spokeo solicited and obtained consent from the Class members prior to using their personas in advertisements promoting its website, as required by Alabama, California, Illinois, Indiana, Louisiana, Nevada, Ohio, South Dakota, and Washington law;

c.   Whether Spokeo's use of the Class Members' names and personal information in advertisements falls within any statutory exceptions recognized by Alabama, California, Illinois, Indiana, Louisiana, Nevada, Ohio, South Dakota, and Washington right of publicity statutes;

d.   The amount of Spokeo's profits from the unauthorized use of Class members' names and personal information to advertise;

e.   Whether Plaintiffs and the Class Members are entitled to the injunctive, declaratory, monetary, punitive, and other relief requested in this Complaint.

335.    The Plaintiffs' claims are typical of those of the proposed Classes they seek to represent. Plaintiffs and all members of the proposed Classes have been harmed by Spokeo's misappropriation and misuse of their identifies, names, likenesses, personas, and other personal information in advertisements promoting spokeo.com. Spokeo presents its advertisements in the same way for each Class member. For the Plaintiffs seeking to represent Viewed-Prior-to-Purchase Classes, each Plaintiff's teaser profile was viewed by a Spokeo user immediately prior to that user purchasing a subscription.

336.    The proposed Class representatives will fairly and adequately represent the proposed Classes. The Class representative's claims are co-extensive with those of the rest of the Classes. Plaintiffs are represented by qualified counsel experienced in class action litigation of this nature.

337.    A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the proposed Classes is impracticable. Many members of the Classes do not have the financial resources necessary to pursue this claim, and even if they did, the size of their interest in the

case may not be large enough to merit the cost of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in which individualized cases would proceed. Individual litigation would greatly increase the time and expense needed to resolve a dispute concerning Spokeo's common actions towards an entire group. Class action procedures allow for the benefits of unitary adjudication, economy of scale, and comprehensive supervision of the controversy by a single court.

338.    The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Spokeo has acted on grounds generally applicable to the proposed Classes, such that final injunctive and declaratory relief is appropriate with respect to the Classes as a whole.

339.    The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of law and fact common to Class Members predominate over questions affecting individual members, and a class action is superior to other available methods for fairly and efficiency adjudicating the controversy.

**FIRST CAUSE OF ACTION**
**California Right of Publicity Statute, Cal. Civ. Code § 3344**
Plaintiffs Kellman and Stephens on behalf of the California Injunction Class
Plaintiffs Stephens on behalf of the California Damages Class

340.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-339 of this Complaint.

341.    California's right of publicity statute prohibits the "knowing[] use[] of another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent." Cal. Civ. Code § 3344.

342.    By engaging in the foregoing acts and omissions, Spokeo used Plaintiffs' and the Class Members' names, likenesses, photographs, and personas for commercial purposes without consent. Plaintiffs and the Class members' names and personas have commercial value as demonstrated by Spokeo's use and similar use by Spokeo's competitors.

343.    Spokeo is a California company. Most of the wrongful acts and omissions giving rise to this complaint occurred in California. Accordingly, each use of a Class member's name, likeness, or persona in a Spokeo advertisement violates Cal. Civ. Code § 3344, wherever the Class member resides in the United States.

344.    Each use of a Class members' name and personal information in a teaser profile or full profile is a separate and distinct violation of Cal. Civ. Code § 3344.

345.    Cal. Civ. Code § 3344 provides that a person who violates the statute is liable "in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages," in addition to "any profits from the unauthorized use." The statute also provides for "[p]unitive damages" and "attorney's fees and costs."

346.    As a result of Spokeo's violation of Cal. Civ. Code § 3344, Plaintiffs and the Class members have suffered injury to their privacy rights and actual damages both economic and emotional. Plaintiffs and the Class members have been denied the economic value of their names, likenesses, and personas, which Spokeo misappropriated without compensation to Plaintiffs and the Class members. Plaintiffs and the Class members were denied their statutorily protected right to refuse consent and protect their privacy and the economic value of their names, likenesses, and personas. Plaintiffs and the Class members suffered emotional disturbance from the misappropriation and misuse of their names and personal information.

347.    Plaintiffs on behalf of the Classes seek actual damages, including Spokeo's profits from its misuse; statutory damages; compensatory damages for the royalties Spokeo failed to pay; restitution; punitive damages; nominal damages; the award of attorneys' fees and costs; the entry of an injunction prohibiting Spokeo's illegal conduct; and declaratory relief.

**SECOND CAUSE OF ACTION**
**California Tort of Appropriation of a Name or Likeness**
<u>Plaintiffs Kellman and Stephens on behalf of the California Injunction Class</u>
<u>Plaintiffs Stephens on behalf of the California Damages Class</u>

348.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-339 of this Complaint.

349.   California common law recognizes the tort of "appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Eastwood v. Superior Court*, 149 Cal.App.3d 409, 416 (Cal. Ct. App. 1983).

350.   Spokeo is a California company. Most of the wrongful acts and omissions giving rise to this complaint occurred in California. Accordingly, each use of a Class member's name, likeness, or persona in a Spokeo advertisement violates California common law, wherever the Class member resides in the United States.

351.   By engaging in the forgoing acts and omissions, Spokeo (1) used the identities of Plaintiffs and the Class members in advertisements for subscriptions and as part of its subscription products; (2) appropriated Plaintiffs' and the Class members' names and likenesses to Spokeo's commercial advantage; (3) failed to obtain Plaintiffs' and the Class members' consent; and (4) injured Plaintiffs' and the Class Members by causing harms both economic and emotional. *See Eastwood,* at 417.

352.   On behalf of the Classes, Plaintiffs seek monetary recovery in the amount of the commercial advantage Spokeo derived from its misuse; compensatory damages for Spokeo's failure to pay royalties owed; and the entry of an injunction prohibiting Spokeo's tortious acts.

## THIRD CAUSE OF ACTION
**Indiana Right of Publicity Statute, Ind. Code § 32-36-1**
Plaintiff Adams on behalf of the Indiana Damages Class
Plaintiffs Fry and Adams on behalf of the Indiana Injunction Class

353.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1-339 of this Complaint.

354.   Indiana's right of publicity statute prohibits the use of any "aspect of a personality's right of publicity for a commercial purpose . . . without having obtained previous written consent." Ind. Code. § 32-36-1-8.

355.   By engaging in the forgoing acts and omissions, Spokeo used aspects of Plaintiffs' and the Class members' personalities, including their names, photographs, images,

likenesses, and distinctive appearances, for commercial purposes without consent. These aspects of Plaintiffs' and the Class members' personalities have commercial value.

356. Each use of a Class members' name, photograph, or personality in Indiana is a separate and distinct violation of Ind. Code. § 32-36-1-8.

357. The following facts and events occurred within Indiana: Spokeo's misappropriation of Plaintiffs' and Class members' personal information from sources in Indiana; Spokeo's failure to obtain the required consent from Plaintiffs and Class members in Indiana; Spokeo's display of Plaintiffs and Class members names, photographs, and personalities in advertisements displayed on Spokeo's website to users in Indiana; and the injury to Plaintiffs and Class members' intellectual property and privacy rights, which are harms felt in Indiana. *See* Ind. Code § 32-36-1-1(a).

358. Ind. Code § 32-36-1-10 provides that a person who violates the statute is liable for (1) statutory damages in the amount of $1,000; (b) "actual damages, including profits derived from unauthorized use," if this amount is greater than $1,000; and (c) "[t]reble or punitive damages, as the injured party may elect, if the violation . . . is knowing, willful, or intentional."

359. Because of Spokeo's violation of Ind. Code. § 32-36-1-8, Plaintiffs and Class members have suffered injury to their privacy rights and actual damages both economic and emotional. Plaintiffs and Class members have been denied the economic value of their personalities, which Spokeo misappropriated without compensation to Plaintiffs and Class members. Plaintiffs and Class members were denied their statutorily protected right to refuse consent and protect their privacy. Plaintiffs and Class members suffered emotional disturbance from the misappropriation and misuse of their personalities.

360. On behalf of the Class, Plaintiffs seeks actual damages, including Spokeo's profits from its misuse; statutory damages; compensatory damages for the royalties Spokeo failed to pay; treble and punitive damages in light of Spokeo's knowing, willful, and intentional

misuse; nominal damages; the award of attorneys' fees and costs; the entry of an injunction prohibiting Spokeo's illegal conduct; and declaratory relief.

**FOURTH CAUSE OF ACTION**
**Indiana Tort of Appropriation of a Name or Likeness**
Plaintiff Adams on behalf of the Indiana Damages Class
Plaintiffs Fry and Adams on behalf of the Indiana Injunction Class

361.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-339 of this Complaint.

362.    Indiana common law recognizes the tort of appropriation of a name or likeness. The tort creates a cause of action for the appropriation of a likeness by a defendant for the defendant's "own use or benefit." *See, e.g.*, *Felsher v. University of Evansville*, 755 N.E.2d 589 (Ind. 2001).

363.    By engaging in the forgoing acts and omissions, Spokeo appropriated Plaintiffs' and Class members' names and likenesses for its own commercial benefit.

364.    As provided for under Indiana common law, on behalf of the Class, Plaintiffs seeks monetary recovery in the amount of the commercial benefit Spokeo derived from its misuse of their likeness, as well as the entry of an injunction prohibiting Spokeo's tortious acts.

**FIFTH CAUSE OF ACTION**
**Ohio Right of Publicity Statute, Ohio Rev. Code § 2741**
Plaintiffs Newell, Williams, McConnell on behalf of the Ohio Injunction Class
Plaintiff Williams on behalf of the Ohio Damages Class

365.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-339 of this Complaint.

366.    Ohio's right of publicity statute prohibits the use of "any aspect of an individual's persona for a commercial purpose" unless the person "first obtains the written consent" of the individual. Ohio Rev. Code § 2741.02 & § 2741.05.

367.    By engaging in the forgoing acts and omissions, Spokeo used aspects of Plaintiffs' and the Ohio Class Members' personalities, including their names, photographs,

images, likenesses, and distinctive appearances, for a commercial purpose without consent. These aspects of Plaintiffs' and the Ohio Class Members' personalities have commercial value, as evidenced by Spokeo's use and similar use by other companies.

368.    Each use of an Ohio Class Members' personality is a separate and distinct violation of Ohio Rev. Code § 2741.02.

369.    Plaintiffs and the Ohio Class Members are residents of the state of Ohio. *See* Ohio Rev. Code § 2741.03.

370.    Ohio Rev. Code § 2741.07 provides that a person who violates the statute is liable for (1) "[a]ctual damages, including any profits derived from and attributable to the unauthorized use"; (2) "[a]t the election of the plaintiff and in lieu of actual damages, statutory damages in the amount of at least two thousand five hundred dollars and not more than ten thousand dollars"; and (3) "punitive or exemplary damages" if applicable under Ohio Rev. Code § 2315.21. The statute provides that "[t]he trier of fact shall include any profits derived . . in calculating the award of actual damages." Ohio Rev. Code § 3741.07.

371.    Because of Spokeo's violation of Ohio Rev. Code § 2741, Plaintiffs and the Ohio Classes have suffered injury to their privacy and intellectual property rights, and actual damages both economic and emotional, including actual damages in the amount of the profits Spokeo derived from its unauthorized use. Plaintiffs and the Ohio Classes have been denied the economic value of their personas, which Spokeo appropriated without compensation. Plaintiffs and the Ohio Classes were denied their statutorily protected right to refuse consent and protect their privacy. Plaintiffs and the Ohio Classes suffered emotional disturbance from the appropriation and misuse of their personas.

372.    On behalf of the Ohio Classes, Plaintiffs seek statutory damages; actual damages, including Spokeo's profits from its misuse; compensatory damages for royalties Spokeo failed to pay; restitution, punitive and exemplary damages; the award of attorneys' fees and costs; an injunction prohibiting Spokeo's unauthorized use; and declaratory relief.

Plaintiffs intends to elect between actual and statutory damages at a later stage of the lawsuit, after discovery has revealed the amount of Spokeo's profits.

## SIXTH CAUSE OF ACTION
### Ohio Tort of Appropriation of a Name or Likeness
Plaintiffs Newell, Williams, and McConnell on behalf of the Ohio Injunction Class
Plaintiff Williams on behalf of the Ohio Damages Class

373.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-339 of this Complaint.

374.    Ohio common law recognizes the tort of appropriation of a name or likeness. The tort creates a cause of action for the appropriation of a likeness by a defendant for the defendant's "own use or benefit." *See, e.g.*, *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St. 2d 224, 231 n. 4 (Ohio 1976) (quotation omitted).

375.    By engaging in the forgoing acts and omissions, Spokeo appropriated Plaintiffs' and the Ohio Class Members' names and likenesses for its own commercial benefit.

376.    As provided for under Ohio common law, on behalf of the Ohio Classes, Plaintiffs seek monetary recovery in the amount of the commercial benefit Spokeo derived from its misuse of their likeness, as well as the entry of an injunction prohibiting Spokeo's tortious acts.

## SEVENTH CAUSE OF ACTION
### California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*
Plaintiffs Kellman and Stephens on behalf of the California Injunction Class
Plaintiff Stephens on behalf of the California Damages Class

377.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-339 of this Complaint.

378.    Spokeo has and is engaged in unfair competition, as that term is defined in the California Unfair Competition Law, Cal. Bus. & Prof. Code. § 17200 et seq. ("UCL").

379.    As described in this complaint, Spokeo's misappropriation and use without consent of Plaintiffs' and Class members' names, photographs, likenesses, and personal information is a violation of the right of publicity statutes in California, Indiana, Ohio,

Alabama, Illinois, Nevada, South Dakota, Louisiana, and Washington, and a violation of the California, Ohio, and Indiana common law prohibiting misappropriation of a name or likeness.

380. By engaging in the conduct described in this complaint and violating California, Indiana, Ohio, Alabama, Illinois, Louisiana, Nevada, South Dakota, and Washington law, Spokeo engaged in and continues to engage in "unlawful" business acts and practices prohibited by the UCL.

381. By engaging in the conduct described in this complaint, including profiting from the sale and use in advertising of personal information it misappropriated without consent, Spokeo engaged in and continues to engage in "unfair" business acts and practices prohibited by the UCL.

382. As a result of Spokeo's actions, Plaintiffs and the Class members have been injured. Plaintiffs and the Class members lost the economic value of their names, personas, and likenesses, and are entitled to restitution, declaratory relief and an injunction. Plaintiffs and the Class members were denied their rights to refuse consent and protect their privacy.

**EIGHTH CAUSE OF ACTION**
**Violation of Alabama Right of Publicity, Ala. Code 1975 § 6-5-772**
<u>Plaintiffs Ridgeway and Little on behalf of the Alabama Injunction Class</u>
<u>Plaintiff Little on behalf of the Alabama Damages Class</u>

383. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-339 of this Complaint.

384. Plaintiffs and the putative Class members are "persons" as defined by Ala. Code. 1975 § 6-5-771(2).

385. Defendant is an "entity" subject to Ala. Code 1975 § 6-5-772 because it is a private enterprise which has a commercial purpose of selling paid subscriptions to its information database which publishes profiles of Alabama Persons.

386. The information Defendant publishes about Alabama Persons is "indicia of identity" because it consists of attributes which serve to identify a person to an ordinary reasonable viewer and includes attributes such as name, signature, photograph, image, likeness, voice, or a substantially similar imitation of one or those attributes.

387. One method by which Defendant advertises its product to individuals within Alabama is by publishing "teaser profiles" for Alabama Persons, which use attributes of Alabama Persons to entice users to purchase a subscription, by informing them that with the purchase of a subscription they can access the full profile, as well as the profiles for every person in the database from Alabama.

388. The "teaser profile" Defendant created function as a dedicated method to deploy a dual-track marketing scheme which endeavors to both (i) pique the user's interest in learning more about a person in whom she is interested and (ii) inform the user of the terms required to see the additional information available with a subscription.

389. In order to generate a teaser profile for Plaintiffs and the proposed Class, Defendant:

    a. deliberately sought out and obtained information on Alabama persons, which it reviewed and extracted to its own database;

    b. formatted the information for use within its own database, interface, and branding; and

    c. published the information as a teaser profile which it used for purposes of advertising its database.

390. Plaintiffs' teaser profiles were generated and published the same moment their normal or full profiles were created and published, which occurred when the information became available on the website.

391. The teaser profiles often indicate that profiles contain salacious information—such as marital status records and criminal history information—even when the person reflect in the profile has no such records or information.

392. Defendant's creation and publication of teaser profiles for Plaintiffs and the proposed Class members is done without regard to whether Plaintiffs or the proposed Class members wish for their personal information to be used as advertising and marketing material to generate interest in Defendant's product.

393. By publishing the teaser profiles without notifying Plaintiffs or the proposed Class members (much less seeking their consent), Defendant deploys their indicia of identity for its own purposes, depriving them of the ability to object as is their right under Alabama law and depriving them of their right to pick and choose which products have their permission to use their information to advertise, thus, depriving them of the same economic value for which Defendant obtained and used their indicia of identity.

394. Defendant did not obtain, nor attempt to obtain consent from Plaintiffs or the proposed Class members to publish their personal information to advertise its product, nor did Defendant offer them compensation for using their personal information for advertising.

395. By using Plaintiffs and the proposed Class members indicia of identity within an advertising flow on its website without previously obtaining their consent, Defendant violated their right of publicity as defined by Ala. Code. § 6-5-771(3).

396. By obtaining Plaintiffs' and the proposed Class members' indicia of identity without having to compensate them for the use, Defendant has obtained a windfall – it has evaded a cost it should have borne in amassing an enormous trove of advertising material for free.

397. Plaintiffs seek declaratory and injunctive relief, and monetary damages for themselves and on behalf of each member of the proposed Class as provided for in Ala. Code. § 6-5-774, including statutory damages equal to $5,000, punitive damages, attorneys' fees and costs, disgorgement of profits, and any other damages the court finds reasonable in light of Defendant's knowing commercial use of Plaintiffs' and Class members' indica of identity without obtaining their consent.

## NINTH CAUSE OF ACTION
### Violation of the Illinois Right of Publicity Act, 765 ILCS 1075/1, et seq.
Plaintiffs Boyd, Goheen, and Gillis on behalf of the Illinois Injunction Class
Plaintiff Gillis on behalf of the Illinois Damages Class

398. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-339 of this Complaint.

399. Illinois' Right of Publicity Act, 765 ILCS 1075/1 et seq. ("IRPA"), defines the "right of publicity" as the "right to control and to choose whether and how to use an individual's identity for commercial purposes." 765 ILCS 1075/10.

400. IRPA prohibits and provides damages for using an individual's identity for commercial purposes without having obtained previous written consent. 765 ILCS 1075/30.

401. By engaging in the foregoing acts and omissions, Defendant used Plaintiffs' and Illinois Class Members' identities for commercial purposes without having obtained previous written consent.

402. Each use of an Illinois Class Members' identity is a separate and distinct violation of IRPA giving rise to damages.

403. IRPA provides that a person who violates the statute is liable for the greater of: (a) statutory damages in the amount of $1,000 per violation; or (b) the sum of "actual damages" and "profits derived from the unauthorized use." 765 ILCS 1075/40. The statute also provides for punitive damages where, as here, the violation is willful. *Id*.

404. IRPA also provides for the award of "reasonable attorney's fees, costs, and expenses." 765 ILCS 1075/55.

405. As a result of Spokeo's violations of IRPA, Plaintiffs and the Illinois Classes have suffered injury to their privacy rights and actual damages both economic and emotional. Plaintiffs and Illinois Class Members have been denied the commercial value of their identities, which Defendant misappropriated without compensation to Plaintiffs and the Illinois Classes. Plaintiffs and Illinois Class Members were denied their statutorily protected right to control how their identities are used and refused consent to a use for commercial purposes. Plaintiffs and Illinois Class Members suffered emotional disturbance from the misappropriation and misuse of their identities.

406. Plaintiffs, on behalf of the Illinois Classes, seek: statutory damages; in the alternative, actual damages, including Defendant's profits from its misuse and compensatory damages for the royalties Defendant failed to pay and the emotional disturbance it caused;

punitive damages in light of Defendant's willing misuse; nominal damages; the award of attorneys' fees and costs; the entry of an injunction prohibiting Defendant's illegal conduct; and declaratory relief.

## TENTH CAUSE OF ACTION
### Nevada Right of Publicity Statute, Nev. Rev. Stat. §§ 597.770 et seq
<u>Plaintiff Carter on behalf of the Nevada Injunction and Damages Classes</u>

407.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-339 of this Complaint.

408.    Defendant conducts business in Nevada by, among other things, appropriating the likenesses of Nevada residents and using those likenesses to advertise as part of its products and service, and by offering its subscription products for sale to Nevada residents.

409.    Nevada's statute protecting the right to publicity, Nevada Revised Statutes §§ 597.770 *et seq.*, prohibits and provides damages for the commercial use of another's name, voice, signature, or likeness without written consent.

410.    By engaging in the forgoing acts and omissions, Defendant used Plaintiff's and Nevada Class Members' names and likenesses for commercial purposes in its goods, products, and services without written consent. Each use of Plaintiff's or a Nevada Class Member's name or likeness is a separate and distinct violation of Nev. Rev. Stat. §§ 597.770 *et seq*. giving rise to damages.

411.    By appropriating their likenesses and using those likenesses for a commercial purpose without consent, Defendant deprived Plaintiff and the Nevada Classes the economic value of their likenesses and of their legally protected rights to control the disposition of their likenesses. Plaintiff and the Nevada Classes suffered actual damages equal to the fair commercial value of their likenesses, which can be measured as the reasonable market price for the use of a likeness in a product or advertisement, or as the amount of Defendant's profits derived from subscriptions sold using their likenesses. Regardless of whether a precise measure of damages can be established at trial, Plaintiff and the Nevada Classes are entitled to statutory

minimum damages in the amount of $750 per violation as provided for in Nev. Rev. Stat. §§ 597.770 *et seq*.

412.    Plaintiff seeks declaratory, injunctive, and monetary damages for himself and on behalf of each member of the proposed Nevada Classes as provided for in Nev. Rev. Stat. §§ 597.770 *et seq*., including statutory damages equal to the greater of $750 per violation or actual damages, punitive and/or exemplary damages in light of Defendant's knowing commercial use without consent, and the award of attorneys' fees and costs in the event Plaintiff prevails in this action.

## ELEVENTH CAUSE OF ACTION
**South Dakota Statutory Right of Publicity, S.D. Codified Laws § 21-64 et seq.**
Plaintiff Lingo on behalf of the South Dakota Injunction and Damages Classes

413.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-339 of this Complaint.

414.    South Dakota's right of publicity statute prohibits "the use of an aspect of a personality's right of publicity in connection with a product, merchandise, goods, service, or commercial activity; for advertising or soliciting purchases of a product, merchandise, goods, service, or for promoting a commercial activity" without "express written consent." S.D. Codified Laws § 21-64-1 & 2.

415.    By engaging in the forgoing acts and omissions, Defendant used aspects of Plaintiff's and the South Dakota Class members' rights of publicity, including their names, photographs, images, likenesses, and distinctive appearances, for commercial purposes without consent. *See Id.*, § 21-64-1(3) (recognizing individuals' "property interest" in these and similar aspects of a personality). These aspects of Plaintiff's and the South Dakota Class members' personalities have commercial value.

416.    Each use of a South Dakota Class members' name, photograph, or personality is a separate and distinct violation of South Dakota law.

417.    S.D. Codified Laws § 21-64-5 provides that a person who violates the statute may be liable for: (1) temporary or permanent injunctive relief; (2) "damages in the amount of

one thousand dollars or the actual damages, including profits derived from the unauthorized use, whichever amount is greater"; and (3) "punitive damages" or "treble" damages for "knowing, willful, or intentional" violations.

418.    Because of Defendant's violation of South Dakota's statutory right of publicity, Plaintiff and South Dakota Class members have suffered injury to their privacy rights and actual damages both economic and emotional. Plaintiff and South Dakota Class members have been denied the economic value of their personalities, which Defendant misappropriated without compensation to Plaintiff and South Dakota Class members. Plaintiff and South Dakota Class members were denied their statutorily protected right to refuse consent and protect their privacy. Plaintiff and South Dakota Class members suffered emotional disturbance from the misappropriation and misuse of their personalities.

419.    On behalf of the South Dakota Class, Plaintiff seeks actual damages, including Defendant's profits from its misuse; statutory damages; compensatory damages for the royalties Defendant failed to pay; treble and punitive damages in light of Defendant's knowing, willful, and intentional misuse; the entry of an injunction prohibiting Defendant's illegal conduct; and declaratory relief.

## TWELFTH CAUSE OF ACTION
### Louisiana Allen Toussaint Legacy Act, Louisiana Rev. Statute 51:470.1, et seq.
Plaintiff Gaude on behalf of the Louisiana Injunction and Damages Classes

420.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-339 of this Complaint.

421.    Defendant conducts business in Louisiana by, among other things, appropriating the likenesses of Louisiana residents and using those likenesses to advertise as part of its products and service, and by offering its subscription products for sale to Louisiana residents.

422.    Louisiana's statute protecting the right to publicity, Louisiana Rev. Statute 51:470.1, et seq., prohibits and provides damages for the commercial use of another's name, voice, signature, or likeness without written consent.

423.    By engaging in the forgoing acts and omissions, Defendant used Plaintiff's and Louisiana Class Members' names and likenesses for commercial purposes in its goods, products, and services without written consent. Each use of Plaintiff's or a Louisiana Class Member's name or likeness is a separate and distinct violation of Louisiana Rev. Statute 51:470.1, et seq. giving rise to damages.

424.    By appropriating their names and likenesses and using those names and likenesses for a commercial purpose without consent in Louisiana, Defendant deprived Plaintiff and the Louisiana Classes the economic value of their likenesses and of their legally protected rights to control the disposition of their likenesses. Plaintiff and the Louisiana Classes suffered actual damages equal to the fair commercial value of their likenesses, which can be measured as the reasonable market price for the use of a likeness in a product or advertisement, or as the amount of Defendant's profits derived from subscriptions sold using their likenesses. Regardless of whether a precise measure of damages can be established at trial, Plaintiff and the Louisiana Classes are entitled to statutory minimum damages in the amount of $1000 per violation as provided for in Louisiana Rev. Statute 51:470.1, et seq.

425.    Plaintiff seeks declaratory, injunctive, and monetary damages for himself and on behalf of each member of the proposed Louisiana Classes as provided for in Louisiana Rev. Statute 51:470.1, et seq., including statutory damages equal to the greater of $1000 per violation or actual damages, punitive and/or exemplary damages in light of Defendant's knowing commercial use without consent, and the award of attorneys' fees and costs in the event Plaintiff prevails in this action.

**THIRTEENTH CAUSE OF ACTION**
**Washington Personality Rights Statute, RCW 63.60, et seq.**
<u>Plaintiff Goldsbary on behalf of Washington Injunction and Damages Classes</u>

426.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-339 of this Complaint.

427.    Washington Personality Rights Statute, RCW 63.60, et seq., defines "personality rights" as every individual's property right in the use of their name or likeness. RCW 63.60.010.

428.    Washington Personality Rights Statute prohibits and provides damages for using an individual's name or likeness "on or in goods, merchandise, or products entered into commerce in this state, or for purposes of advertising products, merchandise, goods, or services, or for purposes of fund-raising or solicitation of donations, or if any person disseminates or publishes such advertisements in this state, without written or oral, express or implied consent of the owner of the right." RCW 63.60.050.

429.    By engaging in the foregoing acts and omissions, Defendant used Plaintiff's and Washington Class Members' identities without having obtained consent.

430.    Washington Personality Rights Statute provides that a person who violates the statute is liable for the greater of: (a) statutory damages in the amount of $1,500 per violation; or (b) the sum of "actual damages" and "and any profits that are attributable to the infringement and not taken into account when calculating actual damages." RCW 63.60.060. The statute also provides for the destruction of all violative materials. *Id*.

431.    Washington Personality Rights Statute also provides for the award of "reasonable attorney's fees, expenses, and court costs." RCW 63.60.060.

432.    As a result of Spokeo's violations of Washington Personality Rights Statute, Plaintiff and the Washington Classes have suffered injury to their privacy rights and actual damages both economic and emotional. Plaintiff and the Washington Class Members have been denied the value of their identities, which Defendant misappropriated without compensation to Plaintiff and the Washington Classes. Plaintiff and the Washington Class Members were denied their statutorily protected right to control how their identities are used and refused consent to a use. Plaintiff and the Washington Class Members suffered emotional disturbance from the misappropriation and misuse of their identities.

433.    Plaintiff, on behalf of the Washington Classes, seek: statutory damages; in the alternative, actual damages, including Defendant's profits from its misuse and compensatory damages for the royalties Defendant failed to pay and the emotional disturbance it caused; nominal damages; the award of attorneys' fees and costs; the entry of an injunction prohibiting Defendant's illegal conduct; and declaratory relief.

## PRAYER FOR RELIEF

434.    WHEREFORE Plaintiffs, individually and on behalf of the Classes, request the following relief:

(a) For an order certifying the proposed Classes and appointing Plaintiffs and their counsel to represent the Classes;

(b) For a declaration that Spokeo's acts and omissions constitute a knowing and willful misappropriation of names, likeness, personas, and personalities, and infringe on protected privacy and intellectual property rights, in violation of California, Ohio, Indiana, Alabama, Illinois, Nevada, South Dakota, Louisiana, and Washington statutes and common law;

(c) For nominal damages awarded in recognition of Spokeo's violation of the statutorily protected property and privacy rights of Plaintiffs and Class members;

(d) For preliminary and permanent injunctive relief enjoining and preventing Spokeo from continuing to operate its spokeo.com website without appropriate safeguards to ensure people's personal information is not used illegally without their consent;

(e) For restitution to Plaintiffs and Class members of the money Spokeo unjustly earned through sales made by misappropriating their names, likenesses, personas, and personalities;

(f) For an award of damages, including without limitation: damages for actual harm; profits earned by Spokeo; reasonable royalties for the infringement of

Plaintiffs and Class Members' intellectual property rights; and statutory damages;

(g) For an award of reasonable attorneys' fees and costs incurred by Plaintiffs and Class members; and

(h) Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial for all individual and Class claims so triable.

Dated: July 17, 2026                    Respectfully submitted,

By:  */s/ Brittany Resch*
Brittany Resch (*pro hac vice*)
Raina C. Borrelli (*pro hac vice*)
Samuel J. Strauss (*pro hac vice*)
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago, IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
bresch@straussborrelli.com
raina@straussborrelli.com
sam@straussborrelli.com

Michael F. Ram, SBN 104805
MORGAN & MORGAN COMPLEX
LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923
mram@forthepeople.com

Benjamin R. Osborn
(to be admitted *pro hac vice*)
LAW OFFICE OF BENJAMIN R. OSBORN
63 Fiddlers Elbow Rd.
Margaretville, NY 12455
Phone: (347) 645-0464

ben@benosbornlaw.com

*Attorneys for Plaintiffs and the Classes*